UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| MONROE COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>THE SOUTHERN COMPANY, THOMAS A. FANNING, ART P. BEATTIE, EDWARD DAY, VI and G. EDISON HOLLAND, JR.,<br><br>    Defendants. | Civil Action No.<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS<br><br><br><br><br><br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff, individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by The Southern Company ("Southern Company") and Mississippi Power Company ("Mississippi Power") (and together with Southern Company (the "Companies")), as well as media reports about the Companies. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## INTRODUCTION AND OVERVIEW

1.     This is a securities class action on behalf of all persons who purchased or otherwise acquired Southern Company common stock between April 25, 2012 and October 29, 2013, inclusive (the "Class Period"), against Southern Company and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 ("1934 Act"). These claims are asserted against Southern Company and certain of its officers and/or directors who made materially false and misleading statements during the Class Period in press releases and filings with the SEC and in oral statements to the media, securities analysts and investors.

2.     Southern Company is a utility holding company based in Atlanta, Georgia. Southern Company's operating subsidiaries include public utility companies

located throughout the Southeastern United States, including Mississippi Power, Georgia Power, Alabama Power, Southern Power and Gulf Power.

3.      Mississippi Power is a wholly owned subsidiary of Southern Company. Mississippi Power operates as a vertically integrated utility, providing electricity to retail customers within the State of Mississippi and to wholesale customers in the Southeast.

4.      In 2006, Southern Company announced plans for a "clean coal" plant to be built in Kemper County, Mississippi (the "Kemper Plant") by its subsidiary, Mississippi Power.  By the time the project broke ground in 2010, a funding package of almost $1 billion in U.S. Department of Energy ("DOE") grants and Internal Revenue Service ("IRS") tax credits was in place, provided that construction of the plant was completed by May 2014.  At the start of the Class Period, defendants assured investors that the project would be completed by the May 2014 deadline and the total project cost would not exceed the $2.88 billion cost cap set by state regulators.

5.      Throughout the Class Period, although cost overruns and other delays began to materialize, defendants repeatedly assured investors that the project would be completed by the critical May 2014 deadline.  Then, in October 2013, defendants disclosed that the Kemper Plant would not be completed by the previously disclosed deadline.  These revelations caused the price of Southern Company common stock to decline significantly.

6.      As a result of defendants' false statements, Southern Company common stock traded at artificially inflated prices during the Class Period.  However, after the above revelations seeped into the market, the price of Southern Company shares declined significantly on heavy volume and caused economic harm and damages to Class members.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the 1934 Act.

9.      Venue is proper in this District pursuant to §27 of the 1934 Act and 28 U.S.C. §1391(b).  Southern Company is headquartered in this District and many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

10.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the New York Stock Exchange ("NYSE").

## THE PARTIES

11.     Plaintiff Monroe County Employees' Retirement System purchased Southern Company common stock during the Class Period as set forth in the attached certification and was damaged thereby.

12.     Defendant Southern Company is a utility holding company.  Southern Company's operating subsidiaries include public utility companies located throughout the Southeastern United States, including Georgia Power, Mississippi Power, Alabama Power, Southern Power and Gulf Power.  Southern Company maintains its headquarters at 30 Ivan Allen Jr. Boulevard, N.W., Atlanta, Georgia 30308.  Southern Company's common stock is traded under the ticker "SO" on the NYSE, an efficient market.

13.     Defendant Thomas A. Fanning ("Fanning") was, at all relevant times, Chairman, President, Chief Executive Officer ("CEO") and a director of Southern Company.

14.     Defendant Art P. Beattie was, at all relevant times, Executive Vice President and Chief Financial Officer ("CFO") of Southern Company.

15.     Defendant Edward Day, VI ("Day") was, from the start of the Class Period through May 20, 2013, an Executive Officer of Southern Company and President and CEO of Mississippi Power.

16.     Defendant G. Edison Holland, Jr. ("Holland") was, at all relevant times, an Executive Officer of Southern Company and, since May 2013, President, CEO and a director of Mississippi Power.

- 4 -

17.   The defendants referenced above in ¶¶13-16 are collectively referred to herein as the "Individual Defendants." The Individual Defendants made, or caused to be made, false statements that caused the price of Southern Company common stock to be artificially inflated during the Class Period.

18.   The Individual Defendants, because of their positions within the Companies, possessed the power and authority to control the contents of the Companies' quarterly reports, shareholder letters, press releases, securities offering materials and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. They were provided with copies of the Companies' reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Companies, and their access to material non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false and misleading statements pleaded herein.

## FRAUDULENT SCHEME AND COURSE OF BUSINESS

19.   Defendants are liable for: (i) making false statements; or (ii) failing to disclose adverse facts known to them about the Companies and their operations. Defendants' fraudulent scheme and course of business that operated as a fraud or

- 5 -

deceit on purchasers of Southern Company common stock was a success, as it: (i) deceived the investing public regarding the Companies' prospects and business; (ii) artificially inflated the price of Southern Company common stock; and (iii) caused plaintiff and other members of the Class (as defined below) to purchase Southern Company common stock at artificially inflated prices.

## SCIENTER ALLEGATIONS

20.     During the Class Period, the defendants had the motive and opportunity to commit the alleged fraud.  Defendants also had actual knowledge of the misleading statements they made and/or acted in reckless disregard of the true information known to them at the time.  In doing so, the defendants participated in a scheme to defraud and committed acts, practices and participated in a course of business that operated as a fraud or deceit on purchasers of Southern Company common stock during the Class Period.

## BACKGROUND

21.     Southern Company is a utility holding company based in Atlanta, Georgia.  Southern Company's operating subsidiaries include public utility companies located throughout the Southeastern United States such as Georgia Power, Mississippi Power, Alabama Power, Southern Power and Gulf Power, among others.

22.     Mississippi Power is a wholly owned subsidiary of Southern Company. Mississippi Power operates as a vertically integrated utility providing electricity to retail customers within the State of Mississippi and to wholesale customers in the Southeast.

23.     In 2006, Southern Company announced plans for a "clean coal" plant to be built in Kemper County, Mississippi by its subsidiary Mississippi Power.  By the time the project broke ground in 2010, a funding package of almost $1 billion in DOE grants and IRS tax credits was in place, provided that construction of the plant was completed by May 2014.  In addition to the federal funding, state regulators in Mississippi, the Mississippi Public Service Commission ("PSC"), authorized Southern Company to recoup plant construction costs through rate increases passed on to Mississippi Power customers up to an agreed upon cost cap of $2.88 billion.

24.     Prior to the start of the Class Period, the following milestones occurred related to the construction of the Kemper Plant.

25.     On December 13, 2006, Southern Company announced plans for an integrated gasification combined cycle ("IGCC") coal plant to be built in Kemper County, Mississippi.  Southern Company announced that the project would cost about $1.8 billion and would be completed in 2013.

26.     On January 16, 2009, Mississippi Power applied to the PSC for permission to build the Kemper Plant.

27.     During 2009, Mississippi Power received notification from the IRS formally certifying that the IRS had allocated $133 million of Internal Revenue Code §48A tax credits (Phase I) to Mississippi Power.  The utilization of Phase I credits was dependent upon meeting the IRS certification requirements, including an in-service date for the Kemper Plant of no later than May 11, 2014.

28.     On April 29, 2010, the PSC approved the Kemper Plant, but imposed certain restrictions, including a cost cap, limiting the construction costs Mississippi Power could charge to ratepayers to $2.4 billion.  In response, Southern Company indicated that it would not build the plant because the cost cap was too low.  The PSC later agreed to raise the cost cap.

29.     On May 26, 2010, the PSC overturned its prior decision, voting to raise the amount that the Kemper Plant could cost ratepayers.  The cost cap increased by 20% from $2.4 billion to $2.88 billion.

30.     On July 28, 2010, in an earnings call with analysts, Southern Company announced that the Kemper Plant had been approved by the PSC.  Southern Company officials estimated that the plant would cost $2.4 billion and that it would be in service by May 2014.  Southern Company also stated that Mississippi ratepayers would start to pay for the plant before it was completed.

31.     On August 12, 2010, the DOE issued a 50-page Record of Decision authorizing $270 million in federal funds for the Kemper Plant project.

32.     On December 16, 2010, the Kemper Plant site broke ground.

33.     At the start of the Class Period, defendants assured investors that the project would be completed by the May 2014 deadline and total construction costs would not exceed the $2.88 billion PSC cost cap.

- 8 -

## DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS DURING THE CLASS PERIOD

34.     On April 25, 2012, Southern Company issued a press release announcing its first quarter 2012 financial results.  Southern Company reported earnings of $368 million, or $0.42 per share, and revenues of $3.6 billion.

35.     Following the release of its first quarter 2012 financial results, on April 25, 2012, Southern Company held a conference call for analysts, media representatives and investors during which defendants forecasted a summer 2013 startup date for the Kemper Plant.  Specifically, defendants stated:

> *Initial startup and testing are now only 14 months away*.  And we remain confident that this project will provide the best value to customers over the long term. *Targets remain achievable* for . . . the . . . Kemper County project[] *with regard to construction schedule and cost to customers*.

Defendants also reassured investors that the Mississippi PSC had recertified the Kemper project the prior day:

> [O]n April 24, the Mississippi Public Service Commission finalized a new Certificate of Public Convenience and Necessity for the Plant Ratcliffe in Kemper County, Mississippi.

36.     On May 7, 2012, Southern Company filed its Form 10-Q for the first quarter of  2012.  The Form 10-Q included the following information regarding the Kemper Plant:

> Mississippi Power anticipates that the costs to complete construction of the portion of the Kemper IGCC subject to the construction cost cap will be *less than the cost cap [2.88 billion]* but will likely exceed the certificated cost estimate [$2.4 billion].

*       *       *

The Kemper IGCC plant, expected to begin commercial ***operation in May 2014***, will use locally mined lignite (an abundant, lower heating value coal) from a mine adjacent to the plant as fuel.

37.     On July 25, 2012, Southern Company issued a press release announcing its second quarter 2012 financial results.  Southern Company reported earnings of $623 million, or $0.71 per share, and revenues of $4.18 billion.

38.     Following the release of its second quarter 2012 financial results, on July 25, 2012, Southern Company held a conference call for analysts, media representatives and investors during which defendant Fanning, Southern Company's CEO, stated:

> I would like to update you briefly on our recent progress with both of these major construction projects.  Construction continues at the Ratcliffe [Kemper Plant] site, as we move toward our target completion date of May 2014.  Our most recently filed status report reflects an estimated cost for the project of $2.88 billion, including a $62 million contingency.

39.     Fanning continued: "***[O]ur current analysis indicates that the overall cost to customers for Plant Ratcliffe [Kemper] will be less than projected in the original certification***."

40.     On August 6, 2012, Southern Company filed its  Form 10-Q for the second quarter of  2012.  The Form 10-Q included the following information regarding the Kemper Plant:

> The current cost estimate of the Kemper IGCC is $2.88 billion, including a $72 million contingency.

*       *       *

The Kemper IGCC, ***expected to begin commercial operation in May 2014***, will use locally mined lignite (an abundant, lower heating value coal) from a mine adjacent to the Kemper IGCC as fuel.

41.     On August 9, 2012, Mississippi Power issued a news release announcing that the Kemper Plant would be operational by May 2014.

42.     On September 13, 2012, Mississippi Power issued a press release announcing that the Kemper Plant was approximately 50% complete and should begin powering Mississippi homes and businesses in May 2014.

43.     On October 19, 2012, Mississippi Power issued a press release announcing that the Kemper Plant was on schedule for a May 2014 completion date and project costs remained at or below the $2.88 billion cost cap imposed by the PSC. Mississippi Power went on to state that the plant was 70% complete, and that new effluent pipes and transmission equipment were completed ahead of schedule.

44.     On November 5, 2012, Southern Company issued a press release announcing its third quarter 2012 financial results.  The Company reported earnings of $976 million, or $1.11 per share, and revenues of $5.05 billion.

45.     Following the release of its third quarter 2012 financial results, on November 5, 2012, Southern Company held a conference call for analysts, media representatives and investors during which defendants represented that the Kemper Plant was still expected to be up and running by May 2014, and that the final cost of the project was expected to be ***below*** $2.88 billion.  Specifically defendants stated:

> At Plant Ratcliffe in Kemper County, Mississippi, ***construction remains on schedule to begin commercial operation in May of 2014. Cost projections remain on target to finish at or below $2.88 billion***.

- 11 -

We continue to actively manage ongoing pressures on costs and schedule which are typical for a project of this scale. ***Installation of the gasifiers and assembly is proceeding exceptionally well*** and the carbon dioxide absorbers are all in place.

46.     On November 7, 2012, Southern Company filed its consolidated Form 10-Q for the third quarter of 2012.   The Form 10-Q included the following information regarding the Kemper Plant:

Mississippi Power's current cost estimate for the Kemper IGCC equals the $2.88 billion cost cap, including a $40 million to $50 million contingency. . . .  Mississippi Power continues to believe its cost estimate and ***schedule projection remain appropriate based on the current status of the project*** . . . .

\*       \*       \*

The Kemper IGCC, ***expected to be in service in May 2014***, will use locally mined lignite (an abundant, lower heating value coal) from a mine adjacent to the Kemper IGCC as fuel.

47.     On January 30, 2013, Southern Company issued a press release announcing its fourth quarter and fiscal year 2012 financial results.   Southern Company reported fourth quarter 2012 earnings of $383 million, or $0.44 per share, and  full year 2012 earnings of $2.35 billion, or $2.70 per share.   Southern Company also reported revenues of $16.54 billion for the full year 2012 and $3.703 billion for the fourth quarter of 2012.

48.     Following the release of its fourth quarter 2012 financial results, on January 30, 2013, Southern Company held a conference call for analysts, media representatives and investors during which defendants represented that the Kemper

Plant was still expected to be completed and placed in service by the critical May 2014 deadline.  Specifically defendants stated:

> The second priority is achieving success with our major construction projects, specifically Plant Vogtle Units 3 and 4 and *the Kemper project*, both of which are *continuing to progress in an outstanding manner*.  While projects of this scale and magnitude always face unforeseen challenges, *we continue to demonstrate our ability to constructively manage those issues and achieve a favorable outcome*.

> \*       \*       \*

> [T]he Kemper project . . . *remains on track for its May, 2014 commercial operation date*.  To date, approximately $2.5 billion have been spent on the project.  The plant is scheduled to begin to start-up activities this summer, with first fire going to the [CTs] in June, and the first gasifier heat-up taking place in December.  Reliable syn gas is expected to begin flowing into the CTs in February 2014.

49.     On February 28, 2013, Southern Company filed its consolidated Form 10-K for fiscal year 2012.  The Form 10-K included the following information regarding the Kemper Plant:

> Mississippi Power's current cost estimate for the Kemper IGCC . . . is approximately $2.88 billion. . . .  *Mississippi Power continues to believe its cost estimate and schedule projection remain appropriate based on the current status of the project* . . . .

> \*       \*       \*

> *The Kemper IGCC is scheduled to be placed in-service in May 2014*.

50.     On April 24, 2013, Southern Company issued a press release announcing its first quarter 2013 financial results.  Southern Company reported first quarter 2013 earnings of $81 million, or $0.09 per share, and revenues of $3.9 billion.  Southern Company also disclosed "a $333 million (38 cents per share) after-tax charge related

- 13 -

to an increased construction estimate for Mississippi Power's Kemper County project."  The press release quoted defendant Fanning, Southern Company's Chairman, President and CEO: "'***In keeping with our commitment to customers, Southern Company will fully absorb the increased costs related to the Kemper project* . . . .'"**

51.     Following the release of its first quarter 2013 financial results, on April 24, 2013, Southern Company held a conference call for analysts, media representatives and investors during which defendants reiterated the $540 million ($333 million after-tax) Kemper Plant project cost overrun but, nevertheless, represented that construction of the Kemper Plant was on schedule to be completed and up and running by May 2014.  Specifically, defendants stated:

> ***We continue to make tremendous progress at the Kemper site*** with most of the major components in place, the combined cycles, gasifiers, massive gas absorbers and lignite dome as well as a 75-acre reservoir, the facility's appearance reflects our progress with start-up activities . . . .

> \*       \*       \*

> The revised construction cost estimate reflects the company's current analysis of the cost to complete the Kemper project.  We continue to believe that ***the scheduled in-service date is achievable***.

> \*       \*       \*

> Included in these results is an after tax charge against earnings of $333 million or $0.38 per share, related to the current cost estimate for the Kemper project.

52.     As a result of the news regarding the Kemper Plant project cost overruns, the price of Southern Company stock declined 1.3% on volume of more than 7 million

shares to close at $48.03 per share on April 24, 2013. Defendants' positive statements about the Kemper Plant remaining on schedule to be placed in service by May 2014, however, maintained the artificial inflation in the price of Southern Company's common stock.

53.    On May 10, 2013, Southern Company filed its consolidated Form 10-Q for the first quarter of 2013. The Form 10-Q included the following information regarding the Kemper Plant:

> On April 23, 2013, Mississippi Power revised its cost estimate to complete construction of the Kemper IGCC to an amount that exceeds the $2.88 billion cost cap, net of the DOE Grants and the Cost Cap Exceptions. Mississippi Power does not intend to seek any joint owner contributions or rate recovery for any Kemper IGCC construction costs that exceed the $2.88 billion cost cap, except for amounts subject to the Cost Cap Exceptions and net of the DOE Grants. As a result, Southern Company recorded a pretax charge of $540 million in the first quarter 2013.

54.    Also on May 10, 2013, Mississippi Power announced a restatement of its previously issued financial statements as a result of incorrectly accounting for Kemper Plant project costs. Specifically, Mississippi Power stated:

> In the Form 10-K, the Company included a construction cost estimate for the Kemper IGCC of approximately $2.88 billion, net of the CCPI2 grant and the Cost Cap Exceptions (Form 10-K Construction Estimate), which management believed was appropriate at the time of the Form 10-K filing. In conjunction with the subsequent review of the Form 10-K Construction Estimate, management has determined that the available evidence supporting certain estimated amounts included in the Form 10-K Construction Estimate was not sufficient and that the Form 10-K Construction Estimate was understated by $78 million.

> As a result, and as described further in Note 12 to the financial statements included in this Amendment No. 1 to the Form 10-K, the Company has restated and corrected its previously issued financial

statements for the year ended December 31, 2012 to recognize a pretax charge for an estimated probable loss relating to the Kemper IGCC of $78 million ($48.2 million after tax) for the year ended December 31, 2012.

55.     Also on May 10, 2013, Southern Company disclosed a material weakness in its internal controls related to its accounting for Kemper Plant project costs. Specifically, Southern Company stated:

> Management believes Mississippi Power's failure to maintain sufficient evidence supporting certain estimated amounts included in the Kemper IGCC cost estimate and to fully communicate the related effects in the development of the Kemper IGCC cost estimate would constitute a material weakness in internal control over financial reporting under standards adopted by the Public Company Accounting Oversight Board and concluded Mississippi Power's internal control over financial reporting was not effective as of December 31, 2012.
>
> As of the end of the period covered by this quarterly report, Mississippi Power conducted an evaluation under the supervision and with the participation of management, including the Chief Executive Officer and the Chief Financial Officer, of the effectiveness of the design and operation of the disclosure controls and procedures (as defined in Sections 13a-15(e) and 15d-15(e) of the Securities Exchange Act of 1934).   Based upon this evaluation, which considered the material weakness described above, the Chief Executive Officer and the Chief Financial Officer concluded that the disclosure controls and procedures were not effective.

56.     On May 20, 2013, Mississippi Power abruptly announced that its CEO, defendant Day, was stepping down.  Mississippi Power also acknowledged that Day had withheld information about cost overruns from state regulators while they were deciding to re-approve the Kemper Plant project.  Mississippi Power's new CEO, defendant Holland, disclosed that Day had directed or allowed employees to withhold documents from the PSC regarding $366 million in known cost overruns while the

- 16 -

PSC was deciding whether to re-approve the Kemper Plant project.  Holland issued a statement that "information was asked for by the (Mississippi) Commission and unfortunately we did not provide that information in the detail requested.  I am sorry for this and apologize.  I will see that it never happens again."

57.     On July 31, 2013, Southern Company issued a press release announcing its second quarter 2013 financial results.  Southern Company reported second quarter 2013 earnings of $297 million, or $0.34 per share, and revenues of $4.25 billion.  Southern Company also disclosed "***after-tax charges of $278 million (32 cents per share) . . . related to increased cost estimates for the construction of Mississippi Power's Kemper County project*.**"  The press release included the following quote from defendant Fanning: "'***Despite recent cost challenges, we are making great progress in the construction of the Kemper County energy facility*** . . . .'"

58.     After releasing its second quarter 2013 financial results, on July 31, 2013, Southern Company held a conference call for analysts, media representatives and investors during which defendants reiterated the $450 million ($278 million after-tax) Kemper Plant project cost overrun but, nevertheless, represented that construction of the Kemper Plant was on schedule still expected to be completed and up and running by May 2014.  Specifically, defendants stated:

> [C]onstruction at the Kemper County energy facility is also progressing well. . . .   [A] significant portion of the startup activities for the combined cycling unit, has been completed. . . .   [W]e have been achieving our key installation targets for steel . . . .
>
> Looking ahead for the remainder of 2013, startup activities include the first fire of the first combustion turbine in late August, sinking the

steam turbine to the grid in October, and heating up the first gasifier by year end.  Our May 2014 in-service date, to which our construction startup plans are tied, remains achievable.

59.     As a result of the news regarding Kemper project cost overruns, the price of Southern Company stock declined 1.3% on volume of 9.6 million shares to close at $44.84 per share on July 31, 2013.  The following day, August 1, 2013,  the price of Southern Company stock declined 1.1% on volume of 5 million shares to close at $44.35 per share.  Defendants' positive statements about the Kemper Plant remaining on schedule to be placed in service by May 2014, however, maintained the artificial inflation in the price of Southern Company common stock.

60.     On August 6, 2013, Southern Company filed its consolidated Form 10-Q for the second quarter of  2013.  The Form 10-Q included the following information regarding the Kemper Plant:

> In the second quarter 2013 and year-to-date 2013, estimated probable losses on the Kemper IGCC of $450 million and $990 million, respectively, were recorded at Southern Company to reflect revisions of estimated costs expected to be incurred on Mississippi Power's construction of the Kemper IGCC in excess of the $2.88 billion cost cap established by the Mississippi PSC . . . .

> *     *     *

> The Kemper IGCC . . . [is] scheduled to be placed in-service in May 2014.

61.     On October 2, 2013, Mississippi Power filed a Form 8-K with the SEC in which it disclosed for the first time that it would not meet its May 2014 deadline for completing the Kemper Plant and would be required to repay $133 million in federal tax credits as a result.  The 8-K stated:

Mississippi Power is revising the construction schedule for the Kemper IGCC as the result of abnormally wet weather and lower-than-planned construction labor productivity, and currently expects that the Kemper IGCC will be placed in service later in 2014 than the originally scheduled in-service date of May 2014.

62.     As a result of the news regarding the Kemper Plant delay, the price of Southern Company stock declined 1.9% on volume of nearly 9 million shares on October 3, 2013. Defendants' positive statements about the Kemper project remaining on schedule to be placed in service "*later in 2014*," in time to realize approximately $150 million of additional IRS credits through bonus depreciation, however, maintained the artificial inflation in the price of Southern Company common stock.

63.     On October 30, 2013, Southern Company issued a press release announcing its third quarter 2013 financial results. Southern Company reported third quarter 2013 earnings of $852 million, or $0.97 per share, and revenues of $5.02 billion. Southern Company also disclosed an after-tax charge of $93 million ($0.11 per share) "*related to increased cost estimates for the construction of Mississippi Power's Kemper County project*."

64.     After releasing its third quarter 2013 financial results, on October 30, 2013, Southern Company held a conference call for analysts, media representatives, and investors during which defendants reiterated the $93 million Kemper Plant project cost overrun and a delay of the in-service date to year-end 2014. Specifically, defendants stated:

Now for an update on the Kemper County project. Earlier this month, we announced that we did not expect to meet the original May 2014 in-service date for the Kemper project, largely as a result of lower-than-expected production rates and delays from wet weather. After recalibrating our assumptions on the rate of pipe installation, we have revised the in-service date to the fourth quarter of 2014.

In conjunction with the schedule change, we have recorded an additional pretax estimated loss of $150 million. As a reminder, we estimated the incremental cost for a delay to be approximately $15 million to $25 million per month. Our new estimate is consistent with that projection and also retains a $100 million contingency.

Tremendous progress continues to be made at the site. We are now nearly halfway complete with pipe installation, have fired both combustion turbines and have synced the entire two-on-one combustion cycle to the grid.

\*      \*      \*

So look, we are very proud of Trig [Kemper]. We made a mistake on the engineering. We agreed to price cap without having done fully our homework on the deal.

\*      \*      \*

And I'll just tell you some. We believe the problem at Kemper was essentially at the time that we made a fixed price commitment with 10% engineering done at 6.7% contingency. In other words, the problem has been one more of a lack of engineering that was completed, rather than construction. By all accounts, the construction of Kemper has gone very well.

65.    The following day, October 31, 2013, an analyst at Wells Fargo downgraded Southern Company stock. The analyst report stated:

[Kemper] *IGCC Cost Increased Again . . . to $4.02B – up from the July's $3.87B estimate. [Kemper] IGCC project charges have been piling up since May 2013 and now total $1.14B* . . . .

- 20 -

66.     As a result of the news regarding the Kemper Plant schedule delays, the price of Southern Company stock declined nearly 1.2% on volume of more than 6.7 million shares to close at $41.90 per share on October 30, 2013.  The following day, October 31, 2013,  the price of Southern Company stock fell almost 2.4% on volume of 7.6 million shares to close at $40.91 per share.

67.     As a result of defendants' false statements, Southern Company common stock traded at artificially inflated prices during the Class Period.  However, after the above revelations seeped into the market, the price of Southern Company shares declined significantly on heavy volume and caused economic harm and damages to Class members.

68.     Information made public in early 2015 revealed that defendants' statements and omissions during the Class Period were knowingly and materially false and misleading.  For example, the Kemper Plant project management team indicated in 2012 that, based on actual progress to date, the plant would not be completed by the deadlines disclosed to the market.  Additionally, in February 2015, Southern Company obtained a temporary restraining order against a whistleblower – Brett Wingo, a former manager involved with scheduling and construction of the Kemper Plant – preventing him from revealing confidential information that would cause Southern Company "immediate and irreparable injury" were it to become public.  Notably, the temporary restraining order did not prevent Mr. Wingo from "communicating with or reporting to the U.S. Securities and Exchange Commission regarding any possible violation of the securities laws."  A May 14, 2016 article in *The Wall Street Journal*

- 21 -

("WSJ") revealed that "[t]he SEC is looking into Southern's financial controls and disclosures for the Kemper County Energy Facility in Mississippi" and indicated that "Southern said it believes the probe is focused on 'accounting matters, disclosure controls and procedures, and internal controls over financial reporting.'"  The WSJ article also indicated that Mr. Wingo "thinks the company put a positive spin on construction [of the Kemper Plant] so it wouldn't have to acknowledge to investors it was likely to lose federal subsidies due to delays."  In June 2016, a lawsuit was filed by one of the Kemper Plant's project partners stating that "[o]ver the last six years, the Southern Company defendants have intentionally misrepresented and concealed construction delays at the [Kemper Plant] in order to remain eligible for hundreds of millions of dollars in federal tax credits and to prematurely and unjustifiably increase the rates they were charging customers," including alleged "misrepresentations . . . to the Securities and Exchange Commission," among others.  Finally, in July 2016, an investigation published in *The New York Times* ("NYT"), based upon the review of "thousands of pages of public records, previously undisclosed internal documents and emails, and 200 hours of secretly though legally recorded conversations" provided by Mr. Wingo, revealed that Southern Company "drastically understated the project's cost and timetable, and repeatedly tried to conceal problems as they emerged."  The NYT article stated that by 2012, Mr. Wingo "had begun his transition to whistle-blower" and, "over the succeeding months, Mr. Wingo told his supervisors that other scheduling information that Mississippi Power and Southern Company were providing

to the public was infeasible and misleading." Nevertheless, defendants concealed the known delays and cost overruns until the end of the Class Period.

## LOSS CAUSATION/ECONOMIC LOSS

69.    During the Class Period, defendants made false and misleading statements by misrepresenting the Kemper Plant completion date and resulting tax and other benefits in a scheme to deceive the market. Defendants' conduct artificially inflated the price of Southern Company common stock and operated as a fraud or deceit on the Class. Later, when defendants' prior misrepresentations were disclosed to market participants, the price of Southern Company common stock declined, as the prior artificial inflation came out of the price. As a result of their purchases of Southern Company common stock during the Class Period, plaintiff and members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## APPLICABILITY OF THE PRESUMPTION OF RELIANCE AND FRAUD ON THE MARKET

70.    Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)    The omissions and misrepresentations were material;

(c)    Southern Company common stock traded in an efficient market;

(d)    The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of Southern Company common stock; and

- 23 -

(e)     Plaintiff and other members of the Class purchased Southern Company common stock between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

71.     At all relevant times, the market for Southern Company common stock was efficient for the following reasons, among others:

(a)     Southern Company common stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     As a regulated issuer, Southern Company filed periodic public reports with the SEC; and

(c)     Southern Company regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services.

## NO SAFE HARBOR

72.     Many (if not all) of defendants' false and misleading statements during the Class Period were not forward-looking statements ("FLS") and/or identified as such by defendants, and thus did not fall within any "Safe Harbor."

73.     Defendants' verbal "Safe Harbor" warnings accompanying its oral FLS issued during the Class Period were ineffective to shield those statements from liability.

74.     Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Southern Company and/or Mississippi Power who knew that the FLS was false. Further, none of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made.

## CLASS ACTION ALLEGATIONS

75.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Southern Company common stock during the Class Period (the "Class"). Excluded from the Class are defendants and their families, the officers and directors of the Companies, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

76.     The members of the Class are so numerous that joinder of all members is impracticable.  The Company's stock is actively traded on the NYSE and there are nearly 980 million shares of Southern Company stock outstanding.  While the exact

number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Southern Company or its transfer agents and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

77.     Common questions of law and fact predominate and include: (i) whether defendants violated the 1934 Act; (ii) whether defendants omitted and/or misrepresented material facts; (iii) whether defendants knew or recklessly disregarded that their statements were false; and (iv) whether defendants' statements and/or omissions artificially inflated the price of Southern Company common stock and the extent and appropriate measure of damages.

78.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

79.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

80.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it

impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### For Violation of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

81.    Plaintiff incorporates ¶¶1-80 by reference.

82.    During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

83.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)    Employed devices, schemes and artifices to defraud;

(b)    Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    Engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Southern Company common stock during the Class Period.

84.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Southern Company common stock.  Plaintiff and the Class would not have purchased Southern Company

common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements and omissions.

85.     As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Southern Company common stock during the Class Period.

## COUNT II

### For Violation of §20(a) of the 1934
### Act Against All Defendants

86.     Plaintiff incorporates ¶¶1-85 by reference.

87.     During the Class Period, defendants acted as controlling persons of Southern Company within the meaning of §20(a) of the 1934 Act.  By virtue of their positions and their power to control public statements about the Companies, the Individual Defendants had the power and ability to control the actions of the Companies and their employees.  Southern Company controlled the Individual Defendants and its other officers and employees.  By reason of such conduct, defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding plaintiff and the members of the Class damages and interest;

C.     Awarding plaintiff's reasonable costs, including attorneys' fees; and

D.     Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  January 20, 2017           ROBBINS GELLER RUDMAN
                                     & DOWD LLP


                                        */s/ John C. Herman*
                                   _____
                                   JOHN C. HERMAN
                                   (Georgia Bar No. 348370)
                                   Monarch Tower, Suite 1650
                                   3424 Peachtree Road, N.E.
                                   Atlanta, GA  30326
                                   Telephone:  404/504-6500
                                   404/504-6501 (fax)

                                   ROBBINS GELLER RUDMAN
                                     & DOWD LLP
                                   DANIEL S. DROSMAN
                                   DARRYL J. ALVARADO
                                   655 West Broadway, Suite 1900
                                   San Diego, CA  92101-8498
                                   Telephone:  619/231-1058
                                   619/231-7423 (fax)

- 29 -

VANOVERBEKE, MICHAUD &
  TIMMONY, P.C.
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

Attorneys for Plaintiff

CERTIFICATION OF NAMED PLAINTIFF
<u>PURSUANT TO FEDERAL SECURITIES LAWS</u>

MONROE    COUNTY    EMPLOYEES'    RETIREMENT    SYSTEM
("Plaintiff") declares:

     1.     Plaintiff has reviewed a complaint and authorized its filing.

     2.     Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

     3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

     4.     Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| <u>Security</u> | <u>Transaction</u> | <u>Date</u> | <u>Price Per Share</u> |
|---|---|---|---|

*See* attached Schedule A.

     5.     Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

     6.     The  Plaintiff  will  not  accept  any  payment  for  serving  as  a representative party on behalf of the class beyond the Plaintiff's pro rata share of

SOUTHERN

any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this ⎽⎽11th⎽⎽ day of January, 2017.

MONROE COUNTY EMPLOYEES'
RETIREMENT SYSTEM

By: _____
    Michael Grodi

Its: _____
    Chairman

- 2 -

SOUTHERN

**SCHEDULE A**

**SECURITIES TRANSACTIONS**

**Acquisitions**

| Date<br>Acquired | Type/Amount of<br>Securities Acquired | Price |
|:---:|:---:|:---:|
| 10/23/2012 | 6,226 | $46.30 |
| 01/28/2013 | 99 | $44.34 |
| 08/02/2013 | 95 | $44.26 |