UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| MONROE COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> THE SOUTHERN COMPANY, et al., <br><br> Defendants. | Civil Action No. 1:17-cv-00241-MHC <br><br> <u>CLASS ACTION</u> <br><br> PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED COMPLAINT |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF THE FRAUD ............................1

II.    ARGUMENT.................................................................................................4

    A.    Plaintiffs Adequately Plead Falsity ......................................................5

        1.    Statements of Percentage-Completion and of Historical Fact (Statements 9, 11, 14, 16-18, 21, 27, 34, and 37) ..............5

        2.    Statements Concerning Current Business Conditions (Statements 1-8, 10-13, 15, 18-36) ..............................................7

        3.    Statement of Guarantee (Statement 4) ......................................11

        4.    Statements Concerning the Purported Contemporaneous Success of Construction ...........................................................11

        5.    Defendants' "Cautionary" Language Is Meaningless..............13

    B.    Plaintiffs Adequately Plead a Strong Inference of Scienter................14

        1.    Internal Documents, E-mails and Witness Accounts Contained in *The New York Times* Exposé...............................15

        2.    Brett Wingo's Account ............................................................18

        3.    The Confidential Witness Accounts .........................................22

        4.    Defendants Actively Managed Kemper's Construction ..........24

        5.    A "Shared and Powerful Incentive" to Commit Fraud.............26

        6.    The Magnitude of the Scheduling Delay ..................................28

        7.    Southern's Scienter Is Adequately Alleged..............................29

    C.    Plaintiffs' Claims Are Timely .............................................................29

    D.    Plaintiffs Properly State a Claim Under §20(a) ..................................34

III.    CONCLUSION..........................................................................................35

# TABLE OF AUTHORITIES

**Page**

## CASES

*Amalgamated Bank v. Coca-Cola Co.*,
    2006 WL 2818973 (N.D. Ga. Sep. 29, 2006),
    *aff'd*, 262 F. App'x 177 (11th Cir. 2008) .....................................................12, 13

*Anastasio v. Internap Network Servs. Corp.*,
    2011 U.S. Dist. LEXIS 161633
    (N.D. Ga. Sept. 30, 2011) ................................................................................13

*Berson v. Applied Signal Tech., Inc.*,
    527 F.3d 982 (9th Cir. 2008) ..........................................................................25

*Bielousov v. Gopro, Inc.*,
    2017 U.S. Dist. LEXIS 117223
    (N.D. Cal. July 26, 2017) ..................................................................................9

*Brown v. China Integrated Energy, Inc.*,
    875 F. Supp. 2d 1096 (C.D. Cal. 2012) ...........................................................17

*Bryant v. Avado Brands, Inc.*,
    187 F.3d 1271 (11th Cir. 1999) .................................................................15, 33

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
    2002 U.S. Dist. LEXIS 28072
    (N.D. Ga. Aug. 20, 2002) ................................................................................12

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp., Inc.*,
    2013 U.S. Dist. LEXIS 36318
    (W.D. La. Mar. 15, 2013) ................................................................................10

*FindWhat Inv'r Grp. v. FindWhat.com*,
    658 F.3d 1282 (11th Cir. 2011) .................................................................11, 14

*Freudenberg v. E*Trade Fin. Corp.*,
    712 F. Supp. 2d 171 (S.D.N.Y. 2010) .......................................................10, 25

**Page**

*Garfield v. NDC Health Corp.*,
466 F.3d 1255 (11th Cir. 2006) .................................................20, 21

*Grand Lodge of Pa. v. Peters*,
550 F. Supp. 2d 1363 (M.D. Fla. 2008)............................................29

*Gross v. Medaphis Corp.*,
977 F. Supp. 1463 (N.D. Ga. 1997).....................................................6

*Harris v. Ivax Corp.*,
182 F.3d 799 (11th Cir. 1999) ..........................................................10

*IBEW Local 98 Pension Fund v. Best Buy Co.*,
958 F. Supp. 2d 1065 (D. Minn. 2013)................................................9

*In re 21st Century Holding Co. Sec. Litig.*,
2008 U.S. Dist. LEXIS 108196
(S.D. Fla. Nov. 7, 2008).....................................................................14

*In re Akorn, Inc. Sec. Litig.*,
240 F. Supp. 3d 802 (N.D. Ill. 2017)...................................................9

*In re Barrick Gold Sec. Litig.*,
2015 WL 1514597 (S.D.N.Y. Apr. 1, 2015) .........................13, 23, 24

*In re BHP Billiton Ltd. Sec. Litig.*,
2017 U.S. Dist. LEXIS 138834
(S.D.N.Y. Aug. 29, 2017) ....................................................................9

*In re Catalina Mktg. Corp. Sec. Litig.*,
390 F. Supp. 2d 1110 (M.D. Fla. 2005)..............................................21

*In re Constellation Energy Grp., Inc.*,
738 F. Supp. 2d 614 (D. Md. 2010)....................................................35

*In re Copper Mountain Sec. Litig.*,
311 F. Supp. 2d 857 (N.D. Cal. 2004)..................................................9

**Page**

*In re Eli Lily & Co. Sec. Litig.*,
   549 F. Supp. 2d 496 (E.D.N.Y. 2008) ................................................................30

*In re EveryWare Global, Inc. Sec. Litig.*,
   175 F. Supp. 3d 837 (S.D. Ohio 2016),
   *aff'd*, 849 F.3d 325 (6th Cir. 2017)....................................................................9

*In re Hamilton Bankcorp, Inc.*,
   194 F. Supp. 2d 1353 (S.D. Fla. 2002) ..............................................................28

*In re Immucor Inc. Sec. Litig.*,
   2006 U.S. Dist. LEXIS 72335
   (N.D. Ga. Oct. 4, 2006)..............................................................................21, 22

*In re John Alden Fin. Corp. Sec. Litig.*,
   249 F. Supp. 2d 1273 (S.D. Fla. 2003) ..............................................................27

*In re MGM Mirage Sec. Litig.*,
   2013 U.S. Dist. LEXIS 139356
   (D. Nev. Sept. 26, 2013) .................................................................................9

*In re Natures' Sunshine Prods. Sec. Litig.*,
   486 F. Supp. 2d 1301 (D. Utah 2007)................................................................18

*In re Omnicare, Inc. Sec. Litig.*,
   769 F.3d 455 (6th Cir. 2014) ...........................................................................14

*In re PainCare Holdings Sec. Litig.*,
   541 F. Supp. 2d 1283 (M.D. Fla. 2007)..............................................................27

*In re Petco Animal Supplies Inc. Sec. Litig.*,
   2006 U.S. Dist. LEXIS 97927
   (S.D. Cal. Aug. 1, 2006) .................................................................................19

*In re Premiere Techs., Inc. Sec. Litig.*,
   2000 U.S. Dist. LEXIS 19207
   (N.D. Ga. Dec. 8, 2000)..................................................................................12

**Page**

*In re ProQuest Sec. Litig.*,
    527 F. Supp. 2d 728 (E.D. Mich. 2007) ............................................................. 35

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017) ...................................................................... 13

*In re Sci. Atlanta Sec. Litig.*,
    239 F. Supp. 2d 1351 (N.D. Ga. 2002),
    *aff'd*, 374 F.3d 1015 (11th Cir. 2004) ....................................................... 12, 13

*In re Secure Computing Corp. Sec. Litig.*,
    120 F. Supp. 2d 810 (N.D. Cal. 2000) ............................................................. 9

*In re Sunbeam Sec. Litig.*,
    89 F. Supp. 2d 1326 (S.D. Fla. 1999) ............................................................ 28

*In re Towne Servs. Sec. Litig.*,
    184 F. Supp. 2d 1308 (N.D. Ga. 2001) ........................................................ 7, 10

*In re ValuJet, Inc., Sec. Litig.*,
    984 F. Supp. 1472 (N.D. Ga. 1997) ............................................................. 7, 20

*Local 703 I B of T. Grocery & Food Emps. Welfare Fund v.
    Regions Fin. Corp.*,
    2011 U.S. Dist. LEXIS 60761
    (N.D. Ala. June 7, 2011) ................................................................. 17, 24, 28

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011) ..................................................................................... 4, 6

*Medina v. Clovis Oncology, Inc.*,
    215 F. Supp. 3d 1094 (D. Colo. 2017) ........................................................... 26

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010) ........................................................................ 29, 30, 33

**Page**

*Miller v. Dyadic Int'l, Inc.*,
   2008 U.S. Dist. LEXIS 95934
   (S.D. Fla. Nov. 25, 2008)....................................................................27

*Miss. Pub. Emps. Ret. Sys. v. Boston Sci. Corp.*,
   523 F.3d 75 (1st Cir. 2008)................................................................29

*Mizzaro v. Home Depot, Inc.*,
   544 F.3d 1230 (11th Cir. 2008) ...........................................19, 22, 23

*Mulligan v. Impax Labs., Inc.*,
   36 F. Supp. 3d 942 (N.D. Cal. 2014)....................................................9

*Murphy v. Precision Castparts Corp.*,
   2017 U.S. Dist. LEXIS 99431
   (D. Or. June 27, 2017) ..........................................................................9

*Pet Quarters, Inc. v. Badian*,
   2007 U.S. Dist. LEXIS 24611
   (E.D. Ark. Mar. 30, 2007)...................................................................27

*Rihn v. Acadia Pharms., Inc.*,
   2016 U.S. Dist. LEXIS 128291
   (S.D. Cal. Sep. 19, 2016) ...................................................................8, 9

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) ..............................................................21

*Rubinstein v. Collins*,
   20 F.3d 160 (5th Cir. 1994) ................................................................14

*SEC v. Merch. Capital, LLC*,
   483 F.3d 747 (11th Cir. 2007) ............................................................14

*Sheet Metal Workers Local 28 Pension Fund v. Office Depot, Inc.*,
   2009 WL 10667541 (S.D. Fla. Mar. 31, 2009) ..................................18

**Page**

*Silverman v. Motorola, Inc.*,
    2008 U.S. Dist. LEXIS 76799
    (N.D. Ill. Sept. 23, 2008) ...................................................................9

*Szymborski v. Ormat Techs., Inc.*,
    776 F. Supp. 2d 1191 (D. Nev. 2011) .............................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...........................................................4, 14, 15

*Tello v. Dean Witter Reynolds, Inc.*,
    410 F.3d 1275 (11th Cir. 2005) ...................................................29, 30

*Tippens v. Round Island Plantation L.L.C.*,
    2009 U.S. Dist. LEXIS 66224
    (S.D. Fla. July 31, 2009) ................................................................34

*Walter v. Avellino*,
    564 F. App'x 464 (11th Cir. 2014) .................................................29

*Winslow v. BancorpSouth, Inc.*,
    2011 U.S. Dist. LEXIS 45559
    (M.D. Tenn. Apr. 26, 2011) ............................................................25

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78j(b) .............................................................................................4, 34
    §78t(a) ..................................................................................................34
    §78u-5(c)(1)(B)(i) ................................................................................14

28 U.S.C.
    §1658(b)(1) ..........................................................................................30

Federal Rules of Civil Procedure
    Rule 9(b) ..............................................................................................34
    Rule 10b-5 .............................................................................................4
    Rule 12(b)(6) .........................................................................................4

**Page**

## SECONDARY AUTHORITIES

Henry Fountain, *In Blow to "Clean Coal," Flawed Plant Will Burn
    Gas Instead*, N.Y. Times, June 28, 2017............................................................28

## I.  INTRODUCTION AND SUMMARY OF THE FRAUD

The facts giving rise to this action are set forth in the Consolidated Complaint for Violation of the Federal Securities Laws (Dkt. No. 28) ("Complaint").  As such, and in the interest of brevity, the Complaint constitutes plaintiffs' statement of facts. Detailed below, however, is a brief summary of the fraud that highlights facts pertinent to the arguments raised by defendants.[1]

This securities class action arises from defendants' false and misleading statements and omissions to investors regarding the construction and completion of a "clean coal" power plant located in Kemper County, Mississippi (the "Kemper Plant").  Throughout the Class Period, defendants stated repeatedly that construction of the plant was "on schedule," "on track," "more than 70 percent" and "75 percent" complete, that critical components of the plant had been installed, and that the plant would be completed by May 1, 2014 (the "May 2014 COD").  ¶¶112-158.[2] Convincing the market that construction was on track to meet the May 2014 COD was critical; should the Company falter, it would lose hundreds of millions of dollars in tax credits, alarm investors and project partners, garner harsh criticism from regulators

---

[1]  Defendants are The Southern Company ("Southern" or the "Company") and executives of Southern and/or its wholly owned subsidiary, Mississippi Power Company (collectively, "defendants").  The Class Period is April 25, 2012 through October 30, 2013.

[2]  All "¶_" or "¶¶_" references are to the Complaint unless otherwise stated.

and the media, and suffer a precipitous stock drop.  ¶¶35, 44, 170.

Defendants' representations were false.  In reality, the plant was woefully off track, and defendants knew in early 2012 that a May 2014 completion date was impossible to achieve.  For example, installation of the gasifier – the most critical part of the project – experienced crippling delays early in the construction phase.  ¶¶115(a), 124(a), 131(a).  Indeed, the first piece of the gasifier was not even delivered to the site until five months after the scheduled date.  *Id.*  The schedule was also derailed as a result of significant construction problems related to piping, pipe hangers, and other major commodities (¶¶115(c), 124(c), 131(c), 144(c)), as well as ballooning required labor (¶¶131(d), 159(c)).  Defendants also broke logic ties and artificially collapsed the schedule in order to back into the May 2014 COD (¶115(h)).  By early in the Class Period, virtually all elements of plant engineering were woefully delayed by four to 14 months and the plant as a whole was measurably behind schedule.  ¶131(b), (e).

The defendants made the Class Period false statements with knowledge or reckless disregard for the truth.  Defendants closely monitored progress at the Kemper Plant, met regularly with each other regarding the project, attended construction meetings where the project's rampant problems were discussed, and personally toured the site to observe progress.  ¶¶33, 74, 76, 127, 176-177.  As described in *The New*

*York Times* exposé – which publicly revealed fraud for the first time – defendants "'drastically understated the project's cost and timetable, and repeatedly tried to conceal problems as they emerged.'"  ¶¶49-55.  Similarly, Brett Wingo, a former project manager, discussed crippling delays with the gasifier at monthly construction meetings, attended by defendants Huggins and Anderson.  ¶61.  Wingo concluded: "'Through lies, deceptions and half-truths and an unwillingness to confront that, I believe they've damaged [their credibility].  We chose not to [be truthful] and we did it multiple times.'"  ¶70.  Confidential witnesses also recounted a consistent story of known, concealed problems and delays.  ¶¶74-78, 184-185.

Defendants had a strong motive to conceal the truth.  ¶¶44, 169-175.  First, should the completion date slip past May 2014, the Company would lose hundreds of millions of dollars in federal tax credits.  ¶¶35, 44, 58, 169-170, 175.  Second, if the schedule slipped, the Company would also be precluded from passing the construction costs on to ratepayers.  ¶¶36, 44, 171, 174-175.  Third, the Company faced severe financial penalties and litigation from project partners if the plant was not completed on time.  ¶¶44, 172, 175.

Remarkably, today, more than three years after the touted May 2014 COD, the Kemper Plant has yet to achieve commercial operation.  ¶¶46-47, 115(h) n.24, 186-187, 189.  Indeed, defendants have missed, and pushed back, the COD 12 times

between late 2013 and 2017.  ¶¶46, 187.  According to a June 2017 Company update issued after plaintiffs filed the Complaint, Kemper will ***never*** operate as a "clean coal" power plant.  Clearly, the Kemper Plant was not "on schedule," "more than 70 percent" or "75 percent" complete when defendants said as much in 2012 and 2013.

## II.   ARGUMENT

In assessing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must consider the complaint in its entirety, "accept all factual allegations . . . as true," and construe them in the light most favorable to the plaintiff. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007).  In order to establish a violation of §10(b) and Rule 10b-5, a plaintiff must plead "'(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011). [3]  Here, defendants contest only the first (falsity) and second (scienter) elements.

---

[3]   All citations are omitted and emphasis is added unless otherwise stated.

### A.     Plaintiffs Adequately Plead Falsity

#### 1.     Statements of Percentage-Completion and of Historical Fact (Statements 9, 11, 14, 16-18, 21, 27, 34, and 37)[4]

Throughout the Class Period, defendants represented that objective percentages of the total required construction of the Kemper Plant ***had already been completed***. *See* Statements 9 ("near[ing] the halfway mark"), 11 ("more than 70 percent complete"), 14 (same), 16 ("nearly 75 percent complete"), 18 (same), 21 ("75% complete"), 27 ("start-up activities . . . are now 40% complete").  Defendants also stated that specific segments of the Kemper Plant ***had*** already been installed and that construction ***had*** proceeded without incident.  *See* Statements 9 ("'Installation of the gasifier marks a pivotal point in the construction phase of our project . . . .'"), 17 ("'this plant was exceedingly well-built and well-organized during the construction period'"), 34 ("a significant portion of the startup activities for the combined cycling unit, has been completed . . . 90% of the piping has been fabricated and almost half is installed"), 37 ("first fire of the facility's two combustion turbines").

These statements were false and misleading because, at the time they were made, the Kemper Plant was not "halfway," "more than 70 percent," or "75 percent" complete and the gasifier and other segments of the plant had not been installed

---

[4]   Plaintiffs refer to the alleged false statements by number – *e.g.*, "Statement 1" – as identified in Appendix A to the defendants' motion to dismiss.  *See* Dkt. No. 37-2.  Appendix A identifies the source and speaker of each alleged false statement.  *Id.*

without incident.  In fact, the plant was measurably behind schedule due to major delays in the installation of the gasifier, the most critical part of the project.  ¶¶115(a), 124(a), 131(a).  Indeed, the first piece of the gasifier was not even delivered to the site until September 2012 – five months later than the scheduled date – and delivery of the gasifier components was delayed to January 2013.  *Id.*  Further, based on data through July 31, 2012, the plant had achieved "'a construction completion of 30%.'"  ¶124(i).  By November 2012, virtually all elements of plant engineering were woefully delayed by four to 14 months and the plant as a whole was "'nearly three months behind schedule.'"  ¶131(b), (e).

Having no response for the historical, objectively-measurable nature of Statements 9, 11, 14, 16-18, 21, 27, 34, and 37, defendants lump them together with all of the other alleged false statements and mislabel them as "predictive" and "Schedule Estimates."  *See* Memorandum of Law in Support of Defendants' Motion to Dismiss the Consolidated Complaint (Dkt. No. 37-1) ("Defs' Mem.") at 18.  But defendants' repeated percentage-completion statements and statements concerning the past installation of specific portions of the plant have nothing to do with predictions or schedule estimates.  Rather, they conveyed that objective percentages of the work required to complete the Kemper Plant ***had been completed*** as of the date the statements were made.  *See Gross v. Medaphis Corp.*, 977 F. Supp. 1463, 1473 (N.D.

Ga. 1997) (the safe harbor "does not insulate defendants from private securities liability based on statements that misrepresent historical/hard or current facts").

Plaintiffs "do not allege that Defendants fraudulently announced" plans to reach 70% or 75% completion or to install particular portions of the plant "and then failed to follow through on these plans.  Instead, Plaintiffs allege misrepresentations of existing facts" (*In re ValuJet, Inc., Sec. Litig.*, 984 F. Supp. 1472, 1479 (N.D. Ga. 1997)) – that construction was nowhere near "70 percent" or "75 percent" complete, that the gasifier was not installed, and that construction had not been "well-organized during the construction period" when defendants stated as much.  Put simply, the Complaint does not contend that Statements 9, 11, 14, 16-18, 21, 27, 34, and 37 were "false or misleading because of later events, but rather, that they are false or misleading because of events that had ***already occurred*** at the time" defendants made their statements.  *In re Towne Servs. Sec. Litig.*, 184 F. Supp. 2d 1308, 1320-21 (N.D. Ga. 2001).  As a result, these statements are actionable.

### 2.    Statements Concerning Current Business Conditions (Statements 1-8, 10-13, 15, 18-36)[5]

Defendants repeated throughout the Class Period that construction was "on schedule," "on target," and "on track."  *See* Statements 4-6, 10-12, 18-20, 25-26, 29-

---

[5]    Statements 4, 11, 16, 18, 21, 27, and 34 contain both statements of historical fact and current business conditions.  Thus, these statements are actionable for two, independent reasons.

31.  These statements were false and misleading because, when they were made, the gasifier was at least five months behind schedule.  ¶¶115(a), 124.  Indeed, "'every day [the Company] lost in that particular area of the plant [*i.e.*, the gasifier], [the Company] would lose on the back end of [the] schedule.'"  ¶115(e).  Additionally, engineering for the Kemper Plant was four to 14 months behind schedule.  ¶¶115(b), 131(b).  At the time these statements were made, construction was woefully off schedule as a result of significant construction problems and delays related to piping, pipe hangers, and other major commodities (¶¶115(c), 124(c), 131(c), 144(c)), as well as ballooning required labor (¶¶131(d), 159(c)).  Moreover, defendants broke logic ties and artificially collapsed the schedule, illogically scheduling trade upon trade, in order to keep the May 2014 COD (¶115(h)) – the opposite of a project that is "on schedule," "on target," and "on track."

As with the percentage-completion statements, defendants wrongly contend that Statements 1-8, 10-13, 15, 18-36 are forward-looking.  To the contrary, these statements were not false because the plant was not ultimately completed on time, but rather because, at the time the statements were made, construction was woefully off track, behind schedule, and progressing exceptionally poorly.  In other words, these statements misrepresented ***current facts*** regarding the status of construction.  *See Rihn v. Acadia Pharms., Inc.*, 2016 U.S. Dist. LEXIS 128291, at *22 (S.D. Cal. Sep. 19,

2016) (statements that the company was "on track" to submit a new drug application "were not vague statements of optimism, but, rather, statements premised on facts"). Indeed, the court in *In re MGM Mirage Sec. Litig.*, 2013 U.S. Dist. LEXIS 139356, at *22, *25 (D. Nev. Sept. 26, 2013), rejected defendants' argument that statements that a construction project was "***on schedule***," "'***on track*** for a late 2009 opening,'" and "'***progressing nicely***'" were forward-looking, holding instead that such "statements relat[ed] to ***current conditions***" of construction status.  (Some emphasis in original.) Other courts addressing identical statements that the company is "on track" to meet deadlines or financial projections are in accord.[6]

Notably, defendants intoned ***14 times*** during the Class Period that they were "on schedule" or "on track" to compete the Kemper Project on time, further supporting their actionability.  *See, e.g.*, *In re BHP Billiton Ltd. Sec. Litig.*, 2017 U.S. Dist. LEXIS 138834, at *29 (S.D.N.Y. Aug. 29, 2017) (finding that "even if some of the statements are general enough that, had they been made in isolation, they might

---

[6]  *See, e.g.*, *In re Secure Computing Corp. Sec. Litig.*, 120 F. Supp. 2d 810, 818 (N.D. Cal. 2000); *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 880 (N.D. Cal. 2004); *In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d 802, 816-18 (N.D. Ill. 2017); *Silverman v. Motorola, Inc.*, 2008 U.S. Dist. LEXIS 76799, at *27-*29 (N.D. Ill. Sept. 23, 2008); *IBEW Local 98 Pension Fund v. Best Buy Co.*, 958 F. Supp. 2d 1065, 1076-77 (D. Minn. 2013); *In re EveryWare Global, Inc. Sec. Litig.*, 175 F. Supp. 3d 837, 855 (S.D. Ohio 2016), *aff'd*, 849 F.3d 325 (6th Cir. 2017); *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 951 (N.D. Cal. 2014); *Rihn*, 2016 U.S. Dist. LEXIS 128291, at *19-*20; *Murphy v. Precision Castparts Corp.*, 2017 U.S. Dist. LEXIS 99431, at *39-*41 (D. Or. June 27, 2017); *Bielousov v. Gopro, Inc.*, 2017 U.S. Dist. LEXIS 117223, at *13 (N.D. Cal. July 26, 2017).

not be actionable, we cannot ignore the fact that defendants allegedly made these representations about BHP's commitment to safety ***over and over***"); *City of Omaha Police & Fire Ret. Sys. v. LHC Grp., Inc.*, 2013 U.S. Dist. LEXIS 36318, at \*10-\*12 (W.D. La. Mar. 15, 2013) (finding statements actionable where "defendants ***repeatedly*** told investors" that the company was in compliance with applicable law); *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 184 (S.D.N.Y. 2010) (same).

Thus, *Harris v. Ivax Corp.*, 182 F.3d 799 (11th Cir. 1999), relied upon by defendants, is inapposite. The false statement in that case concerned a company's "predicted third quarter results," which were accompanied by a list of factors the company warned could negatively impact those results. *Id.* at 805-06. The plaintiffs in *Harris* alleged that the list was misleading "because [it] omit[ted] the expectation of a goodwill writedown," which later occurred. *Id.* at 806. Here, however, defendants' statements that construction was "on track" and "on schedule" were false and misleading because they omitted ***then-current***, crippling construction problems that put the plant dramatically behind schedule. *Cf. Towne*, 184 F. Supp. 2d at 1321 n.10 (distinguishing the false statement in *Harris* as "omitt[ing] an event that occurred ***after*** the [statement] was disseminated" and finding that "*Harris* dealt with the typical 'forward-looking' scenario, *i.e.*, predictions that do not come true") (emphasis in

- 10 -

original).  For the same reasons, defendants' reliance on *Szymborski v. Ormat Techs., Inc.*, 776 F. Supp. 2d 1191 (D. Nev. 2011), is misplaced.  There, unlike here, the defendant "did not, at any time, state expressly that it was 'on track' to meet its goal of completion by 2008."  *Id.* at 1199.

### 3.   Statement of Guarantee (Statement 4)

On June 8, 2012, the Company issued a news release stating in no uncertain terms that "[t]he plant ***will be on line May 2014***" (Statement 4).  This statement, "worded as [a] guarantee" that the Kemper Plant will be on line in May 2014, is actionable.  *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1304 (11th Cir. 2011).  It is also objectively false and misleading.  *See* §II.A.1.-2., *supra*.

### 4.   Statements Concerning the Purported Contemporaneous Success of Construction

Defendants assured investors throughout the Class Period that (i) the construction schedule "remain[ed] achievable" (Statement 1); (ii) "good progress" had been achieved on the plant (Statement 3); (iii) construction was "proceeding exceptionally well," "continuing to progress in an outstanding manner," and "progressing well" (Statements 12, 21, 34); (iv) "'tremendous progress'" and "great progress" had been achieved (Statements 14, 27, 33); (v) "'this plant was exceedingly well-built and well organized during the construction period'" (Statement 17); and (vi) the plant was "expected" and "scheduled" to be completed by May 2014 (Statements

2, 7, 9, 13, 23-24, 27-28, 35).

The truth or falsity of these statements – concerning the current, purported successful status of construction – did not depend on future events.  These statements were materially false and misleading because, at the time they were made, construction was not experiencing "great progress," "'well organized,'" or "progress[ing] in an outstanding manner."  Indeed, just the opposite – construction was fraught with issues rendering construction a debacle.  *See* §II.A.1.-2., *supra*.

Moreover, when "the statements are read in context they misrepresent the reasons for the Company's success at the time they were made."  *In re Sci. Atlanta Sec. Litig.*, 239 F. Supp. 2d 1351, 1362 (N.D. Ga. 2002) (finding "misrepresentations or omissions of historical fact along with the forward-looking statements" actionable), *aff'd*, 374 F.3d 1015 (11th Cir. 2004); *see also Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 2002 U.S. Dist. LEXIS 28072, at *65-*66 (N.D. Ga. Aug. 20, 2002) (same); *In re Premiere Techs., Inc. Sec. Litig.*, 2000 U.S. Dist. LEXIS 19207, at *55-*56 (N.D. Ga. Dec. 8, 2000) (same).

Therefore, *Amalgamated Bank v. Coca-Cola Co.*, 2006 WL 2818973 (N.D. Ga. Sep. 29, 2006), *aff'd*, 262 F. App'x 177 (11th Cir. 2008), cited by defendants, is inapposite.  There, statements that the company had a "'very bright future'" and a "'crystal clear strategy'" and that its business strategy was "'being well-executed'"

were deemed inactionable because they could only be verified in the future.  *Id.* at
*16-*17.  So, too, is *In re Barrick Gold Sec. Litig.*, 2015 WL 1514597 (S.D.N.Y. Apr.
1, 2015), which held that statements concerning the "estimated" cost to build a gold
mine and the anticipated date on which the to-be-constructed mine was "expected" to
produce gold to be forward-looking.[7]

Defendants' puffery arguments fare no better – their statements were not
"vague statement[s] incapable of objective verification" but statements "about how
well" the progress of construction was going, "signal[ing] to investors about the state
of affairs at" the Kemper Plant that was belied by reality.  *Anastasio v. Internap
Network Servs. Corp.*, 2011 U.S. Dist. LEXIS 161633, at *31 (N.D. Ga. Sept. 30,
2011); *see also In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017)
(holding statement that "'everything [was] going fine'" is not puffery).

### 5.  Defendants' "Cautionary" Language Is Meaningless

Even if certain of the alleged misrepresentations were forward-looking, which
they are not, they are nevertheless actionable because the risks warned about in
defendants' cautionary language had already materialized.  For example, the

---

[7]   Notably, only nine of the 37 alleged false statements convey that the Kemper Plant
was "expected" or "scheduled" to be completed by May 2014.  *See* Statements 2, 7, 9,
13, 23-24, 27-28, 35.  The majority of the alleged false statements concern the then-
current status of construction.  *See* §II.A.1.-3.  In context, all of the alleged false
statements are actionable because they conveyed to investors that construction was on
schedule, that there were no major issues with construction, and that the plant would
be completed by May 2014.  *See Sci. Atlanta*, 239 F. Supp. 2d at 1362.

cautionary language cited by defendants states that "'Southern Company . . . *may* incur . . . delays in the construction of new plants.'"  Dkt. No. 37-3 at 1; *see also* Defs' Mem. at 20 ("'Mississippi Power *could* experience . . . schedule delays . . . .'").  Such delays, however, had already occurred when these statements were issued.  *See* §II.B., *supra*.  As a result, these cautions were meaningless.[8]

Moreover, even if considered forward-looking statements, defendants are liable because they did "'not genuinely or reasonably believe them'" (*FindWhat*, 658 F.3d at 1304) and they made the statements with actual knowledge of their falsity (15 U.S.C. §78u-5(c)(1)(B)(i)).  *See* §II.B., *infra*.

## B.    Plaintiffs Adequately Plead a Strong Inference of Scienter

The PSLRA's "strong inference" standard is satisfied when, accepting the allegations as true and considering them collectively, a reasonable person would deem the inference of scienter at least as strong as an opposing inference.  *Tellabs*, 551 U.S.

---

[8]    *See, e.g.*, *SEC v. Merch. Capital, LLC*, 483 F.3d 747, 769 (11th Cir. 2007) (safe harbor inapplicable where "unfavorable events had already occurred when Merchant made its optimistic statements, which made those statements materially misleading"); *In re 21st Century Holding Co. Sec. Litig.*, 2008 U.S. Dist. LEXIS 108196, at *36 (S.D. Fla. Nov. 7, 2008) ("Cautionary language can never be 'meaningful' if it warns of risks that have already materialized."); *Rubinstein v. Collins*, 20 F.3d 160, 171 (5th Cir. 1994) ("'To warn that the untoward may occur when the event is contingent is prudent; to caution that it is only possible for the unfavorable events to happen when they have already occurred is deceit.'"); *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 479 (6th Cir. 2014) ("In passing the 1934 Act, Congress did not intend to allow corporations or their officers to insulate themselves by simply attaching throat-clearing language to their public utterances.").

at 324.  "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking gun' genre, or even 'the most plausible of competing inferences . . . .'"  *Id.*  Further, "the court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically."  *Id.* at 326.   In the Eleventh Circuit, allegations of "'severe recklessness'" – "'an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it'" – satisfy the scienter requirement.  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1282 n.18 (11th Cir. 1999).

### 1.     Internal Documents, E-mails and Witness Accounts Contained in *The New York Times* Exposé

The Complaint establishes a compelling inference of scienter that defendants knew or recklessly disregarded throughout the Class Period that the Kemper Plant was not (1) "on track" or "on schedule"; (2) "more than 70 percent complete"; (3) "progressing well"; or (4) going to be complete by the May 2014 COD.  In addition, the percipient witnesses quoted in *The New York Times* establish that defendants spoke with scienter when they said that (1) "'[i]nstallation of the gasifiers . . . is proceeding exceptionally well'"; and (2) "'this plant was exceedingly well-built and well organized during the construction period.'"  ¶¶127, 134.   For example, "'interviews with more than 30 current and former regulators, contractors, consultants

or engineers who worked on the project show that the plant's owners drastically

understated the project's cost and timetable, and repeatedly tried to conceal problems

as they emerged.'"  ¶49.  Other specific examples include:

- Brett Wingo told his supervisors in 2012 that "'scheduling information that [defendants] were providing to the public was ***infeasible and misleading***.'" ¶52;

- "'[A]t least six engineers from the plant said they believed that the delays and cost overruns . . . were partly the result of mismanagement or ***fraud***.'" ¶50;

- "[A]n engineer, told Wingo during one call that 'he too believed that managers were being "***told to lie***" about the pace of progress'" at the Kemper Plant. *Id.*;

- Another engineer "recounted in a phone call that 'managers were being allowed to "***screw" with the schedule and "then claim they can meet all these dates, and there is no way***.'"  ¶50;

- "'Tom Theodore, a scheduling consultant who worked on the Kemper project for about eight months in 2012, described the company's stated schedule as little more than "a pretty picture to show everybody that we're all doing wonderful as opposed to what reality showed on the ground."'"  ¶52; and

- Defendant Day admonished employees: "'[N]o numbers, schedules, or information in general should be communicated to external parties until I review it/them first.'"  ¶¶52, 167.

Contrary to defendants' bald assertion that this information "does not reveal any

deliberate misconduct" (Defs' Mem. at 17), the contemporaneous e-mails and internal

documents, 30 witness interviews and more than 200 hours of recorded telephone

conversations consistently tell the same story: defendants privately knew, at the time

of their representations, about insurmountable construction delays and problems but

continued to insist publicly that the Kemper Plant "is on schedule," "on target," and "will be on line in May 2014."

Defendants say that internal directives to conceal the fraud do not support scienter because "instructions regarding external communications are standard in any public company." Defs' Mem. at 33. Defendants miss the point. While instructions regarding external communications may be standard fare, here we have *ad hoc* e-mails sent (on one occasion, by defendant Day) during the time that the fraud was being perpetrated to those who knew that defendants' public statements were false instructing them not to communicate with outsiders about the very subject of the fraud. ¶¶167-168. In addition to defendant Day's directive, CW-2 recounted that "Kemper employees were ***warned not to discuss the scheduling delay at the Kemper Plant*** with any outsiders, such as members of the press." ¶166. And CW-1 was told by two different managers that his concerns about scheduling delays should not be put in writing and that e-mail was the "***kiss of death***" at the Kemper Plant. ¶74.

"This evidence of concealment is strongly indicative of scienter." *Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1124 (C.D. Cal. 2012) (finding allegations that defendants "attempted to ensure that investors would not discover [the fraud] by taking steps to make it appear that the facility was functioning at full capacity" was "strongly indicative of scienter"); *see also Local 703 I B of T. Grocery*

*& Food Emps. Welfare Fund v. Regions Fin. Corp.*, 2011 U.S. Dist. LEXIS 60761, at *21 (N.D. Ala. June 7, 2011) (finding scienter where a CW described how a non-defendant told other non-defendants at the company that "there should be 'no more emails or memos' about the removal of non-accrual loans from the non-accrual list"). Here, too, "[e]vidence that a defendant has taken steps to cover-up a misdeed is strong proof of scienter." *See In re Natures' Sunshine Prods. Sec. Litig.*, 486 F. Supp. 2d 1301, 1310 (D. Utah 2007).[9]

### 2. Brett Wingo's Account

As detailed in ¶¶56-72, Brett Wingo's first-hand account demonstrates that defendants knowingly or recklessly made false and misleading statements that the Kemper Plant was "on track," "on schedule," and "more than 70 percent complete." Wingo worked at the Kemper Plant as a Project Manager in the Gasification Technologies Group from August 2011 through the end of the Class Period. ¶¶57, 67-68. With this unparalleled access to "the most critical and complex part" of the Kemper Plant, Wingo described the delays, failures and problems facing the Kemper Plant throughout the Class Period.

Wingo's account confirms that (1) defendants Anderson, Huggins and Day

---

[9] Defendants' reliance on *Sheet Metal Workers Local 28 Pension Fund v. Office Depot, Inc.*, 2009 WL 10667541 (S.D. Fla. Mar. 31, 2009), is misplaced. Unlike in this case, the plaintiffs in *Office Depot* did not allege that there were any directives to conceal or cover-up the fraud. *Id.* at *9.

learned of the gasifier delay at production meetings in 2012 (¶¶58-61); (2) the delay to the gasifier, a critical path component, derailed construction and rendered the May 2014 COD impossible (¶7); (3) the piping delays were plainly visible to defendants Fanning, Day, Holland, Huggins and Anderson (¶¶62, 74, 115(f) n.23, 177, 179-182); (4) Southern's COO, Mark Crosswhite, initiated a cultural survey in which Wingo reported that the "schedule is a lie" and the May 2014 COD was unachievable (¶66);[10] (5) senior managers at the Kemper Plant joked that the Company would come clean "[o]n May 2nd" about missing the May 1, 2014 deadline (¶65).

Here, the Complaint alleges specific communications with defendants regarding these scheduling delays. *Cf. Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1250-55 (11th Cir. 2008) (scienter insufficiently pled as to individual defendants where complaint failed to cite any documentation, communication or conversation suggesting that individual defendants knew anything about the alleged fraud and where the type of fraud alleged would be difficult for senior management to detect). As such, plaintiffs do not rely on a mere "inference" that defendants "must have been aware." Plaintiffs plead they knew.[11]

---

[10] This provides a powerful inference of scienter. *See In re Petco Animal Supplies Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 97927, at *20, *31-*32 (S.D. Cal. Aug. 1, 2006) (concluding that scienter adequately pleaded where Petco employees reported improper accrual of expenses in a "corporate survey" during the class period).

[11] Remarkably, defendants assert that "Plaintiffs point to no facts known by any

Further, given glaring signs that the Kemper Plant would not be completed by the May 2014 COD, defendant Fanning's, Beattie's, Day's and Holland's execution of Sarbanes-Oxley certifications during the Class Period also supports an inference of scienter. As the Eleventh Circuit has recognized, such certifications are "probative of scienter if the person signing the certification was severely reckless in certifying the accuracy of the financial statements" and that "[t]his requirement is satisfied if the person signing the certification had reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other 'red flags,' that the financial statements contained material misstatements." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006).

Even defendants admit the scheduling delays were "***known***," but contend that defendants "misjudged the[ir] gravity." Defs' Mem. at 22. But plaintiffs' allegations do not suggest that defendants "underestimated" or "misjudged" the "known" scheduling delays; the allegations give rise to the inference that defendants knew about them yet continued to falsely assure the market that construction was on track for an on-time completion. *See ValuJet*, 984 F. Supp. at 1479-80 (allegations that defendants were aware of problems discovered by the FAA, but continued to make

---

Defendant prior to October 2013 suggesting that any Defendant actually knew it was impossible to meet the May 2014 COD." Defs' Mem. at 21. This claim sidesteps Wingo's account entirely.

representations regarding safety and plans for growth, established scienter).[12]

Defendants rely on *NDC Health* for the proposition that attendance at monthly meetings is insufficient to support scienter if plaintiffs do not specify who attended the meetings and what was said.  466 F.3d at 1265.  Plaintiffs here, however, have provided what was missing in *NDC Health*: Wingo, Huggins, Anderson, Ashley Baker and Aaron Abramowitz attended monthly production meetings during the Class Period, and "the gasifier delays and their impact on the schedule were discussed during this time during monthly production meetings."  *Compare* ¶61, *with NDC Health*, 446 F.3d at 1265 (plaintiff "failed to allege what was said at the meeting, to whom it was said, or in what context"); *cf. In re Immucor Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 72335, at *54 (N.D. Ga. Oct. 4, 2006) (scienter pleaded where individual defendants "consulted regularly, including during monthly 'Management Review' meetings"); *In re Catalina Mktg. Corp. Sec. Litig.*, 390 F. Supp. 2d 1110, 1115 (M.D. Fla. 2005) (finding scienter where the defendants were confronted with declining sales figures "'by face-to-face meetings with senior level management employees who personally warned Defendants of the impending second quarter 2002 earnings miss'").

---

[12]  Defendants misread the holding in *Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001), which noted only that alleging that a company "underestimated the difficulties it would face if it fired 300 salespeople does not make out a fraud case" because it did not contradict defendants' statement that it "cut expenses by firing a lot of salespeople."  *Id*. at 433.

### 3.     The Confidential Witness Accounts

The first-hand accounts of five confidential witnesses also support a strong inference of scienter.  *See* ¶¶73-78.  The Eleventh Circuit has held that:

> Confidentiality . . . should not eviscerate the weight given if the complaint otherwise fully describes the foundation or basis of the confidential witness's knowledge, including the position(s) held, the proximity to the offending conduct, and the relevant time frame.

*Mizzaro*, 544 F.3d at 1240.  The Complaint describes the confidential witnesses' positions and includes sufficiently detailed confidential witness accounts that substantiate plaintiffs' allegations regarding defendants' scienter.

For example, CW-1 told a supervisor that there was "'no way this thing [was] going to get done' on time." ¶74.  CW-2 said that it was clear from the start of CW-2's employment in 2011 that the May 2014 COD "would not be possible to achieve" and "this concern was widely acknowledged and regularly discussed by employees at the Kemper Plant with whom CW-2 spoke."  ¶75.  CW-3 said that there were discussions among employees in early 2012 that the Kemper Plant would not be completed on schedule.  ¶76.  CW-3 also noted that construction of the lignite conveyer system, a significant component of the Kemper Plant, experienced substantial delays during 2013. *Id.*  CW-4 said that, throughout 2013, CW-4 and other individuals working at the Kemper Plant routinely discussed that the plant would not be in operation any time in 2014.  ¶77.  CW-5 said that construction delays were

- 22 -

discussed at regular weekly on-site meetings he attended by project managers representing different sectors of the Kemper Plant.  ¶78.

The confidential witnesses describe a consensus throughout the Kemper site as early as 2012 that the May 2014 COD could not be met.  The confidential witnesses not only corroborate one another, they also corroborate the witness accounts in *The New York Times* exposé as well as Wingo's account.  These facts give rise to an inference that defendants knew or were at least reckless in their representations that the Kemper Plant was "on schedule" and would be completed by May 2014.  *See Mizzaro*, 544 F.3d at 1249 (scienter pleaded where "a reasonable person would infer that there was at least a ***fifty-fifty chance*** that the individual defendants knew about the alleged fraud").

Citing to *Barrick Gold*, defendants say that the confidential witness allegations do not support scienter.  Defs' Mem. at 21.  But *Barrick Gold* does not help defendants.   The *Barrick Gold* court determined that, where the Company "continually investigat[ed] and relay[ed] updated [cost and schedule] information to the public," there was an inference that "Barrick was working to confirm its estimates were accurate and to make corrections where needed."  2015 WL 1514597, at *10.  Here, on the other hand, defendants ***never*** adjusted its May 2014 COD or acknowledged construction delays, problems and failures.  Rather than relaying

- 23 -

updated scheduling information to the public, defendants concealed the truth, admitting only at the end of the Class Period that the plant would not be completed by the May 2014 deadline. *Barrick Gold* is also distinguishable because, unlike in this case (*see* §II.B.5., *infra*), the plaintiffs in *Barrick Gold* failed to allege any motive for the defendants' fraudulent misrepresentations. 2015 WL 1514597, at \*9.

### 4. Defendants Actively Managed Kemper's Construction

Defendants' own admissions that they actively managed and closely monitored the construction of the Kemper Plant support scienter. *See* ¶¶176-183. In addition, defendants spoke about the Kemper Plant on **every** single quarterly call during the Class Period, and routinely issued press releases assuring the market that the plant was "on schedule" and would be in service by May 2014. ¶¶112-159 (defendants stated construction was "on track" or "on schedule" **14 times** during the Class Period); *see also Regions*, 2011 U.S. Dist. LEXIS 60761, at \*28-\*29 (scienter pleaded where "'every single quarterly conversation with the analysts'" included discussion about the topic at issue in the alleged fraud, "show[ing] that defendants had access to and were aware of" the alleged fraud). Defendant Fanning, reassured investors that defendants "'**meet regularly on this [Kemper] project**'" and that "'**[w]e continue to actively monitor ongoing pressures on costs and schedule**.'" ¶127; *see* ¶178 (defendant Beattie: admitting he "**met 'regularly on this project'**" with Fanning, Day and other

- 24 -

senior managers").[13]  Thus, defendants' own admissions of their active involvement in the Kemper Plant support a logical, and strong, inference of scienter.

In addition, defendants visited the site regularly, where they personally witnessed the "visible signs" of construction problems and delays – including jerry-rigged pipe, held up by cables and ropes.  ¶62.  Defendant Huggins was at Kemper "all the time," Anderson oversaw management of the Kemper project and was at the site "regularly," and Day was "always" at the Kemper plant.  ¶¶179, 181-182. Holland "was actively involved in the Kemper Plant project."  ¶180.  Defendant Fanning visited the Kemper Plant every two to three months, when he received a site tour in a bright red golf cart.  ¶¶74, 177.  During these frequent site visits, defendants witnessed the visible construction delays and problems described by Wingo and the other percipient witnesses.  *See Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987-89 (9th Cir. 2008) (drawing an inference of scienter where the information misrepresented is readily apparent to the defendant corporation's senior management).

---

[13]  *See also Winslow v. BancorpSouth, Inc.*, 2011 U.S. Dist. LEXIS 45559, at *67 (M.D. Tenn. Apr. 26, 2011) (scienter supported by allegations that "[d]efendants repeatedly assured investors they had their eyes on the CA&D loans and had an array of quality controls in place to monitor such loans"); *Freudenberg*, 712 F. Supp. 2d at 199 ("Simmons' other reassurances to investors throughout the Class Period regarding the key issues in this case, and his responsibilities as E*TRADE's chief financial and accounting officer, further evidence his scienter.").

### 5.    A "Shared and Powerful Incentive" to Commit Fraud

As *The New York Times* concluded, the federal subsidies contingent on completion of the Kemper Plant by the May 2014 COD provided defendants with a "'***shared and powerful incentive***'" to commit fraud. ¶49.  Indeed, by the beginning of the Class Period, defendants had secured hundreds of millions of dollars of federal subsidies in connection with the Kemper Plant – including IRS tax credits – all of which depended on defendants' completion of the plant by the May 2014 COD.  ¶¶44, 169-175.  As a result, it was critically important to investors that the Kemper Plant remain on schedule and meet the May 2014 COD.  ¶¶44, 169.  For example, defendant Huggins acknowledged that missing the COD associated with the Phase II 48A Tax Credits would constitute "'***financial Armageddon***'" because "the missed deadline would spook investors, garner harsh criticism from the news media and regulators and could lead to bankruptcy."  ¶44; *see* ¶170.

In addition, defendants had at least four other powerful motives to conceal the delays, including (1) the PSC-imposed deadline to recover construction financing costs from ratepayers; (2) the asset purchase agreement with SMEPA; (3) the contract with Treetop; and (4) the PSC's approval of a customer rate increase.  ¶¶171-175.  Thus, defendants' concrete motives to misrepresent the Kemper Plant's completion date and status support a strong inference of scienter.  *See, e.g.*, *Medina v. Clovis*

*Oncology, Inc.*, 215 F. Supp. 3d 1094, 1128-29 (D. Colo. 2017) (finding a strong incentive to lie about the development status of a drug where there was keen investor interest in the status of that drug).[14]  Further, unlike many fraud cases, each of these motives was unique to Southern and does not apply to corporations generally.  This gives rise to a strong inference of scienter.  *See Pet Quarters, Inc. v. Badian*, 2007 U.S. Dist. LEXIS 24611, at *21 (E.D. Ark. Mar. 30, 2007) (holding that, where plaintiffs alleged a "unique motive," it "carried its burden of pleading scienter").

Defendants incorrectly claim that a lack of insider trading negates scienter.  However, the absence of insider trading allegations "does not defeat the complaint."  *Miller v. Dyadic Int'l, Inc.*, 2008 U.S. Dist. LEXIS 95934, at *38 (S.D. Fla. Nov. 25, 2008); *see also In re PainCare Holdings Sec. Litig.*, 541 F. Supp. 2d 1283, 1293 (M.D. Fla. 2007) (finding scienter despite lack of stock sales and holding that lack of insider trading shows only "that the Company has potential defenses to the claim").

---

[14]   Defendants misconstrue plaintiffs' motive allegations, claiming that "[w]hether the plant was on track in the interim made no difference."  Defs' Mem. at 26.  But, defendants understood that admitting "interim" delays and problems or suggesting that the Company would miss the May 2014 deadline would be disastrous because it would alarm investors and project partners, invite media and regulatory scrutiny, and cause a stock decline – all of which ultimately occurred at the end of the Class Period.  Defendants sought to avoid this as long as possible.  *Cf. In re John Alden Fin. Corp. Sec. Litig.*, 249 F. Supp. 2d 1273, 1281 (S.D. Fla. 2003) (granting motion to dismiss where the defendants promptly revealed the truth because "common sense suggests they would have attempted to conceal the fraud for as long as possible").

### 6.     The Magnitude of the Scheduling Delay

The sheer magnitude of the scheduling miss strengthens the inference of scienter.  *See* ¶¶186-189.  In fact, after plaintiffs filed the Complaint, defendants announced that Kemper will ***never*** function as a clean coal plant because the critical gasifier component does not work as designed.  *See* Henry Fountain, *In Blow to "Clean Coal," Flawed Plant Will Burn Gas Instead*, N.Y. Times, June 28, 2017, https://www.nytimes.com/2017/06/28/climate/kemper-coal-mississippi-clean-coal-project.html.  Thus, when defendants said in October 2012 that the plant was "on schedule" and "more than 70 percent complete" or in November 2012 that "'[i]nstallation of the gasifiers . . . is proceeding exceptionally well,'" this was not just a little incorrect or a minor underestimate, as defendants insist.   Contrary to defendants' flippant contention that "whether the May 2014 target was missed by a day or years is irrelevant" (Defs' Mem. at 34), the magnitude of the scheduling miss was so massive that it gives rise to a strong inference that defendants knew their Class Period statements about the status and completion date of the Kemper Plant were inaccurate.  *See, e.g.*, *Regions*, 2011 U.S. Dist. LEXIS 60761, at *29-*30; *In re Hamilton Bankcorp, Inc.*, 194 F. Supp. 2d 1353, 1359 (S.D. Fla. 2002); *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d 1326, 1344-45 (S.D. Fla. 1999).[15]

---

[15]   Defendants' argument that this is "fraud by hindsight" misses the mark.  "This is

### 7.    Southern's Scienter Is Adequately Alleged

"[S]cienter alleged on the part of high level employees of a company may establish institutional scienter on the part of the corporation." *Grand Lodge of Pa. v. Peters*, 550 F. Supp. 2d 1363, 1370 (M.D. Fla. 2008).  Here, where plaintiffs have pleaded scienter for "high level employees" of the Company, plaintiffs also have established defendant Southern's scienter.

### C.    Plaintiffs' Claims Are Timely

The Supreme Court holds that the two-year statute for securities fraud claims "does not begin to run until 'discovery of the *facts constituting the violation*.'" *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010) (emphasis in original). "Accordingly, 'where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is *discovered*.'" *Id.* at 644-45 (emphasis in original).[16]

---

not the classic fraud by hindsight case where a plaintiff alleges that the fact something turned out badly must mean that defendants knew earlier that it would turn out badly." *Miss. Pub. Emps. Ret. Sys. v. Boston Sci. Corp.*, 523 F.3d 75, 91 (1st Cir. 2008).  That is because this is a case with "contemporaneous evidence" that "defendants knew earlier what they chose not to disclose until later." *See id.*

[16]   Defendants cite to *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275 (11th Cir. 2005) – a case predating *Merck* by five years – for the proposition that the "duty of inquiry" is triggered by the "possibility of fraud." *Id.* at 1283; Defs' Mem. at 16.  But *Tello's* holding is inapplicable – *Merck* "reject[ed] 'inquiry notice' as the standard generally." 559 U.S. at 652; *see id.* at 653 (holding that the statute of limitations begins running when a reasonably diligent plaintiff would have discovered the facts constituting the violation "irrespective of whether the actual plaintiff undertook a reasonably diligent investigation").  That is why the Eleventh Circuit in *Walter v.*

The Supreme Court explained that "discovery" of scienter "facts" is especially crucial in fraud cases.  *Merck*, 559 U.S. at 649; *see id.* at 637 ("We also hold that the 'facts constituting the violation' include the fact of scienter, 'a mental state embracing ***intent to deceive, manipulate, or defraud***.'").   As a result, it would frustrate the very purpose of the discovery rule if, "[s]o long as a defendant concealed for two years that he made a misstatement with an intent to deceive, the limitations period would expire before the plaintiff had actually 'discover[ed]' the fraud."  *Id.* at 649.

As the Complaint specifically alleges, "*The New York Times* exposé was the ***first public revelation*** of the fraud that is alleged herein" because it "included details showing that the Defendants' conduct was deliberate and more than mere mismanagement or lack of prudency."  ¶48.  "The evidence and conclusions in *The New York Times* ***publicly revealed for the first time*** that Defendants had engaged in deliberate conduct to deceive the market and investors regarding the schedule delays infecting the Kemper Plant."  ¶55.  "*The New York Times* concluded that Southern duped its 'unwitting investors and some of the lowest-income ratepayers in the country . . . .'"  ¶54.  The *Times* article was published on July 5, 2016. ¶49.  The initial complaint was timely filed within two years from that date (28 U.S.C.

---

*Avellino*, 564 F. App'x 464, 466 (11th Cir. 2014), recognized that *Merck* overruled *Tello*.  *Merck* also abrogated defendants' other case.  *See In re Eli Lily & Co. Sec. Litig.*, 549 F. Supp. 2d 496, 532-40 (E.D.N.Y. 2008) (applying inquiry notice standard rejected by *Merck*).

§1658(b)(1)), on January 20, 2017.  Dkt. No. 1.

The Complaint specifically details that "[n]ewly revealed internal documents, e-mails and memoranda, along with the recorded telephone conversations of numerous percipient witnesses to the events at the Kemper Plant (including Brett Wingo), led *The Times* to conclude that Southern Company 'repeatedly tried to conceal problems as they emerged.'" ¶55; *see also* ¶49 (Southern "'drastically understated the project's cost and timetable, and repeatedly tried to conceal problems as they emerged.'"). "Notably, *The New York Times* included accounts of 'at least six engineers from the [Kemper P]lant' – never revealed publicly before this exposé – who 'said they believed that the delays and cost overruns, as well as safety violations and shoddy work, were partly the result of mismanagement or fraud.'" ¶55.  In one phone conversation recorded during the Class Period and eventually revealed by *The New York Times*, a Southern Company engineer told Wingo that "'managers were being "told to lie" about the pace of progress.'" ¶50.  In fact, prior to the publication of the *Times* exposé, the information Wingo provided – including his assertion that "'[i]n 2012, we had a ***purposely*** broken project schedule that was designed to confuse everybody'" – was not known publicly.  *See* ¶¶7, 52-53, 56-72.  Thus, plaintiffs, without any fault or lack of diligence or care on their part, did not discover that "Defendants' conduct was deliberate and more than mere mismanagement or lack of

prudency" (¶48) until *The New York Times* exposé was published on July 5, 2016.[17]

Accordingly, defendants' contention that "the article reveals nothing new about the time period between April 25, 2012, and October 30, 2013" (Defs' Mem. at 17) is meritless. As the *Times* article revealed for the first time, a whistleblower named Brett Wingo told his supervisors in 2012 that "'scheduling information that [defendants] were providing to the public was infeasible and misleading.'" ¶52.[18] Indeed, defendants succeeded in silencing Wingo until *The New York Times* published its exposé, filing an emergency motion "to keep confidential 'any information concerning events which occurred during the course of Mr. Wingo's employment with [Southern Company Services]'" because public disclosure of that information would cause Southern "'substantial and irreparable injury.'" ¶72.

---

[17]  In addition, other scienter evidence, including the SEC investigation and the Treetop fraud lawsuit, was disclosed less than two years before plaintiffs filed their complaint. *See* ¶¶164-165, 173.

[18]  In fact, several of the documents or witness accounts in the exposé are time-stamped during the Class Period. *See* ¶51 (June 5, 2013 e-mail about "big issues" caused by a constantly "increasing" schedule); ¶52 (Tom Theodore, who worked at Kemper for eight months in 2012, described the schedule as a mere façade built solely to deceive others into believing that the situation was better than it really was); ¶167 (alarmed that the public might learn that the May 2014 COD is unachievable, defendant Day wrote an e-mail to senior staff on August 8, 2012 reminding them "again" not to disclose "schedules" "to external parties" without his approval); ¶168 (December 2012 e-mail from Tim Pinkston stating that "upper management" must approve any external presentations about the Kemper Plant). Indeed, the vast majority of the evidence in *The New York Times* exposé pertains to the Class Period given that defendants' repeated efforts to "conceal problems as they emerged" necessarily occurred ***before*** defendants publicly admitted the delays at the end of the Class Period.

Defendants' statute of limitations argument hinges on the (inaccurate) assumption that plaintiffs could have stated a claim for securities fraud with allegations of "construction delays" and "questioned . . . achievability of the May 2014 COD." Defs' Mem. at 15 & 16 n.6. They state that those items "had received widespread coverage from the media and the Kemper Project's critics" by October 30, 2013 and "financial incentives . . . were also widely known." *Id.* at 15. But, the October 2013 announcement, news articles in 2013 and 2014, and the Independent Monitor's report at most revealed possible mismanagement – not the recklessness or conscious disregard needed to establish scienter. As defendants themselves concede, allegations of poor management and possible financial incentives are not sufficient to state a claim. *Id.* at 17. And, as the Eleventh Circuit counsels, "[w]hile allegations of motive and opportunity may be relevant to a showing of severe recklessness, we hold that such allegations, without more, are not sufficient to demonstrate the requisite scienter in our Circuit." *Bryant*, 187 F.3d at 1285-86. Moreover, defendants inexplicably ignore entirely the controlling Supreme Court authority – despite specific Complaint allegations that dovetail with *Merck's* holding that defendants "concealed for two years that [they] made a misstatement with an intent to deceive." *Merck*, 559 U.S. at 649. Defendants' statute of limitations argument fails because they acknowledge (Defs' Mem. at 14), but then overlook (*id.* at 14-18), the crucial scienter

component of a securities fraud claim.

### D.    Plaintiffs Properly State a Claim Under §20(a)

To state a claim under §20(a), plaintiffs must allege a primary violation under §10(b) and defendants' control over the primary violator.   15 U.S.C. §78t(a). Allegations of control are not subject to the Rule 9(b) particularity requirement since fraud is not an element of control person liability.  *See Tippens v. Round Island Plantation L.L.C.*, 2009 U.S. Dist. LEXIS 66224, at *35-*38 (S.D. Fla. July 31, 2009). With respect to defendants Southern, Fanning and Beattie, defendants' only challenge to plaintiffs' §20(a) claim is that the Complaint fails to state a primary violation.  As set forth in §II.A.-B., above, plaintiffs have adequately pled a primary violation.

With respect to defendants Holland, Day, Huggins and Anderson only, defendants say that plaintiffs have not adequately alleged control.  Defendants are mistaken.  Defendant Day was an Executive Officer of Southern until May 2013, when he was fired, and defendant Holland was Vice President, General Counsel and Corporate Secretary of Southern until May 2013, when he became President, CEO and a director of Mississippi Power.  ¶¶23-24, 179-180.  Both Day and Holland signed consolidated Form 10-Qs containing false and misleading statements about the Kemper Plant, signed Sarbanes-Oxley certifications and "had the power and ability to control public statements about the Company."  *Id.*; ¶¶114, 120, 128, 142, 156, 235.

This adequately alleges control under §20(a).

Defendants Huggins and Anderson were senior executives of Mississippi Power, a Southern subsidiary responsible for constructing the Kemper Plant. ¶¶20, 25-26. Both had "primary responsibility" for the Kemper Plant. *See* ¶¶25-26. As such, both Huggins and Anderson exercised control over the Kemper Plant. ¶¶181-182, 235. Further, both made false and misleading statements in Southern press releases during the Class Period. ¶¶123, 126, 130, 135, 158. This is enough for §20(a) liability. *See In re ProQuest Sec. Litig.*, 527 F. Supp. 2d 728, 741-42 (E.D. Mich. 2007) (concluding that a mid-level executive of a subsidiary of the defendant company was a control person because "[h]e exercised direct control over the accounts in which material misstatements have now been disclosed by ProQuest"). In any event, "[b]ecause control is a complex factual question," dismissal of plaintiffs' §20(a) claim against Huggins and Anderson is not appropriate at this stage of the litigation. *See In re Constellation Energy Grp., Inc.*, 738 F. Supp. 2d 614, 640 (D. Md. 2010) (denying motion to dismiss §20(a) claim against an executive of a subsidiary of the defendant company).

## III.   CONCLUSION

For the foregoing reasons, defendants' motion to dismiss should be denied.

DATED:  September 11, 2017

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP

 s/ Daniel S. Drosman
DANIEL S. DROSMAN
(*Admitted pro hac vice*)
DARRYL J. ALVARADO
(*Admitted pro hac vice*)
REGIS C. WORLEY, JR.
(*Admitted pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP

 s/ John C. Herman
JOHN C. HERMAN
(Georgia Bar No. 348370)
Monarch Tower, Suite 1650
3424 Peachtree Road, N.E.
Atlanta, GA  30326
Telephone:  404/504-6500
404/504-6501 (fax)

Lead Counsel for Plaintiff

SULLIVAN, WARD, ASHER
  & PATTON, P.C.
MICHAEL J. ASHER
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI  48075-1000
Telephone:  248/746-0700
248/746-2760 (fax)

Additional Counsel for Plaintiff

- 36 -

## LOCAL RULE 7.1D CERTIFICATION

Counsel hereby certifies that the text of this memorandum of law (brief) has been prepared with Times New Roman 14 point font, one of the font and point selections approved by the Court in Local Rule 5.1B.

DATED:  September 11, 2017  ROBBINS GELLER RUDMAN
             & DOWD LLP

            s/ Daniel S. Drosman
           DANIEL S. DROSMAN
           (*Admitted pro hac vice*)
           DARRYL J. ALVARADO
           (*Admitted pro hac vice*)
           REGIS C. WORLEY, JR.
           (*Admitted pro hac vice*)
           655 West Broadway, Suite 1900
           San Diego, CA  92101-8498
           Telephone:  619/231-1058
           619/231-7423 (fax)

           ROBBINS GELLER RUDMAN
           & DOWD LLP

            s/ John C. Herman
           JOHN C. HERMAN
           (Georgia Bar No. 348370)
           Monarch Tower, Suite 1650
           3424 Peachtree Road, N.E.
           Atlanta, GA  30326
           Telephone:  404/504-6500
           404/504-6501 (fax)

           Lead Counsel for Plaintiff

SULLIVAN, WARD, ASHER
  & PATTON, P.C.
MICHAEL J. ASHER
1000 Maccabees Center
25800 Northwestern Highway
Southfield, MI  48075-1000
Telephone:  248/746-0700
248/746-2760 (fax)

Additional Counsel for Plaintiff

1305360_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 11, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List and I hereby certify that I caused to be electronically mailed the foregoing document to the non-CM/ECF participant indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 11, 2017.

       s/ Daniel S. Drosman
       DANIEL S. DROSMAN

       ROBBINS GELLER RUDMAN
          & DOWD LLP
       655 West Broadway, Suite 1900
       San Diego, CA  92101-8498
       Telephone:  619/231-1058
       619/231-7423 (fax)

       E-mail:  DanD@rgrdlaw.com

# Mailing Information for a Case 1:17-cv-00241-MHC Monroe County Employees' Retirement System v. The Southern Company et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Darryl J. Alvarado**
  dalvarado@rgrdlaw.com

- **William R. Baker , III**
  william.baker@lw.com

- **Walter W. Davis**
  wwdavis@jonesday.com

- **Daniel S. Drosman**
  dand@rgrdlaw.com,tholindrake@rgrdlaw.com,TKoelbl@rgrdlaw.com

- **Ashley Heintz**
  aheintz@jonesday.com,weye@jonesday.com

- **John C. Herman**
  jherman@rgrdlaw.com,smeister@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Michele Johnson**
  michele.johnson@lw.com,karen.patterson@lw.com,michele-johnson-
  7426@ecf.pacerpro.com,#ocecf@lw.com,khadijah-fields-2405@ecf.pacerpro.com

- **Michael Joseph McConnell**
  mmcconnell@jonesday.com

- **Thomas C. Michaud**
  tmichaud@vmtlaw.com

- **Kristin Murphy**
  kristin.murphy@lw.com,kristin-murphy-2919@ecf.pacerpro.com,khadijah-fields-
  2405@ecf.pacerpro.com,geelan-fahimy-5933@ecf.pacerpro.com,geelan.fahimy@lw.com

- **Henry Rosen**
  henryr@rgrdlaw.com

- **Robert Watts**
  rwatts@jonesday.com

- **Regis C. Worley , Jr**
  rworley@rgrdlaw.com,karenc@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Sarah                   Greenfield**
Latham & Watkins-DC
555 Eleventh Street, N.W.
Suite 1000
Washington, DC 20004-1304