# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| MONROE COUNTY EMPLOYEES' RETIREMENT SYSTEM and ROOFERS LOCAL NO. 149 PENSION FUND, Individually and on Behalf of All Others Similarly Situated<br><br>Plaintiffs,<br><br>v.<br><br>THE SOUTHERN COMPANY, THOMAS A. FANNING, ART P. BEATTIE, EDWARD DAY, VI, G. EDISON HOLLAND, JR., JOHN C. HUGGINS, THOMAS O. ANDERSON,<br><br>Defendants. | Civil Action No. 1:17-cv-00241-MHC<br><br>CLASS ACTION |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR
## MOTION TO DISMISS THE CONSOLIDATED COMPLAINT

OF COUNSEL:
Michele D. Johnson*
Kristin N. Murphy*
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, California 92626
Telephone: (714) 540-1235
Facsimile: (714) 755-8290

Sarah A. Tomkowiak*
LATHAM & WATKINS LLP
555 Eleventh Street, NW Ste. 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201

Michael J. McConnell
Ga. Bar No. 485003
Walter W. Davis
Ga. Bar No. 213083
Robert A. Watts
Ga. Bar No. 793350
JONES DAY
1420 Peachtree Street, NE Ste. 800
Atlanta, GA 30309-3053
Telephone: (404) 521-3939
Facsimile: (404) 581-8330

*Attorneys for Defendants*
*Admitted pro hac vice*

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT .........................................................................................................2

I.    PLAINTIFFS' CLAIMS ARE TIME-BARRED ....................................2

II.   PLAINTIFFS FAIL TO PLEAD FALSITY ...........................................5

      A.    Defendants' Forward-Looking Statements Are Protected
          By The PSLRA Safe Harbor.......................................................5

      B.    Statements Of Corporate Optimism Are Inactionable...............9

      C.    Plaintiffs Fail To Plead With Particularity That Any
          Challenged Statement Was False Or Misleading ....................10

III.  PLAINTIFFS FAIL TO PLEAD SCIENTER .......................................12

      A.    Plaintiffs' Alleged Motive Allegations Are Illogical ..............12

      B.    Plaintiffs Fail To Plead Severe Recklessness Through
          Monitoring The Kemper Plant, Unreliable Witness
          Allegations, And The Magnitude Of The Scheduling
          Delay .......................................................................................14

IV.   PLAINTIFFS FAIL TO STATE A SECTION 20(a) CLAIM.................20

CONCLUSION....................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*100079 Canada, Inc. v. Stiefel Labs., Inc.*,
   596 Fed. App'x. 744 (11th Cir. 2014) ............................................................2, 3

*In re Altisource Portfolio Solutions, S.A. Sec. Litig.*,
   No. 14-81156 CIV-WPD, 2015 WL 12001262 (S.D. Fla. Sept. 4,
   2015) ....................................................................................................................18

*Anastasio v. Internap Network Servs. Corp.*,
   No. 1:08-cv-03462-JOF, 2011 WL 13124500 (N.D. Ga. Sept. 30,
   2011) ....................................................................................................................10

*Barr v. Matria Healthcare, Inc.*,
   324 F. Supp. 2d 1369 (N.D. Ga. 2004)............................................................5, 6

*In re BHP Billiton Ltd. Sec. Litig.*,
   16 Civ. 1445 (NRB), 2017 WL 3822755 (S.D.N.Y. Aug. 29, 2017)..................7

*Brown v. China Integrated Energy, Inc.*,
   875 F. Supp. 2d 1096 (C.D. Cal. 2012) ............................................................19

*Brown v. Enstar*,
   84 F.3d 393 (11th Cir. 1996) .............................................................................20

*Bryant v. Avado Brands, Inc.*,
   187 F.3d 1271 (11th Cir. 1999) .........................................................................13

*In re Catalina Mktg. Corp. Sec. Litig.*,
   390 F. Supp. 2d 1110 (M.D. Fla. 2005).............................................................17

*FindWhat Inv'r Grp. v. FindWhat.com*,
   658 F.3d 1282 (11th Cir. 2011) ...........................................................................7

*Freudenberg v. E*Trade Fin. Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010) ...............................................................15

*Harris v. Ivax Corp.*,
  182 F.3d 799 (11th Cir. 1999) .............................................................................5

*In re Healthsouth Corp. Sec. Litig.*,
  No. CV-98-J-2634-S, 2000 WL 34211319 (N.D. Ala. Dec. 13,
  2000) .....................................................................................................................20

*In re HomeBanc Corp. Sec. Litig.*,
  706 F. Supp. 2d 1336 (N.D. Ga. 2010).............................................................17

*In re Immucor Inc. Sec. Litig.*,
  No. 1:05-CV-2276-WSD, 2006 WL 3000133 (N.D. Ga. Oct. 4,
  2006) .....................................................................................................................17

*In re KLX Inc. Sec. Litig.*,
  232 F. Supp. 3d 1269 (S.D. Fla. 2017)................................................................6

*Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions*
*Fin. Corp.*,
  No. CV 10-2847-IPJ, 2011 WL 12855820 (N.D. Ala. June 7, 2011) ...............15

*Medina v. Clovis Oncology, Inc.*,
  215 F. Supp. 3d 1094 (D. Colo. 2017).........................................................13, 14

*Merck & Co. v. Reynolds*,
  559 U.S. 633 (2010)..............................................................................................2

*In re MGM Mirage Sec. Litig.*,
  No. 2:09-cv-01558-GMN-VCF, 2013 WL 5435832 (D. Nev. Sept.
  26, 2013) ...............................................................................................................6

*Miller v. Dyadic Int'l, Inc.*,
  No. 07-80948-CIV-DIMITROULEAS, 2008 WL 5070279 (S.D.
  Fla. Nov. 25, 2008) .............................................................................................14

*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) .........................................................................16

*Mogensen v. Body Cent. Corp.*,
  15 F. Supp. 3d 1191 (M.D. Fla. 2014)................................................................6

*In re Nature's Sunshine Prods. Sec. Litig.*,
    486 F. Supp. 2d 1301 (D. Utah 2007) ................................................................. 19

*Pet Quarters, Inc. v. Badian*,
    No. 4:04-CV-697 (RSW), 2007 WL 1020538 (E.D. Ark. Mar. 30,
    2007) ................................................................................................................... 14

*In re Petco Animal Supplies Inc. Sec. Litig.*,
    No. 05-CV-0823-H RBB, 2006 WL 6829623 (S.D. Cal. Aug. 1,
    2006) ................................................................................................................... 18

*Phila. Fin. Mgmt. of S.F., LLC v. DJSP Enters., Inc.*,
    572 F. App'x. 713 (11th Cir. 2014) .................................................................... 10

*Raab v. Gen. Physics Corp.*,
    4 F.3d 286 (4th Cir. 1993) ..................................................................................... 7

*In re Sci.-Atlanta, Inc.*,
    239 F. Supp. 2d 1351 (N.D. Ga. 2002) ................................................................. 9

*SEC v. Merch. Capital, LLC*,
    483 F.3d 747 (11th Cir. 2007) ............................................................................... 8

*In re ValuJet, Inc.*,
    984 F. Supp. 1472 (N.D. Ga. 1997) .................................................................... 15

*Waterford Township Gen. Emps. Ret. Sys. v. BankUnited Fin. Corp.*,
    No. 08-CIV-22572, 2010 WL 1332574 (S.D. Fla. Mar. 30, 2010) ..................... 16

*Winslow v. BancorpSouth, Inc.*,
    No. 3:10-00463, 2011 WL 7090820 (M.D. Tenn. Apr. 26, 2011) ...................... 15

## STATUTES

15 U.S.C. § 78u-5 ........................................................................................................ 7

28 U.S.C. § 1658(b)(1) ................................................................................................. 2

iv

## **PRELIMINARY STATEMENT**

Plaintiffs' Opposition describes how the Kemper Plant remains the subject of a great deal of public scrutiny and debate.  But a debate years later over what went wrong with brand-new clean-coal technology does not support an inference that Defendants committed securities fraud in 2012 and 2013 when they projected that Kemper would be operational by May 2014, while also cautioning investors about the many risks attendant to this first-of-a-kind, large-scale endeavor.

Plaintiffs argue that Defendants knew about "insurmountable construction delays and problems" back in 2012 and 2013.  Opp. at 16.  But Plaintiffs do not plead facts supporting Defendants' contemporaneous knowledge that delays were "insurmountable."  The Consolidated Complaint ("CC") is filled with allegations of hurdles faced at the Plant *and* Defendants' efforts to address them.  The more compelling inference is that despite interim delays, Defendants believed they could still meet their goal.  As soon as Defendants determined that Kemper was not on track for May 2014, they revised their projection—seven months before May 2014.

The Opposition does not refute the three independent reasons the Court should dismiss the CC with prejudice: the claims are time-barred, Defendants' forward-looking statements are protected by the Reform Act's safe harbor and are not alleged to be false, and Plaintiffs fail to plead a strong inference of scienter.

1

## ARGUMENT

### I.   PLAINTIFFS' CLAIMS ARE TIME-BARRED

Plaintiffs agree the two-year statute of limitations begins to run upon discovery of the facts constituting the violation.  Opp. at 29 (citing *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010)); *see also* 28 U.S.C. § 1658(b)(1).  However, Plaintiffs argue they had no obligation to use reasonable diligence to discover facts constituting the violation and, in any event, could not have pleaded the elements of a securities fraud claim until July 5, 2016, when the NYT Article first revealed the "fraud."  Opp. at 29 n.16, 30 (citing CC ¶¶ 48, 55).  These arguments fail.

First, Plaintiffs are incorrect that they had no duty to investigate.  The Supreme Court in *Merck* held that the clock begins running when a reasonably diligent plaintiff would have discovered the facts constituting the violation.  559 U.S. at 653; *see also 100079 Canada, Inc. v. Stiefel Labs., Inc.*, 596 Fed. App'x. 744, 747-48 (11th Cir. 2014) ("discovery" for purposes of § 1658(b) includes facts plaintiffs would have known had they exercised reasonable diligence).  *Merck* did not abrogate case law regarding when events—referred to in *Merck* as "storm warnings"—would have prompted a reasonably diligent plaintiff to investigate.  559 U.S. at 652-53 ("inquiry notice" and "storm warnings" may help identify when the facts would have prompted a reasonably diligent plaintiff to investigate).  Thus,

2

in the Eleventh Circuit, Plaintiffs must use reasonable diligence.  *100079 Canada*, 596 Fed. App'x. at 748 (noting *Merck*'s discussion of reasonable diligence).

Here, accepting Plaintiffs' theory of the case, a reasonably diligent plaintiff would have had sufficient information to plead the elements of a securities fraud claim by October 30, 2013.  Mot. at 16.  By this time, the "missed" May 2014 commercial operational date ("COD"), the financial incentives that Plaintiffs claim motivated Defendants to lie, and the Monitor's November 2012 report on construction delays were known.  CC ¶¶ 79-88, 131(h), 169-175, 214.  Plaintiffs would have thereafter discovered widespread media attention regarding the Monitor's April 2014 report (questioning whether the May 2014 COD had been realistic) and further extensions of the COD in August and October 2014.  Mot. at 16 n.6.  These facts, which comprise the bulk of the CC, were available long before January 20, 2015—two years before this lawsuit was filed.  *See* Opp. at 29-30.

To avoid this outcome, Plaintiffs repeat their conclusory allegation that the July 5, 2016 NYT Article was "the first public revelation of the *fraud*" that allegedly occurred from April 2012 to October 2013 (*id*. at 30 (citing CC ¶¶ 48, 55)), while "the October 2013 announcement, news articles in 2013 and 2014, and the [] Monitor's April 2014 report at most revealed possible *mismanagement*." Opp. at 33.  This argument fails because the NYT Article did not reveal fraud.  As

Plaintiffs acknowledge, the Article featured a debate about whether construction delays were "partly the result of *mismanagement or* fraud." *Id*. at 31. Plaintiffs do not explain why a reasonably diligent plaintiff would not have asked this question much earlier. Moreover, Plaintiffs point to witness accounts from recorded phone conversations that were "never revealed publicly before" the NYT Article—but these conversations did not occur until *August 2014* or later, ten months after the end of the Class Period, and thus could have revealed nothing about the supposed fraud alleged in the CC. Ex. 46 (NYT Article) at 10. Indeed, according to the Article, the conversation in which Mr. Wingo was allegedly told that managers were being "told to lie" (Opp. at 31) occurred at least *six months after* Mr. Wingo began recording calls—that is, sometime in 2015—and thus revealed nothing about the Class Period. Ex. 46 at 11. And while Plaintiffs argue the Article revealed Mr. Wingo's belief that in 2012, "we had a purposely broken project schedule that was designed to confuse everybody" (Opp. at 31), that quote is nowhere in the Article.

Finally, in a footnote, Plaintiffs point to the NYT Article's reporting on two internal company emails from 2012 reminding employees that management should approve external statements regarding Kemper. Opp. at 32, n.18. As explained below, these standard communications do not establish Defendants' scienter. *Infra* III.B. Accordingly, to the extent Plaintiffs could successfully plead securities

claims here, they could do so not based on facts that were first revealed in the NYT Article, but instead based on facts about which a reasonably diligent Plaintiff would have known well before January 20, 2015.

## II.   PLAINTIFFS FAIL TO PLEAD FALSITY

### A.   Defendants' Forward-Looking Statements Are Protected By The PSLRA Safe Harbor

Defendants showed that their statements estimating that progress on the Kemper Plant or specific components was "40% complete" or "more than 70% complete" are forward-looking because their accuracy cannot be discerned, if at all, until the future.   Mot. at 18-19.   In response, Plaintiffs assert that these statements are not forward-looking, but are statements of historical fact that were objectively measurable, and false, at the time they were made.   Opp. at 5-6; Statements 9, 11, 14, 16, 18, 21, 27, 34.[1]  Plaintiffs are incorrect as a matter of law.

Forward-looking statements can "rest both on historical observations and assumptions about future events." *Harris v. Ivax Corp.*, 182 F.3d 799, 806 (11th Cir. 1999).   Even statements that "in isolation seemingly describe . . . status quo operations" are protected in the context of a future projection.   *Barr v. Matria Healthcare, Inc.*, 324 F. Supp. 2d 1369, 1381 (N.D. Ga. 2004) (statement that

---

[1] "Statement(s)" refers to the numbered rows in Appendix A to Defendants' motion to dismiss.   ECF No. 37-2.

"[o]ur operations are *currently* functioning smoothly" was forward-looking in the context of projection regarding future performance). Accordingly, Defendants' percentage-completion statements, in the context of the projected May 2014 COD, are forward-looking. *See In re KLX Inc. Sec. Litig.*, 232 F. Supp. 3d 1269, 1280 (S.D. Fla. 2017) (statement that defendant made important progress was forward-looking in context). Plaintiffs cite to *MGM*, in which the District of Nevada held that statements regarding present construction conditions in the context of the projected ability to complete those construction projects are not forward-looking—but that is not the law in the Eleventh Circuit. *See* Opp. at 9 (discussing *In re MGM Mirage Sec. Litig.*, No. 2:09-cv-01558-GMN-VCF, 2013 WL 5435832 (D. Nev. Sept. 26, 2013)). Similarly, Defendants' statements that Kemper was "on target," "on track," or "on schedule" (Statements 4-6, 10-12, 18-21, 25-26, 29-31) were not statements of "current business conditions," as Plaintiffs label them (Opp. at 7-9), but are instead part of forward-looking estimates. *See Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1216-17 (M.D. Fla. 2014) ("we are on track to open at least 35 new stores this year" was "unquestionably" forward-looking).

Plaintiffs advance no argument that specifically addresses many of the challenged statements—that Kemper was "expected" or "scheduled" to meet the May 2014 COD. Mot. at 18-19 (Statements 2, 7, 9, 13, 23-24, 27-28, 35); *see* Opp.

at 13 n.7.  Plaintiffs suggest generally that the frequency of Defendants' statements "support[s] their actionability."  Opp. at 9-10.  The Safe Harbor contains no such caveat, *see* 15 U.S.C. § 78u-5, and the discussion in *BHP* that Plaintiffs cite for this proposition does not even address forward-looking statements.  Opp. at 9-10; *In re BHP Billiton Ltd. Sec. Litig.*, 16 Civ. 1445 (NRB), 2017 WL 3822755, at *10 (S.D.N.Y. Aug. 29, 2017) (noting in dicta that defendants' repeated statements about safety may make such statements material to investors).

Finally, Plaintiffs argue that a statement in a June 8, 2012 press release that "[t]he plant will be on line May 2014" (Ex. 9 at 1; Statement 4) is an actionable "guarantee."  Opp. at 11.  Yet Plaintiffs' case law neither identifies what constitutes a "guarantee" nor explains how such wording can negate protection for forward-looking statements accompanied by—as here—meaningful cautionary language.  *See FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1304 (11th Cir. 2011) ("[s]tatements regarding future performance are actionable only if 'they are worded as guarantees'"—but not holding that any alleged statement was a guarantee); *see also Raab v. Gen. Physics Corp.*, 4 F.3d 286, 290-91 (4th Cir. 1993) (indicating, pre-PSLRA, that projections about future performance cannot be immaterial if worded as guarantees).  In fact, cautionary language in the June 8, 2012 press release explained that statements about the completion of Kemper were

forward-looking and "not a guarantee of future performance." Ex. 9 at 1.

Plaintiffs also argue that the robust cautionary language accompanying Defendants' statements was "meaningless" because the delays about which Defendants warned had already materialized. Opp. at 13-14. To the contrary, Defendants' warnings described certain factors that had already caused delays, and cautioned about further delays; and it was those further delays that had not already materialized at the time of their warnings. *See, e.g.*, Ex. 18 at 129 ("[I]t is possible that [MPC] will experience *further* cost increases and/or schedule delays with respect to [Kemper]. Certain factors *have caused* and *may continue to cause* the costs for the Kemper IGCC to increase and/or schedule delays to occur").[2]

Plaintiffs have not shown that the specific risks that ultimately caused MPC to conclude in October 2013 that Kemper would not meet the May 2014 COD had materialized beforehand. *See* Mot. at 12; CC ¶ 212. Similarly, Plaintiffs do not provide support for their contention that Defendants did not genuinely believe their forward-looking statements, and made them with actual knowledge of falsity (a

---

[2] Plaintiffs cite *SEC v. Merch. Capital, LLC*, 483 F.3d 747 (11th Cir. 2007), to support this argument. Opp. at 14 n.8. But, unlike here, the cautionary language in that case did not change over time to account for specific risks, and instead "contained only the same general disclosures of risk that had been present from the beginning." *See* 483 F.3d at 769; Appx. B (ECF No. 37-3) at 1-4, Ex. 31 at I-20 (revising cautionary language to include *additional* risks not previously included).

standard higher than recklessness).  Opp. at 14.  Those allegations are insufficient for the reasons stated in section III.B, *infra* and Mot. at 21-23.

### B.    Statements Of Corporate Optimism Are Inactionable

Defendants showed that their statements about "good" and "great" progress at the Kemper Plant, statements that assembly of certain components was proceeding "exceptionally well," and similar statements are inactionable as immaterial puffery.  Opp. at 13; *see* Statements 1, 3-4, 8, 12, 14-15, 17, 21, 27, 33. In response, Plaintiffs do not attempt to distinguish any of Defendants' cases rejecting federal securities claims based on analogous puffing statements.  Mot. at 23-24 (citing cases).  Plaintiffs say that these statements "misrepresent the reasons for the Company's success at the time they were made."  Opp. at 12 (citing cases). But Plaintiffs rely on inapplicable case law where the statements were not puffery, and moreover were statements through which the defendants concealed improper revenue recognition.  *See, e.g., In re Sci.-Atlanta, Inc.*, 239 F. Supp. 2d 1351, 1361-62 (N.D. Ga. 2002) (holding as actionable statements about growing demand made while defendants were allegedly committing GAAP violations, as statements gave impression that business was excelling where demand was really decreasing).

Although statements of optimism may be actionable if they "assert specific, verifiable facts that reasonable investors would rely on in deciding whether to buy

or sell [an issuer's] securities" and the speaker knowingly disregarded contradictory facts (*see* Opp. at 13), no such facts are pled here. *C.f. Phila. Fin. Mgmt. of S.F., LLC v. DJSP Enters., Inc.*, 572 F. App'x. 713, 716 (11th Cir. 2014) (holding as immaterial statements about defendants' "rigorous" processes to ensure the "efficient" and "accurate" handling of foreclosures); *Anastasio v. Internap Network Servs. Corp.*, No. 1:08-cv-03462-JOF, 2011 WL 13124500, at *2-3, *10 (N.D. Ga. Sept. 30, 2011) (statement that "significant" progress had been made integrating a business was not immaterial because acquirer knew it could have to recognize a $50 million impairment on goodwill associated with the deal).

### C.   Plaintiffs Fail To Plead With Particularity That Any Challenged Statement Was False Or Misleading

Plaintiffs' Opposition fails to identify particularized facts demonstrating why any challenged statement was false or misleading.   Mot. at 24; *see, e.g.*, Statements 22, 32, 36.   First, Plaintiffs argue Defendants falsely made statements regarding certain milestones, including the statement that "specific segments of the Kemper Plant had already been installed," including the gasifier, "without incident."   Opp. at 5 (citing Exs. 14, 41, 44).   Defendants did not say this.   The September 13, 2012 press release simply reported that a section of the gasifier had been installed.   Ex. 14 at 1.   Plaintiffs do not allege that a gasifier section was not installed by that date.   *See* CC ¶ 123.   Instead, the allegations in the CC support the

10

statement.  *Id.* ¶ 109 (alleging gasifier component was delivered in September 2012).  Plaintiffs also argue Defendants stated that construction of the Kemper Plant had "proceeded without incident."  Opp. at 5.  Defendants did not say this.  A December 28, 2012 article quotes Mr. Fanning as saying, "'Everything I know, this plant was exceedingly well-built and well organized during the construction period.'"  Ex. 25 at 3.  No Defendant said that the project was "without incident."

Similarly, Plaintiffs argue that the July 31, 2013 statement that "a significant portion of the startup activities for the combined cycling units have been completed" was false—but the CC, apart from quoting that statement, does not allege anything about the combined cycle units, much less that the referenced "startup activities" had not been completed as represented.  Regarding the September 12, 2013 statement that Kemper had reached "first fire of the facility's two combustion turbines" (Opp. at 5; Ex. 44), Plaintiffs do not allege that the first fire did not occur as reported.[3]

Plaintiffs then argue that Defendants' Schedule Estimates, including the May 2014 COD projection and statements reporting on progress towards that target

---

[3] The "first fire of the combustion turbines means that a controlled flame is present in the combustion section of the turbines indicating its ability to help the facility produce electricity once fully operational."  Ex. 44 at 1.  First fire of the combustion turbines is distinct from first fire to the gasifier.  *See* Ex. 46 at 12.

(*e.g.*, that start-up activities were "40% complete" as of April 24, 2013), were false because the CC alleges delays in installing the gasifier and piping, engineering delays, and poor labor productivity.  Opp. at 5-6, 8, 12.  But nowhere does the CC allege that these statements were false based on the then-current scope of work needed to achieve the May 2014 COD, or that such problems were not accounted for in the estimates.  Instead, the alleged facts support that the delays had, in fact, been factored into the estimates.  *Compare* CC ¶ 124(a) (alleging that installation of the gasifier was delayed when components did not begin arriving until September 2012), *with* Ex. 20 at 6, 24-25 (Monitor's November 2012 report stating that the August 2012 re-baselined schedule accounted for delays).  In fact, the same Monitor's November 2012 report stating that construction had achieved a 30% completion rate, and the Plant was three months behind (Opp. at 6; CC ¶¶ 124(i), 131(e)) also concluded that the May 2014 COD was still achievable.  Ex. 20 at 6.  And the Monitor's April 2014 report, which found that by November 2012 engineering was four to 14 months behind (Opp. at 6; Ex. 45 at 48), was available only in hindsight, well after the Class Period and the revised COD.

## III.   PLAINTIFFS FAIL TO PLEAD SCIENTER

### A.   Plaintiffs' Alleged Motive Allegations Are Illogical

Plaintiffs acknowledge that allegations of motive and opportunity alone are

insufficient to plead scienter in the Eleventh Circuit.  Opp. at 33; *see Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1285 (11th Cir. 1999).  Nevertheless, they argue that federal subsidies and other financial benefits contingent on completing Kemper by the May 2014 COD provided Defendants with a "shared and powerful incentive" to commit fraud.  Opp. at 26.  As Defendants showed, these motive allegations make no sense.  Mot. at 26.  All of the alleged incentives were in place *before* the fraud allegedly commenced in April 2012, and the benefit of the alleged incentives was obtainable *only if* Kemper was actually completed by May 2014 or shortly thereafter—and so, deceiving investors about being "on track" in the interim made no difference.  *Id*. (citing CC ¶ 175).  Plaintiffs respond only in a footnote, arguing that admitting interim delays "would alarm investors and project partners, invite media and regulatory scrutiny, and cause a stock decline"—all of which Defendants "sought to avoid . . . as long as possible."  Opp. at 27, n.14.  No alleged facts support this theory, and instead contradict it, given that the Company announced in October 2013—over 7 months before the May 2014 COD—that Kemper would not be operational by May 2014.  CC ¶¶ 209, 212, 214.

Plaintiffs' reliance on *Medina* and *Pet Quarters* is misplaced.  Opp. at 27.  In *Medina v. Clovis Oncology, Inc.*, plaintiff alleged that defendants had an incentive to mislead investors about the efficacy of a drug in order to attract investor capital,

without which the company could not operate.  215 F. Supp. 3d 1094, 1128 (D. Colo. 2017).  The court found that plaintiff alleged a cogent motive.  *Id.*  Here, the facts are the opposite—the Company could, and did, operate without the alleged contingent financial benefits, given that it announced seven months prior to May 2014 that it would not achieve the COD.  *Pet Quarters, Inc. v. Badian* says only that a "unique motive" can give rise to an inference of scienter in the Eighth Circuit—but not an implausible motive.   No. 4:04-CV-697 (RSW), 2007 WL 1020538, at *7 (E.D. Ark. Mar. 30, 2007).   Finally, Plaintiffs do not dispute the lack of insider stock sales, or attempt to distinguish well-established case law holding that the absence of such sales undermines scienter.  Opp. at 27.  Plaintiffs' sole authority, *Miller v. Dyadic Int'l, Inc.*, stands for the uncontroversial proposition that the absence of insider trading does not negate otherwise sufficient scienter allegations.  No. 07-80948-CIV-DIMITROULEAS, 2008 WL 5070279, at *13 (S.D. Fla. Nov. 25, 2008).  Such allegations are missing here.

### B.     Plaintiffs Fail To Plead Severe Recklessness Through Monitoring The Kemper Plant, Unreliable Witness Allegations, And The Magnitude Of The Scheduling Delay

Plaintiffs fail to plead specific facts supporting an inference of recklessness. *First*, Plaintiffs argue that Defendants actively managed and closely monitored the Kemper Plant, reported on progress at Kemper on quarterly calls and in press

releases, and visited the Kemper construction site.  Opp. at 24-25; CC ¶¶ 74-75, 179-80.  But no alleged facts state what each Defendant knew from his site visits, and how that information contradicted public statements about the May 2014 COD and progress toward that goal.  That is, the piping delays that Plaintiffs allege were visible to Defendants Fanning, Day, Holland, Huggins, and Anderson (Opp. at 19) are insufficient to show that they could not be effectively addressed in time to achieve the May 2014 COD, and therefore do not contradict any of the challenged statements.  *See In re ValuJet, Inc.*, 984 F. Supp. 1472, 1479-80 (N.D. Ga. 1997) (cited at Opp. at 20) (scienter alleged where safety problems and a FAA investigation contradicted defendants' public statements about airline's safety).[4]

Plaintiffs also argue that Fanning's, Beattie's, Day's, and Holland's Sarbanes-Oxley certifications support scienter.  Opp. at 20.  But the CC does not

---

[4] Plaintiffs' other cases are in accord.  Opp. at 24-25 & n.13, citing, *inter alia*, *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, No. CV 10-2847-IPJ, 2011 WL 12855820, at *8 (N.D. Ala. June 7, 2011) (scienter pled where defendants received data on risk-adjusted, deteriorating performance that directly contradicted their loan loss reserve statements); *Winslow v. BancorpSouth, Inc.*, No. 3:10-00463, 2011 WL 7090820, at *23 (M.D. Tenn. Apr. 26, 2011) (scienter pled where defendants had details of loans that directly contradicted statements regarding their loan portfolio and conservative lending policies); *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 197-98 (S.D.N.Y. 2010) (scienter pled where sixteen witnesses told defendants about insufficiently hedged mortgage portfolios in direct contradiction to defendants' statements regarding loan purchasing discipline).

identify any construction delays or problems that were known to, but ignored by, these Defendants—instead, the alleged facts support that Defendants believed the problems could be timely addressed.  CC ¶¶ 78, 195; *see Waterford Township Gen. Emps. Ret. Sys. v. BankUnited Fin. Corp.*, No. 08-CIV-22572, 2010 WL 1332574, at *18 (S.D. Fla. Mar. 30, 2010) (SOX certification did not support scienter where plaintiffs failed to allege red flags known to and ignored by certifying defendants).

*Second*, Defendants demonstrated that none of the Plaintiffs' confidential witnesses interacted with any Individual Defendant or described what the Individual Defendants actually knew.  Mot. at 29-31.  In response, Plaintiffs repeat the allegations that these witnesses discussed with *other* employees or supervisors that construction of the lignite conveyor system experienced delays in 2013, and their personal belief that the May 2014 COD would be challenging to meet.  Opp. at 22.  These allegations add nothing to an inference of scienter.  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1248 (11th Cir. 2008) (discounting CW allegations where the CWs were not alleged to have interacted with any defendant).

Moreover, the monthly meetings that Anderson and Huggins allegedly attended do not raise an inference of scienter because the allegations state only that gasifier delays and the "impact on the schedule" were discussed—not that anyone concluded that May 2014 was no longer possible.  CC ¶¶ 58-61.  Defendant Day is

not alleged to even have been at these meetings.  *Id*.  Because the information discussed at the alleged meetings did not contradict any challenged statement, Plaintiffs' cases are inapplicable.  Opp. at 21, citing *In re Immucor Inc. Sec. Litig.*, No. 1:05-CV-2276-WSD, 2006 WL 3000133, at *2, *18 (N.D. Ga. Oct. 4, 2006) (recklessness pled for CEO who regularly consulted with the president directly involved in multiple acts of bribery, and where complaint alleged the CEO knew the substance of reports criticizing company's compliance practices); *In re Catalina Mktg. Corp. Sec. Litig.*, 390 F. Supp. 2d 1110, 1115 (M.D. Fla. 2005) (recklessness pled where complaint alleged specific internal forecasts contradicting the projected revenues and defendants were personally warned of declining sales).

While Plaintiffs point to Mr. Wingo's belief that gasifier delays in 2012 doomed the May 2014 COD (Opp. at 19), Plaintiffs do not allege that Mr. Wingo shared his concerns with any Individual Defendant during the Class Period.  Mr. Wingo's alleged private opinion of the feasibility of a corporate goal is irrelevant.  *See In re HomeBanc Corp. Sec. Litig.*, 706 F. Supp. 2d 1336, 1350 (N.D. Ga. 2010) (rejecting CW allegations based on opinions where there was no suggestion that defendants shared the same view).  Similarly, the allegation that Mr. Wingo reported to two managers around June 2013 that he did not think the COD was achievable and noted delays in a cultural survey (Opp. at 19 (citing CC ¶ 66)) does

not connect any alleged fact to any Individual Defendant.  Plaintiffs' authority is in accord.  *In re Petco Animal Supplies Inc. Sec. Litig.*, No. 05-CV-0823-H RBB, 2006 WL 6829623, at *20 (S.D. Cal. Aug. 1, 2006) (no scienter given lack of allegations that defendants knew about employee survey) (cited at Opp. at n.10).

Similarly, the summaries of recorded conversations as reported by the *New York Times* (Opp. at 15-17) do not support a strong inference of recklessness. None of these (unknown and unidentified) individuals are reported to have had any direct interactions with any Defendant, much less expressed concerns to any Defendant during the Class Period.  *See In re Altisource Portfolio Solutions, S.A. Sec. Litig.*, No. 14-81156 CIV-WPD, 2015 WL 12001262, at *13 (S.D. Fla. Sept. 4, 2015) (former employee's knowledge of fraud did not imply knowledge by executives absent allegations that problems were communicated to the executives). Instead, the individuals quoted in the Article allegedly shared concerns with Mr. Wingo—in recorded conversations starting in August 2014, long after Defendants had already publicly disclosed that the Kemper Plant was behind schedule.

With respect to the internal emails described by the NYT, Plaintiffs concede that these instructions are "standard fare," but argue that because such instructions were sent in "ad hoc e-mails" that were not standard protocol, they constitute internal directives to conceal fraud.  Opp. at 17.  The "ad hoc" characterization

adds nothing.  The CC points to just two emails reminding employees to have external communications approved by senior management, and not to speculate publicly regarding Kemper's status.  CC ¶¶ 167-68.  These emails do not direct anyone to conceal purported scheduling delays.  Mot. at 33-34.  Accordingly, Plaintiffs' cases have no bearing here.  Opp. at 17-18, citing *Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1124 (C.D. Cal. 2012) (allegations stated that company staged a fake tour where large trucks arrived at the facility and waited for investors, to hide lack of production); *In re Nature's Sunshine Prods. Sec. Litig.*, 486 F. Supp. 2d 1301, 1310-11 (D. Utah 2007) (allegations suggested a "cover-up" where defendants reassured that financial statements were accurate after being told by auditors that they were not).

*Third and finally*, Plaintiffs urge the Court to infer scienter from the fact that in June 2017, nearly four years after the Class Period, the Company announced that the Kemper Plant will not function as a "clean coal" plant due to unforeseen design flaws with the gasifier.  Opp. at 28.  But the magnitude of the scheduling "miss" due to design error does not support an inference that Defendants knew back in 2012 and 2013 that the May 2014 COD was unachievable for this "first-of-its-kind" project.  *Id.*  As Plaintiffs allege, the Company pushed back the COD twelve times between October 2013 and June 2017.  Opp. at 3-4.  The more compelling

inference is that the Company warned of risks and believed it could overcome delays and design problems until it concluded it could not.  *Supra* Section II.C.

## IV.   PLAINTIFFS FAIL TO STATE A SECTION 20(a) CLAIM

Plaintiffs agree that their Section 20(a) claims cannot survive independently of their Section 10(b) claims.  Opp. at 34.  Plaintiffs' Section 20(a) claims against Defendants Holland, Day, Huggins, and Anderson also fail because the CC does not allege that they had the "power to control the general affairs" of Southern.  Mot. at 35.  Plaintiffs argue that Day and Holland were Southern executives until May 2013, and signed Form 10-Qs and SOX certifications.  Opp. at 34.  This does not show "participation in the day-to-day affairs of the corporation."  *In re Healthsouth Corp. Sec. Litig.*, No. CV-98-J-2634-S, 2000 WL 34211319, at *49 (N.D. Ala. Dec. 13, 2000).  Likewise, Huggins' and Anderson's positions as MPC executives (Opp. at 35) do not establish control of Southern.  *Brown v. Enstar*, 84 F.3d 393, 397 (11th Cir. 1996) (chairman of subsidiary's board was not a control person of parent).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the CC with prejudice.

Dated: October 11, 2017                    Respectfully submitted,

                                   By:  _/s/ Michael J. McConnell_____
                                        Michael J. McConnell
                                        Ga. Bar No. 485003
                                        Walter W. Davis
                                        Ga. Bar No. 213083
                                        Robert A. Watts
                                        Ga. Bar No. 793350
                                        JONES DAY
                                        1420 Peachtree Street, NE
                                        Suite 800
                                        Atlanta, GA 30309-3053
                                        Telephone: (404) 521-3939
                                        Facsimile: (404) 581-8330

                                   By:  _/s/ Michele D. Johnson_____
                                        Michele D. Johnson
                                        (*admitted pro hac vice*)
                                        Kristin N. Murphy
                                        (*admitted pro hac vice*)
                                        LATHAM & WATKINS LLP
                                        650 Town Center Drive, 20th Floor
                                        Costa Mesa, California 92626
                                        Telephone: (714) 540-1235
                                        Facsimile: (714) 755-8290

                                        Sarah A. Tomkowiak
                                        (*admitted pro hac vice*)
                                        LATHAM & WATKINS LLP
                                        555 Eleventh Street, NW Ste. 1000
                                        Washington, D.C. 20004
                                        Telephone: (202) 637-2200
                                        Facsimile: (202) 637-2201

                                        *Attorneys for Defendants*

21

## <u>LOCAL RULE 7.1D CERTIFICATION</u>

Counsel hereby certifies that the text of this memorandum of law (brief) has been prepared with Times New Roman 14 point font, one of the font and point selections approved by the Court in Local Rule 5.1B.

By: */s/ Michael J. McConnell*
      Michael J. McConnell
      Ga. Bar No. 485003
      Walter W. Davis
      Ga. Bar No. 213083
      Robert A. Watts
      Ga. Bar No. 793350
      JONES DAY
      1420 Peachtree Street, NE, Ste. 800
      Atlanta, GA 30309-3053
      Telephone: (404) 521-3939
      Facsimile: (404) 581-8330

By: */s/ Michele D. Johnson*
      Michele D. Johnson
      (*admitted pro hac vice*)
      Kristin N. Murphy
      (*admitted pro hac vice*)
      LATHAM & WATKINS LLP
      650 Town Center Drive, 20th Floor
      Costa Mesa, California 92626
      Telephone: (714) 540-1235
      Facsimile: (714) 755-8290

      Sarah A. Tomkowiak
      (*admitted pro hac vice*)
      LATHAM & WATKINS LLP
      555 Eleventh Street, NW Ste. 1000
      Washington, D.C. 20004
      Telephone: (202) 637-2200
      Facsimile: (202) 637-2201
      *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 11, 2017, I electronically filed the

foregoing Defendants' Reply in Support of Their Motion to Dismiss the

Consolidated Complaint with the Clerk of the Court using CM/ECF, which will

deliver the document to all counsel of record who have appeared in the action.

By: _/s/ Michael J. McConnell_
        Michael J. McConnell
        Ga. Bar No. 485003
        Walter W. Davis
        Ga. Bar No. 213083
        Robert A. Watts
        Ga. Bar No. 793350