```
 1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF GEORGIA
 2                          ATLANTA DIVISION


 3


 4   Monroe County Employees'              CIVIL ACTION NO.
     Retirement System et al.,             1:17-cv-00241-WMR
 5

 6              Plaintiffs,
                                           Atlanta, Georgia
     vs.                                   Monday, June 15, 2020
 7

 8   The Southern Company et al.,

              Defendants.
 9


10


11           TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
              BEFORE THE HONORABLE WILLIAM M. RAY, II
12               UNITED STATES DISTRICT COURT JUDGE


13


14
     Appearance of Counsel (all telephonically):
15

16   For Plaintiff:               Debra J. Wyman, Esq.
                                   Darryl J. Alvarado, Esq.
17                                 Robbins Geller Rudman & Dowd

18   For Defendant:               Evan P. Singer, Esq.
                                   Michael Joseph McConnell, Esq.
19                                 Jones Day

20


21

     Court Reporter:              Judith M. Wolff, CRR
22                                Official Court Reporter
                                  1914 United States Courthouse
23                                75 Ted Turner Drive, S.W.
                                  Atlanta, Georgia  30303-3361
24                                (404) 215-1317
                                  judith_wolff@gand.uscourts.gov
25
```

STENOGRAPHICALLY REPORTED, COMPUTER-AIDED TRANSCRIPT

```
 1        (Court was called to order at 9:33 a.m.)
 2             THE COURT:  Good morning.  This is Judge Ray.
 3             I'm going to assume that all the lawyers are present
 4   today.  I'm a little bit late.  I dialed the wrong number and
 5   the first thing I heard was if I was over 50, to hit a button
 6   and I was going to get some kind of special.
 7             So I don't know who I called, but they were going to
 8   give me a good deal.
 9             All right.  So I have read through what you all
10   submitted.  And we're remote today.  Normally, I would be at
11   the courthouse, but there is a big protest at our building
12   today.  So we're not in our building today in light of recent
13   history and the activity around the area of the courthouse.
14             So I'm speaking to you through my cell phone.  If
15   anybody can't hear me at any time, let me know.
16             So I read through both of the documents that were
17   submitted.  And most of the attachments I have looked at.  I
18   can't tell you that the attachments that the plaintiffs had
19   that were the handwritten notes, that I have gone through
20   those with a fine-tooth comb.  I'm justing waiting for you to
21   tell me what they mean when we talk about that subject matter.
22             But I think the first thing I would like to talk
23   about is the issue about the communication between the
24   attorney for Southern Company, and I don't remember if it's
25   the CEO or CFO or who he was speaking with.
```

```
 1              I'll let the defendants, it's the defendants' desire
 2    to exclude that document, and I'll let you go first and talk
 3    about it.  And then I'll call on the plaintiffs.
 4              Identify who you are, before you speak.  If you
 5    change speakers, like if we go to a different topic and it's a
 6    different person speaking for the plaintiff or the defendant,
 7    if you will identify yourself then as well, so that the court
 8    reporter will know who it is.  It helps to create the record.
 9              MR. SINGER:  Good morning, your Honor.  This is Evan
10    Singer, from Jones Day.  I'll be speaking on this point.
11              On this item, your Honor, what defendants are looking
12    for from the Court is an order that directs the plaintiffs to
13    return or destroy the email that they saw.  That's Exhibit 1
14    to our submission.
15              Our position is that it reflects the confidential
16    communication that was made for purposes of legal advice
17    between the then general counsel for Southern, Mr. Holland,
18    and as you correctly recall, the CEO, Mr. Fanning.
19              THE COURT:  If I could ask you, is it -- so, let me
20    make sure I understand the document.
21              It's talking about an unrelated matter, mostly, about
22    a phone call that needed to be made to somebody, I guess there
23    was a lawsuit pending or contemplated, and then there is a
24    brief mention about the subject matter that came to be part of
25    this lawsuit.
```

```
1              Am I interpreting that document right?

2         MR. SINGER:  Yes, your Honor.

3         THE COURT:  All right.  Go ahead, sir.

4         MR. SINGER:  Okay.  The document was inadvertently

5    produced to the plaintiffs back in July of last year.  After,

6    the defendants, we realized the document had been produced, we

7    sent a notice to the plaintiffs recalling it, and asking them

8    to return or destroy it based the provisions of the protective

9    order.  Plaintiffs objected to that.

10             We met and conferred, but no agreement could be

11   reached, so now we're here before you seeking relief.

12             It's our contention that the email, as I said, is

13   privileged because it's a confidential communication between

14   an attorney and the client for purposes of legal advice.

15             To support that contention, you probably saw we

16   submitted a declaration from Mr. Holland, the then general

17   counsel of Southern Company.  In that declaration he states

18   that in his view the entire discussion reflected in that email

19   chain, which as you correctly noted, your Honor, refers to a

20   few different subjects, reflects legal advice that was being

21   sought from him by the CEO, and which he in turn provided.

22        THE COURT:  Let's break that down, okay?  Because the

23   submittal that you -- or the argument that you have in your

24   brief is that his affidavit or declaration is almost proforma

25   the end of the issue.  And that can't be the law.
```

1          I mean, it certainly could be pretty strong evidence,

2     but, you know, nomenclature doesn't govern anything.  It's

3     what it is that matters.

4          So let's talk about the stuff that he was talking

5     about related to the other issue, not the issue in our

6     lawsuit.

7          My impression of reading that is it was about the

8     logistics of a phone call.  So how is the logistics of the

9     phone call, what's privileged about that?  I mean, there

10    certainly is no confidential advice given about the other

11    issue.

12         Now in some regards, I'm not sure why we even care,

13    because it's obviously not relevant to the lawsuit that we've

14    got.  But while -- and let me also note that I thought it was

15    pretty interesting that Mr. Holland was suggesting it would be

16    inappropriate for him to participant in a phone call, but not

17    inappropriate for him to listen in without the other party

18    knowing.

19         That was kind of interesting, personally.

20         But in any event, I just didn't see anything about

21    that that was about advice, just about whether or not to

22    listen, or not, or participate, or not.

23         MR. SINGER:  I think, your Honor, from our

24    perspective, it relates to the strategy of that call.  And who

25    participates in it can have an effect on -- it could be legal

```
 1  advice of how the call will go and potential responses from
 2  the other side.
 3          We think that -- so our view is that is part of the
 4  advice, legal advice that he has given.
 5          THE COURT:  Yeah.  I think that's a pretty weak
 6  argument, honestly, Mr. Singer.
 7          So let's talk about the other part of it.  The part
 8  about, I mean, are you trying to use that discussion about
 9  this other unrelated matter to clawback the document only?  Or
10  is there something about this discussion about the Monroe
11  County plant that was otherwise privileged?
12          MR. SINGER:  You know, in our view, as I said, your
13  Honor, the entire email reflects privileged communications.
14  But you're right in that there is a portion that talks about
15  the Monroe County plant, and that's specific to this lawsuit.
16          THE COURT:  Okay.  So what is your understanding
17  about the value of that statement, when Mr. Holland asks about
18  the Monroe County and he references disclosure, and then there
19  is a discussion that the CEO is more interested in governance
20  issues than disclosure?
21          What about that is even relevant to our lawsuit?  How
22  do you understand the plaintiff would seek to use that?
23          MR. SINGER:  I think that's, frankly, a question
24  better asked of the plaintiffs, your Honor.
25          But from our perspective, I mean, they're talking
```

```
 1   about the Kemper plant, which is the subject of this lawsuit,
 2   and it's a communication between -- from the CEO, the general
 3   counsel, looking for legal advice about disclosures related
 4   thereto.  And for that purpose, we view it as privileged.
 5            THE COURT:  Okay.  Well, do you mind if I turn it
 6   over and go ahead and ask the plaintiffs to weigh in?  Or do
 7   you have anything else that you want to talk to about on that
 8   document?
 9            MR. SINGER:  No.  That's fine, your Honor.  Thank
10   you.
11            THE COURT:  Okay.  Who is speaking on behalf of the
12   plaintiff?
13            MR. ALVARADO:  Good morning, your Honor.  This is
14   Darryl Alvarado.
15            THE COURT:  Good morning, Mr. Alvarado.
16            MR. ALVARADO:  So the bottom part of this email that
17   you have been discussing with Mr. Singer is, we agree, not the
18   focus of the email.  And we would be happy for that to be
19   redacted if they think that that's privileged.
20            We sort of agree with the comments you've made, that
21   that doesn't appear to be privileged either, but what we're
22   really speaking about is the top portion which relates to the
23   Kemper plant.
24            I heard Mr. Singer say that Holland's declaration
25   states that's Fanning's, you know, stock legal advice for
```

```
 1    them.  I don't think it says that.  And I think, fortunately,
 2    we have the benefit of the document itself, and it's clear
 3    that there is no request for legal advice.
 4              In fact, it appears as though Holland thinks that
 5    Mr. Fanning has a disclosure issue as it relates to Kemper,
 6    but Mr. Fanning quickly corrects him, and he says I have no
 7    issue with disclosure.  And then he points out that his
 8    problem really is with the project governance -- of the
 9    project, how it's going.  That, we think, is relevant.
10              And we think that that's purely a business comment
11    and not a request for advice, and he doesn't receive legal
12    advice in response to his business observation that things are
13    not going well at Kemper.
14              THE COURT:  Well, I mean, I think you would agree a
15    lawyer can give legal advice, even if it's not requested,
16    right?  I mean, I'm sure you've given legal advice to your
17    clients on stuff that they didn't want.
18              I used to represent a lot of builders and developers
19    and would give them legal advice all the time that they didn't
20    like or appreciate, and sometimes they would take it and
21    sometimes they didn't.
22              But when Mr. Holland communicates to the CEO about
23    his thoughts about disclosure, I think he said that was the
24    best way to go or, you know, to happen or something.  I'm
25    paraphrasing.  Wouldn't that be legal advice?
```

```
 1          MR. ALVARADO:  So, you know, what's happening around
 2   this time is there's about to be a disclosure that includes a
 3   large amount of money, you know, that says something to the
 4   effect of -- and I don't remember exactly what it is -- but,
 5   you know, we may go over budget between 100 and 200 million,
 6   or whatever it is.
 7          And it appears as though Holland believes that
 8   Fanning is upset that they are going to disclose it at all, or
 9   that the range is so large.  And Fanning tells him, you know,
10   the punch line of the email, from plaintiffs' perspective, is
11   he tells him I don't care about the disclosure; I'm upset that
12   the project is being governed the way it is.
13          You know, I think that that's clearly relevant
14   factual information from the CEO related to the project that's
15   at issue in this case.
16          And I think that, you know, I don't really think that
17   Mr. Holland's email, unsolicited, reflects legal advice, but
18   if it does, I mean, Mr. Fanning's response dispels any of
19   that.  And his response --
20          THE COURT:  Well, wait one second.  Let's back up.
21          Mr. Fanning can't -- he can't change the nature of
22   the communication that his lawyer made to him by his response,
23   can he?  I mean that doesn't change what the intent of the
24   attorney's disclosure or statement was, does it?
25          I mean if I told my client you need to do this, and
```

1  my client says you're crazy, I'm not, you know, no.  That's

2  not what we're talking about.  That doesn't change the nature

3  of what I disclosed when I disclosed it.

4        I mean it seems to me you're trying to argue, you

5  know, it's the tail wagging the dog scenario, because the CEO

6  basically said he was interested in a different issue, that

7  you're using the CEO's -- what he wanted to talk about or what

8  his concern was change the nature of the -- of what the lawyer

9  was telling him.

10        I mean, I just don't see how that works.

11        And as I have maybe forecasted, I'm just not so sure,

12  I mean, we're fighting over the existence of the plaintiffs'

13  possession of this document, but I have indicated that I think

14  it's dubious whether it would be admissible anyway as to the

15  relevance as we move forward in this case given what the

16  plaintiffs' theories in this case are.

17        But we'll stick to the disclosure part of it or the

18  nature of it, the characterization of it.

19        I mean, when he's talking about disclosure, there is

20  a legal obligation to do that, right?  In fact that's what

21  your lawsuit is about, is that they didn't disclose what they

22  should have disclosed as soon as they should have; right?

23        MR. ALVARADO:  Right.  Yes.

24        THE COURT:  And the lawyers say and I think you need

25  to disclose.  We don't know exactly what he's talking about.

1    I mean, you know about more about the case than I do, you've

2    got the timeline all collated, but it seems like you think

3    that he's talking about information that would be relevant to

4    your case.  But that seems like legal advice to me.

5           So I'll give you another opportunity, without

6    interpreting you, to tell me why my questions are wrong.  But

7    that's how I read it, at least at this time.

8           MR. ALVARADO:  I think I would just say that, you

9    know, the analysis as to what the primary purpose of the

10   communication is, we think, on balance, and when you look at

11   the document holistically, the document's purpose, the

12   communications back and forth at the top between Mr. Fanning

13   and Mr. Holland as it relates to the Kemper plant, we believe

14   that the primary purpose is one relating to business issues,

15   and not legal advice.

16          THE COURT:  But am I missing something?  Is there

17   some other disclosure that they talked about, other than just

18   the one time that they went back and forth?  Holland says

19   something, and then Fanning says something, and then that sort

20   of ends it, right?

21          MR. ALVARADO:  I'm not following.  Can you ask -- I'm

22   sorry.  Can you ask your question one more time?

23          THE COURT:  Yeah.  Give me just a second.  Let me

24   find that.

25          One of the perils of working at home is I have a cat

1   that keeps on jumping in my lap and causing me to lose my

2   place.

3          Let's see.  I'm going to find the email.  Okay.  So

4   I'm at it.

5          I guess it was November 6, at 5:01, where there's a

6   statement made about the phone call.  And then Mr. Holland

7   says, Art indicated you have issues with the range of the

8   contingency on Kemper.  Understand the issue, but think it is

9   better from a disclosure standpoint that obviously moves

10  around and is not exact.

11         So that's what Mr. Holland says.

12         And then Mr. -- I'm sorry.  What's the CEO's name?

13  Mr. Fanning.  Mr. Fanning says, My issue is not with the

14  disclosures, but with project governance.

15         And then I guess Mr. Holland said, I understand, I

16  think it would be good for you to talk directly with Tommy.

17  Know you already have, but another time for emphasis would not

18  hurt.

19         Who is Tommy, by the way?

20         MR. ALVARADO:  That's Tommy Anderson, who is another

21  defendant in this case.

22         THE COURT:  Okay.  I mean, that statement, itself, of

23  course doesn't tell me, personally, anything.  It may have

24  some significance to you.

25         But the things that I have read are the only things

1  in this email that are related to Kemper -- or excuse me,

2  related to Monroe, whatever you want to call the plant.

3  That's it, right?

4         MR. ALVARADO:  That's right.  The portions that you

5  read are the only ones, in plaintiffs' view, that are related

6  to the Kemper plant.

7         THE COURT:  To the extent that you want to answer,

8  and I'm not going to require you to reveal your mental

9  impressions that might be better saved for later in your case,

10  but is there any way you can enlighten me what you think about

11  Mr. Holland's suggestion that Mr. Fanning speak to Tommy, what

12  that has to do with?

13         MR. ALVARADO:  You know, I'm not sure.  That would

14  probably be better left for Mr. Fanning's deposition.  I mean,

15  I think, interpreting the document, it looks like Mr. Holland

16  is telling him that he should speak with Tommy, who was sort

17  of an on-the-ground project manager, one of the primary

18  managers of the construction, to sort of assuage his concerns

19  about all the project governance failures that Mr. Fanning was

20  articulating in the email to Mr. Holland.

21         THE COURT:  Okay.  You don't -- do you know -- do you

22  have any idea at this point that you want to share that you

23  think these project governance problems were, other than

24  timing?  I know there were cost overruns and things like that.

25         I mean --

```
 1          MR. ALVARADO:  Yeah.  I mean, just sitting here, I
 2   think it's the whole panacea of, you know, by this point there
 3   were many problems floating around the project, costs and
 4   schedule chief among them.
 5          So I think that's likely the purpose of Mr. Fanning's
 6   upset and probably what he's referring to, but I don't know
 7   for sure.
 8          THE COURT:  All right.  Mr. Singer, so you want the
 9   document destroyed or returned.  But, you know, the plaintiff
10   knows about it.  So if the document is destroyed or returned,
11   what happens then?
12          There are going to be some depositions taken, and I
13   can see if the plaintiff wants to ask, at least generally, in
14   or about this same date, to Mr. Fanning, what were your
15   concerns about project governance at that time?
16          I mean, that would be okay, wouldn't it?
17          MR. SINGER:  Yeah.  I think I would agree with your
18   Honor that the underlying facts are not privileged.  And if
19   the plaintiff, in a deposition, wants to ask about whatever
20   questions they have about project governance, they can do
21   that.  They're just not entitled to get the privileged
22   communication related thereto.
23          And so from our perspective, we want it returned or
24   destroyed.  I don't think they should be allowed to use the
25   portions that the Court would find or rule that are
```

```
1   privileged.  They can't use that in a deposition.
2           If it helps resolve this issue, your Honor, I think
3   defendants would be amenable to redacting everything above
4   where you started, where it says, Art indicated you have
5   issues.
6           You know, that's the portion that we believe reflects
7   legal advice and relates to the Kemper project, and I think
8   redaction of that would be appropriate.
9           THE COURT:  This is what I'm trying to nail down on.
10  Use the document, pull it out, mark it as an exhibit, show it
11  to the witness.  I understand how that would work, if it's
12  excluded.
13          But what about asking Mr. Holland, or -- not
14  Mr. Holland, probably -- Mr. Fanning, Mr. Fanning, on November
15  6, on or after November 6, did you have issues with project
16  governance?
17          And then he would answer the question, you know,
18  however he answers it.
19          On or after that date, did you speak with Tommy about
20  your concerns?  He says whatever he says about that.
21          I mean, that's using it, inherently, because he now
22  knows that those things happened, that those comments were
23  made.  He doesn't know, I guess, whether or not Fanning went
24  and talked to Tommy or not but, I mean, he probably did,
25  Fanning probably did.
```

1        And he's able -- I mean, he would be able to ask all

2    those questions.

3        Now, he knows about the communications with

4    Mr. Holland where Mr. Holland is suggesting that Fanning go

5    talk with Tommy so, you know, I guess he's inherently using it

6    when he starts asking the questions the way I framed them.

7        But do you agree that he would be able to ask those

8    kinds of questions?

9        MR. SINGER:  I don't know that I would agree with

10   that, your Honor.  If, you know, the basis of it is from that

11   privileged communication, that he shouldn't ask and shouldn't

12   be using, I don't think it would be appropriate to ask

13   questions that were based on the knowledge of that document.

14       If there is some other document that is not

15   privileged that would form the basis of that question, I don't

16   think we would have grounds to object to it.  But using this

17   document, I think that would be inappropriate.

18       THE COURT:  I'm going to suggest that you have no

19   case that would say that.  Because what you're saying is I'm

20   supposed to tell the attorney that he erase from his mind that

21   a fact occurred, not the conversation with Mr. Holland, but a

22   fact occurred that Mr. Fanning had issues with corporate

23   governance -- or, not corporate governance, but manning the

24   governance of this project.

25       And indeed, if Mr. Fanning were to say I had no

1  issues with corporate governance or project governance on the

2  6th, that may actually open the door for the use of this

3  actual document, at least from a refreshing his memory

4  standpoint, but possibly from a perjury standpoint.

5       I mean, because the issue of project governance is

6  not a privileged issue.  I mean, that's not legal advice that

7  the lawyer is giving.  The lawyer is not telling his client

8  anything about corporate governance; the client is telling his

9  lawyer.  And that doesn't seem to be for purposes of legal

10 advice.

11      So I guess what I'm saying is look, I agree that the

12 bottom portion of this document, I don't believe is privileged

13 at all.  So I agree.  That's what I believe.  Like I say, I

14 agree with the plaintiff, that it's not privileged.  Nor do I

15 think it's relevant at all, anyway.

16      But the top part of this document, I think the

17 lawyer's statement to his client about disclosure, I can't see

18 anything other than that was a privileged piece of advice that

19 the lawyer was giving his client.

20      But the response to what the lawyer was saying

21 doesn't appear to be designed to elicit communications or

22 elicit legal advice from his lawyer.

23      But I'm willing to say that the document is not

24 usable, so long as the deponents, the witnesses, are not

25 denying that they had an issue with project governance at that

1  time.

2        Because if they are going to deny that, then they're

3  opening the issue of necessity for this document to be used

4  for purposes of impeachment.  Because there would be no other

5  way really, probably, to impeach Mr. Fanning on that point,

6  assuming that there are other witnesses who will not

7  substantiate it.

8        It would be silly for Mr. Fanning to say that he

9  didn't have an issue with governance at that time, to the

10  extent that that's relevant.  I'm not sure that, you know, how

11  relevant that actually is at this point.  But I'm not making

12  any decisions based on relevancy at this point.

13        So I'm agreeing with the defendant that the document

14  is privileged, but I'm not prohibiting the plaintiff from

15  questioning Mr. Fanning about what it means.

16        And I don't think there is any case that would tell

17  me that I have to tell the plaintiffs that they have to ignore

18  facts that they now know.

19        They can't use the document, but they know the fact.

20  I mean, that's -- if we look at trials and objections and, I

21  mean, you know there are plenty of objections you can make to

22  evidence, questions that are asked and things like that, but

23  the jury has heard the document, they've heard that, that

24  doesn't eliminate that from the jurors' knowledge.

25        I can't eliminate from the plaintiffs' knowledge that

1    Mr. Fanning had an issue with corporate governance or project

2    governance.  They know that.  They're entitled to ask that

3    question.

4           And if he denies that he had an issue on the 6th, on

5    that date, to corporate governance, then I think this document

6    may become relevant again, as an exception.

7           So that's going to be my ruling as it relates to this

8    document.  I think this is a really small point probably,

9    overall, in everybody's outlook of this case.  Let's move on

10   to some of the other issues.

11          Let's talk about the proposed scheduling order.

12          I don't have a real problem with the dates.  I think

13   really the issue for us to discuss, unless I'm missing

14   something, that you wanted to talk about is the submittal of

15   Daubert motions along with the motions for summary judgment.

16          So let me just start out by telling you this.  I

17   mean, our rules are what they are.  Normally these are not

18   done until later.

19          I can certainly see the value -- well, I can

20   certainly see the strategy that each of you have with regards

21   to when the Daubert motions are decided.

22          It's not a secret that these cases, this kind of case

23   rarely goes to trial.  So the more information that anybody

24   knows, if you're a defendant, about what's going to come in

25   and what's not going to come in, it can certainly change your

1  negotiating strategy, whether you settle or you don't settle.

2        I don't look at it from that perspective, though.

3  Look, folks, I'm a judge.  I try cases.  And if a party makes

4  a decision that they think something should be excluded or

5  shouldn't be excluded, you make your arguments.

6        Sometimes you think you're right; oftentimes you

7  don't really think you're right at all and you just make it

8  because you're trying to get some advantage or the other as it

9  relates to how the case is resolved.

10        When I look at the case, from a judge's standpoint,

11  I'm trying to make the best decision I can make on the legal

12  issue because I know I have got a boss in the Eleventh

13  Circuit.  And they're going to look at the case and they're

14  going to tell me if I'm right or wrong.  And the last thing I

15  want to do is be wrong about anything because that just means

16  I have to do it all again.

17        So I realize that everybody makes mistakes.  Judges

18  make mistakes.  So it's going to happen.  But that's certainly

19  not how I go into it, because I don't want to redo something

20  that I have already done.

21        From the standpoint of timing, if I was to talk about

22  what's the best public policy, I believe that doing a Daubert,

23  you know, considering Daubert at summary judgment makes sense

24  the way the plaintiff has argued it.

25        Because it allows me to know if I'm basing my summary

1    judgment rulings on evidence that an expert witness would

2    provide, or -- we're always talking experts when we're talking

3    Daubert.  And then later, the apple cart gets upset in some

4    form or fashion, and that evidence that I relied on coming in,

5    is it coming in?  That could potentially change my ruling.

6            So I do think that the defendant articulates a good

7    policy argument for why it ought to be done contemporaneous.

8            But I don't know why our rules are the way they are,

9    except that the plaintiff highlights that it can be a very

10   burdensome problem to try to make all of those rulings at the

11   outset, contemporaneous with the summary judgment motion.

12           And while I haven't talked to my colleagues and

13   predecessors at the district court, my guess is that's why we

14   push them to the end.  Because judges are not unlike lawyers.

15   We tend to not want to waste our time working on stuff that we

16   may never have to do.  I guess there is an economic theory

17   that supports that.

18           If you spend a lot of time on a case that settles,

19   then you have wasted a bunch of time.

20           So I understand, I think, the strategy that both of

21   you have.  And maybe I'm attributing motives to the arguments

22   that you make that aren't warranted.  But in any event, I

23   think it would be very difficult for me to consider a lot of

24   Daubert motions at or about the time the summary judgment

25   motions are considered.

MONDAY, JUNE 15, 2020

1           And I'll add to that, at this point, I'm the kind of

2   person that believes that a Daubert motion is best considered

3   with oral arguments and testimony.  Because it's one thing for

4   the lawyers to tell me what the expert says; it's another

5   thing for the expert to be on the witness stand and to be

6   questioned by his or her lawyer and then to be cross-examined

7   by the other side.

8           Oftentimes when I read one party's brief, I think

9   it's great, you know, they win.  And then I'll read the other

10  party's brief and say well, maybe I was hasty there, they

11  write a great brief too.

12          And then I get the third brief in, and then totally

13  I'm lost.

14          But I tend to, I think, make better decisions when I

15  have had a chance to absorb the evidence in person.

16          So that's kind of where I am.  I know I'm talking

17  about this issue from both sides, but that's kind of how I

18  come into this.  I like the idea of what the defendant is

19  proposing, I just don't know how practical it is.

20          So Mr. Singer, are you going to talk for the

21  defendant?  Go ahead.

22          MR. McCONNELL:  Judge Ray, this is Mike McConnell.

23  This is on my to-do list to handle.

24          THE COURT:  Okay.  Go ahead, Mike.

25          MR. McCONNELL:  So I will be speaking to that issue.

MONDAY, JUNE 15, 2020

1    Thank you, your Honor.

2             And I would like to address that head on.

3             A couple of issues.  The first is that this is not

4    unusual and that, in fact, this is the consistent general

5    practice adhered to by courts within this district and

6    circuit.

7             And first, though, let me dispel one thing, your

8    Honor.  Which is you may be having to look at 30 Daubert

9    briefs at the same time.  That's not correct.

10            And the reason that's not correct, your Honor, if you

11   look at the schedule we have proposed, and this is glossed

12   over, I believe, is that we are only suggesting that the

13   deadline for those Daubert motions has to be those motions

14   related specifically to summary judgment.

15            So not all experts necessarily are going to be

16   related to summary judgment.  And in fact most of the time --

17   I'm not saying exclusively, but it goes to with any time they

18   have an essential element.

19            And what you see coalescing in these types of cases

20   concerns what's called loss causation.  Which is an important

21   element down from the Supreme Court decision in Dura

22   Pharmaceuticals, that the plaintiffs have the affirmative

23   obligation to create a triable issue as to loss causation.

24            The way this is consistently done is through expert

25   testimony.  And as a result, a common focus in these cases at

1  summary judgment is specifically on that point.

2           And the Eleventh Circuit, your Honor, does not shy

3  away from addressing Daubert at the same time as summary

4  judgment, especially as to causation.

5           And in that regard, I direct the Court to the Chapman

6  v. Procter & Gamble Distributing, that's an Eleventh Circuit

7  2014 decision.  There, it was products liability, but it

8  involved a causation issue that the plaintiff had the

9  affirmative obligation.

10          The Court confirmed, saying it was completely

11 appropriate and proper, and the time to do it is to address it

12 at that time because this is not something that should wait

13 until you impanel a jury.  This is something that has to be

14 made at that time, under Celotex, to determine whether a

15 triable issue goes forward.

16          This has been reinforced in the Rink v. Cheminova

17 case, which is 400 F.3d 1286, again, Eleventh Circuit 2005.

18          It was also done in Judge Thrash's decision in

19 Siharath v. Sandoz, 131 F. Supp. 2d 1347.

20          All of those stand for that same proposition.  And it

21 also stands true specifically in securities cases.  Very much

22 so.

23          And there are recent examples, again, throughout the

24 circuits that show this point.  And one is, for example, if

25 you can't meet the loss causation requirement, summary

1   judgment must be granted.

2           Same way, Lehman Brothers, which is a 2015 Southern

3   District of New York decision.

4           WH High Yield Fund v. O'Hanlon 2013, an Eastern

5   District of Pennsylvania case.

6           En Re Zonagen, Inc. Securities Litigation, 322 F.

7   Supp. 2d 764 Southern District of Texas.

8           And as a result of this line of cases -- and very

9   similar, this is not hard to find, your Honor -- there are

10  cases that also say if you do not have an expert that meets

11  that requirement, then summary judgment must be granted.

12          So there are many decisions where Daubert is

13  addressed simultaneously and the Court granted summary

14  judgment to defendant.

15          THE COURT:  Let me ask you a question.

16          MR. McCONNELL:  Yes.

17          THE COURT:  So in the cases where it's not done

18  initially at the summary judgment stage, and then it's done

19  later, what do the cases say about that?

20          I mean, obviously if the judge determines that there

21  is a problem with causation, then the judge has got to grant

22  summary judgment.  He or she would be doing it, of course, at

23  a different time prior to trial, and/or I guess they could

24  even be in a directed verdict posture as well.

25          So I guess what I'm trying to understand is what's

1   the mechanics of that in cases where courts come back and they

2   grant a summary judgment kind of post hoc after they do the

3   Daubert motion after the summary judgment was already decided?

4        And what does the Eleventh Circuit say about the duty

5   of the trial judge about when the trial judge is supposed to

6   hear that Daubert motion?  Do they even get that specific?

7        MR. McCONNELL:  Your Honor, they don't get that

8   specific.  And I have actually seen the issue you have

9   described.

10       There are cases where the court, at summary judgment,

11  because Daubert wasn't filed at that time, deferred ruling on

12  summary judgment until later when Daubert was filed, and then

13  addressed the issue.

14       All we're suggesting is we don't think that that

15  makes sense either, from an efficiency standpoint, for the

16  Court or for the parties.  We're all going to be focusing on

17  that issue like a laser beam.  Both plaintiffs, us, as well as

18  the Court.

19       We just think it's better to do it all at once, while

20  we're looking at the record and considering that expert

21  testimony in the context of that record, as opposed to

22  bifurcating it and divorcing it from each other.

23       And we submit that's the reason this is frequently

24  done, and right in this circuit.

25       We have many examples of where the courts have

1    entered these types of orders, and I'm trying to get my hand

2    on it right now, in this district court.

3           Such as by, recently, in the City of Sunrise General

4    Employees' Retirement Plan v. FleetCor, Northern District

5    case, both Daubert and summary judgment filed at the same

6    time.

7           En Re EBIX, Inc. Securities Litigation, another

8    Northern District of Georgia case 2012, summary judgment and

9    Daubert explicitly filed simultaneously.

10          En Re Internap Network Services Securities

11   Litigation, another Northern District case, summary judgment

12   and Daubert, explicitly simultaneously.

13          A fourth one, En Re Wells Real Estate, summary

14   judgment and Daubert explicitly -- with the Daubert and

15   summary judgment.

16          So again, your Honor, we listed what the general

17   approach is in these types of cases because, I mean, this is

18   not a major sneak attack.

19          Everyone knows this is going to be a key issue at the

20   time of summary judgment.  And they're going to be building

21   for it throughout the case.

22          THE COURT:  I don't remember their names, but I

23   expect I'll have another visitation with or submittal by the

24   two experts that I heard earlier, the gentleman from Harvard,

25   and the other one from a smaller school, I don't remember what

1    the school was.

2         But so you expect there to be expert witnesses on the

3    issue of causation, and perhaps expert witnesses that might

4    differ, but might not differ as it relates to the calculation

5    of damages?

6         MR. McCONNELL:  Yes, your Honor.  Most likely -- and

7    I don't want to speak -- I'll just say in general terms,

8    because we don't know exactly how this will play out yet.  But

9    -- in this case -- but many times the economist -- and we did

10   have the economist who spoke, the economist will address loss

11   causation and damages.

12        A lot of times it's the same expert.  Not all of the

13   time, but frequently.  So you're right.

14        There are other experts that may appear in the case

15   unrelated to those two issues.  But we'll work through that

16   with the other side.

17        But at this point --

18        THE COURT:  Given that we're talking about securities

19   litigation, what other general kind of category would you see

20   here?  I mean, someone that might testify about problems on

21   the ground; best practices that were used?

22        I mean, I guess that's a little irrelevant because,

23   yes, they had problems, I think everybody agrees there were

24   problems.  The issue was disclosure, according to the

25   plaintiffs' theory.

```
 1          Maybe you have experts that talk about when it's
 2  appropriate for those kinds of things to be disclosed?  I
 3  don't know.  I don't know that there is such an expert.  But
 4  I'm trying to calculate in my mind what I can expect to see.
 5          MR. McCONNELL:  And, your Honor, if you will permit
 6  me to speak in generalities.
 7          THE COURT:  Yes, yes.
 8          MR. McCONNELL:  Because I don't -- again, I'm
 9  sensitive to the plaintiffs not showing their hand, I want to
10  be sensitive to that as well.
11          Frequently in these types of cases you may have
12  industry experts, you may have experts who, depending upon the
13  underlying issues in the construction case, you know, you can
14  imagine, you know, the types of issues that traditionally go
15  into that consideration in terms of estimating things for the
16  project.
17          So without limitation, generally you have some type
18  of industry expert who may be familiar with important issues
19  related to the industry or the project at hand that may be
20  relevant to explaining the issues and to putting in context
21  the disclosures that are under consideration by you and the
22  jury.
23          THE COURT:  Okay.  All right.  Anything else you want
24  to say, before I turn it over to one of the plaintiffs'
25  lawyers?
```

```
 1              MR. McCONNELL:  No, your Honor.  I think I have hit
 2    most of the points.  Thank you.
 3              THE COURT:  All right.  Thank you.
 4              All right.  Mr. Alvarado, you, or whoever else is
 5    going to speak on this issue?
 6              MR. ALVARADO:  Yes, your Honor.  This is Mr. Alvarado
 7    again.
 8              So, you know, I think our position is pretty
 9    straightforward.  I think that we believe that Daubert motions
10    should proceed in the way that the local rules and your
11    Honor's rules contemplate them.
12              I heard a litany of cases mentioned where Daubert
13    motions and summary judgment motions were filed
14    simultaneously.  We're not saying that doesn't happen, we're
15    just saying that that's not an appropriate procedure in this
16    case.
17              Mr. Drosman, who is on the phone with me, and I
18    finished a case earlier this year, we settled on the day
19    before trial.  We did Dauberts right before -- along with
20    motions in limine in that case.
21              Ms. Wyman, who is here with me, had a case that
22    settled late last year, right before trial.  Dauberts were
23    conducted after expert discovery and after summary judgment.
24              So this is frequently the case given the overwhelming
25    nature of these motions being considered in connection with
```

```
 1   summary judgment.
 2            It's not as though, you know, the parties can just
 3   identify one expert.  As you pointed out, your Honor, I
 4   understand, strategically, why they would like to have a
 5   full-blown Daubert motion on loss causation at summary
 6   judgment, because, you know, that gives them a strategic
 7   advantage.
 8            But it can't stop there because there will be
 9   multiple experts who will be relevant to -- you know, who will
10   have relevant evidence.
11            And it will absolutely result in an inundation of
12   briefs.  I mean, 30 is not an overestimation at all.  It could
13   be more than that.
14            And I would also point out that this related, you
15   know, this qualifier that they tried to put, that they
16   highlighted today is -- it actually compounds the problem.
17            So from how I understand that, we're going to have
18   sort of piecemeal Daubert motions.  So they will file whatever
19   the ones they want to; we'll file a smattering.  And then
20   we'll go through summary judgment, and then maybe on some
21   later date that isn't even contemplated in the schedule, there
22   will be some more.
23            I don't know if they are going to do the same expert
24   again the second time around.  I mean, this is precisely why
25   these motions await ruling on dispositive motion.
```

1          And that's not to say you can't object to evidence at

2   summary judgment.  As was pointed out, the local rules and the

3   Federal Rules of Civil Procedure provide for detailed

4   procedures on how a party can object to evidence.  And that's

5   what's contemplated at summary judgment.

6          If there is a specific piece of evidence or fact or

7   opinion that is viewed as problematic, they can object and we

8   can respond, and vice versa.

9          But what is not contemplated is this wholesale, you

10  know, dumping of myriad briefs and oppositions and replies and

11  reports and rebuttals and surrebuttal and thousands of pages

12  of exhibits, along, and in addition to the actual dispositive

13  motion itself.

14         In our view, that's just unworkable and unnecessary.

15         THE COURT:  So can you speak in general terms as

16  well, other than loss causation in a securities case like

17  this, what kind of experts do you typically see?

18         MR. ALVARADO:  So as Mr. McConnell sort of

19  articulated, it really varies depending on the type of case.

20         So in this particular case, there will be a loss

21  causation and damages expert.  There will be a construction

22  expert, likely.  An industry expert, perhaps an analyst report

23  expert, perhaps a disclosure expert, perhaps an accounting

24  expert.  You know, it really, really goes -- it goes on and on

25  and on in these cases.

```
1              So five or six per side would not be unlikely.

2              THE COURT:  All right.  Mr. McConnell, do you want to

3   follow up about anything in response?

4              MR. McCONNELL:  Yes.

5              First of all, the suggestion that this isn't

6   contemplated that we would do that, I would submit, your

7   Honor, that's just flat out inconsistent with Eleventh Circuit

8   law and the decisions and the orders entered in this Circuit.

9              It's not giving a strategic advantage.  All it is

10  doing is putting us in position to do what is contemplated by

11  Celotex as interpreted by the Eleventh Circuit.  That's all.

12  We're not asking for anything else.

13             And last, it -- this is motion centric, because I

14  think they misstate in their submission to you that your

15  standing order only contemplates that you can even hear -- you

16  can't hear a Daubert motion until the pretrial conference.

17             Well, we know that's not quite right.  But we've

18  already had Daubert for the specific issue with respect to

19  class.  So it depends on the motion.  If it's relevant to the

20  motion, then of course Daubert can be heard.

21             They haven't pointed to one case, your Honor, not

22  one, that goes the other way on that point.  So I think the

23  law is pretty clear.  That's it.  Thank you.

24             THE COURT:  All right.  So here's what I'm going to

25  do.
```

1          I want you all to go ahead and file your Daubert

2   motions at or before the date of motion for summary judgment

3   or dispositive motions are filed.

4          I am likely to hear and consider the causation and

5   damages Daubert motion before I rule on summary judgment.  I

6   think it makes sense, structurally.  I mean, that's a major

7   issue, right?

8          In any kind of securities case the real argument is

9   did what the defendant did or didn't do cause the price to go

10  down?  And if there isn't sufficient evidence of that fact,

11  then, you know, there is no case.  So it makes sense for me to

12  go ahead and consider that rather than wait.

13         I want you to go ahead and file your other motions,

14  unless you all can agree otherwise.

15         I'm likely, the other types of experts you have

16  talked about, to me, are more trial-related issues that if you

17  rule one way or the other it doesn't really eliminate the

18  trial, but it effects the effectiveness of your presentation

19  perhaps, and I will probably not consider those.

20         And it won't hurt my fuelings if you all mutually

21  agree that you want those filed later.

22         But as it relates to the causation and damages, I

23  want you all to go ahead and file those.  And I'm going to

24  likely rule on those when I rule on summary judgment.  I just

25  think it makes sense in this case, specifically.

1          I mean, think about just the general litigation that

2   I might entertain if I was a state court judge.  I'm obviously

3   deciding those issues on summary judgment all the time.

4          If we're talking about did the defendant cause the

5   car wreck?  And were the damages, is there evidence to suggest

6   that the medical expenses that the plaintiff suffered were

7   related to the car wreck?  Or related to some other condition

8   that the plaintiff had?  You know?

9          So, I mean, obviously this is much bigger stakes,

10  it's much more complicated.

11         I already have some basis of understanding of the

12  general issue given the previous rulings I have had to make in

13  this case after -- I don't remember if our hearing was one day

14  or two, but I know it was at least a day.

15         So in any event, I'm going to go ahead -- probably go

16  ahead and rule on those.

17         I want you to go ahead and file them.  If you want to

18  mutually agree to postpone the filing of any of them, then you

19  can send me a consent order on that.

20         So we'll go through the -- both of you submitted

21  proposed pretrial orders.  My staff lawyers working on the

22  case will go through it and we'll make it conform to what I'm

23  saying.

24         All right.  Let's talk about the Deloitte issue.  You

25  all both painted a real different picture about what Deloitte

MONDAY, JUNE 15, 2020

1    did and why they did.

2          I'm not talking about the disclosure to the SEC as

3    much as I am -- although you did disagree about the mechanics

4    of that, but I'm talking more about why Deloitte was involved.

5          When I read the defendants' submittal for today's

6    hearing, I get the feeling that what Deloitte was doing was

7    they were engaged in some kind of special investigation or

8    project on behalf of general counsel for Southern Companies,

9    trying to figure out where the warts may be, and such, that

10   what they're doing is work product in anticipation of possible

11   litigation.

12         And when I read the plaintiffs' version, the tone is

13   that this was just general ordinary audit kind of stuff that

14   isn't privileged at all.

15         And then of course you both disagree as it relates to

16   whether or not the disclosure to the SEC matters or not.

17         So I guess given that it's the defendant who is

18   really bringing this issue forward, I'll let whoever is going

19   to speak for the defendant go first.

20         MR. SINGER:  Good morning, your Honor.  This is Evan

21   Singer again.  I will cover this issue for the defendants.

22         Let me begin by clarifying a little bit about what

23   the Court understands happened here.

24         As we understand it -- and this all relates to an

25   investigation that was conducted by Southern employees at the

1  direction of the general counsel.

2          And the Court may remember hearing about this

3  investigation at a status conference last September, when my

4  colleague Mr. Watts, and Mr. Alvarado, briefed the Court about

5  that investigation.  We are still focused on that one.

6          And it is an investigation that was directed by

7  general counsel, was not conducted by Deloitte.  It was

8  conducted by Southern employees at the general counsel's

9  direction.

10          After the investigation was over, Southern shared

11  information, including protected work product, mental

12  impressions from the findings of the investigation with its

13  outside auditor, Deloitte, who, as I'm sure the Court can

14  understand, was interested in an allegation of potential

15  accounting irregularities at the Kemper project as part of

16  this work in signing off on the financial statements.

17          The document that is attached to the plaintiffs'

18  submission, just as an example, we mentioned at the outset of

19  the hearing today are handwritten notes taken by Deloitte

20  based on the information that was shared by Southern.

21          So we understand that Southern shared information

22  with the auditors, both verbally and/oral briefing, by

23  reviewing documents -- sharing documents that were viewed.

24          The notes and the memos, summaries, the things that

25  Deloitte prepared remained in their audit work papers, and

1   therefore were eventually and later produced to the SEC, in

2   the first instance, and produced then later to the plaintiffs'

3   lawyers in this case, in the second instance.

4          Just as a point of clarification -- a couple.  One is

5   the only thing that Southern is claiming as to these documents

6   is work product.  There's no claim of attorney/client

7   privilege.  It's focused solely on work product.

8          And secondly, I want to make sure the Court

9   understands that both of these productions were done by

10  Deloitte.  Not by Southern.  The documents were in Deloitte's

11  possession, custody, and control.  And both productions, the

12  SEC, and the plaintiffs here, were done by Deloitte.  And the

13  plaintiffs' submission I think is not entirely accurate on

14  that point.

15         From our perspective, your Honor, there are a couple

16  steps to this.  The first is, as I said, Southern shared its

17  work product, protected work product with its auditors.  And

18  while the Eleventh Circuit has not considered the issue

19  directly, there is a case, and I think it's a leading case,

20  that we cite in our submission that also involves Deloitte.

21  It's United States v. Deloitte.

22         And in that case, the Court of Appeals held that a

23  company sharing work product with auditors, did not wait for

24  work product because the auditor is not an adversary.  And as

25  I'm sure the Court is aware, the fact that you share work

1   product is not dispositive of waiving work product.  It's who

2   it was shared with.

3            And in that case the court said the auditor is not an

4   adversary.  And that the company -- in that case it was Dow

5   Chemical -- it was reasonable for the company to share

6   confidential information with the auditor because the company

7   had an expectation the auditor would keep it confidential.

8            And I think those thoughts apply equally to the

9   situation here.  Southern shared its work product with its

10  auditor because the auditor is not an adversary and cannot be,

11  it must be independent.  It can't be an adversary.

12           And under the belief and, in fact, with respect to a

13  confidentiality agreement that was signed with Deloitte,

14  requiring Deloitte to keep that information confidential.

15           So to the extent that plaintiffs are claiming that

16  the sharing of the information with the auditor in and of

17  itself was work product, we would point to the Deloitte case.

18  And the Court of Appeals say that's not correct.

19           And the two cases that the plaintiff cites for that

20  position have nothing to do with auditors, at all.

21           The next point is then, later, the auditor shared

22  information with the SEC, and produced it in response to a

23  subpoena.  Again, produced by Deloitte.  Counsel for Southern

24  is generally not involved.

25           But the information was produced and apparently it

```
 1   was not redacted in the same way that Southern redacted it --
 2   asked Deloitte to redact it when it was produced to the
 3   plaintiffs.
 4           THE COURT:  Back up here.  When was it produced to
 5   the SEC?
 6           MR. SINGER:  We think it was around with 2016, your
 7   Honor.
 8           THE COURT:  And when would -- when did Southern
 9   become aware that it was produced to the SEC?
10           MR. SINGER:  After the plaintiff served a subpoena on
11   Deloitte.  We, Jones Day, reviewed the potential production
12   and we told the plaintiffs' counsel we would do that.  And we
13   redacted the documents at issue here, before they were
14   produced.  We also provided plaintiffs with a privilege log --
15           THE COURT:  Let's back up.  No.
16           My inquiry is when did Southern Company become aware
17   that its privileged work product had been produced to the SEC?
18   Was it at or about the time that it was given to the SEC?  Or
19   is it only after this lawsuit was filed?
20           MR. SINGER:  That's what I was trying to get to, your
21   Honor.  Thank you.
22           It was only after this lawsuit was filed.  And the
23   plaintiffs asked us, Jones Day, to confirm whether the
24   redactions that were made in this case matched what were made
25   to the SEC.
```

```
 1              THE COURT:  Okay.
 2              MR. SINGER:  And realized that documents, when
 3    produced to the SEC, were not redacted.
 4              THE COURT:  When the documents were produced to the
 5    SEC, were -- by subpoena, were there not copies provided to
 6    the Southern Company, by Deloitte, of what they had produced
 7    to the government?
 8              MR. SINGER:  Not to my knowledge, your Honor.
 9              THE COURT:  Would that make a difference?  For
10    example, if the documents had been provided to Southern
11    Company or there had been some indication to Southern Company
12    at the time that the SEC was given the documents, would that
13    matter as to the waiver issue?
14              MR. SINGER:  I think it would be a relevant fact in
15    terms of when Southern was aware and the steps that it took to
16    fix the problem or to fix the disclosure.
17              But here, Southern was not aware until much, much
18    later.  And it's worth noting, your Honor, that, again,
19    Southern was not involved, but from our discussions with
20    Deloitte's counsel, we understand that the production by
21    Deloitte was quite voluminous.  Somewhere near a million
22    pages.  And we're talking about 128 documents over those
23    roughly million pages.
24              THE COURT:  Does the plaintiff agree with you about
25    that point, that Southern Company did not know that Deloitte
```

```
1    had given to the government its documents that it considered
2    privilege?
3              And the reason I ask is that just doesn't seem to be
4    consistent with what the plaintiffs have argued in their
5    letter to me.  At least there is an implication in it that
6    Southern Company knew, and didn't do anything about it, and
7    thus, that they have waived any waiver argument.
8              MR. SINGER:  I think, to be candid with the Court, I
9    do want to make sure that I'm not misspeaking.
10             Southern was represented in connection with the SEC
11   investigation.  And we understand that Troutman and Sanders
12   was the law firm that was involved.
13             And we also understand from talking to Deloitte that
14   some portion of the documents that were produced to the SEC
15   were shown to Troutman and Sanders.  And of the 128, to be
16   very specific, we understand that Troutman reviewed 28 of
17   those, but not the other 100.
18             We also know that Troutman asked that those 28
19   documents be redacted, but we don't have visibility into
20   whether they were redacted or why they were not redacted or
21   what happened after that point.
22             But I do want to be clear.  I do not want to mislead.
23   There was counsel, and they did see some portion of these
24   documents.
25             THE COURT:  But it would have been up to Deloitte to
```

```
1   do the redaction --

2           MR. SINGER:  Correct.

3           THE COURT:  -- hopefully, of what they sent to the

4   SEC.

5           MR. SINGER:  That's correct.

6           THE COURT:  Okay.  Does the plaintiff contend that

7   these documents normally wouldn't have been -- I believe they

8   do, because they argue waiver is not their only argument.

9           They argue these documents weren't privileged anyway,

10  right?

11          MR. SINGER:  Yeah.  They do make that argument in

12  their submission, your Honor.

13          But our position is they are protected by work

14  product.  And I would refer the Court back to its statement,

15  the September 19, 2019, status conference, where you indicated

16  that you were going to rule on the issue -- though you did

17  not, that you would likely rule that the (inaudible).

18          THE COURT REPORTER:  Okay.  Mr. Singer, this is your

19  court reporter.  I'm sorry to interrupt, but I'm going to ask

20  you to slow down a little bit there, and repeat your last

21  paragraph.

22          MR. SINGER:  So, according to this transcript, the

23  Court indicated that it would likely rule that the purpose of

24  the investigation was because of litigation, and it was not

25  for any other reason.  And it all tied back to that.
```

```
1              THE COURT:  All right.  Who is going to speak on

2    behalf of the plaintiff on this issue?  Mr. Alvarado, is that

3    you, again?

4              MR. ALVARADO:  Yes, your Honor.

5              So there is really -- the Deloitte issue is really

6    two separate issues.

7              The first is that the 120 -- I guess 7 documents that

8    they tried to redact from us that were produced to the SEC.

9    And then there was one particular set of notes that I think we

10   can talk about separately.  That's a separate issue.  That's

11   one that we have and that the defendants are seeking to

12   clawback.

13             From our perspective, I guess to answer what I think

14   was their first question, Deloitte was not, they were their

15   independent auditor for purposes of financial reporting.  So

16   they were not hired specifically to work on this

17   investigation.

18             The reason that they have the documents related to

19   the investigation is because, as you can imagine, as an

20   independent auditor, they needed to get comfortable that, you

21   know, there wasn't a fraud or there wasn't accounting

22   irregularities.  And that's why they're looking into this

23   thing and that's why the documents exist.

24             They were created in the normal course of Deloitte's

25   audit of Southern Company.  This wasn't -- which may be what
```

1  you were getting at.  This was not a situation where sometimes

2  the company will hire Deloitte, or PWC, or fill-in-the-blank

3  accounting firm to come in and do an investigation.  This is

4  not what Deloitte's role was in this particular case.

5          So I guess that's point one.

6          Point two is this is sort of a lot of news to us,

7  this information about Troutman Sanders and having reviewed

8  128 -- 28 of the 128.  We knew none of this.

9          From what we understood from talking to Deloitte was

10 that Southern Company's attorneys reviewed Deloitte's

11 documents and instructed them on what to produce and what not

12 to produce prior to production.

13         It sounds like that's largely what happened.  So

14 that's sort of the first waiver.

15         But it gets worse, because then, here we are, you

16 know, four years later in this case, and Southern Company's

17 lawyers in this case did that same review all over again.  And

18 the documents -- and so at that point they knew that the SEC

19 had these documents.  This was back in September or August of

20 2019 when they were doing the review of Deloitte's documents.

21         And they took no steps to clawback anything until

22 after we raised to them that there is no work product

23 protection on these documents, to the extent there was any to

24 begin with, because they didn't take good faith efforts to

25 claw things back.

```
 1          They waited until we -- until we -- I'm sorry --
 2  because they had produced them to the SEC.  It was only then
 3  that they attempted to claw -- you know, I think they've
 4  suggested that they clawed back documents from the SEC.  I
 5  don't really know what that means.
 6          I think it's a bit of a fiction.  The SEC
 7  investigation was closed.  It sounds like they sent a letter
 8  to the SEC, telling them they would like to clawback documents
 9  from an investigation that was closed, you know, a year and a
10  half ago, and the SEC hasn't responded to the letter or hasn't
11  objected.
12          I don't think that's a clawback.  I think that the
13  documents, any protection that may have existed was waived
14  long ago.
15          With respect to the particular notes, this is a good
16  example of why we think these documents are not protected.
17  The notes are purely factual information taken by a Deloitte
18  auditor who is simply recounting facts as they related to the
19  investigation.  But there is no mental process, no analysis,
20  no indication that even Southern Company lawyers are involved
21  in anything that Deloitte employees are writing down.
22          And so we think that, you know, as a general matter,
23  the documents that were produced to the SEC four years ago,
24  anything -- any protection that may have attached to those
25  documents is waived.
```

1          And with respect to the particular notes that

2    Southern would like to clawback that are attached to our

3    submission, those, on their face, you know, separate from the

4    waiver argument, that document, on its face, does not contain

5    Southern Company attorney work product.

6          THE COURT:  Let me talk about a couple points.

7          Okay, so whoever is talking, whoever doesn't have

8    your mute on, if you're talking to somebody else in another

9    room, put your mute on, because I'm hearing that.

10          Like, I know somebody has something to do at 9:30.  I

11    don't know who it was, or what you have, but if you're

12    talking, we can hear that.

13          So let me just follow up on all the things that you

14    said.  And I may not be remembering it all.

15          So yes, if the documents were provided to Southern

16    Company's lawyers at the time, and they were not reviewed by

17    Southern Company at the time, you know, because they just

18    didn't do it or their lawyers didn't focus on that,

19    Mr. Alvarado, what is your argument about waiver, then?

20          Then that's just too bad because they had the

21    opportunity to look sooner and they didn't?

22          Forget about the 28 that they may have looked at, but

23    for the 100 or so that they didn't look at, how does your

24    argument work there?

25          MR. ALVARADO:  The 100 -- I'm sorry.  So this is the

1    scenario where Southern did not look at some documents that

2    Deloitte produced to the SEC?

3         THE COURT:  Yeah.  As I understand, the defendants'

4    argument is that their lawyers looked at 28 of the documents

5    and allegedly told Deloitte to redact those, and maybe they

6    didn't get redacted, and so they got produced.  So that's kind

7    of one issue.

8         The other issue is the 100 documents that the lawyers

9    for Deloitte didn't look at, that the lawyers for Southern

10   Company didn't look at, so there was no communication to the

11   lawyers from Southern Company to Deloitte, don't produce

12   those, because they didn't look at them.  The lawyers for

13   Southern didn't look at them.

14        So what is your argument as it relates to those 100

15   documents that I guess they could have looked at, but they

16   didn't look at so they never instructed their clients not to

17   produce those documents?

18        MR. ALVARADO:  I understand the question.

19        So I think my response is that as an issue initial

20   matter, we don't believe that the material contained in

21   Deloitte's documents is a Southern Company attorney work

22   product.  But let's assume for a moment that it is.

23        We, you know, if they did not review them prior to

24   Deloitte's production -- which we believe they did, but I

25   heard some portions that were not reviewed -- we don't know

1 whether -- and as your Honor asked, we don't know whether they

2 got a copy of the production.  You know, it's extremely likely

3 that they did.

4          But even if they didn't at that point get a copy,

5 they were involved in reviewing Deloitte's documents in this

6 case back in the summer of 2019.  Before we got to get

7 Deloitte's documents, Deloitte let them review all the

8 documents that it would be giving to us, of which came from

9 the population of documents that were produced to the SEC.

10          So at that point, for sure, if there was some super

11 late revelation in 2019 that the SEC had produced -- that

12 Deloitte had produced Southern Company work product to the SEC

13 back in 2016, they would have done something about it.  But

14 they didn't.

15          Here we are, all the way into 2020, and it was only,

16 as I said, only after we raised to them the waiver of the work

17 product because of it being produced to an adversary, the SEC,

18 that there was waiver.  And it was only then that they, now,

19 suddenly they have clawed back and are going to take action.

20          So we think no matter how you slice it, either it was

21 waived then, or it's waived now for failure to take reasonable

22 steps to protect the protection.

23          THE COURT:  I had another question related to that

24 that I wanted to ask, but it escapes me at this point in time.

25 Oh, I know the question.

1          What is the value to the plaintiffs directly of these

2  documents?  I mean the notes that were taken -- because we're

3  not talking about letters or internal documents with Southern.

4  We're talking about notes that were taken by the auditors.

5          So how do you use those?

6          MR. ALVARADO:  So we're talking about there is sort

7  of a multitude of different types of documents.  The one

8  particular example that we have, because it's a document that

9  defendants are requesting be clawed back, there are other

10  documents in the Deloitte production that are Deloitte memos,

11  that sort of thing.

12          How it's used is you depose a representative of

13  Deloitte, and you call Deloitte as a witness, and you put in

14  all of the evidence that Deloitte had at its disposal that is

15  relevant to the case.

16          Things like Tommy Anderson, who is a defendant in

17  this case, you know, giving threats to people if they were --

18  if they weren't on board with how he wanted things, you know,

19  how things were going.

20          You know, the threat that Penny Manuel was threatened

21  with termination if she said the budget was going to be blown.

22  That sort of thing.

23          This is highly relevant factual information that

24  would be certainly used and put at the fore at a trial.

25          THE COURT:  Well, the documents themselves might not

1  be admissible, I'm guessing, but you're saying you can at

2  least use them to refresh the memory of the Deloitte

3  witnesses, and if that was their procedure?

4          I mean, they may be admissible as business records, I

5  suppose.  But in any event, you got to lay some foundation for

6  them to come in, I suppose.  And of course we've got

7  relevancy, too.

8          MR. ALVARADO:  Yeah.  We think there would be no

9  issue with admissibility.  You know, like I said, we get the

10 person who wrote these notes, we would introduce them, we

11 establish that she wrote them, that they are authentic.  That

12 these were a business record that she took down in the course

13 of her audit of Southern Company, and these are the factual

14 observations that she was aware of at the time.

15         THE COURT:  I know the other question I wanted to

16 ask.  Obviously, lawyers make mistakes, like judges make

17 mistakes, and documents sometimes get produced that shouldn't

18 have been produced.

19         The fact that the defense counsel at this point in

20 time allowed these documents to be produced in this case would

21 not, carte blanche, establish that they shouldn't be clawed

22 back.  If that was the case, you wouldn't have a clawback

23 procedure.

24         But your argument is more nuanced, right?  It's that

25 they weren't just reviewing documents that weren't at issue in

1   the lawsuit, they were reviewing the documents produced by

2   Deloitte to see if they could be produced to you as the

3   documents that had been given to the SEC previously.

4           MR. ALVARADO:  Correct.  And it's even a little more

5   nuanced than that.  Because for the majority of the documents

6   at issue with respect to Deloitte, it's not a clawback issue.

7   It's an issue of they have produced them to us in redacted

8   form although they were produced to the SEC unredacted.  So

9   what we're requesting is that they be produced to us in

10  unredacted form.

11          For this one particular set of notes, this was

12  produced to us unredacted in the first instance in this case.

13  So not only did it get produced to the SEC after being

14  reviewed, it then got produced to us after being reviewed and

15  only now, much later, are they trying to redact it.

16          So I think the waiver argument is much stronger on

17  this particular document.  And it probably is the case that it

18  was produced to us in this case because, as I said, it's

19  purely factual information.  There is absolutely no evidence

20  that this has anything to do with any Southern Company work

21  product, whatsoever.

22          THE COURT:  Let me ask this.  The disclosure to the

23  SEC, when the documents were sent to them, when did that occur

24  exactly?

25          MR. ALVARADO:  Mr. Singer said in 2016.  I think that

1  was sort of consistent with what we saw on the metadata on

2  some of these documents.

3       THE COURT:  Mr. Singer, there is a method to my

4  madness here, so just bear with me.

5       If Troutman had made a mistake when these documents

6  were produced that could be professional negligence, when

7  typically would the statute of limitations, given that we're

8  sitting here in mid-2020, is the statue of limitations over

9  for that?

10       MR. SINGER:  Over for a claim against Troutman, your

11  Honor?

12       THE COURT:  Yes, sir.

13       MR. SINGER:  I honestly don't know the answer to

14  that, your Honor.  But from my perspective, it would be

15  analogous to a discovery rule in that the redactions, the fact

16  that the documents had not been redacted was not discovered,

17  at least all I can speak for is our side, Jones Day, until

18  much more recently.

19       The documents were produced to the SEC in a set of a

20  much larger document set.  And there they remained for some

21  time.

22       THE COURT:  Yeah.  So divorce it from our case,

23  exactly.  Okay.  So I'll just go ahead and tell you what I was

24  going to tell you.

25       The reason I'm asking about Troutman is that on this

1  call is Maggie Sparks, who is one of my lawyers, who is a

2  former associate of Troutman.  She wouldn't have worked on

3  this case.  And when she leaves my employ the end of

4  September, she will go back to Troutman.

5         So I'm just concerned about potential liability that

6  Troutman may have, only to the extent that Maggie is actually

7  working on this case with me.  So that's why I ask.

8         I'm trying to understand, does Troutman have some

9  potential exposure if they didn't do their job right?  If

10 somebody didn't thoroughly review all the documents that were

11 going to be produced by Deloitte, and/or didn't follow up,

12 make sure that the documents that they told Deloitte not to

13 produce, to make sure that they weren't produced, does

14 Troutman potentially have exposure?

15        That's what I'm trying to figure out.  It's more of

16 an internal thing in my office than it relates to your case

17 itself.

18        As I understand professional negligence rules in

19 Georgia, the statute of limitations runs from the time of the

20 act, not from the time of the discovery so long as there has

21 not been an effort to conceal.  I'm not positive about that,

22 that's why I ask.  Because it may impact whether Maggie

23 continues to work on the case or works on this particular

24 issue, if you see where I'm going.

25        MR. SINGER:  Your Honor, I'm not the person to

1  respond.  I guess I would just say that that aspect of that

2  subject has not been our focus.

3         THE COURT:  Right.  But, you know, I mean, ultimately

4  that's the client's call.  You know what I'm saying?

5         If these documents come into evidence, or if they're

6  allowed to be used, the client may have other concerns.  And

7  of course I understand that Troutman has historically done a

8  great deal of work for Southern Company.

9         So maybe there is just some general concern there

10  anyway if the allegation is that they did something wrong.

11         I hadn't been worried about it, about Maggie working

12  on this case up to this point because Southern had hired a

13  different law firm for this case, okay, so it wasn't a

14  conflict with Troutman.

15         But this kind of potentially raises an issue.  But it

16  may be kind of an internal conflict.  But that's something I

17  have got to think about, but I did want to let you all know I

18  have this situation to deal with and I'll work it out, one way

19  or the other, internally, when I have had a chance to talk

20  with Maggie about it and consider it more.

21         All right.  So before we get back to Mr. Singer on

22  the merits of it, you had talked about, Mr. Alvarado, about

23  the document, the distinction between the notes and another

24  kind of document.  Maybe you already started going into that.

25         Do we need -- do you need to tell me more about

1  anything specifically about any of these documents?

2         MR. ALVARADO:  I don't think so.  I would just

3  reiterate that the Deloitte dispute is two-fold.  There is a

4  set of documents that were produced in redacted form to us in

5  this case that we contend should be produced in unredacted

6  form because any protection is waived when it was produced to

7  the SEC many years ago.

8         The second, more specific issue relates to one

9  particular document, which is Exhibit 3 to our submission,

10  which are notes taken by Deloitte auditors and relating to

11  factual matters that they were writing down.

12         We think those notes are clearly not Southern Company

13  work product, and that there should be no clawback of those

14  documents.  In other words, we should be able to keep the

15  document that we currently have.  It was produced to us by

16  Southern Company after it was produced to the SEC years ago

17  after review, and then also produced to us in this case after

18  review.

19         THE COURT:  All right.  Mr. Singer, do you want to

20  follow up, sir?

21         MR. SINGER:  Sure.  As to that specific document that

22  Mr. Alvarado is focusing on -- and just to be clear, your

23  Honor, as to all 120 documents that we're talking about, the

24  redactions are quite limited.  I don't want to leave the Court

25  with the impression that we're redacting a lot.

1          And as an example, this document that Mr. Alvarado is

2    talking about, Exhibit 3, is a 28-page document, and we're

3    only attempting to redact two pages.  We're not redacting the

4    other 26 pages.

5          And the two pages that we are seeking to clawback and

6    redact, they are entitled fraud debrief, and the date is May

7    2, 2013.  And we understand that that was a briefing that

8    Deloitte received from the general counsel as to the

9    investigation.  So our position is it absolutely is work

10   product.

11         It relates to the 2013 investigation and the

12   conclusions and the mental impressions therefrom.  So we don't

13   agree with Mr. Alvarado that that is purely facts.

14         THE COURT:  Was that document itself produced to the

15   SEC?

16         MR. SINGER:  I believe it was.  I'll have to confirm

17   that, but I believe it was.

18         But I also, on that, your Honor, I do want to clarify

19   a couple things also.  As we understand it, Deloitte did not

20   give Southern's counsel all of the documents it intended to

21   produce to the SEC at the time.  It only gave that counsel a

22   subset.  And Deloitte did not give Southern -- SEC counsel a

23   copy of the production.

24         So there's no way for Southern's counsel to determine

25   what Deloitte did or did not redact until much more recently,

```
 1  until this year.  It's not the case that they reviewed every
 2  single page of every document.
 3          THE COURT:  And that understanding comes from where?
 4  From talking to Deloitte, or talking to Troutman folks, or
 5  where?
 6          MR. SINGER:  From talking to Deloitte.  Deloitte
 7  in-house counsel.
 8          THE COURT:  Okay.  I didn't mean to get you off your
 9  momentum.  So you have some other things to say?
10          MR. SINGER:  No problem, your Honor.  I wanted to
11  make sure that point was clear.
12          So essentially the timeline is when Jones Day
13  redacted, it was late in 2019, and we still didn't have a full
14  set, a full production set of what they had sent to the SEC.
15          Deloitte's production I believe was in December of
16  last year and that's when we started the review.  So at that
17  point this case was stayed.  And so there's that to consider
18  as well from a timeline perspective.
19          THE COURT:  When did the stay go into place?  Maybe
20  November, October?
21          MR. SINGER:  It was the December 2019 order.  I don't
22  have the order in front of me.  I think it was the 19th of
23  December.  And it was lifted at the end of March.
24          THE COURT:  Mr. McConnell, are you still on the
25  phone?
```

```
 1              MR. McCONNELL:  Yes, sir.  I was on mute.

 2              THE COURT:  Okay.  So no word yet from the Eleventh

 3   Circuit?

 4              MR. McCONNELL:  No.  No word, your Honor.

 5              THE COURT:  Okay.  All right.  So I'm going to think

 6   about -- I don't know how much more you want to say,

 7   Mr. Singer, but I want to think about these issues on this

 8   particular issue for a day or two.  And then I'll follow up

 9   with you all about what I intend to do.

10              And so I don't believe anybody has submitted any

11   proposed orders as it relates to this issue, have you?

12              MR. ALVARADO:  No, your Honor.  We have not.

13              MR. SINGER:  No, your Honor.

14              THE COURT:  All right.  So I guess I'll say this.

15   Why don't you -- why don't both of you, as it relates to the

16   Deloitte documents, by the end of week if you all could send a

17   proposed order on it.  That would give me a week to think

18   about it.

19              The likelihood is that whatever I do is not going to

20   look like either of your orders, but it may incorporate some

21   of the elements that you talk about.  And I'm not looking for

22   long orders here, but enough to allow me to decide the issue

23   with some authority about why I'm ruling in your favor,

24   assuming I rule in your favor on it.

25              All right.  Let me go back to my agenda.  I guess
```

1  really the last thing, unless I'm missing something, the last
2  thing we needed to talk about was the depositions.

3        So I understand there's a dispute about whether or
4  not deponents can speak with their counsel during breaks.
5  That's one dispute.

6        Is there another dispute?  Or is that it?

7        MS. WYMAN:  Your Honor, this is Debra Wyman from
8  Robbins Geller.

9        There are two other paragraphs that are in dispute,
10 paragraph 20 and paragraph 28.

11        THE COURT:  Okay.  So I don't have that document in
12 front of me.  I can get it.  But tell me what is 20, and then
13 tell me what 28 is.

14        MS. WYMAN:  Sure.  In paragraph 20, the parties have
15 a dispute about the language that's going to be included in
16 the protocol concerning when there is a deponent that has
17 concerns about having their deposition taken in person with a
18 large group, what happens next?

19        Defendants provided us a protocol that said, in
20 paragraph 20, that -- pulling it out right now.  It is exhibit
21 -- pardon me.  Exhibit 4 to defendant's submission.

22        At paragraph 20 it says, their suggested language is
23 at whatever location attending the deposition, counsel for the
24 parties shall have equal access to the witness unless
25 otherwise stipulated by the parties and the witness.

1          And frankly, your Honor, we were a bit confused by

2   what that meant.

3          So we had a discussion with the defendants about what

4   their intention was with regard to that language.  And what we

5   understood them to say was that, you know, there may be

6   witnesses that have health issues or that are caregivers of

7   people that have health issues that are more sensitive to the

8   COVID-19 virus and, obviously, want to take measures to

9   protect their health and that of their families.

10         So what they were suggesting is if the witness wants

11  to have their deposition taken in person, but only have

12  certain people there, that we would talk about that and agree

13  or not agree how that would work.

14         So what plaintiffs tried to do, and it's attached as

15  Exhibit 2 to our submission, was rewrite that first sentence

16  so that it was a little bit more clear about what the parties'

17  agreement and intentions were.

18         And essentially what we said was if a witness

19  indicates that they prefer to have their deposition taken in

20  person, or indicates that they prefer to have their counsel

21  present in the same location for their deposition, that all

22  parties have an option to also attend the remote deposition in

23  person, unless there is an agreement between counsel and the

24  witness that accommodates any health concerns that they may

25  have about the COVID-19 virus.

```
 1            I was a bit surprised when I saw defendant's
 2   submission and their suggestion that plaintiffs refused to
 3   permit the witness discretion on who will be in their company
 4   during a remote deposition.  That is not the fact of the case
 5   at all.
 6            What I want to make sure doesn't happen is that these
 7   witnesses who would, at least based on our current knowledge
 8   largely be represented by Jones Day, don't use this pandemic
 9   as an excuse to deny plaintiffs the option of deposing the
10   witness in person.
11            And I don't believe that that's defendants'
12   intention, but I just want to make clear when we are talking
13   about these protocols that everyone has the same
14   understanding.
15            THE COURT:  So your position is that -- and if I've
16   got this wrong, tell me, because I want to make sure I'm
17   thinking about it right -- you recognize that some witnesses
18   may not want to be in a room full of lawyers.  But if any
19   lawyers are going to be there, you want the right to have the
20   plaintiff represented there as well; is that what you're
21   saying?
22            MS. WYMAN:  That's right, your Honor.
23            THE COURT:  Okay.  First issue being talking during
24   break, second issue being this.  What's the third issue?
25            MS. WYMAN:  The third issue concerns exhibits that
```

1   are being provided to the witnesses.

2        The protocol, and this is paragraph 28 of the

3   protocol, the very first sentence requires that the witness be

4   provided complete and full copies of any documents that are

5   being introduced.

6        And what the defendants want to do is add an

7   additional sentence that we believe is just redundant that

8   essentially says, you know, if we, defendants, don't think

9   that the document is complete, that we have to halt the

10  deposition and plaintiff has to go hunt around for the

11  documents that we want them to use.

12       And we feel like that is not only inappropriate, but

13  a waste of time.  You know, we have every intention of

14  providing a full and complete copy of whatever document we're

15  introducing to a witness at a deposition.

16       What we don't want to have to do is go on this folly

17  of trying to find documents defendants want to use.

18       They can object if they think the document is

19  incomplete.  The witness can say I can't testify because I

20  need this, that, or the other information.  Then the

21  defendants can produce and provide the documents that they

22  want the witness to use when they ask the questions.

23       But the bottom line is the protocol that we've greed

24  to, that we drafted, contemplates that only full and complete

25  documents will be provided to the witness.

MONDAY, JUNE 15, 2020

1          So having this additional sentence where, you know,

2   they can insist that we go look for another document is

3   inappropriate.

4          THE COURT:  All right.  So who is speaking for the

5   defendants on this issue?

6          MR. McCONNELL:  Your Honor, it's Mike McConnell.

7   You have me again.

8          THE COURT:  Thank you, sir.

9          MR. McCONNELL:  And I will deal with these two

10  issues, and then defer on the conference, is that -- I'll hit

11  the paragraph 20 issue first.

12         THE COURT:  Okay.

13         MR. McCONNELL:  And on that issue, your Honor, I

14  think we're very close to saying the same thing, except with a

15  slight twist.

16         Our default position, if you look at our proposed

17  paragraph 20, is the default position is that everyone, if

18  we're going to be there, Jones Day, then, you know,

19  plaintiffs' lawyers can be there.  If there is no lawyers,

20  then no lawyers are going to be there.

21         But there is a situation -- and, really, your Honor,

22  this comes down to the individual witness.  This is an unusual

23  time where folks are just a little uncomfortable.  Some people

24  may be comfortable having one person in a room with them,

25  especially someone they may know and kind of know where they

     1    have been and all these other things that we're going through.

     2              But if you put them in a room with three, four, five,

     3    other people, all of a sudden that becomes an issue.

     4              All we're saying in our proposal is that if there is

     5    a -- and I don't know this will ever happen, your Honor, but

     6    we're just planning for this, is that if a witness says, you

     7    know, I am uncomfortable with having attorneys, I don't know

     8    who they are, I don't know where they've been, and I've got an

     9    elderly father -- I mean, I don't know.  This is all

    10    hypothetical.

    11              We're just saying that we can talk about it, unless

    12    stipulated by the parties and the witness, but we can talk

    13    that this order contemplates that that could be a situation

    14    and in good faith we will try to work it out.  And we would

    15    try to do it.

    16              I note that Ms. Wyman, in her remarks, suggested that

    17    their proposed language in 20 does the same thing.  And I was

    18    reading along as she was describing it.  And I think -- and I

    19    may have misread, but what I heard her say was there was a

    20    clause at the end of the sentence, that first sentence she was

    21    reading, that kind of goes unless there is an agreement

    22    between the counsel, which would be the equivalent of kind of

    23    what we're talking about.  That language isn't in there,

    24    though.

    25              So all we're saying is, I mean, if they want to put

```
 1   language in along those lines which teases out what ours is
 2   doing with the stipulation suggestion, we could probably talk
 3   about that.  But that language is not in what they propose at
 4   this time.
 5           Now I'll quickly deal with the second issue, your
 6   Honor, unless you have questions about that one, I'll deal
 7   with the completeness issue on the document, paragraph 28.
 8           Their proposed language does not say they're going to
 9   get a complete copy of the document.  Instead, their language
10   says, specifically, a full and complete copy of the deposition
11   exhibit.
12           Well, anyone who has defended or taken depositions
13   know that if you have a 200-page document, many times the
14   exhibit itself may be five pages.  It may be an excerpt of
15   that document.
16           And what we do is during an actual deposition, the
17   way we deal with this, professionally, is if I have five pages
18   from a 200-page 10k, I have the 10k with me.  And the first I
19   thing I ask the witness is these are the only five pages I'm
20   going to talk about, I don't want to burden the exhibit, but
21   if you want to look at anything in this 200-page document that
22   may inform what you're saying about these other pages, I have
23   it here, so just let me know.
24           That's all we're asking for.  We just want that
25   electronic copy of that document available for the witness,
```

1  not just the excerpt.

2          And, frankly, that is just standard deposition

3  protocol, 101.  This is how it's done -- as a matter of fact,

4  I think that's how it's been done in this very case in the

5  depositions taken to date.

6          So I'm not quite sure why there is an objection to

7  having the complete document available electronically.

8          We don't know what exhibits are going to be used

9  beforehand.  We don't have all these documents at our

10  disposal.  They do.  So if they know which document it is,

11  they should have it available completely, electronically, and

12  not make us have to go hunt for it.

13          THE COURT:  Yes, sir.  So Mr. McConnell, what's your

14  experience about witnesses talking to their counsel during

15  breaks in depositions?

16          MR. McCONNELL:  Yes, your Honor.  I have been

17  practicing in the Northern District for 34 years, and it has

18  been common.  It hasn't been precluded.

19          There are certain courts that I practice outside.

20  Some courts have adopted local rules.  I know, for example,

21  South Carolina, the district court over there has done it.

22  Some state courts have or a chancery court.  But that's been

23  done, primarily, by rules.

24          We've looked up, and there are many cases, your

25  Honor, that specifically say a witness has the right to be

1   represented by counsel, which includes being advised during

2   breaks.

3           What these cases say is those communications are

4   privileged, and that what you can't do -- and again, this is

5   deposition 101 -- you can't interrupt and try to have a

6   conference while a question is pending.

7           And that is always observed, in my experience, and

8   has been observed during my 34 years practicing before this

9   court.  And that's certainly and exactly what we would be

10  proposing to do here.

11          So again, the --

12          THE COURT:  The difficult thing about that is if

13  everybody is remote -- well, I mean, there is obviously ways

14  that when you're all in the room where a witness kind of gets,

15  say, an indication they maybe need to talk to their lawyer so

16  suddenly they need to go to the restroom, or make a phone

17  call.  Or the lawyer needs to go to the restroom so breaks get

18  called.  I suspect that could even happen remotely.

19          But I was talking this morning with my lawyer,

20  obviously, on the witness stand, the same flexibility doesn't

21  exist.  But I can't remember a deposition I have had for 12

22  years practicing before I became a judge where I probably

23  didn't talk to my client at one of the breaks about the case.

24          And, of course, since you're a party and you're

25  represented, the other side can't ask you what you talked

1  about.

2          They can ask you did you talk to your lawyer?  But

3  that's about it.

4          All right.  So did you want to talk about that issue,

5  Ms. Wyman?

6          MS. WYMAN:  Yes, your Honor, I did.

7          Look, we think that it's imperative that the

8  depositions in this case follow how the testimony will be

9  taken if it were at trial.  And this is the reason why.

10          Almost all of the witnesses that are going to be

11  deposed in this case are outside the subpoena power of the

12  Court.  So what plaintiffs are taking is not just a

13  deposition.  Plaintiffs are taking trial testimony from these

14  witnesses because we will not be able to compel them to show

15  up to your Honor's courtroom for the trial in this case.

16          So their testimony should be given in the same manner

17  and form that it would if they were sitting in your courtroom

18  in the witness box.

19          That's our main and chief concern.

20          And while I have only been practicing for 23 years,

21  not 34, like Mr. McConnell, it is not unusual for courts to

22  limit the coaching that can occur during a deposition by

23  prohibiting the counsel for the witness from discussing the

24  substance of their testimony, apart from determining whether

25  or not a question calls for any kind of privilege or work

1  product or privacy issue.

2           But that's what we're really talking about, your

3  Honor.  We're talking about minimizing the alteration of a

4  witness's testimony through suggestion by counsel during any

5  breaks.

6           THE COURT:  So let's go back to the point you were

7  making about the witnesses being outside the subpoena power of

8  the Court.

9           So who are we talking about?  Are we talking about

10  people that were on the ground in Mississippi?

11           MS. WYMAN:  Yes, your Honor.

12           THE COURT:  Are they employees of Southern Company?

13  Were they contractors?  What were they?

14           MS. WYMAN:  Your Honor, we're talking about current

15  and former employees of Southern Company that worked on-site

16  at the Kemper plant.  We're talking about current or former

17  employees at Southern Company, mostly formers, I'm thinking

18  about it, that worked in Southern's Birmingham office.

19           There were a large number of folks that were working

20  from there on the Kemper design and other issues related to

21  the plant itself.

22           So those are the main buckets of places that I can

23  think of where a lot of the factual witnesses reside.

24           THE COURT:  All right.  Well, Mr. McConnell, did you

25  want to follow up?

```
 1            MR. McCONNELL:  Yes.  Just a couple of points, your
 2    Honor.  Very fast.
 3            One, I do want to point out there's nothing unique
 4    about this request about prohibiting during conferences in
 5    virtually depositions.  Because we're in the middle of
 6    discovery, and plaintiffs have already defended four
 7    depositions.
 8            At no time in this case, in the beginning, in a
 9    protective order or in the standing order did they want this.
10            So we took those depositions.  They defended them.
11    They took breaks.  They could speak with their folks during
12    those breaks.
13            And so now, we're trying to change the game -- the
14    rules mid-game.  And I would submit to the Court that what is
15    sauce for the goose is sauce for the gander.  And now to flip
16    the script, now that we're defending the deposition, that we
17    can't enjoy the same thing that they enjoyed as they defended
18    their witnesses, I think would be unfair.
19            As to the trial witnesses, your Honor, in these types
20    of cases, that's true with every securities case, for the most
21    part.  You have a great dispersal of witnesses that may be
22    outside the typical subpoena power of the Court.
23            And Federal Rules of Civil Procedure that they refer
24    to don't require this prohibition on the breaks, and nothing
25    in the federal rules of evidence do, either.
```

1          Thank you, your Honor.

2          THE COURT:  Thank you.  So --

3          MS. WYMAN:  Your Honor --

4          THE COURT:  Yeah, I'm going to end it.  I'm going to

5     end discussion on it right now.

6          It's funny, the goose and gander argument.  Before I

7     became a judge, about half my practice was divorce work, the

8     other half was mainly construction litigation.  Kind of a

9     weird type of work, but I worked for two partners, one did a

10    lot of divorce work and the other one did a lot of real estate

11    litigation, so that's how I ended up there.

12         I was representing somebody in a divorce case, a

13    lady, and I don't remember exactly what happened, but during

14    my closing argument I made the goose and gander argument that

15    you made.

16         And then we didn't do as well as I thought we should

17    have done in the case, and then, later, I'm trying to do a

18    postmortem on it, I realized that I made the goose and gander

19    argument, but I represent the goose, that I represented the

20    woman.  So I always wondered whether that...

21         So I have been a member of the bar for 30 years this

22    month, probably.  Trial work and a judge for 18, 19 years,

23    trial, two different trial benches for 13 or 14 years.  And I

24    have never entertained, had a motion filed, had anyone file

25    one against me or did I file one as it related to depositions

1  and talking to the witnesses during the break.  And I'm not

2  going to impose that.

3          I understand your position on it.  But I think it's

4  unusual, that would be unusual to our locality, the Northern

5  District of Georgia.  I practiced in both state and federal

6  court.  I have never seen it before.

7          And particularly, if it's true, but not because of,

8  if it's true, that there has already been depositions taken in

9  this case where that wasn't the rule.

10         But I'm not inclined to change what is the normal

11  procedure in this case or in this area.  And in fact, if while

12  the deposition transcript may come into evidence, you're not

13  prohibited, when you go back on the record, to establish it on

14  the record that the deponent had a discussion with their

15  lawyer.  That happens in trials sometimes, too.

16         So in any event, as to that, I'm not going to grant

17  that.

18         Now you have to refresh my memory about the other two

19  issues.

20         The issue about who is going to be at the deposition.

21  I can't imagine that there are too many witnesses out there

22  that are going to trust that their lawyers have been socially

23  distancing properly, but the other side isn't.

24         I mean, I don't know if my children are socially

25  distancing properly except when I'm around them, you know, I

1  know what they are doing.

2        I was on vacation last week in Hilton Head.  I went

3  with my family, my kids are grown.  I can tell you, nobody in

4  Hilton Head Island, South Carolina, isn't socially distancing

5  most of the time.  But sometimes it's just unavoidable.  You

6  go to the grocery store, and people are just on top of you.

7        So, you know, we are in difficult and unusual

8  circumstances.  I'm glad that you all are proceeding in making

9  plans and have thought and discussed these remote, the remote

10  completion of discovery.

11        I'm going to leave it up to this.  The status quo is

12  going to be that depositions are remote.

13        And then, if the parties can agree to have them in

14  person, you can do so on terms that are mutually agreeable.

15        Obviously, it seems to me the best approach would be

16  that there not be more than one lawyer per side there.  That

17  makes common sense with what we're dealing with.

18        But you all can agree to anything you want to agree.

19  But I'm going to allow the attorneys to have a say so about

20  whether they want to be in the room with anyone else.  But I

21  want you to agree to this stuff, you know, in good faith.

22        But it seems to me even an attorney, if they're the

23  attorney who is going to take the deposition, ought to have

24  some veto, for their own health purposes, about whether

25  they're going to be in a room with another lawyer or another

1    witness.

2          Particularly in the kind of stuff you all are talking

3    about.  I mean, you all are going to be deposing some

4    construction dudes that may have worked completely throughout

5    this, they've been deemed essential, and have been exposed to

6    a lot of people just because of the nature of their lifestyle

7    and their business.

8          So that's the first two issues.  What was the last

9    one?  Refresh my memory.

10         MR. McCONNELL:  The completeness issue on the

11   documents.

12         THE COURT:  Here's what I want you all to do on the

13   document.  My inclination says let's do it like we do it if we

14   were all in person.  Of course, you can't because you may not

15   be, probably most of the time you wouldn't be in person.

16         If you're in person in the place where you're taking

17   the deposition, Mr. Singer, Mr. McConnell, whoever, is

18   defending, you know, likely could pull out of their briefcase

19   or their stack of Bankers boxes the document, and give it to

20   their witness so that their witness could see it all.

21         And if they don't do it when they are being

22   questioned on direct, they do it when they get the opportunity

23   to question their witness -- I guess I got that backwards.

24         If they can't get it to their witness while their

25   witness is being cross-examined, then they can do it when they

1  get to do their direct thereafter.

2        But the difficulty is that you're not there, so it's

3  hard for you to pull that document out of your Bankers box.

4        So here's what I want you to do is any document that

5  either side is going to use at a deposition -- I'm not telling

6  you use one page, five pages, whatever.  It doesn't make sense

7  to attach a 200-page document, if there is one in this case,

8  to a deposition transcript when you're only looking at five

9  pages.

10        But if the other side needs you to produce the whole

11  thing, then -- particularly if you all are doing this

12  remotely, then you need to be prepared to electronically email

13  the entire document to both opposing counsel and to the

14  witness, so that they can look at it.

15        So presumably a witness who is being deposed, I guess

16  you're going to maybe share documents on a screen, using Zoom,

17  or whatever you're using.  But they've got to have a way where

18  they can get the entire document, if they need it, and ask for

19  it.

20        So, for example, Ms. Wyman, if you're taking the

21  deposition, Mr. McConnell is defending it, you're questioning

22  about five pages of it, then he need only ask you, could you

23  email my client or my witness that document, and me that

24  document.  And then that allows everybody to look at the

25  entire document.

1          I don't know how you didn't attach it to the record

2  if you are going to question.  If Mr. McConnell, in that

3  hypothetical, were to question the witness about other pages,

4  but there has got to be a way to make that happen.

5          I have been pleasantly surprised so far how Zoom has

6  worked for us.  I have sent somebody to prison for 13 years

7  the other day via Zoom.  It wasn't a great day for him, but

8  everything worked well procedurally.

9          I have taken pleas and sentenced people, criminally,

10  and I have had a lot of oral arguments in recent weeks.

11          I just think this is what we're going to be doing

12  until we have a vaccine, this is the way we're going to

13  practice law and have cases.

14          I'm hopeful that I'm going to do a trial maybe by

15  Zoom later in the summer.  Not a jury trial, but a bench trial

16  that I have got on tap.

17          So I think you all can make that work.

18          Let me ask if you all can collaborate on doing a

19  comprehensive order.  You have already got one, generally, but

20  one that just reflects what I'm ordering here on these three

21  points.  And then submit it to Jennifer Lee, who will get it

22  to me.

23          Is there anything else we need to talk about today?

24          MR. ALVARADO:  One other issue, your Honor.

25          THE COURT:  Yes.

1          MR. ALVARADO:  One final issue that didn't make it on

2     to the agenda.  It is a short little paragraph in our

3     submission that we talked about with the defendants.

4          With respect to documents from the files of the

5     executive defendants in this case, Mr. Fanning, Mr. Holland,

6     Mr. Beattie, and Mr. Day, the parties agree that their

7     documents would be produced using search terms.

8          So given that they weren't on the ground, day after

9     day, so we have some fairly broad search terms related to

10    Kemper, for example.

11         We were told that search terms hit on almost 23,000

12    documents on the files of these four individuals.  But we

13    received very, very few emails.

14         So what we've requested from the defendants is a

15    report that would let us see, by person, how many documents

16    hit on the search terms that we've greed upon.

17         And the defendants are unwilling to give us such a

18    report so that can assess the production further.

19         And what we're requesting is simply a hit report for

20    us to look at to assess the production.

21         THE COURT:  All right.  Mr. Singer or Mr. McConnell,

22    do you want to weigh in on that?

23         MR. SINGER:  Sure.  This is Evan Singer.  I'll take a

24    stab at that.

25         Your Honor, the part that Mr. Alvarado is leaving out

1  is that the hit report we gave him originally listed 22,000

2  documents was the universe that would then be reviewed subject

3  to the 14 or whatever category -- number of -- categories of

4  information that the parties agreed that were responsive to

5  this case.

6        The Kemper project is a massive project, and adding a

7  search term that just says Kemper does not mean that every

8  single one of those Kemper documents is responsive.

9        So what we did is we took the 22,000 documents, and

10  then we reviewed them for responsiveness to the agreed

11  categories of information, and produced them.

12        That was our agreement; that was what we did.  And

13  from the defendant's perspective, that issue is now over and

14  closed as the document production was done in May, 2019.

15        I don't think it's fair or appropriate or

16  proportional for the plaintiff, now, to try to retrade that

17  agreement to get more information, another hit report, and

18  then make the defendant spend more money to do the same drill

19  already, when we lived up to our terms of the agreement.

20        THE COURT:  Well, I'm going to assume that you did

21  live up to the terms of your agreement, but what often happens

22  in these kinds ever cases and, really, any case is one side

23  doesn't trust the other.

24        Probably I'm going to lay out and you continue to

25  talk and try to work it out.  This is probably, if the

1  plaintiff insists that there is more that has got to be done,

2  this is probably what I'm going to do.

3       I'm going to require that you all employ a special

4  master who goes through and looks at all of that. And if it's

5  true that what the defendant is saying, that they've produced

6  everything they're supposed to produce, then obviously there

7  won't be anything else to be produced, and the expense of that

8  is going to be on the plaintiff.

9       If it turns out that the defendant is not, you know,

10  wasn't thorough enough or isn't being fair in what it is

11  producing, and that the special master determines that there

12  is a lot more that needs to be produced that should have

13  already been produced, then the defendant will bear the burden

14  of the cost of the special master.

15       So I throw it out that way. Obviously, I can't -- I

16  mean, I don't know, really, any of you all personally -- I

17  know Mr. McConnell personally. But I don't know who is right

18  and who is wrong. And no one is saying anyone is being

19  dishonest.

20       It's just the plaintiff is saying it just looks funny

21  to them that these three or four gentlemen didn't have more

22  documents produced, given there were so many hits.

23       So the proportional requirement that the Supreme

24  Court has put in place does mean something, and if the

25  plaintiffs want it bad enough, and they think they're right,

```
1   then I'm willing to allow them to have access to it at their
2   expense by paying for a special master.
3          And if it turns out that defendant hasn't been fair
4   with their disclosure, then the defendant will have to absorb
5   that cost.  I'll shift it to the defendants.
6          So I'll let you all continue to talk about it, but
7   that's probably how I'll handle it.
8          All right.  Good to talk to you all this morning.
9   And I'm disappointed that you didn't settle the case, but I
10  won't give up hope that that will occur.
11         So you know, I mean, as trials go, if there were to
12  be a trial in this case, jurors may not understand the complex
13  world of securities and how the testimony will be, you know,
14  will come forward.  But they do understand electricity.
15         So at least it's not like a pharmaceutical drug where
16  they would have a little bit harder time understanding the
17  basics.  We understand electricity.  So wouldn't be an
18  entirely horrible trial for a jury to hear.
19         But you all keep settlement in your mind, and if it
20  doesn't happen, it doesn't happen.
21         But obviously we would be through with COVID-19 by
22  the time you all are ready to go to trial, anyway.
23         Have a good day, and thanks for your time this
24  morning.
25             MR. ALVARADO:  Your Honor, is there -- I was going to
```

1    see if we could get another status conference on the schedule

2    for --

3            THE COURT:  Yes.  Just go ahead and try to figure out

4    a good time for you all, and then call and talk -- call

5    Ms. Lundy, Sherri Lundy in my office, who handles of my civil

6    stuff.  She will schedule it.

7            And we can do it by phone; if you prefer to do it by

8    Zoom, we can do it by Zoom.

9            MR. ALVARADO:  Thank you, your Honor.

10           THE COURT:  All right.

11           MR. McCONNELL:  Thank you, very much, your Honor.

12           MS. WYMAN:  Thank you.

13

14       (Proceedings were adjourned at 11:32 a.m.)

15

16

17

18

19

20

21

22

23

24

25

1

2                          REPORTER'S   CERTIFICATE

3

4

5          I, Judith M. Wolff, Certified Realtime Reporter and

6    Official Court Reporter for the United States District Court

7    for the Northern District of Georgia, with offices at Atlanta,

8    do hereby certify:

9          That I reported on the Stenograph machine the

10   proceedings held by teleconference on Monday, June 15, 2020,

11   in the matter of Monroe County Employees' Retirement System,

12   et al., v. The Southern Company, et al.;

13         That said proceedings were reduced to typewritten

14   form by me; and that the foregoing transcript is a true and

15   accurate record of the proceedings to the best of my skill and

16   ability.

17         This, the 17th day of June, 2020.

18

19

20                         _____

                           /s/ Judith M. Wolff, RPR, CRR
21                             Official Court Reporter

22

23

24

25

**MR. ALVARADO: [25]**   7/13 7/16 9/1
10/23 11/8 11/21 12/20 13/4 13/13
14/1 30/6 32/18 44/4 47/25 48/18
50/6 51/8 52/4 52/25 56/2 59/12
77/24 78/1 81/25 82/9
**MR. McCONNELL: [18]**   22/22 22/25
25/16 26/7 28/6 29/5 29/8 30/1 33/4
59/1 59/4 64/6 64/9 64/13 67/16 71/1
75/10 82/11
**MR. SINGER: [31]**   3/9 4/2 4/4 5/23
6/12 6/23 7/9 14/17 16/9 36/20 40/6
40/10 40/20 41/2 41/8 41/14 42/8
43/2 43/5 43/11 43/22 53/10 53/13
54/25 56/21 57/16 58/6 58/10 58/21
59/13 78/23
**MS. WYMAN: [9]**   60/7 60/14 62/22
62/25 69/6 70/11 70/14 72/3 82/12
**THE COURT: [80]**   2/2 3/19 4/3 4/22
6/5 6/16 7/5 7/11 7/15 8/14 9/20
10/24 11/16 11/23 12/22 13/7 13/21
14/8 15/9 16/18 22/24 25/15 25/17
27/22 28/18 29/7 29/23 30/3 32/15
33/2 33/24 40/4 40/8 40/15 41/1 41/4
41/9 41/24 42/25 43/3 43/6 44/1 47/6
48/3 49/23 50/25 51/15 52/22 53/3
53/12 53/22 55/3 56/19 57/14 58/3
58/8 58/19 58/24 59/2 59/5 59/14
60/11 62/15 62/23 64/4 64/8 64/12
67/13 68/12 70/6 70/12 70/24 72/2
72/4 75/12 77/25 78/21 79/20 82/3
82/10

**/**

**/s [1]**   83/20

**1**

**100 [6]**   9/5 42/17 47/23 47/25 48/8
48/14
**101 [2]**   67/3 68/5
**10k [2]**   66/18 66/18
**11:32 [1]**   82/14
**12 [1]**   68/21
**120 [2]**   44/7 56/23
**128 [4]**   41/22 42/15 45/8 45/8
**1286 [1]**   24/17
**13 [2]**   72/23 77/6
**131 [1]**   24/19
**1317 [1]**   1/24
**1347 [1]**   24/19
**14 [2]**   72/23 79/3
**15 [2]**   1/6 83/10
**17th [1]**   83/17
**18 [1]**   72/22
**19 [5]**   43/15 61/8 61/25 72/22 81/21
**1914 [1]**   1/22
**19th [1]**   58/22
**1:17-cv-00241-WMR [1]**   1/4

**2**

**20 [8]**   60/10 60/12 60/14 60/20 60/22
64/11 64/17 65/17
**200 [1]**   9/5
**200-page [4]**   66/13 66/18 66/21 76/7
**2005 [1]**   24/17
**2012 [1]**   27/8
**2013 [3]**   54/3 57/7 57/11
**2014 [1]**   24/7
**2015 [1]**   25/2
**2016 [3]**   40/6 49/13 52/25
**2019 [7]**   43/15 45/20 46/9 49/11
58/13 58/21 79/14
**2020 [5]**   1/6 49/15 53/8 83/10 83/17
**215-1317 [1]**   1/24
**22,000 [2]**   79/1 79/9
**23 [1]**   69/20
**23,000 [1]**   78/11
**26 [1]**   57/4
**28 [9]**   42/16 42/18 45/8 47/22 48/4
60/10 60/13 63/2 66/7
**28-page [1]**   57/2
**2d [2]**   24/19 25/7

**3**

**30 [3]**   23/8 31/12 72/21

**30303-3361 [1]**   1/23
**322 [1]**   25/6
**3361 [1]**   1/23
**34 [3]**   67/17 68/8 69/21

**4**

**400 [1]**   24/17
**404 [1]**   1/24

**5**

**50 [1]**   2/5
**5:01 [1]**   12/5

**6**

**6th [2]**   17/2 19/4

**7**

**75 [1]**   1/23
**764 [1]**   25/7

**9**

**9:30 [1]**   47/10
**9:33 [1]**   2/1

**A**

**a.m [2]**   2/1 82/14
**ability [1]**   83/16
**able [5]**   16/1 16/1 16/7 56/14 69/14
**about [156]**
**above [1]**   15/3
**absolutely [3]**   31/11 52/19 57/9
**absorb [2]**   22/15 81/4
**access [2]**   60/24 81/1
**accommodates [1]**   61/24
**according [2]**   28/24 43/22
**accounting [4]**   32/23 37/15 44/21
45/3
**accurate [2]**   38/13 83/15
**act [1]**   54/20
**action [2]**   1/4 49/19
**activity [1]**   2/13
**actual [3]**   17/3 32/12 66/16
**actually [5]**   17/2 18/11 26/8 31/16
54/6
**add [2]**   22/1 63/6
**adding [1]**   79/6
**addition [1]**   32/12
**additional [2]**   63/7 64/1
**address [2]**   23/2 24/11 28/10
**addressed [2]**   25/13 26/13
**addressing [1]**   24/3
**adhered [1]**   23/5
**adjourned [1]**   82/14
**admissibility [1]**   51/9
**admissible [3]**   10/14 51/1 51/4
**adopted [1]**   67/20
**advantage [3]**   20/8 31/7 33/9
**adversary [5]**   38/24 39/10 39/11
49/17
**advice [25]**   3/16 4/14 4/20 5/10 5/21
6/1 6/4 6/4 7/3 7/25 8/3 8/11 8/12
8/15 8/16 8/19 8/25 9/17 11/4 11/15
15/7 17/6 17/10 17/18 17/22
**advised [1]**   68/1
**affidavit [1]**   4/24
**affirmative [2]**   23/22 24/9
**after [21]**   4/5 15/15 15/19 26/2 26/3
30/23 30/23 35/13 37/10 40/10 40/19
40/22 42/21 45/22 49/16 52/13 52/14
56/16 56/17 56/17 78/8
**again [16]**   19/6 20/16 24/17 24/23
27/16 29/8 30/7 31/24 36/21 39/23
41/18 44/3 45/17 64/7 68/4 68/11
**against [2]**   53/10 72/25
**agenda [2]**   59/25 78/2
**ago [5]**   46/10 46/14 46/23 56/7 56/16
**agree [21]**   7/17 7/20 8/14 14/17 16/7
16/9 17/11 17/13 17/14 34/14 34/21
35/18 41/24 57/13 61/12 61/13 74/13
74/18 74/18 74/24 75/8
**agreeable [1]**   74/14
**agreed [2]**   79/4 79/10
**agreeing [1]**   18/13
**agreement [9]**   4/10 39/13 61/17 61/23
65/21 79/12 79/17 79/19 79/21

**agrees [1]**   28/23
**ahead [13]**   4/3 7/6 22/21 22/24 34/1
34/12 34/13 34/23 35/15 35/16 35/17
53/23 82/3
**al [4]**   1/4 1/7 83/12 83/12
**all [96]**
**allegation [2]**   37/14 55/10
**allegedly [1]**   48/5
**allow [5]**   59/22 74/19 81/1
**allowed [3]**   14/24 51/20 55/6
**allows [2]**   20/25 76/24
**almost [3]**   4/24 69/10 78/11
**along [5]**   19/15 30/19 32/12 65/18
66/1
**already [11]**   12/17 20/20 26/3 33/18
35/11 55/24 71/6 73/8 77/19 79/19
80/13
**also [13]**   5/14 24/18 24/21 25/10
31/14 38/20 42/14 42/13 42/18 56/17
57/18 57/19 61/22
**alteration [1]**   70/3
**although [2]**   36/3 52/8
**Alvarado [13]**   1/16 7/14 7/15 30/4
30/6 37/4 44/2 47/19 55/22 56/22
57/1 57/13 78/25
**always [3]**   21/2 68/7 72/20
**am [6]**   4/1 11/16 22/16 34/4 36/3
65/7
**amenable [1]**   15/3
**among [1]**   14/4
**amount [1]**   9/3
**analogous [1]**   53/15
**analysis [2]**   11/9 46/19
**analyst [1]**   32/22
**Anderson [2]**   12/20 50/16
**another [16]**   11/5 12/17 12/20 22/4
27/7 27/11 27/23 47/8 49/23 55/23
60/6 64/2 74/25 74/25 79/17 82/1
**answer [4]**   13/7 15/17 44/13 53/13
**answers [1]**   15/18
**anticipation [1]**   36/10
**any [31]**   2/15 5/20 9/18 13/10 13/22
18/12 18/16 21/22 23/17 34/8 35/15
35/18 42/7 43/25 45/23 46/13 46/24
51/5 52/20 56/1 56/6 59/10 61/24
62/18 63/4 69/25 70/4 73/16 76/4
79/22 80/16
**anybody [3]**   2/15 19/23 59/10
**anyone [4]**   66/12 72/24 74/20 80/18
**anything [20]**   5/2 5/20 7/7 12/23
17/8 17/18 20/15 29/23 37/3 33/12
42/16 45/12 46/21 46/24 52/20 56/1
66/21 74/18 77/23 80/7
**anyway [5]**   10/14 17/15 43/9 55/10
81/22
**apart [1]**   69/24
**apparently [1]**   39/25
**Appeals [2]**   38/22 39/18
**appear [3]**   7/21 17/21 28/14
**Appearance [1]**   1/14
**appears [2]**   8/4 9/7
**apple [1]**   21/3
**apply [1]**   39/8
**appreciate [1]**   8/20
**approach [2]**   27/17 74/15
**appropriate [6]**   15/8 16/12 24/11
29/2 30/15 79/15
**are [107]**
**area [2]**   2/13 73/11
**aren't [1]**   21/22
**argue [3]**   10/4 43/8 43/9
**argued [2]**   20/24 42/4
**argument [18]**   4/23 6/6 21/7 34/8
42/7 43/8 43/11 47/4 47/19 47/24
48/4 48/14 51/24 52/16 72/6 72/14
72/14 72/19
**arguments [4]**   20/5 21/21 22/3 77/10
**around [8]**   2/13 9/1 12/10 14/3 31/24
40/6 63/10 73/25
**Art [2]**   12/7 15/4
**articulated [1]**   32/19
**articulates [1]**   21/6
**articulating [1]**   13/20
**ask [26]**   3/19 7/6 11/21 11/22 14/13
14/19 16/1 16/7 16/11 16/12 19/2
25/5 42/3 43/19 49/24 51/16 52/22
54/7 54/22 63/22 66/19 68/25 69/2

**A**

ask... [3]   76/18 76/22 77/18
asked [6]   6/24 18/22 40/2 40/23
 42/18 49/1
asking [6]   4/7 15/13 16/6 33/12
 53/25 66/24
asks [1]   6/17
aspect [1]   55/1
assess [2]   78/18 78/20
associate [1]   54/2
assuage [1]   13/18
assume [3]   2/3 48/22 79/20
assuming [2]   18/6 59/24
ATLANTA [4]   1/2 1/6 1/23 83/7
attach [2]   76/7 77/1
attached [4]   37/17 46/24 47/2 61/14
attachments [2]   2/17 2/18
attack [1]   27/18
attempted [1]   46/3
attempting [1]   57/3
attend [1]   61/22
attending [1]   60/23
attorney [8]   2/24 4/14 16/20 38/6
 47/5 48/21 74/22 74/23
attorney's [1]   9/24
attorney/client [1]   38/6
attorneys [3]   45/10 65/7 74/19
attributing [1]   21/21
audit [4]   36/13 37/25 44/25 51/13
auditor [12]   37/13 38/24 39/3 39/6
 39/7 39/10 39/10 39/16 39/21 44/15
 44/20 46/18
auditors [6]   37/22 38/17 38/23 39/20
 50/4 56/10
August [1]   45/19
authentic [1]   51/11
authority [1]   59/23
available [3]   66/25 67/7 67/11
await [1]   31/25
aware [6]   38/25 40/9 40/16 41/15
 41/17 51/14
away [1]   24/3

**B**

back [22]   4/5 9/20 11/12 11/18 26/1
 40/4 40/15 43/14 43/25 45/19 45/25
 46/4 49/6 49/13 49/19 50/9 51/22
 54/4 55/21 59/25 70/6 73/13
backwards [1]   75/23
bad [2]   47/20 80/25
balance [1]   11/10
Bankers [2]   75/19 76/3
bar [1]   72/21
based [5]   4/8 16/13 18/12 37/20 62/7
basically [1]   10/6
basics [1]   81/17
basing [1]   20/25
basis [3]   16/10 16/15 35/11
be [150]
beam [1]   26/17
bear [2]   53/4 80/13
Beattie [1]   78/6
became [2]   68/22 72/7
because [53]   4/13 4/22 5/13 10/5
 15/21 16/19 17/5 18/2 18/4 20/8
 20/12 20/15 20/19 20/25 21/14 22/3
 24/12 26/11 27/17 28/8 28/22 29/8
 31/6 31/8 33/13 38/24 39/6 39/10
 43/8 43/24 44/19 45/15 45/24 46/2
 47/9 47/17 47/20 48/12 49/17 50/2
 50/8 52/5 52/18 54/22 55/12 56/6
 62/16 63/19 69/14 71/5 73/7 75/6
 75/14
become [3]   19/6 40/9 40/16
becomes [1]   65/3
been [31]   4/6 7/17 24/16 40/17 41/10
 41/11 42/25 43/7 51/18 52/3 53/16
 54/21 55/2 55/11 65/1 65/8 67/4
 67/16 67/18 67/18 67/22 68/8 69/20
 72/21 73/8 73/22 75/5 75/5 77/5
 80/13 81/3
before [16]   1/11 3/4 4/11 29/24
 30/19 30/19 30/22 34/2 34/5 40/13
 49/6 55/21 68/8 68/22 72/6 73/6
beforehand [1]   67/9
begin [2]   36/22 45/24

beginning [1]   71/8
behalf [3]   7/11 36/8 44/2
being [17]   4/20 9/12 30/25 49/17
 52/13 52/14 62/23 62/24 63/1 63/5
 68/11 70/7 71/21 75/25 76/15 80/10
 80/18
belief [1]   39/12
believe [16]   11/13 15/6 17/12 17/13
 20/22 23/12 30/9 43/7 48/20 48/24
 57/16 57/17 58/15 59/10 62/11 63/7
believes [2]   9/7 22/2
bench [1]   77/15
benches [1]   72/23
benefit [1]   8/2
best [7]   8/24 20/11 20/22 22/2 28/21
 74/15 83/15
better [6]   6/24 12/9 13/9 13/14
 22/14 26/19
between [3]   2/23 3/17 4/13 7/2 9/5
 11/12 55/23 61/23 65/22
bifurcating [1]   26/22
big [1]   2/11
bigger [1]   35/9
Birmingham [1]   70/18
bit [8]   2/4 36/22 43/20 46/6 61/1
 61/16 62/1 81/16
blanche [1]   51/21
blank [1]   45/2
blown [2]   31/5 50/21
board [1]   50/18
boss [1]   20/12
both [14]   2/16 21/20 22/17 26/17
 27/5 35/20 35/25 36/15 37/22 38/9
 38/11 59/15 73/5 76/13
bottom [3]   7/16 17/12 63/23
box [2]   69/18 76/3
boxes [1]   75/19
break [3]   4/22 62/24 73/1
breaks [9]   60/4 67/15 68/2 68/17
 68/23 70/5 71/11 71/12 71/24
brief [6]   3/24 4/24 22/8 22/10 22/11
briefcase [1]   75/18
briefed [1]   37/4
briefing [2]   37/22 57/7
briefs [3]   23/9 31/12 32/10
bringing [1]   36/18
broad [1]   78/9
Brothers [1]   25/2
buckets [1]   70/22
budget [2]   9/5 50/21
builders [1]   8/18
building [3]   2/11 2/12 27/20
bunch [1]   21/19
burden [2]   66/20 80/13
burdensome [1]   21/10
business [6]   8/10 8/12 11/14 51/4
 51/12 75/7
button [1]   2/5

**C**

calculate [1]   29/4
calculation [1]   28/4
call [15]   3/3 3/22 5/8 5/9 5/16 5/24
 6/1 12/6 13/2 50/13 54/1 55/4 68/17
 82/4 82/4
called [4]   2/1 2/7 23/20 68/18
calls [1]   69/25
came [2]   3/24 49/8
can [55]   5/25 8/15 9/23 11/21 11/22
 13/10 14/13 14/20 18/21 19/19 19/19
 19/25 20/11 21/9 29/4 29/13 31/2
 32/4 32/7 32/8 32/15 33/15 33/20
 34/14 35/19 37/13 44/10 44/19 47/12
 51/1 53/17 60/8 60/12 63/18 63/19
 63/21 64/2 64/19 65/11 65/12 69/2
 69/22 70/22 74/3 74/13 74/14 74/18
 75/25 76/14 76/18 77/17 77/18 78/18
 82/7 82/8
can't [24]   2/15 2/18 4/25 9/21 9/21
 15/1 17/17 18/19 18/25 24/25 31/8
 32/1 33/16 39/11 63/19 68/4 68/5
 68/21 68/25 71/17 73/21 75/14 75/24
 80/15
candid [1]   42/8
cannot [1]   39/10

car [2]   35/5 35/7
care [2]   5/12 9/11
caregivers [1]   61/6
Carolina [2]   67/21 74/4
cart [1]   21/3
carte [1]   51/21
case [86]
cases [26]   19/22 20/3 23/19 23/25
 24/21 25/8 25/10 25/17 25/19 26/1
 26/10 27/17 29/11 30/12 32/23 39/19
 67/24 68/3 71/20 77/13 79/22
cat [1]   11/25
categories [2]   79/3 79/11
category [2]   28/19 79/3
causation [13]   23/20 23/23 24/4 24/8
 24/25 25/21 28/3 28/11 31/5 32/16
 32/21 34/4 34/22
cause [2]   34/9 35/4
causing [1]   12/1
cell [1]   2/14
Celotex [2]   24/14 33/11
centric [1]   33/13
CEO [8]   2/25 3/18 4/21 6/19 7/2 8/22
 9/14 10/5
CEO's [2]   10/7 12/12
certain [2]   61/12 67/19
certainly [8]   5/1 5/10 19/19 19/20
 19/25 20/18 50/24 68/9
CERTIFICATE [1]   83/2
Certified [1]   83/5
certify [1]   83/8
CFO [1]   2/25
chain [1]   4/19
chance [2]   22/15 55/19
chancery [1]   67/22
change [9]   3/5 9/21 9/23 10/2 10/8
 19/25 21/5 71/13 73/10
Chapman [1]   24/5
characterization [1]   10/18
Chemical [1]   39/5
Cheminova [1]   24/16
chief [2]   14/4 69/19
children [1]   73/24
circuit [12]   20/13 23/6 24/2 24/6
 24/17 26/4 26/24 33/7 33/8 33/11
 38/18 59/3
circuits [1]   24/24
circumstances [1]   74/8
cite [1]   38/20
cites [1]   39/19
City [1]   27/3
civil [4]   1/4 32/3 71/23 82/5
claim [2]   38/6 53/10
claiming [2]   38/5 39/15
clarification [1]   38/4
clarify [1]   57/18
clarifying [1]   36/22
class [1]   33/19
clause [1]   65/20
claw [2]   45/25 46/3
clawback [10]   6/9 44/12 45/21 46/8
 46/12 47/2 51/22 52/6 56/13 57/5
clawed [4]   46/4 49/19 50/9 51/21
clear [7]   8/2 33/23 42/22 56/22
 58/11 61/16 62/12
clearly [2]   9/13 56/12
client [11]   4/14 9/25 10/1 17/7 17/8
 17/17 17/19 38/6 55/6 68/23 76/23
client's [1]   55/4
clients [2]   8/17 48/16
close [1]   64/14
closed [3]   46/7 46/9 79/14
closing [1]   72/14
coaching [1]   69/22
coalescing [1]   23/19
collaborate [1]   77/18
collated [1]   11/2
colleague [1]   37/4
colleagues [1]   21/12
comb [1]   2/20
come [9]   19/24 19/25 22/18 26/1 45/3
 51/6 55/5 73/12 81/14
comes [2]   58/3 64/22
comfortable [2]   44/20 64/24
coming [2]   21/4 21/5
comment [1]   8/10
comments [2]   7/20 15/22

**C**

**common [3]**   23/25 67/18 74/17
**communicates [1]**   8/22
**communication [9]**   2/23 3/16 4/13 7/2
9/22 11/10 14/22 16/11 48/10
**communications [5]**   6/13 11/12 16/3
17/21 68/3
**Companies [1]**   36/8
**company [32]**   1/7 2/24 4/17 38/23
39/4 39/5 39/6 40/16 41/6 41/11
41/11 41/25 42/6 44/25 45/2 46/20
47/5 47/17 48/10 48/11 48/21 49/12
51/13 52/20 55/8 56/12 56/16 62/3
70/12 70/15 70/17 83/12
**Company's [3]**   45/10 45/16 47/16
**compel [1]**   69/14
**complete [7]**   63/4 63/9 63/14 63/24
66/9 66/10 67/7
**completely [3]**   24/10 67/11 75/4
**completeness [2]**   66/7 75/10
**completion [1]**   74/10
**complex [1]**   81/12
**complicated [1]**   35/10
**compounds [1]**   31/16
**comprehensive [1]**   77/19
**conceal [1]**   54/21
**concern [3]**   10/8 55/9 69/19
**concerned [1]**   54/5
**concerning [1]**   60/16
**concerns [8]**   13/18 14/15 15/20 23/20
55/6 60/17 61/24 62/25
**conclusions [1]**   9/2
**condition [1]**   35/7
**conducted [4]**   30/23 36/25 37/7 37/8
**conference [7]**   1/11 33/16 37/3 43/15
64/10 68/6 82/1
**conferences [1]**   71/4
**conferred [1]**   4/10
**confidential [6]**   3/15 4/13 5/10 39/6
39/7 39/14
**confidentiality [1]**   39/13
**confirm [2]**   40/23 57/16
**confirmed [1]**   24/10
**conflict [2]**   55/14 55/16
**conform [1]**   35/22
**confused [1]**   61/1
**connection [2]**   30/25 42/10
**consent [1]**   35/19
**consider [6]**   21/23 34/4 34/12 34/19
55/20 58/17
**consideration [2]**   29/15 29/21
**considered [5]**   21/25 22/2 30/25
38/18 42/1
**considering [2]**   20/23 26/20
**consistent [3]**   23/4 42/4 53/1
**consistently [1]**   12/24
**construction [5]**   13/18 29/13 32/21
72/8 75/4
**contain [1]**   47/4
**contained [1]**   48/20
**contemplate [1]**   30/11
**contemplated [6]**   3/23 31/21 32/5
32/9 33/6 33/10
**contemplates [3]**   33/15 63/24 65/13
**contemporaneous [2]**   21/7 21/11
**contend [2]**   43/6 56/5
**contention [2]**   4/12 4/15
**context [2]**   26/21 29/20
**contingency [1]**   12/8
**continue [2]**   79/24 81/6
**continues [1]**   54/23
**contractors [1]**   70/13
**control [1]**   38/11
**conversation [1]**   16/21
**copies [2]**   41/5 63/4
**copy [7]**   49/2 49/4 57/23 63/14 66/9
66/10 66/25
**corporate [6]**   16/22 16/23 17/1 17/8
19/1 19/5
**correct [6]**   23/9 23/10 39/18 43/2
43/5 52/4
**correctly [2]**   3/18 4/19
**corrects [1]**   8/6
**cost [3]**   13/24 80/14 81/5
**costs [1]**   14/3
**could [19]**   3/19 4/10 5/1 5/25 21/5

25/23 31/12 48/15 52/2 53/6 59/16
65/13 66/2 68/18 71/11 75/18 75/20
76/22 82/1
**counsel [28]**   1/14 3/17 4/17 7/3 36/8
37/1 37/7 39/23 40/12 41/20 42/23
51/19 57/8 57/20 57/21 57/22 57/24
58/7 60/4 60/23 61/20 61/23 65/22
67/14 68/1 69/23 70/4 76/13
**counsel's [1]**   37/8
**County [5]**   1/4 6/11 6/15 6/18 83/11
**couple [6]**   23/3 38/4 38/15 47/6
57/19 71/1
**course [10]**   12/23 25/22 33/20 36/15
44/24 51/6 51/12 55/7 68/24 75/14
**court [45]**   1/1 1/12 1/21 1/22 2/1
3/7 3/12 14/25 21/13 23/21 24/5
24/10 25/13 26/10 26/16 26/18 27/2
35/2 36/23 37/2 37/4 37/13 38/8
38/22 38/25 39/3 39/18 42/8 43/14
43/18 43/19 43/23 56/24 67/21 67/22
68/9 69/12 70/8 71/14 71/22 73/6
80/24 83/6 83/6 83/21
**courthouse [3]**   1/22 2/11 2/13
**courtroom [2]**   69/15 69/17
**courts [7]**   23/5 26/1 26/25 67/19
67/20 67/22 69/21
**cover [1]**   36/21
**COVID [3]**   61/8 61/25 81/21
**COVID-19 [3]**   61/8 61/25 81/21
**crazy [1]**   10/1
**create [2]**   3/8 23/23
**created [1]**   44/24
**criminally [1]**   77/9
**cross [2]**   22/6 75/25
**cross-examined [2]**   22/6 75/25
**CRR [2]**   1/21 83/20
**current [3]**   62/7 70/14 70/16
**currently [1]**   56/15
**custody [1]**   38/11
**cv [1]**   1/4

**D**

**damages [6]**   28/5 28/11 32/21 34/5
34/22 35/5
**Darryl [2]**   1/16 7/14
**date [7]**   14/14 15/19 19/5 31/21 34/2
57/6 67/5
**dates [1]**   19/12
**Daubert [29]**   19/15 19/21 20/22 20/23
21/3 21/24 22/2 23/8 23/13 24/3
25/12 26/3 26/6 26/11 26/12 27/5
27/9 27/12 27/14 27/14 30/9 30/12
31/5 31/18 33/16 33/18 33/20 34/1
34/5
**Dauberts [2]**   30/19 30/22
**day [19]**   1/9 3/10 30/18 35/13 35/14
40/11 40/23 53/17 58/12 59/8 62/8
64/18 77/7 77/7 78/6 78/8 78/9 81/23
83/17
**deadline [1]**   23/13
**deal [7]**   2/8 55/8 55/18 64/9 66/5
66/6 66/17
**dealing [1]**   74/17
**Debra [2]**   1/16 60/7
**debrief [1]**   57/6
**December [3]**   58/15 58/21 58/23
**decide [1]**   59/22
**decided [2]**   19/21 26/7
**deciding [1]**   35/3
**decision [6]**   20/4 20/11 23/21 24/7
24/18 25/3
**decisions [2]**   18/12 22/14 25/12 33/8
**declaration [4]**   4/16 4/17 4/24 7/24
**deemed [1]**   75/5
**default [2]**   64/16 64/17
**defendant [20]**   1/18 3/6 12/21 18/13
19/24 21/6 22/18 22/21 25/14 34/9
35/4 36/17 36/19 50/16 79/18 80/5
80/9 80/13 81/3 81/4
**defendant's [3]**   60/21 62/1 79/13
**defendants [20]**   1/8 3/1 3/11 4/6
15/3 36/21 44/11 50/9 60/19 61/3
63/6 63/8 63/17 63/21 64/5 78/3 78/5
78/14 78/17 81/5
**defendants' [4]**   3/1 36/5 48/3 62/11
**defended [4]**   66/12 71/6 71/10 71/17

**defending [3]**   71/16 75/18 76/21
**defense [1]**   51/19
**defer [1]**   64/10
**deferred [1]**   26/11
**Deloitte [55]**   35/24 35/25 36/4 36/6
37/7 37/13 37/19 37/25 38/10 38/12
38/20 38/21 39/13 39/14 39/17 39/23
40/2 40/11 41/6 41/21 41/25 42/13
42/25 44/5 44/14 45/2 45/9 46/17
46/21 48/2 48/5 48/9 48/11 49/7
49/12 50/10 50/10 50/13 50/13 50/14
51/2 52/2 52/6 54/11 54/12 56/3
56/10 57/8 57/19 57/22 57/25 58/4
58/6 58/6 59/16
**Deloitte's [11]**   38/10 41/20 44/24
45/4 45/10 45/20 48/21 48/24 49/5
49/7 58/15
**denies [1]**   19/4
**deny [2]**   18/2 62/9
**denying [1]**   17/25
**depending [2]**   29/12 32/19
**depends [1]**   33/19
**deponent [2]**   60/16 73/14
**deponents [2]**   17/24 60/4
**depose [1]**   50/12
**deposed [2]**   69/11 76/15
**deposing [2]**   62/9 75/3
**deposition [27]**   13/14 14/19 15/1
60/17 60/23 61/11 61/19 61/21 61/22
62/4 63/10 63/15 66/10 66/16 67/2
68/5 68/21 69/13 69/22 71/16 73/12
73/20 74/23 75/17 76/5 76/8 76/21
**depositions [12]**   14/12 60/2 66/12
67/5 67/15 69/8 71/5 71/7 71/10
72/25 73/8 74/12
**described [1]**   26/9
**describing [1]**   65/18
**design [1]**   70/20
**designed [1]**   17/21
**desire [1]**   3/1
**destroy [2]**   3/13 4/8
**destroyed [3]**   14/9 14/10 14/24
**detailed [1]**   32/3
**determine [2]**   24/14 57/24
**determines [2]**   25/20 80/11
**determining [1]**   69/24
**developers [1]**   8/18
**dialed [1]**   2/4
**did [43]**   15/15 15/19 15/24 15/25
28/9 30/19 34/9 34/9 35/4 36/1 36/1
36/3 38/23 40/8 40/16 41/25 42/23
43/16 45/17 48/1 48/23 48/24 49/3
52/13 52/23 55/10 57/13 57/19 57/22
57/25 57/25 58/19 69/2 69/4 69/6
70/24 71/9 72/9 72/10 72/25 79/9
79/12 79/20
**didn't [32]**   5/20 8/17 8/19 8/21
10/21 18/9 34/9 42/6 45/24 47/18
47/18 47/21 47/23 48/6 48/9 48/10
48/12 48/13 48/16 49/4 49/14 54/9
54/10 54/11 58/8 58/13 68/23 72/16
77/1 78/11 80/21 81/9
**differ [2]**   28/4 28/4
**difference [1]**   41/9
**different [9]**   3/5 3/6 4/20 10/6
25/23 35/25 50/7 55/13 72/23
**difficult [3]**   21/23 68/12 74/7
**difficulty [1]**   76/2
**direct [3]**   24/5 75/22 76/1
**directed [2]**   25/24 37/6
**direction [2]**   37/1 37/9
**directly [3]**   12/16 18/19 50/1
**directs [1]**   3/12
**disagree [2]**   36/3 36/15
**disappointed [1]**   81/9
**disclose [3]**   9/8 10/21 10/25
**disclosed [4]**   10/3 10/3 10/22 29/2
**disclosure [20]**   6/18 6/20 8/5 8/7
8/23 9/2 9/11 9/24 10/17 10/19 11/17
12/9 17/17 28/24 32/23 36/2 36/16
41/16 52/22 81/4
**disclosures [3]**   7/3 12/14 29/21
**discovered [1]**   53/16
**discovery [5]**   30/23 53/15 54/20 71/6
74/10
**discretion [1]**   62/3
**discuss [1]**   19/13

**D**

discussed [1]  74/9
discussing [2]  7/17 69/23
discussion [7]  4/18 6/8 6/10 6/19
61/3 72/5 73/14
discussions [1]  41/19
dishonest [1]  80/19
dispel [1]  23/7
dispels [1]  9/18
dispersal [1]  71/21
disposal [2]  50/14 67/10
dispositive [4]  31/25 32/12 34/3
39/1
dispute [6]  56/3 60/3 60/5 60/6 60/9
60/15
distancing [3]  73/23 73/25 74/4
distinction [1]  55/23
Distributing [1]  24/6
district [17]  1/1 1/1 1/12 21/13
23/5 25/3 25/5 25/7 27/2 27/4 27/8
27/11 67/17 67/21 73/5 83/6 83/7
DIVISION [1]  1/2
divorce [4]  53/22 72/7 72/10 72/12
divorcing [1]  26/22
do [81]  6/22 7/5 7/6 9/25 10/20 11/1
13/12 13/21 13/21 14/20 16/7 17/14
20/15 20/16 21/6 21/16 22/23 24/11
25/10 25/19 26/2 26/6 26/19 31/23
32/17 33/2 33/6 33/10 33/25 34/9
39/20 40/12 42/6 42/9 42/22 42/22
43/1 43/8 43/11 45/3 47/10 47/18
50/5 52/20 54/9 55/25 55/25 56/19
57/18 59/9 59/19 61/14 63/6 63/16
65/15 66/16 67/10 68/4 68/10 71/3
71/25 72/16 72/17 74/14 75/12 75/13
75/13 75/21 75/22 75/25 76/1 76/4
77/14 78/22 79/18 80/2 81/14 82/7
82/7 82/8 83/8
document [65]  3/2 3/20 4/1 4/4 4/6
6/9 7/8 8/2 10/13 11/1 13/15 14/9
14/10 15/10 16/13 16/14 16/17 17/3
17/12 17/16 17/23 18/3 18/13 18/19
18/23 19/5 19/8 37/17 47/4 50/8
52/17 53/20 55/23 55/24 56/9 56/15
56/21 57/1 57/2 57/14 58/2 60/11
63/9 63/14 63/18 64/2 66/7 66/9
66/13 66/16 66/25 67/7 67/10
75/13 75/19 76/3 76/4 76/7 76/13
76/18 76/23 76/24 76/25 79/14
document's [1]  11/11
documents [83]  2/16 37/23 37/23 38/5
38/10 40/13 41/2 41/4 41/10 41/12
41/22 42/1 42/14 42/19 42/24 43/7
43/9 44/7 44/18 44/23 45/11 45/18
45/19 45/20 45/23 46/4 46/8 46/13
46/16 46/23 46/25 47/15 48/1 48/4
48/8 48/15 48/17 48/21 49/5 49/7
49/8 49/9 50/2 50/3 50/7 50/10 50/25
51/17 51/20 51/25 52/1 52/3 52/5
52/23 53/2 53/5 53/16 53/19 54/10
54/12 55/5 56/1 56/4 56/14 56/23
57/20 59/16 63/4 63/11 63/17 63/21
63/25 67/9 75/11 76/16 78/4 78/7
78/12 78/15 79/2 79/8 79/9 80/22
does [14]  9/18 9/24 24/2 26/4 41/24
43/6 47/4 47/23 54/8 54/13 65/17
66/8 79/7 80/24
doesn't [20]  5/2 7/21 8/11 9/23 10/2
12/23 15/23 17/9 17/21 18/24 30/14
34/17 42/3 47/7 62/6 68/20 76/6
79/23 81/20 81/20
dog [1]  10/5
doing [11]  20/22 25/22 33/10 36/6
36/10 45/20 66/2 74/1 76/11 77/11
77/18
don't [71]  2/7 2/24 8/1 9/4 9/11
9/16 10/10 10/25 13/21 14/6 14/24
16/9 16/12 16/15 17/12 18/16 19/12
20/1 20/2 20/7 20/19 21/8 22/19 26/7
26/14 27/22 27/25 28/7 28/8 29/3
29/3 29/8 31/23 35/13 42/19 46/5
46/12 47/11 48/11 48/20 48/25 49/1
53/13 56/2 56/24 57/12 58/21 59/6
59/10 59/15 59/15 60/11 62/8 62/11
63/8 63/16 65/5 65/7 65/8 65/9 66/20
67/8 67/9 71/24 72/13 73/24 75/21

77/1 79/15 80/16 80/17
done [19]  19/18 20/20 21/7 23/24
24/18 25/17 25/18 26/24 38/9 38/12
49/13 55/17 67/3 67/4 67/21 67/23
72/17 79/14 80/1
door [1]  17/2
Dow [1]  39/4
Dowd [1]  1/17
down [9]  4/22 15/9 23/21 34/10 43/20
46/21 51/12 56/11 64/22
drafted [1]  63/24
drill [1]  79/18
Drive [1]  1/23
Drosman [1]  30/17
drug [1]  81/15
dubious [1]  10/14
dudes [1]  75/4
dumping [1]  32/10
Dura [1]  23/21
during [13]  60/4 62/4 62/23 66/16
67/14 68/1 68/8 69/22 70/4 71/4
71/11 72/13 73/1
duty [1]  26/4

**E**

each [2]  19/20 26/22
earlier [2]  27/24 30/18
Eastern [1]  25/4
EBIX [1]  27/7
economic [1]  21/16
economist [3]  28/9 28/10 28/10
effect [2]  5/25 9/4
effectiveness [1]  34/18
effects [1]  34/18
efficiency [1]  26/15
effort [1]  54/21
efforts [1]  45/24
either [6]  7/21 26/15 49/20 59/20
71/25 76/5
elderly [1]  65/9
electricity [2]  81/14 81/17
electronic [1]  66/25
electronically [1]  67/7 67/11 76/12
element [2]  23/18 23/21
elements [1]  59/21
Eleventh [9]  20/12 24/2 24/6 24/17
26/4 33/7 33/11 38/18 59/2
elicit [2]  17/21 17/22
eliminate [3]  18/24 18/25 34/17
else [8]  7/7 29/23 30/4 33/12 47/8
74/20 77/23 80/7
email [13]  3/13 4/12 4/18 6/13 7/16
7/18 9/10 9/17 12/3 13/1 13/20 76/12
76/23
emails [1]  78/13
emphasis [1]  12/17
employ [2]  54/3 80/3
employees [6]  36/25 37/8 46/21 70/12
70/15 70/17
Employees' [3]  1/4 27/4 83/11
En [4]  25/6 27/7 27/10 27/13
En Re [3]  25/6 27/10 27/13
end [8]  4/25 21/14 54/3 58/23 59/16
65/20 72/4 72/5
ended [1]  72/11
ends [1]  11/20
engaged [1]  36/7
enjoy [1]  71/17
enjoyed [1]  71/17
enlighten [1]  13/10
enough [3]  59/22 80/10 80/25
entered [2]  27/1 33/8
entertain [1]  35/2
entertained [1]  72/24
entire [5]  4/18 6/13 76/13 76/18
76/25
entirely [2]  38/13 81/18
entitled [3]  14/21 19/2 57/6
equal [1]  60/24
equally [1]  39/8
equivalent [1]  65/22
erase [1]  16/20
escapes [1]  49/24
especially [2]  24/4 64/25
Esq [4]  1/16 1/16 1/18 1/18
essential [2]  23/18 75/5

essentially [3]  58/12 61/18 63/8
establish [3]  51/11 51/21 73/13
estate [2]  27/13 72/10
estimating [1]  29/15
et [4]  1/4 1/7 83/12 83/12
Evan [4]  1/18 3/9 36/20 78/23
even [12]  5/12 6/21 8/15 25/24 26/6
31/21 33/15 46/20 49/4 52/4 68/18
74/22
event [5]  5/20 21/22 35/15 51/5
73/16
eventually [1]  38/1
ever [2]  65/5 79/22
every [5]  58/1 58/2 63/13 71/20 79/7
everybody [4]  20/17 28/23 68/13
76/24
everybody's [1]  19/9
everyone [3]  27/19 62/13 64/17
everything [3]  15/3 77/8 80/6
evidence [16]  5/1 18/22 21/1 21/4
22/15 31/10 32/2 32/4 32/6 34/10
35/5 50/14 52/19 55/5 71/25 73/12
exact [1]  12/10
exactly [7]  9/4 10/25 28/8 52/24
53/23 68/9 72/13
examined [2]  22/6 75/25
example [9]  24/24 37/18 41/10 46/16
50/8 57/1 67/20 76/20 78/10
examples [2]  24/23 26/25
except [3]  21/9 64/14 73/25
exception [1]  19/6
excerpt [2]  66/14 67/1
exclude [1]  3/2
excluded [3]  15/12 20/4 20/5
exclusively [1]  23/17
excuse [2]  13/1 62/9
executive [1]  78/5
exhibit [10]  3/13 15/10 56/9 57/2
60/20 60/21 61/15 66/11 66/14 66/20
Exhibit 2 [1]  61/15
Exhibit 3 [2]  56/9 57/2
Exhibit 4 [1]  60/21
exhibits [3]  32/12 62/25 67/8
exist [2]  44/23 68/21
existed [1]  46/13
existence [1]  10/12
expect [3]  27/23 28/2 29/4
expectation [1]  39/7
expense [2]  80/7 81/2
expenses [1]  35/6
experience [2]  67/14 68/7
expert [20]  21/1 22/4 22/5 23/24
25/10 26/20 28/2 28/3 28/12 29/3
29/18 30/23 31/3 31/23 32/21 32/22
32/22 32/23 32/23 32/24
experts [10]  21/2 23/15 27/24 28/14
29/1 29/12 29/12 31/9 32/17 34/15
explaining [1]  29/20
explicitly [2]  27/9 27/12 27/14
exposed [1]  75/5
exposure [2]  54/9 54/14
extent [5]  13/7 18/10 39/15 45/23
54/6
extremely [1]  49/2

**F**

F.3d [1]  24/17
face [2]  47/3 47/4
fact [17]  8/4 10/20 16/21 16/22
18/19 23/4 23/16 32/6 34/10 38/25
39/12 41/14 51/19 53/15 62/4 67/3
73/11
facts [4]  14/18 18/18 46/18 57/13
factual [7]  9/14 46/17 50/23 51/13
52/19 56/11 70/23
failure [1]  49/21
failures [1]  13/19
fair [3]  79/15 80/10 81/3
fairly [1]  78/9
faith [3]  45/24 65/14 74/21
familiar [1]  29/18
families [1]  61/9
family [1]  74/3
Fanning [25]  3/18 8/5 8/6 9/8 9/9
9/21 11/12 11/19 12/13 12/13 13/11
13/19 14/14 15/14 15/14 15/23 15/25

**F**

**Fanning... [8]** 16/4 16/22 16/25 18/5 18/8 18/15 19/1 78/5
**Fanning's [4]** 7/25 9/18 13/14 14/5
**far [1]** 77/5
**fashion [1]** 21/4
**fast [1]** 71/2
**father [1]** 65/9
**favor [2]** 59/23 59/24
**federal [4]** 32/3 71/23 71/25 73/5
**feel [1]** 63/12
**feeling [1]** 36/6
**few [2]** 4/20 78/13
**fiction [1]** 46/6
**fighting [1]** 10/12
**figure [3]** 36/9 54/15 82/3
**file [8]** 31/18 31/19 34/1 34/13 34/23 35/17 72/24 72/25
**filed [10]** 26/11 26/12 27/5 27/9 30/13 34/3 34/21 40/19 40/22 72/24
**files [2]** 78/4 78/12
**filing [1]** 35/18
**fill [1]** 45/2
**final [1]** 78/1
**financial [2]** 37/16 44/15
**find [5]** 11/24 12/3 14/25 25/9 63/17
**findings [1]** 37/12
**fine [2]** 2/20 7/9
**fine-tooth [1]** 2/20
**finished [1]** 30/18
**firm [3]** 42/12 45/3 55/13
**first [20]** 2/5 2/22 3/2 23/3 23/7 33/5 36/19 38/2 38/16 44/7 44/14 45/14 52/12 61/15 62/23 63/3 64/11 65/20 66/18 75/8
**five [8]** 33/1 65/2 66/14 66/17 66/19 76/6 76/8 76/22
**fix [2]** 41/16 41/16
**flat [1]** 33/7
**FleetCor [1]** 27/4
**flexibility [1]** 68/20
**flip [1]** 71/15
**floating [1]** 14/3
**focus [4]** 7/18 23/25 47/18 55/2
**focused [2]** 37/5 38/7
**focusing [2]** 26/16 56/22
**fold [1]** 56/3
**folks [5]** 20/3 58/4 64/23 70/19 71/11
**follow [7]** 33/3 47/13 54/11 56/20 59/8 69/8 70/25
**following [1]** 11/21
**folly [1]** 63/16
**fore [1]** 50/24
**forecasted [1]** 10/11
**foregoing [1]** 83/14
**Forget [1]** 47/22
**form [8]** 16/15 21/4 52/8 52/10 56/4 56/6 69/17 83/14
**former [1]** 54/2 70/15 70/16
**formers [1]** 70/17
**forth [2]** 11/12 11/18
**fortunately [1]** 8/1
**forward [4]** 10/15 24/15 36/18 81/14
**foundation [1]** 51/5
**four [6]** 45/16 46/23 65/2 71/6 78/12 80/21
**fourth [1]** 27/13
**framed [1]** 16/6
**frankly [5]** 6/23 61/1 67/2
**fraud [2]** 44/21 57/6
**frequently [4]** 26/23 28/13 29/11 30/24
**front [2]** 58/22 60/12
**fuelings [1]** 34/20
**full [8]** 31/5 58/13 58/14 62/18 63/4 63/14 63/24 66/10
**full-blown [1]** 31/5
**Fund [1]** 25/4
**funny [2]** 72/6 80/20
**further [1]** 78/18

**G**

**Gamble [1]** 24/6
**game [2]** 71/13 71/14
**gand.uscourts.gov [1]** 1/24

**gander [4]** 71/15 72/6 72/14 72/18
**gave [2]** 57/21 79/1
**Geller [2]** 1/17 60/8
**general [19]** 3/17 4/16 7/2 23/4 27/3 27/16 28/7 28/19 32/15 35/1 35/12 36/8 36/13 37/1 37/7 37/8 46/22 55/9 57/8
**generalities [1]** 29/6
**generally [4]** 14/13 29/17 39/24 77/19
**gentleman [1]** 27/24
**gentlemen [1]** 80/21
**GEORGIA [7]** 1/1 1/6 1/23 27/8 54/19 73/5 83/7
**get [28]** 2/6 14/21 20/8 22/12 26/6 26/7 27/1 36/6 40/20 44/20 48/6 49/4 49/6 51/9 51/17 52/13 55/21 58/8 60/12 66/9 68/17 75/22 75/24 76/1 76/18 77/21 79/17 82/1
**gets [3]** 21/3 45/15 68/14
**getting [1]** 45/1
**give [11]** 2/8 8/15 8/19 11/5 11/23 57/20 57/22 59/17 75/19 78/17 81/10
**given [16]** 5/10 6/4 8/16 10/15 28/18 30/24 35/12 36/17 40/18 41/12 42/1 52/3 53/7 69/16 78/8 80/22
**gives [1]** 31/6
**giving [1]** 17/7 17/19 33/9 49/8 50/17
**glad [1]** 74/8
**glossed [1]** 23/11
**go [40]** 3/2 3/5 4/3 6/1 7/6 8/24 9/5 16/4 20/19 22/21 22/24 29/14 31/20 34/1 34/9 34/12 34/13 34/23 35/15 35/15 35/17 35/20 35/22 36/19 53/23 54/4 58/19 59/25 63/10 63/16 64/2 67/12 68/16 68/17 70/6 73/13 74/6 81/11 81/22 82/3
**goes [8]** 19/23 23/17 24/15 32/24 32/24 33/22 65/21 80/4
**going [74]** 2/3 2/6 2/7 8/9 8/13 9/8 12/3 13/8 14/12 16/18 18/2 19/7 19/24 19/25 20/13 20/14 20/18 22/20 23/15 26/16 27/19 27/20 30/5 31/17 31/23 33/24 34/23 35/15 36/18 43/16 43/19 44/1 49/19 50/19 50/21 53/24 54/11 54/24 55/24 59/5 59/19 60/15 62/19 64/18 64/20 65/1 66/8 66/20 67/8 69/10 72/4 72/4 73/2 73/16 73/20 73/22 74/11 74/12 74/19 74/23 74/25 75/3 76/5 76/16 77/2 77/11 77/12 77/14 79/20 79/24 80/2 80/3 80/8 81/25
**gone [1]** 2/19
**good [15]** 2/2 2/8 3/9 7/13 7/15 12/16 21/6 36/20 45/24 46/15 65/14 74/21 81/8 81/23 82/4
**goose [5]** 71/15 72/6 72/14 72/18 72/19
**got [19]** 5/14 11/2 20/12 25/21 48/6 49/2 49/6 51/5 51/6 52/14 55/17 62/16 65/8 75/23 76/17 77/4 77/16 77/19 80/1
**govern [1]** 5/2
**governance [20]** 6/19 8/8 12/14 13/19 13/23 14/15 14/20 15/16 16/23 16/23 16/24 17/1 17/1 17/5 17/8 17/25 18/9 19/1 19/2 19/5
**governed [1]** 9/12
**government [2]** 41/7 42/1
**grant [3]** 25/21 26/2 73/16
**granted [3]** 25/1 25/11 25/13
**great [5]** 22/9 22/11 55/8 71/21 77/7
**greed [2]** 63/23 78/16
**grocery [1]** 74/6
**ground [4]** 13/17 28/21 70/10 78/8
**grounds [1]** 16/16
**group [1]** 60/18
**grown [1]** 74/3
**guess [21]** 3/22 12/5 12/15 15/23 16/5 17/11 21/13 21/16 25/23 25/25 28/22 36/17 44/7 44/13 45/5 48/15 55/1 59/14 59/25 75/23 76/15
**guessing [1]** 51/1

**H**

**had [40]** 2/18 4/6 16/22 16/25 17/25

19/1 19/4 22/15 24/8 28/23 30/21 33/18 35/8 35/12 39/7 40/17 41/6 41/10 41/11 42/1 45/19 46/2 47/20 49/11 49/12 49/23 50/14 52/3 53/5 53/16 55/12 55/19 55/22 58/14 61/3 68/21 72/24 72/24 73/14 77/10
**hadn't [1]** 55/11
**half [3]** 46/10 72/7 72/8
**halt [1]** 63/9
**hand [3]** 27/1 29/9 29/19
**handle [2]** 22/23 81/7
**handles [1]** 82/5
**handwritten [2]** 2/19 37/19
**happen [9]** 8/24 20/18 30/14 62/6 65/5 68/18 77/4 81/20 81/20
**happened [5]** 15/22 36/23 42/21 45/13 72/13
**happening [1]** 9/1
**happens [4]** 14/11 60/18 73/15 79/21
**happy [1]** 7/18
**hard [2]** 25/9 76/3
**harder [1]** 81/16
**Harvard [1]** 27/24
**has [29]** 6/4 8/5 13/12 18/23 20/24 23/13 24/13 24/16 25/21 38/18 47/10 52/20 54/20 55/2 55/7 59/10 60/16 62/13 63/10 66/12 67/17 67/21 67/25 68/8 73/8 77/4 77/5 80/1 80/24
**hasn't [4]** 46/10 46/10 67/18 81/3
**hasty [1]** 22/10
**have [154]**
**haven't [2]** 21/12 33/21
**having [7]** 23/8 45/7 60/17 64/1 64/24 65/7 67/7
**he [35]** 2/25 4/17 4/21 5/4 6/4 6/18 8/6 8/7 8/11 8/23 9/11 9/21 9/23 10/6 10/7 13/16 15/17 15/18 15/20 15/20 15/21 15/23 15/24 16/1 16/3 16/7 16/11 16/20 18/8 19/4 19/4 25/22 50/18 76/22
**he's [6]** 10/19 10/25 11/3 14/6 16/1 16/5
**head [3]** 23/2 74/2 74/4
**health [5]** 61/6 61/7 61/9 61/24 74/24
**hear [7]** 2/15 26/6 33/15 33/16 34/4 47/12 81/18
**heard [9]** 2/5 7/24 18/23 18/23 27/24 33/12 33/20 48/25 65/19
**hearing [5]** 35/13 36/6 37/2 37/19 47/9
**held [2]** 38/22 83/10
**helps [2]** 3/8 15/2
**her [4]** 22/6 51/13 65/16 65/19
**here [18]** 4/11 14/1 28/20 30/21 36/23 38/12 39/9 40/4 40/13 41/7 45/15 49/15 53/4 53/8 59/22 66/23 68/10 77/20
**here's [3]** 33/24 75/12 76/4
**hereby [1]** 83/8
**High [1]** 25/4
**highlighted [1]** 31/16
**highlights [1]** 21/9
**highly [1]** 50/23
**Hilton [2]** 74/2 74/4
**him [11]** 4/21 5/16 5/17 8/6 9/9 9/11 9/19 9/22 9/22 10/8 13/18 16/20 17/3 17/7 17/8 17/17 17/19 17/22 22/6
**historically [1]** 55/7
**history [1]** 2/13
**hit [8]** 2/5 30/1 64/10 70/8 71/1 78/16 78/19 79/1 79/17
**hits [1]** 80/22
**hoc [1]** 26/2
**holistically [1]** 11/11
**Holland [20]** 3/17 4/16 5/16 6/17 8/4 9/22 9/7 11/13 11/18 12/6 12/11 12/15 13/13 15/20 15/13 15/14 16/4 16/4 16/21 78/5
**Holland's [3]** 7/24 9/17 13/11
**home [1]** 11/25
**honestly [2]** 6/6 53/13
**Honor [67]** 3/9 3/11 4/2 4/19 5/23

**H**

**Honor... [62]**  6/13 6/24 7/9 7/13
14/18 15/2 16/10 23/1 23/8 23/10
24/2 25/9 26/7 27/16 28/6 29/5 30/1
30/6 31/3 33/7 33/21 36/20 38/15
40/7 40/21 41/8 41/18 43/12 44/4
49/1 53/11 53/14 54/25 56/23 57/18
58/10 59/4 59/12 59/13 60/7 61/1
62/22 64/6 64/13 64/21 65/5 66/6
67/16 67/25 69/6 70/3 70/11 70/14
71/2 71/19 72/1 72/3 77/24 78/25
81/25 82/9 82/11
**Honor's [2]**  30/11 69/15
**HONORABLE [1]**  1/11
**hope [1]**  81/10
**hopeful [1]**  77/14
**hopefully [1]**  43/3
**horrible [1]**  81/18
**house [1]**  58/7
**how [32]**  5/8 6/1 6/21 8/9 10/10 11/7
15/11 18/10 20/9 20/19 22/17 22/19
28/8 31/17 32/4 47/23 49/20 50/5
50/12 50/18 50/19 59/6 61/13 67/3
67/4 69/8 72/11 77/1 77/5 78/15 81/7
81/13
**however [1]**  15/18
**hunt [2]**  63/10 67/12
**hurt [2]**  12/18 34/20
**hypothetical [2]**  65/10 77/3

**I**

**I'll [22]**  3/1 3/2 3/3 3/10 11/5 22/1
22/9 27/23 28/7 36/18 53/23 55/18
57/16 59/18 59/19 64/10 66/5 66/6
78/23 81/5 81/6 81/7
**I'm [93]**
**I've [2]**  62/15 65/8
**idea [2]**  13/22 22/18
**identify [3]**  3/4 3/7 31/3
**ignore [1]**  18/17
**II [1]**  1/11
**imagine [3]**  29/14 44/19 73/21
**impact [1]**  54/22
**impanel [1]**  24/13
**impeach [1]**  18/5
**impeachment [1]**  18/4
**imperative [1]**  69/7
**implication [1]**  42/5
**important [2]**  23/20 29/18
**impose [1]**  73/2
**impression [2]**  5/7 56/25
**impressions [3]**  13/9 37/12 57/12
**inadvertently [1]**  4/4
**inappropriate [5]**  5/16 5/17 16/17
63/12 64/3
**inaudible [1]**  43/17
**Inc [2]**  25/6 27/7
**inclination [1]**  75/13
**inclined [1]**  73/10
**included [1]**  60/15
**includes [2]**  9/2 68/1
**including [1]**  37/11
**incomplete [1]**  63/19
**inconsistent [1]**  33/7
**incorporate [1]**  59/20
**indeed [1]**  16/25
**independent [1]**  39/11 44/15 44/20
**indicated [5]**  10/13 12/7 15/4 43/15
43/23
**indicates [1]**  61/19 61/20
**indication [3]**  41/11 46/20 68/15
**individual [1]**  64/22
**individuals [1]**  78/12
**industry [4]**  29/12 29/18 29/19 32/22
**inform [1]**  66/22
**information [19]**  9/14 11/3 19/23
37/11 37/20 37/21 39/6 39/14 39/16
39/22 39/25 45/7 46/17 50/23 52/19
63/20 79/4 79/11 79/17
**inherently [1]**  15/21 16/5
**initial [1]**  48/19
**initially [1]**  25/18
**inquiry [1]**  40/16
**insist [1]**  64/2
**insists [1]**  80/1
**instance [3]**  38/2 38/3 52/12

**Instead [1]**  66/9
**instructed [2]**  45/11 48/16
**intend [1]**  59/9
**intended [1]**  57/20
**intent [1]**  9/23
**intention [3]**  61/4 62/12 63/13
**intentions [1]**  61/17
**interested [3]**  6/19 10/6 37/14
**interesting [2]**  5/15 5/19
**internal [3]**  50/3 54/16 55/16
**internally [1]**  55/19
**Internap [1]**  27/10
**interpreted [1]**  33/11
**interpreting [3]**  4/1 11/6 13/15
**interrupt [2]**  43/19 68/5
**introduce [1]**  51/10
**introduced [1]**  63/5
**introducing [1]**  63/15
**inundation [1]**  31/11
**investigation [17]**  36/7 36/25 37/3
37/5 37/6 37/10 37/12 42/11 43/24
44/17 44/19 45/3 46/7 46/9 46/19
57/9 57/11
**involved [7]**  24/8 36/4 39/24 41/19
42/12 46/20 49/5
**involves [1]**  38/20
**irregularities [2]**  37/15 44/22
**irrelevant [1]**  28/22
**is [315]**
**Island [1]**  74/4
**isn't [8]**  31/21 33/5 34/10 36/14
65/23 73/23 74/4 80/10
**issue [77]**  2/23 4/25 5/5 5/5 5/11
8/5 8/7 9/15 10/6 12/8 12/13 15/2
17/5 17/6 17/25 18/3 18/9 19/1 19/4
19/13 20/12 22/17 22/25 23/23 24/8
24/15 26/8 26/13 26/17 27/19 28/3
28/24 30/5 33/18 34/7 35/12 35/24
36/18 36/21 38/18 40/13 41/13 43/16
44/2 44/5 44/10 48/7 48/8 48/19 51/9
51/25 52/6 52/7 54/24 55/15
56/8 59/8 59/11 59/22 62/23 62/24
62/24 62/25 64/5 64/11 64/13 65/3
66/5 66/7 69/4 70/1 73/20 75/10
77/24 78/1 79/13
**issues [24]**  6/20 11/14 12/7 15/5
15/15 16/22 17/1 19/10 23/3 28/15
29/13 29/14 29/18 29/20 34/16 35/3
44/6 59/7 61/6 61/7 64/10 70/20
73/19 75/8
**it [269]**
**it's [65]**  2/24 3/1 3/5 3/21 4/12
4/13 5/2 5/13 7/2 8/2 8/9 8/15 10/5
10/14 14/2 15/11 17/14 17/15 19/22
20/18 22/3 22/4 22/9 25/17 25/18
26/19 28/12 29/1 31/2 33/9 33/19
35/10 36/17 38/7 38/19 38/21 39/1
41/18 46/6 49/2 49/21 50/8 50/12
51/24 52/4 52/6 52/7 52/18 54/15
58/1 61/14 64/6 67/3 67/4 69/7 72/6
73/1 73/7 73/8 74/5 76/2 79/15 80/4
80/20 81/15
**item [1]**  3/11
**its [10]**  37/12 38/16 38/17 39/9 39/9
40/17 42/1 43/14 47/4 50/14
**itself [8]**  8/2 12/22 32/13 39/17
54/17 57/14 66/14 70/21

**J**

**Jennifer [1]**  77/21
**job [1]**  54/9
**Jones [8]**  1/19 3/10 40/11 40/23
53/17 58/12 62/8 64/18
**Joseph [1]**  1/18
**judge [13]**  1/12 2/2 20/3 22/22 24/18
25/20 25/21 26/5 26/5 35/2 68/22
72/7 72/22
**Judge Ray [1]**  2/2
**Judge Thrash's [1]**  24/18
**judge's [1]**  20/10
**judges [3]**  20/17 21/14 51/16
**judgment [35]**  19/15 20/23 21/1 21/11
21/24 23/14 23/16 24/1 24/4 25/1
25/11 25/14 25/18 25/22 26/2 26/3
26/10 26/12 27/5 27/8 27/11 27/14
27/15 27/20 30/13 30/23 31/1 31/6

31/20 32/2 32/5 34/2 34/5 34/24 35/3
**judith [4]**  1/21 1/24 83/5 83/20
**July [1]**  4/5
**jumping [1]**  12/1
**June [3]**  1/6 83/10 83/17
**jurors [1]**  81/12
**jurors' [1]**  18/24
**jury [5]**  18/23 24/13 29/22 77/15
81/18
**just [56]**  5/20 5/21 10/10 10/11 11/8
11/17 11/23 14/1 14/21 19/16 20/7
20/15 22/19 26/19 28/7 30/15 31/2
32/14 33/7 34/24 35/1 36/13 37/18
38/4 42/3 47/13 47/17 47/20 51/25
53/4 53/23 54/5 55/1 55/9 56/2 56/22
62/12 63/7 64/23 65/6 65/11 66/23
66/24 67/1 67/2 69/12 71/1 74/5 74/6
75/6 77/11 77/20 79/7 80/20 80/20
82/3
**justing [1]**  2/20

**K**

**keep [4]**  39/7 39/14 56/14 81/19
**keeps [1]**  12/1
**Kemper [16]**  7/1 7/23 8/5 8/13 11/13
12/8 13/1 13/6 15/7 37/15 70/16
70/20 78/10 79/6 79/7 79/8
**key [1]**  27/19
**kids [1]**  74/3
**kind [23]**  2/6 5/19 19/22 22/1 22/16
22/17 26/2 28/19 32/17 34/8 36/7
36/13 48/6 55/15 55/16 55/24 64/25
65/21 65/22 68/14 69/25 72/8 75/2
**kinds [3]**  16/8 29/2 79/22
**knew [3]**  42/6 45/8 45/18
**know [117]**
**knowing [1]**  5/18
**knowledge [5]**  16/13 18/24 18/25 41/8
42/5
**knows [5]**  14/10 15/22 16/3 19/24
27/19

**L**

**lady [1]**  72/13
**language [9]**  60/15 60/22 61/4 65/17
65/23 66/1 66/3 66/8 66/9
**lap [1]**  12/1
**large [4]**  9/3 9/9 60/18 70/19
**largely [2]**  45/13 62/8
**larger [1]**  53/20
**laser [1]**  26/17
**last [11]**  4/5 20/14 30/22 33/13 37/3
43/20 58/16 60/1 60/1 74/2 75/8
**late [4]**  2/4 30/22 49/11 58/13
**later [15]**  13/9 19/18 21/3 25/19
26/12 31/21 34/21 38/1 38/2 39/21
41/18 45/16 52/15 72/17 77/15
**law [6]**  4/25 33/8 33/23 42/12 55/13
77/13
**lawsuit [11]**  3/23 3/25 5/6 5/13 6/15
6/21 7/11 10/21 40/19 40/22 52/1
**lawyer [17]**  8/15 9/22 10/8 17/7 17/7
17/9 17/19 17/20 17/22 22/6 68/15
68/17 68/19 69/22 73/15 74/16 74/25
**lawyer's [1]**  17/17
**lawyers [24]**  2/3 10/24 21/14 22/4
29/25 35/21 38/3 45/17 46/20 47/16
51/16 54/1 62/18 62/19 64/19 64/19
64/20 73/22
**lay [2]**  51/5 79/24
**leading [1]**  38/19
**least [9]**  11/7 14/13 17/3 35/14 42/5
51/2 53/17 62/7 81/15
**leave [2]**  56/24 74/11
**leaves [1]**  54/3
**leaving [1]**  78/25
**Lee [1]**  77/21
**left [1]**  13/14
**legal [22]**  3/16 4/14 4/20 5/25 6/4
7/3 7/25 8/3 8/11 8/15 8/16 8/19
8/25 9/17 10/20 11/4 11/15 15/7 17/6
17/22 17/22 20/11
**Lehman [1]**  25/2
**let [21]**  2/15 3/1 3/2 3/19 5/14
11/23 19/16 23/7 25/15 36/18 36/22

**L**

let... **[10]**   47/6 47/13 49/7 52/22
55/17 59/25 66/23 77/18 78/15 81/6
let's **[12]**   4/22 5/4 6/7 9/20 12/3
19/9 19/11 35/24 40/15 48/22 70/6
75/13
letter **[3]**   42/5 46/7 46/10
letters **[1]**   50/3
liability **[2]**   24/7 54/5
lifestyle **[1]**   75/6
lifted **[1]**   58/23
light **[1]**   2/12
like **[27]**   2/22 3/5 8/20 11/2 11/4
13/15 13/24 17/13 18/22 22/18 23/2
26/17 31/4 32/16 45/13 46/7 46/8
47/2 47/10 50/16 51/9 51/16 59/20
63/12 69/21 75/13 81/15
likelihood **[1]**   59/19
likely **[10]**   14/5 28/6 32/22 34/4
34/15 34/24 43/17 43/23 49/2 75/18
limine **[1]**   30/20
limit **[1]**   69/22
limitation **[1]**   29/17
limitations **[3]**   53/7 53/8 54/19
limited **[1]**   56/24
line **[3]**   9/10 25/8 63/23
lines **[1]**   66/1
list **[1]**   22/23
listed **[2]**   27/16 79/1
listen **[2]**   5/17 5/22
litany **[1]**   30/12
litigation **[9]**   25/6 27/7 27/11 28/19
35/1 36/11 43/24 72/8 72/11
little **[9]**   2/4 28/22 36/22 43/20
52/4 61/16 64/23 78/2 81/16
live **[1]**   79/21
lived **[1]**   79/19
local **[3]**   30/10 32/2 67/20
locality **[1]**   73/4
location **[2]**   60/23 61/21
log **[1]**   40/14
logistics **[2]**   5/8 5/8
long **[4]**   17/24 46/14 54/20 59/22
look **[25]**   11/10 17/11 18/20 20/2
20/3 20/10 20/13 23/8 23/11 47/21
47/23 48/1 48/9 48/10 48/12 48/13
48/16 59/20 64/2 64/16 66/21 69/7
76/14 76/24 78/20
looked **[5]**   2/17 47/22 48/4 48/15
67/24
looking **[6]**   3/11 7/3 26/20 44/22
59/21 76/8
looks **[3]**   13/15 80/4 80/20
lose **[1]**   12/1
loss **[7]**   23/20 23/23 24/25 28/10
31/5 32/16 32/20
lost **[1]**   22/13
lot **[12]**   8/18 21/18 21/23 28/12 45/6
56/25 70/23 72/10 72/10 75/6 77/10
80/12
Lundy **[2]**   82/5 82/5

**M**

machine **[1]**   83/9
made **[13]**   3/16 3/22 7/20 9/22 12/6
15/23 24/14 40/24 40/24 53/5 72/14
72/15 72/18
madness **[1]**   53/4
Maggie **[5]**   54/1 54/6 54/22 55/11
55/20
main **[2]**   69/19 70/22
mainly **[1]**   72/8
major **[2]**   27/18 34/6
majority **[1]**   52/5
make **[31]**   3/20 18/21 20/5 20/7 20/11
20/11 20/18 21/10 21/22 22/14 35/12
35/22 38/8 41/9 42/9 43/11 51/16
51/16 54/12 54/13 58/11 62/6 62/12
62/16 67/12 68/16 76/6 77/4 77/17
78/1 79/18
makes **[8]**   20/3 20/17 20/23 26/15
34/6 34/11 34/25 74/17
making **[3]**   18/11 70/7 74/8
manager **[1]**   13/17
managers **[1]**   13/18
manner **[1]**   69/16

manning **[1]**   16/23
Manuel **[1]**   50/20
many **[10]**   14/3 25/12 26/25 28/9 56/7
66/13 67/24 73/21 78/15 80/22
March **[1]**   58/23
mark **[1]**   15/10
massive **[1]**   79/6
master **[4]**   80/4 80/11 80/14 81/2
matched **[1]**   40/24
material **[1]**   48/20
matter **[10]**   2/21 3/21 3/24 6/9 41/13
46/22 48/20 49/20 67/3 83/11
matters **[3]**   5/3 36/16 56/11
may **[40]**   9/5 12/23 17/2 19/6 21/16
23/8 28/14 29/11 29/12 29/18 29/19
36/9 37/2 44/25 46/13 46/24 47/14
47/22 51/4 54/6 54/22 55/6 55/16
57/6 59/20 61/5 61/24 62/18 64/24
64/25 65/19 66/14 66/14 66/22 71/21
73/12 75/4 75/14 79/14 81/12
maybe **[12]**   10/11 21/21 22/10 29/1
31/20 48/5 55/9 55/24 58/19 68/15
76/16 77/14
McConnell **[14]**   1/18 22/22 32/18 33/2
58/24 64/6 67/13 69/21 70/24 75/17
76/21 77/2 78/21 80/17
me **[57]**   2/8 2/15 2/15 2/21 3/19 5/14
10/4 11/4 11/6 11/23 11/23 12/1
12/23 13/1 13/10 18/17 19/16 20/14
20/25 21/23 22/4 23/7 25/15 29/6
30/17 30/21 34/11 34/16 35/19 36/22
42/5 47/6 47/13 49/24 52/22 53/4
54/7 55/25 58/22 59/17 59/22 59/25
60/12 60/12 60/13 60/21 62/16 64/7
66/18 66/23 72/25 74/15 74/22 76/23
77/18 77/22 83/14
mean **[50]**   2/21 5/1 5/9 6/8 6/25 8/14
8/16 9/18 9/23 9/25 10/4 10/10 10/12
10/19 11/1 12/22 13/14 13/25 14/1
14/16 15/21 15/24 16/1 17/5 17/6
18/20 18/21 19/17 25/20 27/17 28/20
28/22 31/12 31/24 34/6 35/1 35/9
50/2 51/4 55/3 58/8 65/9 65/25 68/13
73/24 75/3 79/7 80/16 80/24 81/11
means **[3]**   18/15 20/15 46/5
meant **[1]**   61/2
measures **[1]**   61/8
mechanics **[2]**   26/1 36/3
medical **[1]**   35/6
meet **[1]**   24/25
meets **[1]**   25/10
member **[1]**   72/21
memory **[4]**   17/3 51/2 73/18 75/9
memos **[2]**   37/24 50/10
mental **[4]**   13/8 37/11 46/19 57/12
mention **[1]**   3/24
mentioned **[2]**   30/12 37/18
merits **[1]**   55/22
met **[1]**   4/10
metadata **[1]**   53/1
method **[1]**   53/3
Michael **[1]**   1/18
mid **[2]**   53/8 71/14
mid-2020 **[1]**   53/8
mid-game **[1]**   71/14
middle **[1]**   71/5
might **[6]**   13/9 28/3 28/4 28/20 35/2
50/25
Mike **[3]**   22/22 22/24 64/6
million **[3]**   9/5 41/21 41/23
mind **[4]**   7/5 16/20 29/4 81/19
minimizing **[1]**   70/3
mislead **[1]**   42/22
misread **[1]**   65/19
missing **[3]**   11/16 19/13 60/1
Mississippi **[1]**   70/10
misspeaking **[1]**   42/9
misstate **[1]**   33/14
mistake **[1]**   53/5
mistakes **[4]**   20/17 20/18 51/16 51/17
moment **[1]**   48/22
momentum **[1]**   58/9
Monday **[1]**   1/6 83/10
money **[2]**   9/3 79/18
Monroe **[6]**   1/4 6/10 6/15 6/18 13/2
83/11
month **[1]**   72/22

more **[26]**   6/19 11/1 11/22 19/23
31/13 31/22 34/16 35/10 36/4 51/24
52/4 53/18 54/15 55/20 55/25 56/8
55/9 56/9 61/7 61/16 74/16 79/17
79/18 80/1 80/12 80/21
morning **[8]**   2/2 3/9 7/13 7/15 36/20
68/19 81/8 81/24
most **[7]**   2/17 23/16 28/6 30/2 71/20
74/5 75/15
mostly **[2]**   3/21 70/17
motion **[14]**   21/11 22/2 26/3 26/6
31/5 31/25 32/13 33/13 33/16 33/19
33/21 34/2 34/5 72/24
motions **[17]**   19/15 19/15 19/21 21/24
21/25 23/13 23/13 30/9 30/13 30/13
30/20 30/25 31/18 31/25 34/2 34/3
34/13
motives **[1]**   21/21
move **[2]**   10/15 19/9
moves **[1]**   12/9
Mr **[4]**   3/18 8/6 12/12 43/18
Mr. **[77]**   3/17 4/16 5/15 6/6 6/17
7/15 7/17 7/24 8/5 8/22 9/17 9/18
9/21 11/12 11/13 12/6 12/11 12/13
12/13 12/15 13/11 13/11 13/14 13/15
13/19 13/20 14/5 14/8 14/14 15/13
15/14 15/14 15/14 16/4 16/4 16/21
16/22 16/25 18/5 18/8 18/15 19/11
19/11 78/5
Mr. Alvarado **[11]**   7/15 30/4 30/6
37/4 44/2 47/19 55/22 56/22 57/1
57/13 78/25
Mr. Beattie **[1]**   78/6
Mr. Day **[1]**   78/6
Mr. Drosman **[1]**   30/17
Mr. Fanning **[17]**   8/5 9/21 11/12
12/13 12/13 13/11 13/19 14/14 15/14
15/14 16/22 16/25 18/5 18/8 18/15
19/1 78/5
Mr. Fanning's **[3]**   9/18 13/14 14/5
Mr. Holland **[17]**   3/17 4/16 5/15 6/17
8/22 11/13 12/6 12/11 12/15 13/15
13/20 15/13 15/14 16/4 16/4 16/21
78/5
Mr. Holland's **[2]**   9/17 13/11
Mr. McConnell **[11]**   32/18 33/2 58/24
67/13 69/21 70/24 75/17 76/21 77/2
78/21 80/17
Mr. Singer **[7]**   6/6 14/8 22/20 53/3
56/19 59/7 75/17
Mr. Singer is **[1]**   7/17
Mr. Singer on **[1]**   55/21
Mr. Singer or **[1]**   78/21
Mr. Singer said **[1]**   52/25
Mr. Singer say **[1]**   7/24
Mr. Watts **[1]**   37/4
Ms **[1]**   76/20
Ms. **[4]**   30/21 65/16 69/5 82/5
Ms. Lundy **[1]**   82/5
Ms. Wyman **[3]**   30/21 65/16 69/5
much **[13]**   24/21 35/9 35/10 36/3
41/17 41/17 52/15 52/16 53/18 53/20
57/25 59/6 82/11
multiple **[1]**   31/9
multitude **[1]**   50/7
must **[3]**   25/1 25/11 39/11
mute **[3]**   47/8 47/9 59/1
mutually **[3]**   34/20 35/18 74/14
my **[45]**   2/14 5/7 9/25 10/1 11/6 12/1
12/1 12/13 19/7 20/25 21/5 21/12
21/13 22/23 27/1 29/4 34/20 35/21
37/3 40/16 41/8 48/19 53/3 53/14
54/1 54/3 54/16 59/25 68/7 68/8
68/19 68/22 72/7 72/14 73/18 73/24
74/3 74/3 75/9 75/13 76/23 76/23
82/5 82/5 83/15
myriad **[1]**   32/10

**N**

nail **[1]**   15/9
name **[1]**   12/12

**N**

**names [1]**  27/22
**nature [6]**  9/21 10/2 10/8 10/18
  30/25 75/6
**near [1]**  41/21
**necessarily [1]**  23/15
**necessity [1]**  18/3
**need [11]**  9/25 10/24 55/25 55/25
  63/20 68/15 68/16 76/12 76/18 76/22
  77/23
**needed [3]**  3/22 44/20 60/2
**needs [3]**  68/17 76/10 80/12
**negligence [2]**  53/6 54/18
**negotiating [1]**  20/1
**Network [1]**  27/10
**never [4]**  21/16 48/16 72/24 73/6
**New [1]**  25/3
**news [1]**  45/6
**next [2]**  39/21 60/18
**no [35]**  1/4 4/10 5/10 7/9 8/3 8/6
  10/1 16/18 16/25 18/4 30/1 34/11
  38/6 40/15 45/21 45/22 46/19 46/19
  46/20 48/10 49/20 51/8 52/19 56/13
  57/24 58/10 59/2 59/4 59/4 59/12
  59/13 64/19 64/20 71/8 80/18
**nobody [1]**  74/3
**nomenclature [1]**  5/2
**none [1]**  45/8
**normal [2]**  44/24 73/10
**normally [2]**  2/10 19/17 43/7
**NORTHERN [7]**  1/1 27/4 27/8 27/11
  67/17 73/4 83/7
**not [164]**
**note [2]**  5/14 65/16
**noted [1]**  4/19
**notes [14]**  2/19 37/19 37/24 44/9
  46/15 46/17 47/1 50/2 50/4 51/10
  52/11 55/23 56/10 56/12
**nothing [3]**  39/20 71/3 71/24
**notice [1]**  4/7
**noting [1]**  41/18
**November [4]**  12/5 15/14 15/15 58/20
**now [18]**  4/11 5/12 15/21 16/3 18/18
  27/2 49/18 49/21 52/15 60/20 66/5
  71/13 71/15 71/16 72/5 73/18 79/13
  79/16
**nuanced [2]**  51/24 52/5
**number [3]**  2/4 70/19 79/3

**O**

**O'Hanlon [1]**  25/4
**object [2]**  16/16 32/1 32/4 32/7
  63/18
**objected [2]**  4/9 46/11
**objection [1]**  67/6
**objections [2]**  18/20 18/21
**obligation [3]**  10/20 23/23 24/9
**observation [1]**  8/12
**observations [1]**  51/14
**observed [2]**  68/7 68/8
**obviously [13]**  5/13 12/9 25/20 35/2
  35/9 51/16 61/8 68/13 68/20 74/15
  80/6 80/15 81/21
**occur [3]**  52/23 69/22 81/10
**occurred [2]**  16/21 16/22
**October [1]**  58/20
**off [2]**  37/16 58/8
**office [3]**  54/16 70/18 82/5
**offices [1]**  83/7
**Official [3]**  1/22 83/6 83/21
**often [1]**  79/21
**oftentimes [2]**  20/6 22/8
**Oh [1]**  49/25
**okay [23]**  4/4 4/22 6/16 7/5 7/11
  12/3 12/22 13/21 14/16 22/24 29/23
  41/1 43/6 43/18 47/7 53/23 55/13
  58/8 59/2 59/5 60/11 62/23 64/12
**once [1]**  26/19
**one [49]**  9/20 11/14 11/18 11/22
  11/25 13/17 22/3 22/8 23/7 24/24
  27/13 27/25 29/24 31/3 33/21 33/22
  34/17 35/13 37/5 38/4 44/9 44/11
  45/5 48/7 50/7 52/11 54/1 55/18 56/8
  60/5 64/24 66/6 68/23 71/3 72/9
  72/10 72/25 72/25 74/16 75/9 76/6
  76/7 77/19 77/20 77/24 78/1 79/8

  79/22 80/18
**ones [2]**  13/5 31/19
**only [25]**  6/9 12/25 13/5 23/12 33/15
  38/5 40/19 40/22 43/8 46/2 49/15
  49/16 49/18 52/13 52/15 54/6 57/3
  57/21 61/11 63/12 63/24 66/19 69/20
  76/8 76/22
**open [1]**  17/2
**opening [1]**  18/3
**opinion [1]**  32/7
**opportunity [3]**  11/5 47/21 75/22
**opposed [1]**  26/21
**opposing [1]**  76/13
**oppositions [1]**  32/10
**option [2]**  61/22 62/9
**oral [3]**  22/3 37/22 77/10
**order [13]**  2/1 3/12 4/9 19/11 33/15
  35/19 58/21 58/22 59/17 65/13 71/9
  71/9 77/19
**ordering [1]**  77/20
**orders [6]**  27/1 33/8 35/21 59/11
  59/20 59/22
**ordinary [1]**  36/13
**originally [1]**  79/1
**other [54]**  5/5 5/10 5/17 6/2 6/7 6/9
  11/17 11/17 13/23 16/14 17/18 18/4
  18/6 19/10 20/8 22/7 22/9 26/22
  27/25 28/14 28/16 28/19 32/16 33/22
  34/13 34/15 34/17 35/7 42/17 43/25
  48/8 50/9 51/15 55/6 55/19 56/14
  57/4 58/9 60/9 63/20 65/1 65/3 66/22
  67/25 70/20 72/8 72/10 73/18 73/23
  76/10 77/3 77/7 77/24 79/23
**otherwise [3]**  6/11 34/14 60/25
**ought [2]**  21/7 74/23
**our [40]**  2/11 2/12 3/14 3/15 4/12
  5/5 5/23 6/3 6/12 6/21 6/25 14/23
  19/17 21/8 21/15 30/8 32/14 35/13
  38/15 38/20 41/19 43/13 44/13 47/2
  53/17 53/22 55/2 56/9 57/9 61/15
  62/7 64/16 64/16 65/4 67/9 67/19
  73/4 78/2 79/12 79/19
**ours [1]**  66/1
**out [25]**  8/7 15/10 19/16 28/8 31/3
  31/14 32/2 33/7 36/9 54/15 55/18
  60/20 65/14 66/1 71/3 73/21 75/18
  76/3 78/25 79/24 79/25 80/9 80/15
  81/3 82/3
**outlook [1]**  19/9
**outset [2]**  21/11 37/18
**outside [5]**  37/13 67/19 69/11 70/7
  71/22
**overall [1]**  19/9
**overestimation [1]**  31/12
**overruns [1]**  13/24
**overwhelming [1]**  30/24
**own [1]**  74/24

**P**

**page [7]**  57/2 58/2 66/13 66/18 66/21
  76/6 76/7
**pages [14]**  32/11 41/22 41/23 57/3
  57/4 57/5 66/14 66/17 66/19 66/22
  76/6 76/9 76/22 77/3
**painted [1]**  35/25
**panacea [1]**  14/2
**pandemic [1]**  62/8
**papers [1]**  37/25
**paragraph [11]**  43/21 60/10 60/10
  60/14 60/20 60/22 63/2 64/11 64/17
  66/7 78/2
**paragraphs [1]**  60/9
**paraphrasing [1]**  8/25
**pardon [1]**  60/21
**part [10]**  3/24 6/3 6/7 6/7 7/16
  10/17 17/16 37/15 71/21 78/25
**participant [1]**  5/16
**participate [1]**  5/22
**participates [1]**  5/25
**particular [11]**  32/20 44/9 45/4
  46/15 47/1 50/8 52/11 52/17 54/25
  56/9 59/8
**particularly [3]**  73/7 75/2 76/11
**parties [10]**  26/16 31/2 60/14 60/24
  60/25 61/22 65/12 74/13 78/6 79/4
**parties' [1]**  61/16

**partners [1]**  72/9
**party [4]**  5/17 20/3 32/4 68/24
**party's [2]**  22/8 22/10
**paying [1]**  81/2
**pending [2]**  3/23 68/6
**Pennsylvania [1]**  25/5
**Penny [1]**  50/20
**people [9]**  50/17 61/7 61/12 64/23
  65/3 70/10 74/6 75/6 77/9
**per [2]**  33/1 74/16
**perhaps [5]**  28/3 32/22 32/23 32/23
  34/19
**perils [1]**  11/25
**perjury [1]**  17/4
**permit [2]**  29/5 62/3
**person [16]**  3/6 22/2 22/15 51/10
  54/25 60/17 61/11 61/20 61/23 62/10
  64/24 74/14 75/14 75/15 75/16 78/15
**personally [4]**  5/19 12/23 80/16
  80/17
**perspective [10]**  5/24 6/25 9/10
  14/23 20/2 38/15 44/13 53/14 58/18
  79/13
**pharmaceutical [1]**  81/15
**Pharmaceuticals [1]**  23/22
**phone [10]**  2/14 3/22 5/8 5/9 5/16
  12/6 30/17 58/25 68/16 82/7
**picture [1]**  35/25
**piece [2]**  17/18 32/6
**piecemeal [1]**  31/18
**place [4]**  12/2 58/19 75/16 80/24
**places [1]**  70/22
**plaintiff [25]**  1/16 3/6 6/22 7/12
  14/9 14/13 14/19 17/14 18/14 20/24
  21/9 24/8 35/6 35/8 39/19 40/10
  41/24 43/6 44/2 62/20 63/10 79/16
  80/1 80/8 80/20
**plaintiffs [27]**  1/5 2/18 3/3 3/12
  4/5 4/7 4/9 6/24 7/6 18/17 23/22
  26/17 29/9 38/12 39/15 40/3 40/14
  40/23 42/4 50/1 61/14 62/22 63/9
  69/12 69/13 71/6 80/25
**plaintiffs' [13]**  9/10 10/12 10/16
  13/5 18/25 28/25 29/24 36/12 37/17
  38/2 38/13 40/12 64/19
**Plan [1]**  27/4
**planning [1]**  65/6
**plans [1]**  74/9
**plant [9]**  6/11 6/15 7/1 7/23 11/13
  13/2 13/6 70/16 70/21
**play [1]**  28/8
**pleas [1]**  77/9
**pleasantly [1]**  77/5
**plenty [1]**  18/21
**point [31]**  3/10 13/22 14/2 18/5
  18/11 18/12 19/8 22/1 24/1 24/24
  28/17 31/14 33/22 38/4 38/14 39/17
  39/21 41/25 42/21 45/5 45/6 45/18
  49/4 49/10 49/24 51/19 55/12 58/11
  58/17 70/6 71/3
**pointed [3]**  31/3 32/2 33/21
**points [5]**  8/7 30/2 47/6 71/1 77/21
**policy [2]**  20/22 21/7
**population [1]**  49/9
**portion [6]**  6/14 7/22 15/6 17/12
  42/14 42/23
**portions [3]**  13/4 14/25 48/25
**position [10]**  3/15 30/8 33/10 39/20
  43/13 57/9 62/15 64/16 64/17 73/3
**positive [1]**  54/21
**possession [2]**  10/13 38/11
**possible [1]**  36/10
**possibly [1]**  17/4
**post [1]**  26/2
**postmortem [1]**  72/18
**postpone [1]**  35/18
**posture [1]**  25/24
**potential [5]**  6/1 37/14 40/11 54/5
  54/9
**potentially [3]**  21/5 54/14 55/15
**power [3]**  69/11 70/7 71/22
**practical [1]**  22/19
**practice [4]**  23/5 67/19 72/7 77/13
**practiced [1]**  73/5
**practices [1]**  28/21
**practicing [4]**  67/17 68/8 68/22
  69/20

**P**
precisely [1]   31/24
precluded [1]   67/18
predecessors [1]   21/13
prefer [3]   61/19 61/20 82/7
prepared [2]   37/25 76/12
present [2]   2/3 61/21
presentation [1]   34/18
presumably [1]   76/15
pretrial [2]   33/16 35/21
pretty [5]   5/1 5/15 6/5 30/8 33/23
previous [1]   35/12
previously [1]   52/3
price [1]   34/9
primarily [1]   67/23
primary [3]   11/9 11/14 13/17
prior [3]   25/23 45/12 48/23
prison [1]   77/6
privacy [1]   70/1
privilege [4]   38/7 40/14 42/2 69/25
privileged [21]   4/13 5/9 6/11 6/13
  7/4 7/19 7/21 14/18 14/21 15/1 16/11
  16/15 17/16 17/12 17/14 17/18 18/14
  36/14 40/17 43/9 68/4
probably [19]   4/15 13/14 14/6 15/14
  15/24 15/25 18/5 19/8 34/19 35/15
  52/17 66/2 68/22 72/22 75/15 79/24
  79/25 80/2 81/7
problem [7]   8/8 19/12 21/10 25/21
  31/16 41/16 58/10
problematic [1]   32/7
problems [5]   13/23 14/3 28/20 28/23
  28/24
procedurally [1]   77/8
procedure [6]   30/15 32/3 51/3 51/23
  71/23 73/11
procedures [1]   32/4
proceed [1]   30/10
proceeding [1]   74/8
proceedings [4]   82/14 83/10 83/13
  83/15
process [1]   46/19
Procter [1]   24/6
produce [9]   45/11 45/12 48/11 48/17
  54/13 57/21 63/21 76/10 80/6
produced [55]   4/5 4/6 38/1 38/2
  39/22 39/23 39/25 40/2 40/4 40/9
  40/14 40/17 41/3 41/4 41/6 42/14
  44/8 46/2 46/23 48/2 48/6 49/9 49/11
  49/12 49/17 51/7 51/18 51/20 52/1
  52/2 52/7 52/8 52/9 52/12 52/13
  52/14 52/18 53/6 53/19 54/11 54/13
  56/4 56/5 56/6 56/15 56/16 56/17
  57/14 78/7 79/11 80/5 80/7 80/12
  80/13 80/22
producing [1]   80/11
product [23]   36/10 37/11 38/6 38/7
  38/17 38/17 38/23 38/24 39/1 39/1
  39/9 39/17 40/17 43/14 45/22 47/5
  48/22 49/12 49/17 52/21 56/13 57/10
  70/1
production [12]   40/11 41/20 45/12
  48/24 49/2 50/10 57/23 58/14 58/15
  78/18 78/20 79/14
productions [2]   38/9 38/11
products [1]   24/7
professional [2]   53/6 54/18
professionally [1]   66/17
proforma [1]   4/24
prohibited [1]   73/13
prohibiting [3]   18/14 69/23 71/4
prohibition [1]   71/24
project [24]   8/8 8/9 9/12 9/14 12/14
  13/17 13/19 13/23 14/3 14/15 14/20
  15/7 15/15 16/24 17/1 17/5 17/25
  19/1 29/16 29/19 36/8 37/15 79/6
  79/6
proper [1]   24/11
properly [2]   73/23 73/25
proportional [2]   79/16 80/23
proposal [1]   65/4
propose [1]   66/3
proposed [8]   19/11 23/11 35/21 59/11
  59/17 64/16 65/17 66/8
proposing [2]   22/19 68/10
proposition [1]   24/20

**P** (continued)
protect [2]   49/22 61/9
protected [4]   37/11 38/17 43/13
  46/16
protection [5]   45/23 46/13 46/24
  49/22 56/6
protective [2]   4/8 71/9
protest [2]   2/11
protocol [5]   60/16 60/19 63/2 63/3
  63/23 67/3
protocols [1]   62/13
provide [3]   21/2 32/3 63/21
provided [9]   4/21 40/14 41/5 41/10
  47/15 60/19 63/1 63/4 63/25
providing [1]   63/14
provisions [1]   4/8
public [1]   20/22
pull [3]   15/10 75/18 76/3
pulling [1]   60/20
punch [1]   9/10
purely [4]   8/10 46/17 52/19 57/13
purpose [6]   7/4 11/9 11/11 11/14
  14/5 43/23
purposes [6]   3/16 4/14 17/9 18/4
  44/15 74/24
push [1]   21/14
put [7]   31/15 47/9 50/13 50/24 65/2
  65/25 80/24
putting [1]   29/20 33/10
PWC [1]   45/2

**Q**
qualifier [1]   31/15
question [16]   6/23 11/22 15/17 16/15
  19/3 25/15 44/14 48/18 49/23 49/25
  51/15 68/6 69/25 75/23 77/2 77/3
questioned [2]   22/6 75/22
questioning [2]   18/15 76/21
questions [9]   11/6 14/20 16/2 16/6
  16/8 16/13 18/22 63/22 66/6
quickly [2]   8/6 66/5
quite [4]   33/17 41/21 56/24 67/6
quo [1]   74/11

**R**
raised [2]   45/22 49/16
raises [1]   55/15
range [2]   9/9 12/7
rarely [1]   19/23
rather [1]   34/12
RAY [3]   1/11 2/2 22/22
Re [4]   25/6 27/7 27/10 27/13
reached [1]   4/11
read [9]   2/9 2/16 11/7 12/25 13/5
  22/8 22/9 36/5 36/12
reading [3]   5/7 65/18 65/21
ready [1]   81/22
real [5]   19/12 27/13 34/8 35/25
  72/10
realize [1]   20/17
realized [3]   4/6 41/2 72/18
really [20]   7/22 8/8 9/16 18/5 19/8
  19/13 20/7 32/19 32/24 32/24 34/17
  36/18 44/5 44/5 46/5 60/1 64/21 70/2
  79/22 80/16
Realtime [1]   83/5
reason [7]   23/10 26/23 42/3 43/25
  44/18 53/25 69/9
reasonable [2]   39/5 49/21
rebuttals [1]   32/11
recall [1]   3/18
recalling [1]   4/7
receive [1]   8/11
received [2]   57/8 78/13
recent [3]   2/12 24/23 77/10
recently [3]   27/3 53/18 57/25
recognize [1]   62/17
record [8]   3/8 26/20 26/21 51/12
  73/13 73/14 77/1 83/15
records [1]   51/4
recounting [1]   46/18
redact [7]   40/2 44/8 48/5 52/15 57/3
  57/6 57/25
redacted [5]   7/19 40/1 40/1 40/13
  41/3 42/19 42/20 42/20 48/6 52/7
  53/16 56/4 58/13
redacting [3]   15/3 56/25 57/3

**R** (continued)
redaction [2]   15/8 43/1
redactions [3]   40/24 53/15 56/24
redo [1]   20/19
reduced [1]   83/13
redundant [1]   63/7
refer [2]   43/14 71/23
references [1]   6/18
referring [1]   14/6
refers [1]   4/19
reflected [1]   4/18
reflects [6]   3/15 4/20 6/13 9/17
  15/6 77/20
refresh [3]   51/2 73/18 75/9
refreshing [1]   17/3
refused [1]   62/2
regard [2]   24/5 61/4
regards [2]   5/12 19/20
reinforced [1]   24/16
reiterate [1]   56/3
related [20]   5/5 7/3 9/14 13/1 13/2
  13/5 14/22 23/14 23/16 29/19 31/14
  34/16 35/7 35/7 44/18 46/18 49/23
  70/20 72/25 78/9
relates [17]   5/24 7/22 8/5 11/13
  15/7 19/7 20/9 28/4 34/22 36/15
  36/24 48/14 54/16 56/8 57/11 59/11
  59/15
relating [2]   11/14 56/10
relevance [1]   10/15
relevancy [2]   18/12 51/17
relevant [16]   5/13 6/21 8/9 9/13
  11/3 17/15 18/10 18/11 19/6 29/20
  31/9 31/10 33/19 41/14 50/15 50/23
relied [1]   21/4
relief [1]   4/11
remained [2]   37/25 53/20
remarks [1]   65/16
remember [8]   2/24 9/4 27/22 27/25
  35/13 37/2 68/21 72/13
remembering [1]   47/14
remote [7]   2/10 61/22 62/4 68/13
  74/9 74/9 74/12
remotely [2]   68/18 76/12
repeat [1]   43/20
replies [1]   32/10
report [6]   32/22 78/15 78/18 78/19
  79/1 79/17
reported [1]   83/9
reporter [8]   1/21 1/22 3/8 43/18
  43/19 83/5 83/6 83/21
REPORTER'S [1]   83/2
reporting [1]   44/15
reports [1]   32/11
represent [2]   8/18 72/19
representative [1]   50/12
represented [6]   42/10 62/8 62/20
  68/1 68/25 72/19
representing [1]   72/12
request [3]   8/3 8/11 71/4
requested [2]   8/15 78/14
requesting [3]   50/9 52/9 78/19
require [3]   13/8 71/24 80/3
requirement [3]   24/25 25/11 80/23
requires [1]   63/3
requiring [1]   39/14
reside [1]   70/23
resolve [1]   15/2
resolved [1]   20/9
respect [6]   33/18 39/12 46/15 47/1
  52/6 78/4
respond [2]   32/8 55/1
responded [1]   46/10
response [8]   8/12 9/18 9/19 9/22
  17/20 33/3 39/22 48/19
responses [1]   6/1
responsive [2]   79/4 79/8
responsiveness [1]   79/10
restroom [2]   68/16 68/17
result [3]   23/25 25/8 31/11
Retirement [3]   1/4 27/4 83/11
retrade [1]   79/16
return [2]   3/13 4/8
returned [3]   14/9 14/10 14/23
reveal [1]   13/8
revelation [1]   49/11
review [8]   45/17 45/20 48/23 49/7
  54/10 56/17 56/18 58/16

**R**

**reviewed [11]**  40/11 42/16 45/7 45/10
47/16 48/25 52/14 52/14 58/1 79/2
79/10
**reviewing [4]**  37/23 49/5 51/25 52/1
**rewrite [1]**  61/15
**right [52]**  2/9 4/1 4/3 6/14 8/16
10/20 10/22 10/23 11/20 13/3 13/4
14/8 20/6 20/7 20/14 26/24 27/2
28/13 29/23 30/3 30/4 30/19 30/22
33/2 33/17 33/24 34/7 35/24 43/10
44/1 51/24 54/9 55/3 55/21 56/19
59/5 59/14 59/25 60/20 62/17 62/19
62/22 64/4 67/25 69/4 70/24 72/5
78/21 80/17 80/25 81/8 82/10
**Rink [1]**  24/16
**Robbins [2]**  1/17 60/8
**role [1]**  45/4
**room [7]**  47/9 62/18 64/24 65/2 68/14
74/20 74/25
**roughly [1]**  41/23
**RPR [1]**  83/20
**Rudman [1]**  1/17
**rule [12]**  14/25 34/5 34/17 34/24
34/24 35/16 43/16 43/17 43/23 53/15
59/24 73/9
**rules [12]**  19/17 21/8 30/10 30/11
32/2 32/3 54/18 67/20 67/23 71/14
71/23 71/25
**ruling [5]**  19/7 21/5 26/11 31/25
59/23
**rulings [3]**  21/1 21/10 35/12
**runs [1]**  54/19

**S**

**S.W [1]**  1/23
**said [16]**  4/12 6/12 8/23 10/6 12/15
38/16 39/3 47/14 49/16 50/21 51/9
52/18 52/25 60/19 61/18 83/13
**same [18]**  14/14 23/9 24/3 24/20 25/2
27/5 28/12 31/23 40/1 45/17 61/21
62/13 64/14 65/17 68/20 69/16 71/17
79/18
**Sanders [3]**  42/11 42/15 45/7
**Sandoz [1]**  24/19
**sauce [2]**  71/15 71/15
**saved [1]**  13/9
**saw [4]**  3/13 4/15 53/1 62/1
**say [28]**  7/24 10/24 11/8 16/19 16/25
17/13 17/23 18/8 22/10 25/10 25/19
26/4 28/7 29/24 32/1 39/18 55/1 58/9
59/6 59/14 61/5 63/19 65/19 66/8
67/25 68/3 68/15 74/19
**saying [19]**  16/19 17/11 17/20 23/17
24/10 30/14 30/15 35/23 51/1 55/4
62/21 64/14 65/4 65/11 65/25 66/22
80/5 80/18 80/20
**says [19]**  8/1 8/6 9/3 10/1 11/18
11/19 12/7 12/11 12/13 15/4 15/20
15/20 22/4 60/22 63/8 65/6 66/10
75/13 79/7
**scenario [2]**  10/5 48/1
**schedule [5]**  14/4 23/11 31/21 82/1
82/6
**scheduling [1]**  19/11
**school [2]**  27/25 28/1
**screen [1]**  76/16
**script [1]**  71/16
**search [5]**  78/7 78/9 78/11 78/16
79/7
**SEC [40]**  36/2 36/16 38/1 38/12 39/22
40/5 40/9 40/17 40/18 40/25 41/3
41/5 41/12 42/10 42/14 43/4 44/8
45/18 46/2 46/4 46/6 46/8 46/10
46/23 48/2 49/9 49/11 49/12 49/17
52/3 52/8 52/13 52/23 53/19 56/7
56/16 57/15 57/21 57/22 58/14
**second [7]**  9/20 11/23 31/24 38/3
56/8 62/24 66/5
**secondly [1]**  38/8
**secret [1]**  19/22
**securities [9]**  24/21 25/6 27/7 27/10
28/18 32/16 34/8 71/20 81/13
**see [17]**  5/20 10/10 12/3 14/13 17/17
19/19 19/20 23/19 28/19 29/4 32/17
42/23 52/2 54/24 75/20 78/15 82/1

**seek [1]**  6/22
**seeking [3]**  4/11 44/11 57/5
**seem [2]**  17/9 42/3
**seems [5]**  10/4 11/2 11/4 74/15 74/22
**seen [2]**  26/8 73/6
**send [2]**  35/19 59/16
**sense [7]**  20/23 26/15 34/6 34/11
34/25 74/17 76/6
**sensitive [1]**  29/9 29/10 61/7
**sent [6]**  4/7 43/3 46/7 52/23 58/14
77/6
**sentence [6]**  61/15 63/3 63/7 64/1
65/20 65/20
**sentenced [1]**  77/9
**separate [3]**  44/6 44/10 47/3
**separately [1]**  44/10
**September [4]**  37/3 43/15 45/19 54/4
**served [1]**  40/10
**Services [1]**  27/10
**set [7]**  44/9 52/11 53/19 53/20 56/4
58/14 58/14
**settle [3]**  20/1 20/1 81/9
**settled [2]**  30/18 30/22
**settlement [1]**  81/19
**settles [1]**  21/18
**shall [1]**  60/24
**share [4]**  13/22 38/25 39/5 76/16
**shared [7]**  37/10 37/20 37/21 38/16
39/2 39/9 39/21
**sharing [3]**  37/23 38/23 39/16
**she [11]**  25/22 50/21 51/11 51/12
51/14 54/2 54/3 54/4 65/18 65/20
82/6
**Sherri [1]**  82/5
**shift [1]**  81/5
**short [1]**  78/2
**should [16]**  10/22 10/22 13/16 14/24
20/4 24/12 30/10 56/5 56/13 56/14
67/11 69/16 72/16 80/12
**shouldn't [5]**  16/11 16/11 20/5 51/17
51/21
**show [3]**  15/10 24/24 69/14
**showing [1]**  29/9
**shown [1]**  42/15
**shy [1]**  24/2
**side [11]**  6/2 22/7 28/16 33/1 53/17
68/25 73/23 74/16 76/5 76/10 79/22
**sides [1]**  22/17
**signed [1]**  39/13
**significance [1]**  12/24
**signing [1]**  37/16
**Siharath [1]**  24/19
**silly [1]**  18/8
**similar [1]**  25/9
**simply [2]**  46/18 78/19
**simultaneously [4]**  25/13 27/9 27/12
30/14
**since [1]**  68/24
**Singer [17]**  1/18 3/10 6/6 7/17 7/24
14/8 22/20 36/21 43/18 52/25 53/3
55/21 56/19 59/7 75/17 78/21 78/23
**single [2]**  58/2 79/8
**sir [6]**  4/3 53/12 56/20 59/1 64/8
67/13
**site [1]**  70/15
**sitting [1]**  14/1 53/8 69/17
**situation [5]**  39/9 45/1 55/18 64/21
65/13
**six [1]**  33/1
**skill [1]**  83/15
**slice [1]**  49/20
**slight [1]**  64/15
**slow [1]**  43/20
**small [1]**  19/8
**smaller [1]**  27/25
**smattering [1]**  31/19
**sneak [1]**  27/18
**socially [3]**  73/22 73/24 74/4
**solely [1]**  38/7
**some [36]**  2/6 5/12 11/17 12/24 14/12
16/14 19/10 20/8 21/3 29/17 31/20
31/22 35/7 35/11 36/7 41/11 42/14
42/23 48/1 48/25 49/10 51/5 53/2
53/20 54/8 55/9 58/9 59/20 59/23
62/17 64/23 67/20 67/22 74/24 75/3
78/9
**somebody [6]**  3/22 47/8 47/10 54/10

**72/12 77/6
someone [2]**  28/20 64/25
**something [17]**  6/10 8/24 9/3 11/16
11/19 11/19 19/14 20/4 20/19 24/12
24/13 47/10 49/13 55/10 55/16 60/1
80/24
**sometimes [7]**  8/20 8/21 20/6 45/1
51/17 73/15 74/5
**Somewhere [1]**  41/21
**soon [1]**  10/22
**sooner [1]**  47/21
**sorry [5]**  11/22 12/12 43/19 46/1
47/25
**sort [12]**  7/20 11/19 13/16 13/18
31/18 32/18 45/6 45/14 50/6 50/11
50/22 53/1
**sought [1]**  4/21
**sounds [2]**  45/13 46/7
**South [2]**  67/21 74/4
**Southern [55]**  1/7 2/24 3/17 4/17
25/2 25/7 36/8 36/25 37/8 37/10
37/20 37/21 38/5 38/10 38/16 39/9
39/23 40/1 40/8 40/16 41/6 41/10
41/11 41/15 41/17 41/19 41/25 42/6
42/10 44/25 45/10 45/16 46/20 47/2
47/5 47/15 47/17 48/1 48/9 48/11
48/13 48/21 49/12 50/3 51/13 52/20
55/8 55/12 56/12 56/16 57/22 70/12
70/15 70/17 83/12
**Southern's [3]**  57/20 57/24 70/18
**Sparks [1]**  54/1
**speak [13]**  3/4 13/11 13/16 15/19
28/7 29/6 30/5 32/15 36/19 44/1
53/17 60/4 71/11
**speakers [1]**  3/5
**speaking [8]**  2/14 2/25 3/6 3/10 7/11
7/22 22/25 64/4
**special [6]**  2/6 36/7 80/3 80/11
80/14 81/2
**specific [8]**  6/15 26/6 26/8 32/6
33/18 42/16 56/8 56/21
**specifically [8]**  23/14 24/1 24/21
34/25 44/16 56/1 66/10 67/25
**spend [2]**  21/18 79/18
**spoke [1]**  28/10
**stab [1]**  78/24
**stack [1]**  75/19
**staff [1]**  35/21
**stage [1]**  25/18
**stakes [1]**  35/9
**stand [3]**  22/5 24/20 68/20
**standard [1]**  67/2
**standing [2]**  13/15 71/9
**standpoint [6]**  12/9 17/4 17/4 20/10
20/21 26/15
**stands [1]**  24/21
**start [1]**  19/16
**started [3]**  15/4 55/24 58/16
**starts [1]**  16/6
**state [3]**  35/2 67/22 73/5
**statement [6]**  6/17 9/24 12/6 12/22
17/17 43/14
**statements [1]**  37/16
**states [7]**  1/1 1/12 1/22 4/17 7/25
38/21 83/6
**statue [1]**  53/8
**status [5]**  1/11 37/3 43/15 74/11
82/1
**statute [2]**  53/7 54/19
**stay [1]**  58/19
**stayed [1]**  58/17
**Stenograph [1]**  83/9
**steps [4]**  38/16 41/15 45/21 49/22
**stick [1]**  10/17
**still [3]**  37/5 58/13 58/24
**stipulated [2]**  60/25 65/12
**stipulation [1]**  66/2
**stock [1]**  7/25
**stop [1]**  31/8
**store [1]**  74/6
**straightforward [1]**  30/9
**strategic [2]**  31/6 33/9
**strategically [1]**  31/4
**strategy [4]**  5/24 19/20 20/1 21/20
**strong [1]**  5/1
**stronger [1]**  52/16
**structurally [1]**  34/6

**S**

**stuff [7]**   5/4 8/17 21/15 36/13 74/21 75/2 82/6
**subject [5]**   2/21 3/24 7/1 55/2 79/2
**subjects [1]**   4/20
**submission [12]**   3/14 33/14 37/18 38/13 38/20 43/12 47/3 56/9 60/21 61/15 62/2 78/3
**submit [4]**   26/23 33/6 71/14 77/21
**submittal [4]**   4/23 19/14 27/23 36/5
**submitted [5]**   2/10 2/17 4/16 35/20 59/10
**subpoena [6]**   39/23 40/10 41/5 69/11 70/7 71/22
**subset [1]**   57/22
**substance [1]**   69/24
**substantiate [1]**   18/7
**such [4]**   27/3 29/3 36/9 78/17
**sudden [1]**   65/3
**suddenly [2]**   49/19 68/16
**suffered [1]**   35/6
**sufficient [1]**   34/10
**suggest [2]**   16/18 35/5
**suggested [3]**   46/4 60/22 65/16
**suggesting [5]**   5/15 16/4 23/12 26/14 61/10
**suggestion [5]**   13/11 33/5 62/2 66/2 70/4
**summaries [1]**   37/24
**summary [35]**   19/15 20/23 20/25 21/11 21/24 23/14 23/16 24/1 24/3 24/25 25/11 25/13 25/18 25/22 26/2 26/3 26/10 26/12 27/5 27/8 27/11 27/13 27/15 27/20 30/13 30/23 31/1 31/5 31/20 32/2 32/5 34/2 34/5 34/24 35/3
**summer [2]**   49/6 77/15
**Sunrise [1]**   27/3
**super [1]**   49/10
**Supp [2]**   24/19 25/7
**support [1]**   4/15
**supports [1]**   21/17
**suppose [2]**   51/5 51/6
**supposed [3]**   16/20 26/5 80/6
**Supreme [2]**   23/21 80/23
**sure [21]**   3/20 5/12 8/16 10/11 13/13 14/7 18/10 37/13 38/8 38/25 42/9 49/10 54/12 54/13 56/21 58/11 60/14 62/6 62/16 67/6 78/23
**surprised [2]**   62/1 77/5
**surrebuttal [1]**   32/11
**suspect [1]**   68/18
**System [2]**   1/4 83/11

**T**

**tail [1]**   10/5
**take [7]**   8/20 45/24 49/19 49/21 61/8 74/23 78/23
**taken [14]**   14/12 37/19 46/17 50/2 50/4 56/10 60/17 61/11 61/19 66/12 67/5 69/9 73/8 77/9
**taking [4]**   69/12 69/13 75/16 76/20
**talk [34]**   2/21 2/22 3/2 6/4 6/7 7/7 10/7 12/16 16/5 19/11 19/14 20/21 22/20 29/1 35/24 44/10 47/6 55/19 59/21 60/2 61/12 65/11 65/12 66/2 66/20 68/15 68/23 69/2 69/4 77/23 79/25 81/6 81/8 82/4
**talked [7]**   11/17 15/24 21/12 34/16 55/22 68/25 78/3
**talking [41]**   3/21 5/4 6/25 10/2 10/19 10/25 11/3 21/2 21/2 22/16 28/18 35/4 36/2 36/4 41/22 42/13 45/9 47/7 47/8 47/12 50/3 50/4 50/6 56/23 57/2 58/4 58/4 58/6 62/12 62/23 65/23 67/14 68/19 70/2 70/3 70/9 70/9 70/14 70/16 73/1 75/2
**talks [1]**   6/14
**tap [1]**   77/16
**teases [1]**   66/1
**Ted [1]**   1/23
**teleconference [1]**   83/10
**TELEPHONIC [1]**   1/11
**telephonically [1]**   1/14
**tell [16]**   2/18 2/21 11/6 12/23 16/20 18/16 18/17 20/14 22/4 53/23 53/24 55/25 60/12 60/13 61/14 74/3

**telling [7]**   10/9 13/16 17/7 17/8 19/16 46/8 76/5
**tells [2]**   9/9 9/11
**tend [2]**   21/15 22/14
**term [1]**   79/7
**termination [1]**   50/21
**terms [11]**   28/7 29/15 32/15 41/15 74/14 78/7 78/9 78/11 78/16 79/19 79/21
**testify [2]**   28/20 63/19
**testimony [9]**   22/3 23/25 26/21 69/8 69/13 69/16 70/4 70/4 81/13
**Texas [1]**   25/7
**than [11]**   6/20 11/1 11/17 13/23 17/18 31/13 32/16 34/12 52/5 54/16 74/16
**Thank [12]**   7/9 23/1 30/2 30/3 33/23 40/21 64/8 72/1 72/2 82/9 82/11 82/12
**thanks [1]**   81/23
**that [661]**
**that's [77]**   3/13 6/5 6/15 6/23 7/9 7/19 7/25 8/10 9/13 9/14 10/1 10/20 11/7 12/11 12/20 13/3 13/4 14/5 15/6 15/21 17/6 17/13 18/10 18/20 19/7 20/18 21/13 22/16 22/17 23/9 23/10 24/6 26/23 28/22 30/15 32/1 32/4 32/14 33/7 33/11 33/17 33/23 34/6 39/18 40/20 43/5 44/10 44/10 44/22 44/23 45/5 45/13 45/14 46/12 47/20 48/6 54/7 54/15 54/22 55/4 55/16 58/16 60/5 60/15 62/11 62/22 66/24 67/4 67/22 68/9 69/3 69/19 70/2 71/20 72/11 75/8 81/7
**their [52]**   27/22 29/9 33/14 37/25 42/4 43/8 43/12 44/14 44/14 47/3 47/18 48/4 48/16 51/3 54/9 60/4 60/17 60/22 61/4 61/9 61/9 61/11 61/19 61/20 61/21 62/2 62/3 65/17 66/8 66/9 67/14 68/15 69/16 69/24 71/11 71/18 73/14 73/22 74/24 75/5 75/7 75/18 75/19 75/20 75/20 75/23 75/24 75/24 76/1 78/6 81/1 81/4
**them [37]**   4/7 8/1 8/19 14/4 16/6 21/14 30/11 31/6 35/17 35/18 45/11 45/22 46/2 46/8 48/12 48/13 48/23 49/7 49/16 51/2 51/6 51/10 51/11 52/7 52/23 61/5 63/11 64/24 65/2 69/14 71/10 73/25 74/13 79/10 79/11 80/21 81/1
**themselves [1]**   50/25
**then [66]**   3/3 3/7 3/17 3/23 4/16 6/18 8/7 11/19 11/19 12/6 12/12 12/15 14/11 15/17 18/2 19/5 21/3 21/19 22/6 22/9 22/12 22/12 25/11 25/18 25/21 26/12 31/19 31/20 33/20 34/11 35/18 36/15 38/2 39/21 44/9 45/15 46/2 47/19 47/20 49/18 49/21 52/14 56/17 59/8 60/12 63/20 64/10 64/18 64/20 72/16 72/17 74/13 75/25 76/11 76/12 76/22 76/24 77/21 79/2 79/10 79/18 80/6 80/13 81/1 81/4 82/4
**theories [1]**   10/16
**theory [2]**   21/16 28/25
**there [109]**
**there's [7]**   9/2 12/5 38/6 57/24 58/17 60/3 71/3
**thereafter [1]**   76/1
**therefore [1]**   38/1
**therefrom [1]**   57/12
**thereto [2]**   7/4 14/22
**these [44]**   13/23 19/17 19/22 23/19 23/25 27/1 27/17 29/11 30/25 31/25 32/25 38/5 38/9 42/23 43/7 43/9 45/19 45/23 46/16 50/1 51/10 51/12 51/13 51/20 53/9 53/22 55/5 56/1 59/7 62/6 62/13 64/9 65/1 66/19 66/22 67/9 68/3 69/13 71/19 74/9 77/20 78/12 79/22 80/21
**they [167]**
**they're [15]**   6/25 14/21 18/2 19/2 20/13 20/13 27/20 36/10 44/22 55/5 66/13 72/4 72/4 74/25 80/6 80/25
**they've [6]**   18/23 46/3 65/8 75/5 76/17 80/5
**thing [19]**   2/5 2/22 20/14 22/3 22/5

**23/7 38/5 44/23 50/11 50/22 54/16 60/1 60/2 64/14 65/17 66/19 68/12 71/17 76/11
**things [17]**   8/12 12/25 12/25 13/24 15/22 18/22 29/2 29/15 37/24 45/25 47/13 50/16 50/18 50/19 57/19 58/9 65/1
**think [98]**
**thinking [2]**   62/17 70/17
**thinks [1]**   8/4
**third [3]**   22/12 62/24 62/25
**this [190]**
**thorough [1]**   80/10
**thoroughly [1]**   54/10
**those [36]**   2/20 15/22 15/22 16/2 16/7 21/10 23/13 23/13 24/20 28/15 29/2 34/19 34/21 34/23 34/24 35/3 35/16 39/8 41/22 42/17 42/18 46/24 47/3 48/5 48/12 48/14 48/17 50/5 56/12 56/13 66/1 68/3 70/22 71/10 71/17 76/3
**though [17]**   8/4 9/7 20/2 23/7 31/2 43/16 65/24
**thought [23]**   5/14 72/16 74/9
**thoughts [2]**   8/23 39/8
**thousands [1]**   32/11
**Thrash's [1]**   24/18
**threat [1]**   50/20
**threatened [1]**   50/20
**threats [1]**   50/17
**three [3]**   65/2 77/20 80/21
**through [13]**   2/9 2/14 2/16 2/19 23/24 28/15 31/20 35/20 35/22 65/1 70/4 80/4 81/21
**throughout [3]**   24/23 27/21 75/4
**throw [1]**   80/15
**thus [1]**   42/7
**tied [1]**   43/25
**time [49]**   2/15 8/19 9/2 11/7 11/18 11/22 12/17 14/15 18/1 18/9 21/15 21/18 21/19 21/24 23/9 23/16 23/17 24/3 24/11 24/12 24/14 25/23 26/11 27/6 27/20 28/13 31/24 35/3 40/18 41/12 47/16 47/17 49/24 51/14 51/20 53/21 54/19 54/20 57/21 63/13 64/23 66/4 71/8 74/5 75/15 81/16 81/22 81/23 82/4
**timeline [3]**   1/12 58/12 58/18
**times [3]**   28/9 28/12 66/13
**timing [2]**   13/24 20/21
**today [7]**   2/4 2/10 2/12 2/12 31/16 37/19 77/23
**today's [1]**   36/5
**told [5]**   9/25 40/12 48/5 54/12 78/11
**Tommy [7]**   12/16 12/19 12/20 13/11 13/16 15/19 15/24 16/5 50/16
**tone [1]**   36/12
**too [5]**   22/11 47/20 51/7 73/15 73/21
**took [6]**   41/15 45/21 51/12 71/10 71/11 79/9
**tooth [1]**   2/20
**top [4]**   7/22 11/12 17/16 74/6
**topic [1]**   3/5
**totally [1]**   22/12
**traditionally [1]**   29/14
**transcript [5]**   1/11 43/22 73/12 76/8 83/14
**triable [2]**   23/23 24/15
**trial [22]**   19/23 25/23 26/5 26/5 30/19 30/22 34/16 34/18 50/24 69/9 69/13 69/15 71/19 72/22 72/23 72/23 77/14 77/15 77/15 81/12 81/18 81/22
**trial-related [1]**   34/16
**trials [3]**   18/20 73/15 81/11
**tried [3]**   31/15 44/8 61/14
**Troutman [16]**   42/11 42/15 42/16 42/18 45/7 53/5 53/10 53/25 54/2 54/4 54/6 54/8 54/14 55/7 55/14 58/4 56/15 58/4 54/15 63/17 71/13 72/17
**true [6]**   24/21 71/20 73/7 73/8 80/5 83/14
**trust [2]**   73/22 79/23
**try [8]**   20/3 21/10 65/14 65/15 68/5 79/16 79/25 82/3
**trying [16]**   6/8 10/4 15/9 20/8 20/11 25/25 27/1 29/4 36/9 40/20 52/15 54/8 54/15 63/17 71/13 72/17
**turn [3]**   4/21 7/5 29/24

**T**

**Turner [1]**   1/23
**turns [2]**   80/9 81/3
**twist [1]**   64/15
**two [16]**   27/24 28/15 35/14 39/19
44/6 45/6 56/3 57/3 57/5 59/8 60/9
64/9 72/9 72/23 73/18 75/8
**two-fold [1]**   56/3
**type [3]**   29/17 32/19 72/9
**types [8]**   23/19 27/1 27/17 29/11
29/14 34/15 50/7 71/19
**typewritten [1]**   83/13
**typical [1]**   71/22
**typically [2]**   32/17 53/7

**U**

**ultimately [1]**   55/3
**unavoidable [1]**   74/5
**uncomfortable [2]**   64/23 65/7
**under [3]**   24/14 29/21 39/12
**underlying [2]**   14/18 29/13
**understand [28]**   3/20 6/22 12/8 12/15
15/11 21/20 25/25 31/4 31/17 36/24
37/14 37/21 41/20 42/11 42/13 42/16
48/3 48/18 54/8 54/18 55/7 57/7
57/19 60/3 73/3 81/12 81/14 81/17
**understanding [5]**   6/16 35/11 58/3
62/14 81/16
**understands [2]**   36/23 38/9
**understood [2]**   45/9 61/5
**unfair [1]**   71/18
**unique [1]**   71/3
**UNITED [5]**   1/1 1/12 1/22 38/21 83/6
**universe [1]**   79/2
**unless [8]**   19/13 34/14 60/1 60/24
61/23 65/11 65/21 66/6
**unlike [1]**   21/14
**unlikely [1]**   33/1
**unnecessary [1]**   32/14
**unredacted [4]**   52/8 52/10 52/12 56/5
**unrelated [3]**   3/21 6/9 28/15
**unsolicited [1]**   9/17
**until [12]**   19/18 24/13 26/12 33/16
41/17 45/21 46/1 46/1 53/17 57/25
58/1 77/12
**unusual [6]**   23/4 64/22 69/21 73/4
73/4 74/7
**unwilling [1]**   78/17
**unworkable [1]**   32/14
**up [18]**   9/20 33/3 40/4 40/15 42/25
47/13 54/11 55/12 56/20 59/8 67/24
69/15 70/25 72/11 74/11 79/19 79/21
81/10
**upon [2]**   29/12 78/16
**upset [4]**   9/8 9/11 14/6 21/3
**us [21]**   19/13 26/17 33/10 40/23 44/8
45/6 49/8 52/7 52/9 52/12 52/14
52/18 56/4 56/15 56/17 60/19 67/12
77/6 78/15 78/17 78/20
**usable [1]**   17/24
**use [15]**   6/8 6/22 14/24 15/1 15/10
17/2 18/19 50/5 51/2 62/8 63/11
63/17 63/22 76/5 76/6
**used [7]**   8/18 18/3 28/21 50/12 50/24
55/6 67/8
**using [8]**   10/7 15/21 16/5 16/12
16/16 76/16 76/17 78/7

**V**

**vacation [1]**   74/2
**vaccine [1]**   77/12
**value [3]**   6/17 19/19 50/1
**varies [1]**   32/19
**verbally [1]**   37/22
**verdict [1]**   25/24
**versa [1]**   32/8
**version [1]**   36/12
**very [12]**   21/9 21/23 24/21 25/8
26/13 62/3 64/14 67/4 71/2 78/13
78/13 82/11
**veto [1]**   74/24
**via [1]**   77/7
**vice [1]**   32/8
**view [6]**   4/18 6/3 6/12 7/4 13/5
32/14
**viewed [2]**   32/7 37/23

**virtually [1]**   71/5
**virus [2]**   61/8 61/25
**visibility [1]**   42/19
**visitation [1]**   27/23
**voluminous [1]**   41/21
**vs [1]**   1/6

**W**

**wagging [1]**   10/5
**wait [4]**   9/20 24/12 34/12 38/23
**waited [1]**   46/1
**waiting [1]**   2/20
**waived [6]**   42/7 46/13 46/25 49/21
49/21 56/6
**waiver [9]**   41/13 42/7 43/8 45/14
47/4 47/19 49/16 49/18 52/16
**waiving [1]**   39/1
**want [57]**   7/7 8/17 13/2 13/7 13/22
14/8 14/23 20/15 20/19 21/15 28/7
29/9 29/23 31/19 33/2 34/1 34/13
34/21 34/23 35/17 35/17 38/8 42/9
42/22 42/22 55/17 56/19 56/24 57/18
59/6 59/7 61/8 62/6 62/12 62/16
62/18 62/19 63/6 63/11 63/16 63/17
63/22 65/25 66/20 66/21 69/24 69/4
70/25 71/3 71/9 74/18 74/20 74/21
75/12 76/4 78/22 80/25
**wanted [16]**   10/7 19/14 49/24 50/18
51/15 58/10
**wants [3]**   14/13 14/19 61/10
**warranted [1]**   21/22
**warts [1]**   36/9
**was [146]**
**wasn't [8]**   26/11 44/21 44/21 44/25
55/13 73/9 77/7 80/10
**waste [2]**   21/15 63/13
**wasted [1]**   21/19
**Watts [1]**   37/4
**way [22]**   8/24 9/12 12/19 13/10 16/6
18/5 20/24 21/8 23/24 25/2 30/10
33/22 34/17 40/1 49/15 55/18 57/24
66/17 76/17 77/4 77/12 80/15
**ways [1]**   68/13
**we [154]**
**we'll [6]**   10/17 28/15 31/19 31/20
35/20 35/22
**we're [48]**   2/10 2/12 4/11 7/21 10/2
10/12 21/2 21/2 26/14 26/16 26/20
28/18 30/14 30/14 31/17 33/12 35/4
41/22 50/2 50/4 50/6 52/9 53/7 56/23
56/25 57/2 57/3 63/14 64/14 64/18
65/1 65/4 65/6 65/11 65/23 65/25
66/24 70/22 70/6 70/16 71/5
71/13 71/16 74/17 77/11 77/12 78/19
**we've [7]**   5/13 33/17 51/6 63/23
67/24 78/14 78/16
**weak [1]**   6/5
**week [3]**   59/16 59/17 74/2
**weeks [1]**   77/10
**weigh [2]**   7/6 78/22
**weird [1]**   72/9
**well [21]**   3/7 7/5 8/13 8/14 9/20
19/19 22/10 25/24 26/17 29/10 32/16
33/17 50/25 58/18 62/20 66/12 68/13
70/24 72/16 77/8 79/20
**Wells [1]**   27/13
**went [3]**   11/18 15/23 74/2
**were [78]**   2/7 2/16 2/19 13/23 13/24
14/3 14/14 15/22 16/13 16/25 28/21
28/23 30/13 30/22 35/5 35/6 36/7
37/23 38/1 38/9 38/10 38/12 40/13
42/14 42/15 42/20 42/20 43/16 44/8
44/14 44/16 44/24 45/11 45/20 46/23
47/15 47/16 48/25 49/5 49/9 50/2
50/4 50/17 50/19 51/12 52/1 52/8
52/23 53/6 53/9 54/10 56/4 56/11
61/1 61/10 61/17 69/9 69/17 70/6
70/10 70/13 70/13 70/19 70/19 75/14
77/3 78/11 79/4 80/22 81/11 82/14
83/1
**weren't [6]**   43/9 50/18 51/25 51/25
54/13 78/8
**WH [1]**   25/4
**what [125]**
**what's [11]**   5/9 9/1 12/12 19/24

19/25 20/22 23/20 25/25 32/5 62/24
67/13
**whatever [11]**   9/6 13/2 14/19 15/20
31/18 59/19 60/23 63/14 76/6 76/17
79/3
**whatsoever [1]**   52/21
**when [50]**   2/21 6/17 8/22 10/3 10/19
11/10 16/6 19/21 20/10 21/2 22/8
22/14 26/5 26/12 29/1 34/24 36/5
36/12 37/3 40/2 40/4 40/8 40/8 40/16
41/2 41/4 41/15 45/20 52/23 52/23
53/5 53/6 54/3 55/19 56/6 58/12
58/16 58/19 60/16 62/1 62/12 63/22
68/14 73/13 73/25 75/21 75/22 75/25
76/8 79/19
**where [29]**   12/5 15/4 15/4 16/4 22/16
25/12 25/17 26/1 26/10 26/25 30/12
36/9 43/15 45/1 48/1 54/24 58/3 58/5
64/1 64/23 64/25 65/8 68/14 68/22
70/23 73/9 75/16 76/17 81/15
**whether [16]**   5/21 10/14 15/23 20/1
24/14 36/16 40/23 42/20 49/1 49/1
54/22 60/23 69/24 72/20 74/20 74/24
**which [17]**   4/19 4/21 7/1 7/22 23/8
23/20 24/17 25/2 44/25 48/24 49/8
56/9 56/10 65/22 66/1 67/10 68/1
**while [8]**   5/14 21/12 26/19 38/18
68/6 69/20 73/11 75/24
**who [41]**   2/7 2/25 3/4 3/8 5/24 7/11
12/19 12/20 13/16 18/6 28/10 29/12
29/18 30/17 30/21 31/9 31/9 36/17
37/13 39/11 44/1 46/18 47/11 50/16
51/10 54/1 54/1 62/3 62/7 64/4 65/8
66/12 70/9 73/20 74/23 76/15 77/21
80/4 80/17 80/18 82/5
**whoever [5]**   30/4 36/18 47/7 47/7
75/17
**whole [2]**   14/2 76/10
**wholesale [1]**   32/9
**why [20]**   5/12 11/6 21/7 21/8 21/13
31/4 31/24 36/1 36/4 42/20 44/22
44/23 46/16 54/7 54/22 59/15 59/15
59/23 67/6 69/9
**will [35]**   3/7 3/8 6/1 18/6 22/25
28/8 28/10 29/5 31/8 31/9 31/9 31/11
31/18 31/22 32/20 32/21 34/19 35/22
36/21 45/2 54/4 62/3 63/25 64/9 65/5
65/14 69/8 69/14 77/21 80/13 81/4
81/10 81/13 81/14 82/6
**WILLIAM [1]**   1/11
**willing [2]**   17/23 81/1
**win [1]**   22/9
**within [1]**   23/5
**without [3]**   5/17 11/5 29/17
**witness [36]**   15/11 21/1 22/5 50/13
60/24 60/25 61/10 61/18 61/24 62/3
62/10 63/3 63/15 63/19 63/22 63/25
64/22 65/6 65/12 66/19 66/25 67/25
68/14 68/20 69/18 69/23 75/1 75/20
75/20 75/23 75/24 75/25 76/14 76/15
76/23 77/3
**witness's [1]**   70/4
**witnesses [19]**   17/24 18/6 28/2 28/3
51/3 61/6 62/7 62/17 63/1 67/14
69/16 69/14 70/7 70/23 71/8 71/19
71/21 73/1 73/21
**WMR [1]**   1/4
**wolff [4]**   1/21 1/24 83/5 83/20
**woman [1]**   72/20
**won't [3]**   34/20 80/7 81/10
**wondered [1]**   72/20
**word [2]**   59/2 59/4
**words [1]**   56/14
**work [40]**   15/11 28/15 36/10 37/11
37/16 37/25 38/6 38/7 38/17 38/17
38/23 38/24 38/25 39/1 39/9 39/17
40/17 43/13 44/16 45/22 47/5 47/24
48/21 49/12 49/16 52/20 54/23 55/8
55/18 56/13 57/9 61/13 65/14 69/25
72/7 72/9 72/22 77/17 79/25
**worked [7]**   54/2 70/15 70/18 72/9
75/4 77/6 77/8
**working [6]**   11/25 21/15 35/21 54/7
55/11 70/19
**works [2]**   10/10 54/23
**world [1]**   81/13
**worried [1]**   55/11

**W**

**worse [1]**  45/15
**worth [1]**  41/18
**would [82]**  2/10 2/22 5/15 6/22 7/18
 8/14 8/19 8/20 10/14 11/3 11/8 12/16
 12/17 13/13 14/16 14/17 14/25 15/3
 15/8 15/11 15/17 16/1 16/7 16/9
 16/12 16/15 16/16 16/17 16/19 18/4
 18/8 18/16 21/1 21/23 23/2 25/22
 28/19 31/4 31/14 33/1 33/6 33/6 39/7
 39/17 40/8 40/12 41/9 41/12 41/14
 42/25 43/14 43/17 43/23 46/8 47/2
 49/8 49/13 50/24 51/8 51/10 51/20
 53/7 53/14 55/1 56/2 59/17 61/12
 61/13 62/7 65/14 65/22 68/9 69/17
 71/14 71/18 73/4 74/15 78/7 78/15
 79/2 81/16 81/21
**wouldn't [7]**  8/25 14/16 43/7 51/22
 54/2 75/15 81/17
**wreck [2]**  35/5 35/7
**write [1]**  22/11
**writing [2]**  46/21 56/11
**wrong [7]**  2/4 11/6 20/14 20/15 55/10
 62/16 80/18
**wrote [2]**  51/10 51/11
**Wyman [6]**  1/16 30/21 60/7 65/16 69/5
 76/20

**Y**

**Yeah [9]**  6/5 11/23 14/1 14/17 43/11
 48/3 51/8 53/22 72/4
**year [6]**  4/5 30/18 30/22 46/9 58/1
 58/16
**years [12]**  45/16 46/23 56/7 56/16
 67/17 68/8 68/22 69/20 72/21 72/22
 72/23 77/6
**yes [20]**  4/2 10/23 25/16 28/6 28/23
 29/7 29/7 30/6 33/4 44/4 47/15 53/12
 59/1 67/13 67/16 69/6 70/11 71/1
 77/25 82/3
**yet [2]**  28/8 59/2
**Yield [1]**  25/4
**York [1]**  25/3
**you [284]**
**you're [27]**  6/14 10/1 10/4 10/7
 16/19 19/24 20/6 20/7 20/8 28/13
 47/8 47/11 51/1 62/20 66/22 68/14
 68/24 68/24 73/12 75/16 75/16 76/2
 76/8 76/16 76/17 76/20 76/21
**you've [3]**  7/20 8/16 11/1
**you, [1]**  82/11
**you, very [1]**  82/11
**your [107]**
**yourself [1]**  3/7

**Z**

**Zonagen [1]**  25/6
**Zoom [6]**  76/16 77/5 77/7 77/15 82/8
 82/8