```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF GEORGIA
 2                      ATLANTA DIVISION


 3

 4   MONROE COUNTY EMPLOYEES'        )
     RETIREMENT SYSTEM et al.,       )
 5                                   )
                  Plaintiffs,        )
 6          v.                       )   CIVIL ACTION
                                     )   FILE NO. 1:17-CV-00241-WMR
 7   THE SOUTHERN COMPANY et al.,    )
                                     )   TELEPHONE CONFERENCE
 8                Defendants.        )
     _____)
 9

10

11   -----------------------------------------------------------

12         BEFORE THE HONORABLE WILLIAM M. RAY, II

13              TRANSCRIPT OF PROCEEDINGS

14                   JULY 16, 2020

15   -----------------------------------------------------------

16

17

                Proceedings recorded by mechanical stenography
18              and computer-aided transcript produced by

19

                    WYNETTE C. BLATHERS, RMR, CRR
20                     Official Court Reporter
                       1714 U.S. Courthouse
21                     75 Ted Turner Drive, SW
                       Atlanta, Georgia  30303
22                       (404) 215-1547

23

24

25
```

```
1   APPEARANCES (Telephonically):

2

    For the Plaintiffs:        DARRYL J. ALVARADO
3                              Attorneys at Law
                               Robbins Geller Rudman & Dowd LLP
4                              655 W. Broadway
                               Suite 1900
5                              San Diego, California  92101

6   For the Defendants:        MICHAEL J. MCCONNELL
                               Attorney at Law
7                              Jones Day
                               1420 Peachtree St. NE
8                              Suite 800
                               Atlanta, Georgia  30309
9
                               EVAN P. SINGER
10                             Attorney at Law
                               Jones Day
11                             2727 North Harwood Street
                               Suite 500
12                             Dallas, Texas  75201

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              Thursday Morning Session

2                  July 16, 2020

3                    10:00 a.m.

4                      - - -

5            P R O C E E D I N G S

6         THE COURT:  Good morning.  Hey, this is Judge Ray.

7    I'm assuming everybody is on the call because it told me that

8    my -- the light I guess, or maybe not, that there are 14 other

9    people already on the call.  So is everybody -- have y'all

10   already made introductions or done a roll call, Jennifer?

11        COURTROOM DEPUTY:  No, no.

12        THE COURT:  Okay.  So Mister -- hold on a second.

13   I've got to get the right file open.  I'm going to just tell

14   y'all that I am not in the office today, and I am actually

15   sitting on my front porch in Norcross, Georgia.  And I live

16   about three and a half to four blocks from a railroad track,

17   so there is a good chance you're going to hear a train come

18   through here in a little while, depending on how long we're on

19   the phone.

20        It was supposed to be the summer.  My wife and I

21   moved during all of this mess in the spring, and we were

22   supposed to be totally empty-nested this summer and nobody

23   home.  And because of Covid I've got three 20-year-old-plus

24   sons, one girlfriend, two cats, and a dog at my house that

25   aren't normally here.  So we have -- my oldest son is going

1  back to law school in the fall no matter what, and my middle

2  son and his girlfriend are moving out and taking their pets.

3  And then my son who's at Georgia, an undergrad at Georgia,

4  he's got an apartment in Athens.  We told him he's going back

5  no matter what they're doing.  So hopefully in about a month

6  we'll have a little bit more peace.  I guess my point is

7  despite the train, I'll probably have less noise out here than

8  inside.

9         So who's going to speak on behalf of the plaintiffs

10  today?

11         MR. ALVARADO:  Good morning, your Honor.  This is

12  Darryl Alvarado.  I'll be speaking on behalf of the

13  plaintiffs.

14         THE COURT:  Okay.  And I recognize Mr. McConnell's

15  voice.  Are you speaking, Mr. McConnell, on behalf of the

16  defendants?

17         MR. MCCONNELL:  I am not, your Honor.  Mr. Singer is

18  going to speak on our behalf today.

19         THE COURT:  Okay.  Thanks.  Okay.  So I read both of

20  the letters that y'all submitted, and I guess one thing I've

21  wanted to do is congratulate both of you in using every line

22  of the two pages that you were given.  That was pretty

23  awesome.  But I did read it all, and it basically seems like

24  there's two primary disputes, you know, one dealing with the

25  privilege documents and where do we go from here on that and

1  then the other being maybe a little bit more multifaceted but

2  involving the requests to admit and interrogatories related to

3  them.

4       So why don't we first talk about the privilege

5  documents, and then we'll move on to the discovery issue

6  related to the interrogatories and requests to admit.  And so

7  I guess the party that's complaining about the privilege

8  documents or requesting that we move forward with a special

9  master would be the plaintiffs.  So Mr. Alvarado, why don't

10 you take the lead on that issue.

11      MR. ALVARADO:  Sure.  Thank you, your Honor.  Just a

12 little bit of background.  If the Court remembers, we've been

13 sort of going through these privilege issues since last fall.

14 We got their privilege log in August of 2019 so about a year

15 ago.  We had a hearing in September, which prompted a series

16 of rereviews by the defendants and a series of reproductions

17 of privilege logs.  I think we've received revised privilege

18 logs on five or six different occasions, most recently on June

19 13th.

20      And so here we are -- we've substantially narrowed

21 the disputes, fortunately.  I think when we first were before

22 the Court last September, we got something like 5500

23 objections, and now what we're talking about here to resolve

24 the dispute is 637 documents.  And we've categorized them in

25 five categories, and from our perspective we think it makes

1  sense to now go to a special master, which was the Court's

2  initial inclination back in September.

3       It was the Court's inclination when we had a hearing

4  last month on a different issue relating to documents.  We

5  think this can be resolved pretty quickly, and it needs to be

6  resolved quickly because we're beginning depositions.  Our

7  first deposition is next month, but as we go, the more high

8  level executives and deponents that we'll be deposing appear a

9  lot on these disputed documents.  And so, you know, we need

10 finality so that we can take the depositions.  You know, the

11 defendants are unwilling to keep depositions open until this

12 is resolved, and so it makes it even more sort of urgent to

13 get this resolved as soon as possible.

14      So what we would ask is that the Court appoint a

15 special master.  You know, if the Court has someone in mind,

16 if the parties want to agree on someone, I don't think we have

17 a preference.  The Court had initially in September suggested

18 that the plaintiffs would have to pay for it, at least at the

19 outset, and then, you know, obviously if it turned out that,

20 in fact, there were documents or a substantial or sufficient

21 percentage of documents that should have been produced

22 initially, then maybe there would be a fee shifting.  We're

23 totally happy with that.  We're happy to pay the fees that are

24 associated with the special master, and so we think the

25 really -- we don't see really any reason not to get that going

1  now.

2  THE COURT:  All right.  Mr. Singer, what's the

3  defendants' position?

4  MR. SINGER:  Thank you, your Honor.  The defendants'

5  position is we don't necessarily disagree or object to a

6  special master.  What we're asking is for the plaintiffs to

7  agree to sit down with us and go through the documents they're

8  challenging on a line-by-line or document-by-document basis I

9  should say, which is exactly the exercise they want to do with

10  a special master.

11  While Mr. Alvarado is right we've revised our

12  privilege log and we've been talking about these issues for

13  quite sometime, plaintiffs have never been willing to do that.

14  Privilege issues are nuanced, and they're fact specific.  And

15  I think that the parties can make a lot of headway if they

16  would sit down with us and go through them, and therefore you

17  would narrow the number of documents that we would submit to a

18  special master.

19  I think it would relieve all the parties, including

20  Mr. Alvarado and his request for speed if we, for instance,

21  sent the special master a hundred documents instead of 600.

22  We have been discussing with the plaintiffs for some time a

23  number of issues and made, as Mr. Alvarado said, headway.

24  We've resolved a lot of issues.  I think we can keep doing

25  that, but we need to do it on a document-by-document basis.

1  Looking with categories just doesn't work.  We need to do

2  it -- and we should do that before we submit the special

3  master.

4          THE COURT:  What about the comment by Mr. Alvarado

5  related to the depositions.  What's been the defendants'

6  position about, I guess, delaying the depositions of the -- or

7  keeping open the depositions of the folks that y'all are

8  talking about deposing?

9          MR. SINGER:  Yeah, I think our position is that we --

10  as Mr. Alvarado said, we've agreed not -- we want to agree to

11  keep the depositions open.  And I would just, you know, inform

12  the Court that while we're talking about 637 documents here,

13  according to Mr. Alvarado, defendants have produced more than

14  a million pages of documents to plaintiffs, and they've also

15  obtained another million pages of documents from third

16  parties.  So it's not the case that they're going into these

17  documents blind -- I mean depositions blind.  Excuse me.  They

18  have a lot of information that they can use in the

19  depositions, and I think, you know, it's possible that we

20  could resolve a lot of issues before the depositions begin,

21  you know.  And plaintiffs are the ones that are pushing for

22  the depositions.  They're not waiting for these privilege

23  disputes to be resolved.

24          THE COURT:  So if you move forward with the

25  depositions of whoever y'all are talking about, the plaintiffs

1   are talking about deposing, and then it turns out after the

2   depositions, that there are documents that should have been

3   produced that either y'all agree or that I decide ultimately

4   upon, you know, or subsequent to the review of the special

5   master, why would it be unfair to then review the deposition

6   of whoever if they might have testimony that is relevant to

7   any documents that are thereafter produced?

8          MR. SINGER:  That's a difficult question to answer in

9   the theoretical, your Honor.  I don't want to take the

10  position that we would never do that, but I guess my point is

11  the plaintiffs have more than sufficient information at this

12  point to proceed with the deposition.  I suppose if we can't

13  resolve some of these privilege issues by the time that

14  someone is deposed, we could consider reopening the

15  deposition, but I think it's a difficult question for me.

16         And, you know, I'd also point out, your Honor, while

17  we're not moving for a protective order on these requests, the

18  plaintiffs just sent us 27 new requests for production just a

19  couple weeks ago.  So by, you know, their own actions they are

20  risking that they won't have all the documents they want

21  before the depositions.

22         THE COURT:  Yeah, that's not what we're talking

23  about, though, right now.  We're talking about the documents

24  that have been identified and have been withheld because

25  they're privileged, and if it's later determined, you know, by

1  you, all of you, by agreement or by me that it should be

2  produced, it seems then that it was only fair -- I mean, the

3  reason I think it's a difficult question to answer is because

4  there's really no answer that you can give to why they

5  shouldn't be able to then proceed with some additional

6  testimony about documents that should have been produced.

7          I mean, to me that's a nonstarter to really say that

8  a party can withhold documents under claim of privilege and

9  then it be determined or agreed later that it wasn't

10 privileged, and now you can't come back and question us,

11 though, about it.  I guess I'm just forecasting or bluntly

12 saying that the defendant is not going to prevail in that kind

13 of dispute, if we get to that point.  I mean, there's no

14 guarantee that we're going to get to that point, and so, you

15 know, I don't know really what exactly to do with the -- I

16 don't really want to debate that.  Okay.

17          MR. SINGER:  All right.

18          THE COURT:  I don't know really what to do, though,

19 about the request that y'all continue to talk.  I mean,

20 obviously working things out is always preferable.  So let me

21 ask Mr. Alvarado what about the plaintiffs -- what is the

22 plaintiffs' position about going over the documents?  Tell me

23 what has happened so far.  I hear from Mr. Singer that you've

24 talked about categories of documents but not about specific

25 documents.  What's the plaintiffs' position on that?

1        MR. ALVARADO:  Sure, your Honor.  Yeah, so, you know,

2   from our perspective what we've done over the last intervening

3   12 months is really we've done the copying, I think, that

4   Mr. Singer is referring to.  From our perspective there's not

5   a productive -- we don't foresee anymore productive

6   communication on this.

7        What we've given them is a very specific log that

8   identifies documents by discrete categories that we object to,

9   and we have provided a basis for those documents.  The

10  objection for each document in the category is the same or

11  virtually the same, and so what we would be doing is going

12  through 600 documents and repeating the things that we've been

13  telling them for a year.  For example, you know, these draft

14  SEC documents from our perspective are not protected

15  documents, and I don't know how many there are.  Maybe there's

16  65 of such documents.  We would just be saying the same thing,

17  65.  We don't think there's any mystery left with what our

18  positions are on each document.  I really just think that this

19  would result in further delay.

20       And, you know, while we're always happy to talk and,

21  like I said, we have talked, and it's resulted in, you know,

22  reducing our diffuse by 90 percent, or whatever the percentage

23  is, we think now is the time to get this in front of a neutral

24  third party to make rulings on whether or not the documents

25  are privileged.  You know, I'm just thinking it through.  If

1  the Court is inclined to have us talk more on these or go, I

2  guess, document by document, I would ask that we at least get

3  someone appointed so that in realtime we could submit

4  documents to him or her as we go.  You know, as we get through

5  a list of a hundred, or whatever it is, we can say, okay, you

6  didn't agree on any of them or you agreed on all but 50, and

7  so we can send those over, something like that.

8         But I think we really need to get someone in place,

9  and we need to get a process in place that will result in

10 rulings quickly.

11        THE COURT:  Mr. Singer, you were starting to talk a

12 minute ago.  Is there something else you needed to tell me

13 about this whole topic?

14        MR. SINGER:  A couple points, your Honor.  One, I

15 would say that I don't necessarily just, you know, object to

16 Mr. Alvarado's proposal to get somebody appointed and start it

17 moving.  What I would say is while the plaintiffs have given

18 us categories of documents, what they haven't done is told us

19 which documents fall into which bucket, and they haven't

20 provided specific objections.  So defendants have been sort of

21 left to guess at what we're trying to respond to.

22        They sent us, you know, 500 documents in June, but

23 they just sent us a spreadsheet of documents.  They don't tell

24 us what the categories are.  They don't say if there's a

25 problem with the description.  We're just left to guess.  So

1    that's the discussion I want to have.  And, you know, I'm

2    happy to start that right away and get that moving, but I

3    think we need to have that before we commit to certain

4    documents going to a special master.

5           The other point I'd like to make is with respect to

6    the Nalley log, log about the internal investigation.  The

7    Court heard about this at a hearing in September of last year.

8    And then in December the plaintiff made representations to the

9    Court and to defendants that they had resolved all their

10   issues with respect to the documents, but now they're back in

11   the mix today.  And what we'd like to ask the Court to do is

12   rule that those documents are off the table.  You resolved

13   those issues back in December.

14          THE COURT:  Yeah, I doubt I'm going to do that when I

15   don't know what we're talking about as far as documents are

16   concerned.  And, you know, there isn't -- I mean, if we want

17   to talk about structural -- proteas isn't the right word, but

18   this isn't even the law of the case.  This case is still

19   before the trial court.  It hasn't gone anywhere.

20          So I'm always suspicious with that type of request

21   generally because it actually makes me think that there's

22   something there that should be produced, honestly.  But I

23   don't know that to be the case.  I mean, really the only

24   person that knows about the documents is the defendant and

25   that's -- I don't know how much a discussion going forward

1   between the two of you, the two parties, is going to be

2   productive when the defendant can see the documents and knows

3   exactly what they say and when the plaintiff can't and there's

4   no independent voice.

5          I mean, ultimately here's what I do know:  If y'all

6   can't agree, the issue is going to come to me, and I'm going

7   to have to see the documents to rule.  I mean, it would be

8   like trying to rule on the admissibility of a document where

9   one person objects and says it's not relevant, and the other

10  person says it is relevant.  And I have to rule without

11  looking at the document to determine whether it's relevant or

12  not.  So the special master becomes a great aid to me because

13  then I have the advice of that person and their opinion.

14         What I anticipate and what I envision is someone who

15  is familiar with federal court litigation, and whoever that

16  special master is will probably be someone that's practiced in

17  federal courts a lot more than I ever did as a lawyer because

18  my practice was primarily in state court, occasionally in

19  federal court.  And things have changed so much in the 30

20  years that I've been an attorney.  I think I tried my last

21  case in federal court probably in 1998 or so until I tried my

22  first one as a judge in this case.

23         So, you know, that person, whoever that person might

24  be, will be a great aid to me.  I mean, ultimately, obviously

25  I have to make the final decision on it.  But I would envision

1  the two of you being able to have an opportunity to talk about

2  who you would want to be the special master, and if you can't

3  agree, then, you know, I'll pick somebody.

4        I'm not sure if it was in this case that I suggested

5  that both of you, you know, write me a letter and recommend

6  someone to me, and then I'll pick between them.  I'm willing

7  to do that or I'm willing to just pick someone on my own.

8  Anyone that I pick is going to be somebody that's a member of

9  the Federal Bar Association in Atlanta because then I know

10  they've got extensive experience or potentially got extensive

11  experience in federal court and discovery issues and is

12  familiar with standards that generally apply.

13        So before I resolve that issue let's move on and talk

14  about the other issue, which is the issue related to the

15  requests to admit and the related interrogatories.  So I guess

16  really the defendant has brought the complaint about that, so,

17  Mr. Singer, do you want to tell me about the defendants'

18  perspective in that dispute.

19        MR. SINGER:  Yes, your Honor.  As I mentioned, the

20  plaintiff served the defendants with a number of new discovery

21  requests sort of at the 11th hour, literally within hours of

22  the deadline, and only with respect to the request for

23  admissions and interrogatories for The Southern Company, that

24  particular defendant.  The defendants are asking for leave to

25  file a motion for protection instead of answering those

1  requests.  As to the request for admissions, the plaintiff

2  served 425, and while there's no limit under the rule, we feel

3  that's excessive.  But even more importantly, the requests

4  themselves are improper.  According to the case we cited in

5  our submission to you, the *Perez* case, the Court -- the

6  Eleventh Circuit makes clear that requests for admissions are

7  designed to streamline a trial and to resolve undisputed

8  facts, and that's not what the plaintiffs' request for

9  admissions did here.  They focused it on the very essential

10 elements of the plaintiffs' claim.  For instance, they asked

11 the defendants repeatedly to admit that the statements in the

12 complaint are false in the pleading.  That's a core

13 allegation.  I'm sorry.  That's a core allegation of their

14 complaint.  They also ask defendants to admit that certain

15 individuals have the power to control Southern, which is a

16 core allegation or core essential element of their control

17 person claim.  That's not the purpose of requests for

18 admissions.  And before defendants are required to respond to

19 425 -- excuse me -- such requests we would ask that --

20         THE COURT:  Do you need to take a minute?  You sound

21 like you're about to cough and you're trying not to.

22         MR. SINGER:  I'm sorry.

23         MR. MCCONNELL:  Your Honor, this is Mike McConnell.

24 I wanted to mention that Mr. Singer happens to be in Colorado,

25 and I think that the altitude may have something to do with

1  that.  But I will go back.

2          MR. SINGER:  I apologize, your Honor.  I'm better

3  now.  But the requests they submitted to us, they're abusive

4  under *Perez*, the Eleventh Circuit case we cited, because they

5  don't try to streamline the trial.  They're asking the

6  defendants to admit the essential elements of the plaintiffs'

7  claims under 10(b) and 20(a), and that's not the purpose.  And

8  before the defendants are required to provide specific

9  responses to those requests, all 425 of them, we think a

10  motion for protection would be appropriate.

11          THE COURT:  Mr. Alvarado, sir.

12          MR. ALVARADO:  Thank you, your Honor.  So on this

13  particular issue, we're a little puzzled, frankly.  You know,

14  we really, we truly don't understand their objections and what

15  their positions are.  They haven't obviously responded to our

16  discovery yet because it was only served two weeks ago.

17          So we had one meet and confer.  What we said was why

18  don't we go through these and figure out which ones you're

19  talking about.  So, for example, the reference to 425 RFAs and

20  that, you know, from their perspective they're improper

21  because they go to the core of the case or, you know, raise

22  disputed facts, that's -- we disagree, that that's not the

23  purpose.  But even if that's true, not all of the RFAs are

24  such RFAs.  There's plenty of them admit that are, you know,

25  admit that this statement was made on this date, admit that,

1  you know, at date made this statement, admit that this report

2  was filed on this date.

3       And so we really don't know what we're talk -- we

4  should go through and figure out which ones they're talking

5  about.  If they want to file a motion and we oppose it and

6  they reply and the Court wants to proceed that way, I guess

7  we're happy to do it.  We just don't think it makes a lot of

8  sense.  I guess we'll learn their specific objections in the

9  brief, and we can maybe make concessions in our opposition.

10  That's not typically how we think it makes the most sense

11  efficiently, but I guess the relief they're seeking is to file

12  a motion.  We think it's premature, but we're happy to respond

13  if the Court would rather them just file something.

14       THE COURT:  I know there were some exhibits attached,

15  but I didn't concentrate on the exhibits for our call today.

16  I concentrated just on the two letters that you both

17  submitted.  Were there truly 425 individually numbered

18  requests to admit?

19       MR. ALVARADO:  There were 425, yes.

20       THE COURT:  And in your estimation how many of those

21  were asking them to admit that a call was made on a certain

22  day or a document was received on a certain day versus, you

23  know, for example, asking someone to admit that they

24  recklessly disregarded something or something that would be

25  properly considered more of a legal conclusion as opposed to a

1  factual contention?

2       MR. ALVARADO:  Probably -- I don't know.  Maybe a

3  quarter of them.  The way it worked was there would be a --

4  you know, for a series of them, for all of the alleged false

5  statements that were upheld and remain in the case, there's a

6  series of questions for, you know, admit that the statement

7  was made on this date, admit that this person made the

8  statement, and then admit that it's false.  So, you know, it's

9  probably 25 percent, if I had to guess.

10       THE COURT:  25 percent of them would be more the

11  characterization, the legal conclusion, versus the factual

12  contention?

13       MR. ALVARADO:  Right.

14       THE COURT:  So most of them you're saying would be

15  factual?

16       MR. ALVARADO:  Factual as in asking them to admit

17  statements are false?  Yes.

18       THE COURT:  No, no.  Which one is the majority?

19  Asking -- to say something is false is, I mean, yeah, that

20  could be a fact, but that's a fact determined by a jury.  To

21  say that a letter was sent is more a fact on the ground than

22  follow my distinction.  How many of them were facts on the

23  ground, this happened on this day, versus what you said

24  previously in this filing is false?

25       MR. ALVARADO:  Probably 25 percent.

```
 1              THE COURT:  Which one of them is the -- which one of

 2    them is a higher percentage?  The just purely factual this

 3    happened on this day or the characterization of that?

 4              MR. ALVARADO:  The characterization of that is

 5    probably -- there are probably more of those than there are

 6    just, you know, this happened on this date.

 7              THE COURT:  And there was also a statement,

 8    Mr. Singer, about the -- you also had a complaint about the

 9    interrogatories?

10              MR. SINGER:  Yes, your Honor.  As to the

11    interrogatories that were served on Southern, we essentially

12    have two complaints, one which relates to this particular

13    issue.  The Interrogatory No. 20 that was served by the lead

14    plaintiff refers back to the RFAs and essentially says for any

15    one that's not going to be an unqualified admission, please

16    support that answer with facts and documents.

17              Well, under the interrogatory rules, plaintiffs are

18    limited to 25, including all discrete subparts.  But those 425

19    RFAs, even using Mr. Alvarado's rule that three quarters of

20    those are sort of not facts on the ground, that's 300

21    additional interrogatories that the defendants, Southern,

22    would have to answer.  And we don't think that's appropriate,

23    and so that's one ground for our motion for protection.

24              The other is that for the first time they said, I'm

25    aware of in the case, the plaintiffs and the other nominal
```

1   plaintiff have both served discovery requests on Southern.  So

2   they both served more -- taking off the table the 425

3   admissions, they've served, you know, 50 requests --

4   interrogatories to Southern, not 25.  And there is case law

5   that says that when parties are only nominally separate -- and

6   we would argue that they are here -- that they are limited to

7   25 because -- and we argue that they are nominally separate

8   here because they have prosecuted this case together, they are

9   represented by the same counsel, they're seeking to represent

10  the same class, and we think it's a bit of gamesmanship to try

11  to get around the 25 interrogatory limit.

12          THE COURT:  Was it the same counsel that sent out the

13  interrogatories on behalf of different plaintiffs?

14          MR. SINGER:  It's the same counsel.  It's

15  Mr. Alvarado on both --

16          THE COURT:  All right, Mr. Alvarado.  How do you

17  respond to that?

18          MR. ALVARADO:  On the interrogatories, I mean, I

19  think we're in a similar spot, you know.  They cite a case

20  that says that nominal parties only get 25.  There's an equal

21  number of cases that say -- you read the rule, and the rule

22  says it's per party.  I think we served 20 from each, and so,

23  again, this is something that perhaps we can reach an

24  agreement on if there's really the sticking point that we

25  served 40 instead of 25.  I think maybe we can get down to 25

1    if that's -- if we concede to that rule, which we don't

2    currently, or the Court says we only get 25.  But I think

3    that -- again, I don't know that we need to have a motion on

4    this.  I think we can probably work it out.

5           THE COURT:  You said you have cases that go both

6    ways.  Do you have Eleventh Circuit cases that allow you to do

7    what occurred here on behalf of various groups of plaintiffs?

8           MR. ALVARADO:  You know, I don't have the case in

9    front of me.  It's definitely a district court case.

10          THE COURT:  That's nothing.  I can't tell you how

11   frustrated I get when parties quote district court cases to me

12   because that doesn't provide me anything other than an opinion

13   of someone like me at a particular point in time, and that

14   judge may not even go by that rule anymore.  I think to me

15   it's the biggest -- abuse isn't the right word, but it's just

16   the most unhelpful thing to a trial judge to tell another

17   trial judge about what other judges are doing, as if it's

18   somehow precedent.

19          I'm interested to some degree because I like to know

20   what other people think, but it's certainly not precedent at

21   all.  And ultimately it's what the Eleventh Circuit says that

22   really matters, and I don't always agree with the appellate

23   courts, you know.  Unfortunately, when they disagree with me,

24   their decision rules so -- but not what another district court

25   judge says.

1   It would it seem to me to be a violation of the

2   spirit of the rule if you've got a lot of different

3   plaintiffs, and every plaintiff can serve their own sets of

4   interrogatories because, I mean, 25 is somewhat of an

5   arbitrary number.  That's the rule, and you have to ask for

6   permission otherwise and justify it.  And if you're able to

7   justify it simply by saying, well, it's a different plaintiff,

8   then that's not anything substantive.

9   All right.  So let me see.  Let me kind of get back

10  into this.  As it relates to this issue, since it's the one we

11  just talked about, I'm going to ask that y'all take the next

12  two weeks to try to work it out, and if you can't work it out

13  within the next two weeks, then the defendant can file their

14  motion.  I will tell you -- I mean, I just did tell you both

15  what I think about the number of interrogatories, and I don't

16  think requests to admit that deal with conclusions that

17  someone would make about the facts is the purpose of what a

18  request to admit is all about.  A request to admit is meant to

19  prevent you from having to prove facts at trial.  That's at

20  least what I believe.

21  You know, if we were just talking about one, you

22  know, if you had a set of ten requests to admit, 1 through 10,

23  that these things happened and then you had a final one that

24  was 11, admit that you were negligent, for example, I would

25  understand it generally but not in this kind of case.  The

1   legal conclusions are fairly complex, and, you know, if the

2   defendant felt like, for example, that they had recklessly

3   disregarded their obligation, then they could have and would

4   have said that in their answer.  And that's obviously not what

5   the defendant believes.

6          So I do think it's fair game to ask them to admit

7   facts, and I don't have a problem with any facts, X, Y and Z

8   happened.  But I do have a problem with, you know, asking them

9   basically to admit that they're guilty when they've already

10  told you that they're not guilty.  Is the answer filed under

11  oath?  Is there a verification to the answer?

12         MR. SINGER:  I don't believe so, your Honor.

13         THE COURT:  Yeah.  Well, in any event, you know, we

14  know what the defendants' contention is.  That could change at

15  any time.  I mean, y'all could settle the case, and defendant

16  could agree that they did these things.  Chances are if you

17  settle the case, they're not going to agree that they did

18  anything.  It's just going to be a compromise.  But that's

19  basically -- so on balance, you know, I'm going to be with the

20  defendant probably on all of these issues.  I'll let y'all try

21  to work out the specifics of it, and then in two weeks if you

22  haven't worked it out, then you can file your motion to the

23  defendant.

24         And if the plaintiff can justify why any particular

25  request to admit is proper or why any particular interrogatory

1  is proper, you know, maybe y'all can work out the

2  interrogatories where you between yourselves agree that these

3  are valid topics to be asking about, even if it's 25.  And I'm

4  not saying that I'm going to stick with 25 for the plaintiff

5  overall, the plaintiff as an entity overall, because there may

6  be good cause for it to be more than 25.  But that will be a

7  merit-based decision that I'll have to make when I actually

8  look at the specific interrogatories that we're talking about.

9  So y'all take two weeks to work that out, and if you can't

10 work it out, then file your motions.

11         As it relates to the issue of the special master, I'm

12 never going to tell you to quit talking about things.  I think

13 it's always better when you have someone have control of the

14 outcome to the extent that you can get anything that's

15 meaningfully, you know, satisfactory to you.  I'd like the

16 suggestion, though, that Mr. Alvarado makes for me to go ahead

17 and appoint a special master so that we've got that process

18 ready to go.  It may very well be that it takes you a good bit

19 of time to go through these documents.  And the suggestion

20 that to the extent y'all come to impasses with any particular

21 decision on any particular document, then you can go ahead and

22 submit that to the special master, and that way the special

23 master, he or she, are not overwhelmed with all of it at one

24 time.

25         So I'm going to go ahead and go forward with that

1   process.  Today is the 15th I believe; is that right?  Or

2   today may be the 16th?  Today is the 16th.  And so let's just

3   say y'all take the next week to try to agree on a special

4   master.  In the interim I'm going to put some thought into who

5   I might choose if you can't agree.  I will say that by next

6   Thursday if y'all haven't agreed, you can both send me a

7   letter suggesting someone that you think would be appropriate,

8   and I'm not going to promise that I will appoint one or the

9   other.  I want to see who you suggest.  And part of the reason

10  for me to keep the discretion to appoint someone else is so

11  that you'll both be as reasonable as possible in trying to

12  suggest someone to me in just the hopes that I'll pick that

13  person.

14        I can tell you that if I have to pick somebody, as I

15  said earlier, I'm going to get somebody that practices in the

16  Northern District of Georgia routinely and is likely, you

17  know, a member of the Federal Bar Association.  So you might

18  want to concentrate your considerations in that area.  The

19  plaintiffs may be at a little bit of a disadvantage in that

20  regard since you don't practice in Georgia primarily, but I'm

21  sure you can get some assistance with your -- who's the local

22  counsel for the plaintiff in this case?

23        MR. ALVARADO:  John Herman.

24        THE COURT:  John Herman should be able to help you

25  come up with some ideas on some folks.  Is there anything else

1  we need to talk about today?

2          MR. ALVARADO:  One second, your Honor.

3          MR. SINGER:  Not on the defense side, your Honor.

4          THE COURT:  All right.  Thank you.

5          (Brief Pause.)

6          MR. ALVARADO:  Nothing to raise, your Honor.  Just

7  for the sake of completeness, we put in our paper there's two

8  other issues that I think we'll probably reach an agreement

9  on.  One relates to the executive custodian issue that we

10 talked about last month -- I think we're going to have an

11 agreement, I'm just trying to work out some technical issues

12 that are beyond my capability -- and one other relating to a

13 couple of documents that we are asking the defendants to

14 produce that I hope we'll reach agreement on.  But I just

15 wanted to put that on the record that it's still an issue that

16 is out there.

17         THE COURT:  All right.  So not that this case is in

18 any danger of being called to trial any time soon, since we're

19 really just beginning, but the trial situation in the Northern

20 District like everywhere else is very uncertain.  We had hoped

21 that by August that we would be able to maybe impanel some

22 jurors.  Judge Batten, one of the more senior judges in our

23 district, had actually had a criminal case that he was going

24 to call the last week in July.  Judge Thrash, our chief judge,

25 issued an order with the agreement of all of us last week that

1   we would suspend the jury trials through the end of this

2   month -- end of next month.  Excuse me.  I think realistically

3   we don't necessarily believe that we'll be able to get

4   anything to trial really until probably the first of the year,

5   but we're going to keep looking for opportunities to do that.

6           As it relates to discovery, though, I'm assuming

7   y'all will continue to do everything and to the extent you

8   need to take depositions, that y'all are arranging to take

9   them electronically.  I'm having hearings most every day that

10  I'm in the courthouse, which is three to four days a week I'm

11  there, by Zoom.  And, actually, it's working quite well for

12  me.  I've had multiple lawyers arguing, and there may be

13  something that's missed, but I haven't really had any lawyers

14  complain that they haven't had an opportunity to ask what they

15  want to ask.

16          Obviously, in your depositions, I mean, you're going

17  to have technical folks that are involved in all the file

18  sharing that goes on.  But I just want to make sure that y'all

19  are proceeding on despite the limitation we have in person to

20  get ready for trial even in this new way that we're having to

21  operate.

22          MR. ALVARADO:  Your Honor, we have a deposition on

23  Thursday, a week from today, remotely, and I think at least

24  for now they'll all be remotely.  We have two others scheduled

25  for the week after and the week after that, and we're off to

1  the races.

2          MR. MCCONNELL:  Your Honor, this is -- go ahead.

3          THE COURT:  I was just going to say, Mr. McConnell,

4  did you want to say something.

5          MR. MCCONNELL:  No, I was just going to concur with

6  what Mr. Alvarado said.  And to some degree it's a brave new

7  world, but I'm confident we'll be able to work together

8  through the technical issues as they arise.

9          THE COURT:  So still no word from the Eleventh

10  Circuit?

11          MR. ALVARADO:  No, sir.

12          MR. MCCONNELL:  No word.

13          THE COURT:  All right.  Well, you know, they're

14  always fast to reverse me, so this is one time where I would

15  most like to have an answer.  And I'm sure everybody would

16  like to know, but, yeah, can't force them to act any quicker.

17  And I know they're challenged.  I mean, a lot of their judges

18  are working remotely.

19          I'm actually supposed to go to Montgomery with the

20  Eleventh Circuit in August to sit.  Usually when you're a

21  pretty new district court judge, they ask you to sit with

22  them, I guess, so that you have some empathy for the job that

23  they have to do and, also, understand their processes and so

24  that your feelings just don't get hurt when you get reversed.

25  I was happy to agree having had, you know, state appellate

```
 1   experience.  But I was having to go to Montgomery in August,
 2   so I'm not so upset at the fact that we're now going to do it
 3   by phone because now I don't have to go to Montgomery in
 4   August because it's about the hottest place I've ever been in
 5   my life in August, you know.  It's pretty hot.
 6          Mr. Alvarado, where are you from, sir?  Are you from
 7   San Diego?
 8          MR. ALVARADO:  San Diego, yes.
 9          THE COURT:  So anywhere you go is the hottest place.
10          MR. ALVARADO:  This time of year, yes.
11          THE COURT:  Yeah, living in a place with the best
12   climate in the world.  Okay, gentleman and ladies.  Thanks a
13   lot, and I look forward to talking to you in the future.
14          MR. ALVARADO:  Thank you, your Honor.
15          MR. MCCONNELL:  Thank you, your Honor.  I appreciate
16   it.
17          MR. SINGER:  Thank you, your Honor.
18          THE COURT:  All right.  Bye-bye.
19          (Whereupon, the proceedings were adjourned at 10:42
20   a.m.)
21                           -  -  -
22
23
24
25
```

```
 1                     REPORTERS CERTIFICATE

 2

 3

 4          I, Wynette C. Blathers, Official Court Reporter for

 5   the United States District Court for the Northern District of

 6   Georgia, with offices at Atlanta, do hereby certify:

 7          That I reported on the Stenograph machine the

 8   proceedings held in open court on July 16, 2020, in the matter

 9   of MONROE COUNTY EMPLOYEES' RETIREMENT SYSTEM et al. v. THE

10   SOUTHERN COMPANY et al., Case No. 1:17-CV-00241-WMR; that said

11   proceedings in connection with the hearing were reduced to

12   typewritten form by me; and that the foregoing transcript

13   (Pages 1 through 30) is a true and accurate record of the

14   proceedings.

15          This the 18th day of July, 2020.

16

17

18

19                              _____
                                /s/ Wynette C. Blathers, RMR, CRR
20                                  Official Court Reporter

21

22

23

24

25
```