UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| MONROE COUNTY EMPLOYEES' RETIREMENT SYSTEM and ROOFERS LOCAL NO. 149 PENSION FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) | Civil Action No. 1:17-cv-00241-WMR  CLASS ACTION  MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| THE SOUTHERN COMPANY, THOMAS A. FANNING, ART P. BEATTIE, EDWARD DAY, VI, G. EDISON HOLLAND, JR., JOHN C. HUGGINS and THOMAS O. ANDERSON, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) | |

4838-9678-3827.v1

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................................1

II. FACTUAL AND PROCEDURAL HISTORY OF THE ACTION...............4

III. THE SETTLEMENT WARRANTS FINAL APPROVAL ..........................5

    A.  Plaintiffs and Lead Counsel Adequately Represented the Class ..........7

    B.  The Settlement Is the Product of Arm's-Length Negotiations
        Between Experienced Counsel....................................................................7

    C.  The Relief Provided to the Class Is Adequate ....................................9

        1.  The Costs, Risks, and Delay of Continued Litigation ...............9

        2.  Other Rule 23(e)(2)(C) Factors Support Final Approval .........14

    D.  All Class Members Are Treated Equitably .........................................16

    E.  The Remaining Eleventh Circuit Factors Are Satisfied......................17

        1.  The Settlement Amount Is Within the Range of
            Reasonableness Considering the Range of Possible
            Recoveries...................................................................................17

        2.  The Favorable Reaction of the Class to Date Supports
            Final Approval ...........................................................................19

        3.  The Stage of Proceedings at Which Settlement was
            Achieved Strongly Supports Final Approval............................20

        4.  Recommendation of Experienced Counsel and Lead
            Plaintiffs Favors Final Approval...............................................21

IV. THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION
    AS FAIR AND REASONABLE...................................................................22

V.  NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF
    RULE 23, THE PSLRA, AND DUE PROCESS ..........................................23

VI. CONCLUSION.............................................................................................25

4838-9678-3827.v1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Access Now, Inc. v. Claire's Stores, Inc.*,
   2002 U.S. Dist. LEXIS 28975
   (S.D. Fla. May 7, 2002) ........................................................................19

*Behrens v. Wometco Enters., Inc.*,
   118 F.R.D. 534 (S.D. Fla. 1988),
   *aff'd*, 899 F.2d 21 (11th Cir. 1990) ..............................................13, 20

*Bennett v. Behring Corp.*,
   737 F.2d 982 (11th Cir. 1984) .......................................5, 6, 17, 18

*Busby v. JRHBW Realty, Inc.*,
   513 F.3d 1314 (11th Cir. 2008) ...........................................................7

*Cervantes v. Invesco Holding Co. (US), Inc., et al.*,
   No. 1:18-cv-02551-AT, slip op.
   (N.D. Ga. Aug. 13, 2020) ...................................................................16

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ..............................................................20

*City of Providence v. Aéropostale, Inc.*,
   2014 U.S. Dist. LEXIS 64517
   (S.D.N.Y. May 9, 2014),
   *aff'd sub nom.*, *Arbuthnot v. Pierson*,
   607 F. App'x 73 (2d Cir. 2015) ...........................................................22

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013)................................................................................9

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ............................................................21

*Dasher v. RBC Bank United States*,
   2020 U.S. Dist. LEXIS 142012
   (S.D. Fla. Aug. 10, 2020).......................................................5, 21, 25

**Page**

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)...........................................................................................23

*Garst v. Franklin Life Ins. Co.*,
    1999 U.S. Dist. LEXIS 22666
    (N.D. Ala. June 28, 1999)...........................................................................17, 20

*Gonzalez v. TCR Sports Broad. Holding, LLP*,
    2019 U.S. Dist. LEXIS 87506
    (S.D. Fla. May 24, 2019) ...................................................................................16

*Gumm v. Ford*,
    2019 U.S. Dist. LEXIS 76746
    (M.D. Ga. May 7, 2019) ......................................................................................5

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014).............................................................................................9

*Hayes v. MagnaChip Semiconductor Corp.*,
    2016 U.S. Dist. LEXIS 162120
    (N.D. Cal. Nov. 21, 2016)..................................................................................11

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ...............................................................11

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    2006 U.S. Dist. LEXIS
    (S.D.N.Y. Apr. 6, 2006).......................................................................................9

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
    2011 U.S. Dist. LEXIS 48057
    (S.D. Fla. Apr. 25, 2011),
    *aff'd sub. nom*, *Hubbard v. BankAtlantic Bancorp, Inc.*,
    688 F.3d 713 (11th Cir. 2012) ...........................................................................13

*In re Checking Acct. Overdraft Litig.*,
    275 F.R.D. 654 (S.D. Fla. 2011).........................................................................8

**Page**

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 U.S. Dist. LEXIS 121886
  (N.D. Cal. July 22, 2019) ...................................................................17

*In re Flowers Foods, Inc. Sec. Litig.*,
  2019 U.S. Dist. LEXIS 216826
  (M.D. Ga. Dec. 11, 2019) ..................................................................16

*In re Healthsouth Corp. Sec. Litig.*,
  334 F. App'x 248 (11th Cir. 2009) ....................................................16

*In re Heritage Bond Litig.*,
  2005 WL 1594403
  (C.D. Cal. June 10, 2005) ..................................................................22

*In re Penthouse Exec. Club Comp. Litig.*,
  2013 U.S. Dist. LEXIS 63065
  (S.D.N.Y. Apr. 30, 2013)...............................................................7, 8

*In re Rayonier Inc. Sec. Litig.*,
  2017 WL 4535984
  (M.D. Fla. Oct. 5, 2017) ....................................................................22

*In re Sunbeam Sec. Litig.*,
  176 F. Supp. 2d 1323 (S.D. Fla. 2001) .........................................18, 21

*Perez v. Asurion Corp.*,
  501 F. Supp. 2d 1360 (S.D. Fla. 2007) ..............................................20

*Reyes v. AT&T Mobility Servs., LLC*,
  2013 U.S. Dist. LEXIS 202820
  (S.D. Fla. June 21, 2013) ...................................................................16

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) .........................................................13

4838-9678-3827.v1

**Page**

*Schorr v. Countrywide Home Loans, Inc.*,
    2015 U.S. Dist. LEXIS 194083
    (M.D. Ga. Apr. 1, 2015) ....................................................................................5

*Swinton v. SquareTrade, Inc.*,
    2019 U.S. Dist. LEXIS 25458
    (S.D. Iowa Feb. 14, 2019)..................................................................................6

*Trief v. Dun & Bradstreet Corp.*,
    840 F. Supp. 277 (S.D.N.Y. 1993) ..................................................................14

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78u-4 ...........................................................................................2, 23, 25
    §78u-4(a)(7) .....................................................................................................24

Federal Rules of Civil Procedure
    Rule 23 ......................................................................................................23, 25
    Rule 23(c)(2)(B).........................................................................................23, 25
    Rule 23(e).............................................................................................1, 5, 6, 18
    Rule 23(e)(1) .....................................................................................................5
    Rule 23(e)(2) .................................................................................................5, 6
    Rule 23(e)(2)(B)................................................................................................7
    Rule 23(e)(2)(C).........................................................................................9, 14
    Rule 23(e)(2)(C)(ii)-(iv) .................................................................................14
    Rule 23(e)(2)(C)(iv)........................................................................................16
    Rule 23(e)(2)(D) .............................................................................................16
    Rule 23(e)(3).....................................................................................................14
    Rule 23(f) .................................................................................................*passim*

## SECONDARY AUTHORITIES

Janeen McIntosh and Svetlana Starykh,
    *Recent Trends in Securities Class Action Litigation: 2019 Full-*
    *Year Review* (NERA Feb. 12, 2020).................................................................18

**Page**

Laarni T. Bulan and Laura E. Simmons,
*Securities Class Action Settlements, 2019 Review and Analysis*
(Cornerstone Research 2020)..............................................................................18

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Roofers Local No. 149 Pension Fund and Monroe County Employees' Retirement System (together, "Plaintiffs"), by and through their undersigned counsel of record, respectfully submit this memorandum of law in support of their motion requesting: (1) final approval of the proposed Settlement, which the Court preliminarily approved on October 1, 2020 (the "Notice Order"); (2) approval of the proposed Plan of Allocation; and (3) the entry of the proposed Final Judgment and Order of Dismissal with Prejudice of this Action.[1]

## I.   INTRODUCTION

The $87,500,000 all-cash, non-reversionary Settlement represents an excellent result for the Class.  It is among the largest securities class action settlements in this District and, indeed, the Eleventh Circuit, and comes after more than three years of hard-fought litigation.  Based on its vigorous prosecution of this case, it is Lead Counsel's informed opinion that in light of the significant risks and the delay, expense, and uncertainty of continuing the Action – including pursuing the Action

---

[1]   Unless otherwise defined herein, all capitalized terms are defined in the Stipulation of Settlement dated September 8, 2020 (the "Stipulation") (ECF No. 219-3) and the accompanying Declaration of Darryl J. Alvarado in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation, and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses ("Alvarado Decl.").  Unless otherwise indicated, all citations and internal quotation marks are omitted and emphasis is added.

4838-9678-3827.v1

through summary judgment, trial, and any subsequent appeals – the Settlement is a certain, fair, reasonable, and adequate result for the Class. The benefit that the proposed Settlement will provide to the Class weighs in favor of final approval when considered against the risk that, absent the Settlement, the Class might recover less (or nothing at all) if the Action continued through the Rule 23(f) petition, summary judgment, trial, and any appeals that would follow – a process that would stretch many years into the future. Importantly, the Settlement is fully supported by Plaintiffs, who are the type of institutional investors favored by Congress when passing the Private Securities Litigation Reform Act of 1995 ("PSLRA") to lead cases like this one.[2]

By any measure, the Settlement is excellent. It is the ***third largest*** federal securities class action settlement ever achieved in this District and the ***seventh largest*** federal securities class action settlement ever achieved in the Eleventh Circuit. Alvarado Decl., ¶112. Lead Counsel estimates that the recovery here represents between 16% and 28% of the Class's maximum recoverable class-wide aggregate damages. *Id.* This result is between ***7 and 14 times greater*** than the median ratio of settlement amount to investor losses in securities litigation according to NERA

---

[2]   *See* Declaration of Darris Garoufalis in Support of Application for Final Approval of Class Action Settlement and Award of Attorneys' Fees and Expenses ("Garoufalis Decl.") and the Declaration of Michael Grodi in Support of Application for Final Approval of Class Action Settlement and Award of Attorneys' Fees and Expenses ("Grodi Decl."), attached as Exhibits 1 and 2 to the Alvarado Decl.

Consulting's most recent report. *Id.* Accordingly, Lead Counsel, experienced in prosecuting securities class actions and other complex litigation, strongly believes that the proposed Settlement is fair, reasonable, and adequate, and in the best interests of the Class. Moreover, the Plan of Allocation, which Lead Counsel developed with the assistance of Plaintiffs' damages expert, is a fair, reasonable, and adequate method for distributing the Net Settlement Fund to Class Members. *Id.*, ¶¶120-125.

The fairness of the Settlement is further evidenced by the fact that, to date, members of the Class have reacted favorably to the Settlement. Pursuant to the Notice Order, over 650,000 copies of the Notice have been sent to potential Class Members and nominees since October 21, 2020, and a Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire*, a national newswire service, on October 28, 2020.[3] Settlement-related documents were also posted on the website established for this Settlement, www.SouthernCompanySecuritiesSettlement.com. *Id.*, ¶14. While the deadline for Class Members to object to the Settlement and Plan of Allocation has not yet passed, to date, there have been ***no substantive objections*** to

---

[3]   *See* Declaration of Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Murray Decl."), submitted on behalf of the Court-appointed Claims Administrator for the Settlement, Gilardi & Co. LLC ("Gilardi"), ¶¶4-12, and attached as Exhibit 3 to the Alvarado Decl.

4838-9678-3827.v1

any aspect of the Settlement, and only 56 requests for exclusion from the Class (many of which do not meet the requirements for submission) have been received. *Id.*, ¶16.[4]

As detailed in the Alvarado Decl., the Settlement was reached only after, *inter alia*, an extensive investigation by Lead Counsel; the filing of the Complaint; full briefing regarding Defendants' motion to dismiss, motion for reconsideration, and for leave to appeal; full briefing on Plaintiffs' motion for class certification and Defendants' Rule 23(f) petition; extensive document discovery; several depositions – including expert depositions; and arm's-length settlement negotiations with David M. Murphy, Esq. of Phillips ADR, a highly experienced, nationally recognized mediator.

Accordingly, Plaintiffs respectfully request that the Court grant final approval of this Settlement and the Plan of Allocation.[5]

## II.    FACTUAL AND PROCEDURAL HISTORY OF THE ACTION

The Alvarado Decl. is an integral part of this submission and Plaintiffs respectfully refer the Court to it for a detailed description of: (i) the history of the

---

[4]   The objection deadline is December 24, 2020.  If any timely objections are received, Lead Counsel will address them in a reply memorandum due no later than January 7, 2021.

[5]   Lead Counsel conferred with Defendants' counsel regarding Plaintiff's motion for final approval of the settlement.  Defendants do not adopt every statement made by Plaintiffs in their motion, but they do not oppose the relief sought.

Action; (ii) the nature of the claims asserted; (iii) the negotiations leading to the Settlement; and (iv) and the terms of the Plan of Allocation.

## III.   THE SETTLEMENT WARRANTS FINAL APPROVAL

As a matter of public policy, settlements are a highly-favored means of resolving disputes, "'[p]articularly in class action suits.'"  *Gumm v. Ford*, 2019 U.S. Dist. LEXIS 76746, at \*11 (M.D. Ga. May 7, 2019); *see also Schorr v. Countrywide Home Loans, Inc.*, 2015 U.S. Dist. LEXIS 194083, at \*4 (M.D. Ga. Apr. 1, 2015) ("class-action settlements will be disapproved only upon considerable circumspection").  In determining whether to approve the Settlement, the Court should be guided by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Dasher v. RBC Bank United States*, 2020 U.S. Dist. LEXIS 142012, at \*21 (S.D. Fla. Aug. 10, 2020).

Rule 23(e) requires court approval for any settlement of a class action. Settlement approval is a two-step process and, following preliminary approval under Rule 23(e)(1), Rule 23(e)(2) requires courts to find that the settlement is "fair, reasonable, and adequate."  Rule 23(e)(2) requires the Court to consider whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account [among other things]: (i) the costs, risks, and delay of trial and appeal; and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, courts in the Eleventh Circuit consider the following factors, some of which overlap with Rule 23(e):

(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.  At bottom, "[t]he central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate."   Advisory Committee Notes to 2018 Amendments to Fed. R. Civ. P. 23(e)(2); *see also Swinton v. SquareTrade, Inc.*, 2019 U.S. Dist. LEXIS 25458, at *14, 15 (S.D. Iowa Feb. 14, 2019) ("The requirement that a settlement be 'fair, reasonable, and adequate' is nothing new.").  An examination of the foregoing factors firmly demonstrates that the Settlement is fair, reasonable, and adequate to the Class, and should be approved.

### A.     Plaintiffs and Lead Counsel Adequately Represented the Class

Plaintiffs and Lead Counsel have adequately represented the Class by achieving an $87,500,000 Settlement, which will provide significant, immediate relief to the Class.   Moreover, Plaintiffs' claims are typical of, co-extensive with, and not antagonistic to the claims of the Class, and Plaintiffs' interest in obtaining the largest-possible recovery in this Action is closely aligned with the interests of other Class Members.  *See Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008). Plaintiffs also retained counsel with a long and successful track record of representing investors in securities litigation.  As discussed more fully in §III.E.3., *infra*, in order to maximize the recovery for all Class Members, Lead Counsel vigorously prosecuted the Class's claims and expended significant time and resources throughout the Litigation.  *See generally* Alvarado Decl.

### B.     The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  Where the settlement was reached with the assistance of experienced counsel and an experienced mediator, there is "a 'presumption that the settlement achieved meets the requirements of due process.'"  *In re Penthouse Exec. Club Comp. Litig.*, 2013 U.S. Dist. LEXIS 63065, at *8 (S.D.N.Y.

- 7 -

Apr. 30, 2013) ("the assistance of [an] experienced mediator[] . . . reinforces that the Settlement Agreement is non-collusive"); *see also In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011) (approving settlement that was "the product of informed, good-faith, arms'-length negotiations between the parties and their capable and experienced counsel, and [which] was reached with the assistance of a well-qualified and experienced mediator").

Here, the Settlement merits a presumption of reasonableness because it is the product of substantial arm's-length negotiations between experienced counsel who had thoroughly evaluated the merits and were well aware of the strengths and weaknesses of the case.  Lead Counsel utilized its extensive experience in securities fraud class action litigation and employed its well-deserved reputation for tenaciously prosecuting claims on behalf of shareholders in the negotiations leading to the Settlement.  And, the mediation process – which included a full-day mediation that did not result in a settlement, subsequent negotiations, and a mediator's recommendation – was led by Mr. Murphy, an experienced mediator.  Accordingly, the Settlement merits a presumption of reasonableness.  *See Penthouse Exec.*, 2013 U.S. Dist. LEXIS 63065, at *8.

4838-9678-3827.v1

## C.     The Relief Provided to the Class Is Adequate

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," along with other relevant factors.  These factors warrant approval.

### 1.     The Costs, Risks, and Delay of Continued Litigation

There is no question that continued litigation would have been costly, risky, and protracted.  Securities class actions are "notorious[ly] complex[]" and "[t]he difficulty of establishing liability is a common risk of securities litigation."  *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 U.S. Dist. LEXIS, at *31, *39 (S.D.N.Y. Apr. 6, 2006).  Plaintiffs and Lead Counsel believe the asserted claims have considerable merit, but also recognize that the risks of continued litigation were substantial.  With Defendants' Rule 23(f) petition pending at the time of settlement, overcoming this hurdle was the most immediate and critical next step for Plaintiffs.  Alvarado Decl., ¶¶39-41.[6]  While Lead Counsel was confident that this Court's ruling on Plaintiffs'

---

[6]     In their Rule 23(f) petition, Defendants argued that (1) the Court ignored *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) by refusing to consider Defendants' event study that purportedly proved a lack of price impact; and (2) the Court failed to find that Plaintiffs' proffered damages model established that damages could be calculated on a class-wide basis, pursuant to *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).  Alvarado Decl., ¶39.

- 9 -

class certification motion would be upheld, Defendants' arguments created significant uncertainty as to whether the Class would receive any recovery. *Id.* And even if Plaintiffs survived Defendants' Rule 23(f) challenge, Defendants' motion for summary judgment was anticipated. Plaintiffs and Lead Counsel were cognizant that an adverse decision would have presented a significant hurdle to recovering any damages on behalf of the Class.

To defeat a summary judgment motion and to prevail at trial, Plaintiffs and Lead Counsel would have to prove that Southern Company's statements and omissions regarding the progress of construction at the Kemper Plant were materially false and misleading, that Defendants knew or were reckless in not knowing that their statements and omissions were false and misleading at the time they were made, and that those statements and omissions caused recoverable damages for the Class. Plaintiffs anticipated that Defendants would present strong arguments challenging Plaintiffs' proof on each of those elements in their motion for summary judgment, motions to exclude Plaintiffs' experts, and/or at trial.

**Falsity**: Defendants would undoubtedly argue in a motion for summary judgment or at trial that Plaintiffs failed to allege actionable misrepresentations. Defendants argued that before and during the Class Period, Defendants warned investors of potential delays that could impact their ability to maintain the schedule

- 10 -

and achieve the May 2014 COD, and thus, their statements were not materially misleading. Alvarado Decl., ¶¶101-103. Defendants have also argued that at the time the alleged misstatements were made, proposed workarounds confirmed that any schedule delays could be averted and, thus, the May 2014 COD was still achievable. *Id.*, ¶102. Finally, Defendants argued that a majority of the alleged misstatements were opinions, protected from liability under the securities laws. *Id.* These fact bound arguments and legal issues created uncertainty as to any future recovery.

**Scienter**: Defendants would have likely moved for summary judgment on the element of scienter. Proving scienter in a securities case is "complex and difficult to establish" and is rarely supported by direct evidence or an admission. *Hayes v. MagnaChip Semiconductor Corp.*, 2016 U.S. Dist. LEXIS 162120, at *16 (N.D. Cal. Nov. 21, 2016); *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001) ("[P]roof of state of mind is inherently difficult."). Here, although Plaintiffs believe that the evidence would have established Defendants' scienter, there were no admissions of wrongdoing, no suspicious stock sales, no governmental charges or convictions, and Defendants argued stridently that they had no motive to lie to investors about the achievability of the May 2014 COD as they gained nothing by making such a representation. Alvarado Decl., ¶¶105-106. Had the

Court or a jury agreed with Defendants on any of these fact bound arguments, the Class would have received nothing.

**Loss Causation and Damages**:  Plaintiffs also faced substantial challenges in proving that the revelation of the truth about Defendants' alleged false and misleading statements and omissions caused declines in the price of Southern Company common stock, and in establishing class-wide damages.  Alvarado Decl., ¶108.  Defendants repeatedly argued that any losses suffered by Class Members were not attributable to the alleged corrective disclosures because the disclosures did not correct any alleged misstatement.  *Id.*, ¶109.  Defendants also claimed that the alleged disclosures contained information unrelated to the alleged fraud that would have to be "disaggregated" from the impact of the information at issue, which Defendants and their expert claimed would significantly reduce or entirely eliminate any damages.  *Id*. Finally, Defendants asserted that there were no statistically significant price drops in response to nearly all of the corrective disclosures, which would have significantly reduced Plaintiffs' damages.  *Id*.

Plaintiffs would have to proffer expert testimony to prove: (i) what the "true value" of Southern Company common stock would have been had there been no fraud; (ii) the amount by which Southern Company's shares were inflated by the alleged material misstatements and omissions; and (iii) the amount of artificial

- 12 -

inflation removed by the multiple alleged corrective disclosures.  As they did in their opposition to class certification, Defendants would likely present their own causation and damages expert(s) to present conflicting conclusions and theories regarding the reasons for Southern Company's share price decline on the alleged disclosure dates, requiring a jury to decide the "battle of the experts" – an expensive and intrinsically unpredictable process.  Alvarado Decl., ¶¶109-110; *see also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("In the battle of experts, 'it is virtually impossible to predict with certainty which testimony will be credited.'"), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

**Appeals**: Even if Plaintiffs prevailed on liability, and the Class was awarded damages, Defendants likely would appeal the verdict and award.  The appeals process would prolong the case for years, with the ultimate outcome uncertain.  During this time for appeals, the Class would receive no distribution of any damage award.  In addition, an appeal of any judgment would carry the risk of reversal, in which case the Class would receive no recovery even after having prevailed on their claims at trial.[7]

---

[7]   This risk is not academic.  *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *see also In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 U.S. Dist. LEXIS 48057, at *125 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict), *aff'd sub. nom*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

In sum, even if Plaintiffs prevailed after trial and appeals, there is no guarantee that they would have obtained a judgment greater than the $87.5 million Settlement. There was, as in any complex securities action, a very significant risk that continued litigation might yield a smaller recovery – or indeed, no recovery at all – several years in the future. *See Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 282 (S.D.N.Y. 1993) ("It is beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members."). The Settlement provides a favorable, immediately-realizable recovery that eliminates all of the risk, delay, and expense of continued litigation.

### 2.    Other Rule 23(e)(2)(C) Factors Support Final Approval

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors support approval of the Settlement.

*First*, the method for processing Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing

- 14 -

claims submitted by potential Class Members and efficiently distributing the Net Settlement Fund.  Here, Gilardi – the Claims Administrator – will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation).  Claims processing in the method proposed here is standard in securities class action settlements and has long been found to be effective, as well as necessary, insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required to distribute the Net Settlement Fund.[8]

**Second**, as disclosed in the Notice, Lead Counsel will apply for a fee award constituting a percentage of the common fund in an amount not to exceed thirty percent to compensate them for the services they rendered on behalf of the Class. This fee request is reasonable in light of the work performed and the results obtained. *See* Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses, filed concurrently herewith.  This fee request also aligns with other settlements approved in recent cases in the Eleventh Circuit.  Indeed, "district courts in the Eleventh Circuit routinely approve fee awards of one-third of the

---

[8]  This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted.  *See* Stipulation, ¶2.13.

- 15 -

common settlement fund." *Gonzalez v. TCR Sports Broad. Holding, LLP*, 2019 U.S. Dist. LEXIS 87506, at *17 (S.D. Fla. May 24, 2019); *see also In re Flowers Foods, Inc. Sec. Litig.*, 2019 U.S. Dist. LEXIS 216826 (M.D. Ga. Dec. 11, 2019) (awarding 33 1/3% fee plus expenses); *Cervantes v. Invesco Holding Co. (US), Inc., et al.*, No. 1:18-cv-02551-AT, slip op. at 2 (N.D. Ga. Aug. 13, 2020) (awarding 33% fee plus expenses); *Reyes v. AT&T Mobility Servs., LLC*, 2013 U.S. Dist. LEXIS 202820, at *10 (S.D. Fla. June 21, 2013) ("Class Counsel's request for one-third of the settlement fund is also consistent with the trend in this Circuit.").

**Third**, with respect to Rule 23(e)(2)(C)(iv), the Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if the potential Class Members who collectively purchased over a certain threshold of Southern Company common stock request exclusion (or "opt-out") from the Settlement.  Stipulation, ¶7.4.  This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.  *In re Healthsouth Corp. Sec. Litig.*, 334 F. App'x 248, 250 n.4 (11th Cir. 2009).

### D.   All Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  As explained in the Alvarado Decl.,

- 16 -

¶¶120-125, under the Plan of Allocation, each Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim – based on each claimant's Class Period purchases and sales of Southern Company stock – divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  Plaintiffs, just like all other Class Members, will be subject to the same formulas for distribution of the Settlement.  Courts have repeatedly approved similar plans of allocation.  *See In re Extreme Networks, Inc. Sec. Litig.*, 2019 U.S. Dist. LEXIS 121886, at *26 (N.D. Cal. July 22, 2019) ("Under the Agreement, class members who have submitted timely claims will receive payments on a *pro rata* basis based on the value of their original claim and the number of claims filed.").

### E.    The Remaining Eleventh Circuit Factors Are Satisfied

#### 1.    The Settlement Amount Is Within the Range of Reasonableness Considering the Range of Possible Recoveries

"The second and third factors in the Eleventh's Circuit's *Bennett* analysis call for the Court to determine 'the possible range of recovery' and then ascertain where within that range 'fair, adequate, and reasonable settlements lie.'"  *Garst v. Franklin Life Ins. Co.*, 1999 U.S. Dist. LEXIS 22666, at *64 (N.D. Ala. June 28, 1999); *see*

- 17 -

*also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1331 (S.D. Fla. 2001) (these factors "'are easily combined'").[9]

The $87,500,000 all-cash Settlement is well within the range of reasonableness under the circumstances to warrant final approval of the Settlement. Plaintiffs' damages expert estimates that if Plaintiffs fully prevailed on each of their claims at both summary judgment and trial, and if the Court and jury fully accepted Plaintiffs' loss causation and damages arguments – *i.e.*, Plaintiffs' ***best case scenario*** – the total maximum damages would range between $310 million and $535 million. Thus, the $87.5 million Settlement Amount represents approximately 16% to 28% of the total maximum damages potentially available in this Action.

By comparison, the median recovery in securities class actions in 2019 was approximately 2.1% of estimated investor losses. *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2019 Full-Year Review* (NERA Feb. 12, 2020) at 20, Fig. 13. Moreover, the median recovery in securities class actions between 2010 and 2018 was 3.7% of "Simplified Tiered Damages" ranging between $500 million and $999 million. Laarni T. Bulan and Laura E.

---

[9]   Because the first and fourth *Bennett* factors – likelihood of success at trial and complexity, expense, and duration of the litigation – overlap with Rule 23(e), already discussed *supra*, Plaintiffs address herein the second, third, fifth, and sixth *Bennett* factors. *See* 737 F.2d at 986.

- 18 -

Simmons, *Securities Class Action Settlements, 2019 Review and Analysis* (Cornerstone Research 2020) at 6, Fig. 5.  The Settlement dwarfs these median recoveries in similar cases and, in fact, is the third largest federal securities class action recovery ever achieved in this District and the seventh largest federal securities class action recovery ever achieved in the Eleventh Circuit.  Alvarado Decl., ¶112.

### 2. The Favorable Reaction of the Class to Date Supports Final Approval

To date, no substantive objections to the Settlement have been received. Alvarado Decl., ¶119.  Such a favorable reaction of the Class to the Settlement also supports its approval.  *Access Now, Inc. v. Claire's Stores, Inc.*, 2002 U.S. Dist. LEXIS 28975, at *20 (S.D. Fla. May 7, 2002) ("[t]he fact that no objections have been filed strongly favors approval of the settlement").

Pursuant to the Notice Order, beginning on October 21, 2020, the Claims Administrator has caused a total of 650,961 Notices to be mailed to potential Class Members, including brokers and other nominees.  Murray Decl., ¶¶5-11.  The Claims Administrator also caused the Summary Notice to be published in *Investor's Business Daily* and transmitted over *BusinessWire* on October 28, 2020.  *Id.*, ¶12.  To date, to the knowledge of Lead Counsel, only one, non-substantive objection has been submitted to the Court, and only 56 requests for exclusion from the Class (many of

- 19 -

which are invalid for failing to provide the information required by the Notice) have been received. *Id.*, ¶16. *See also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming final approval where approximately 0.61% of class members either opted out or objected). Accordingly, the Class Members' positive reaction to the Settlement supports final approval.

### 3. The Stage of Proceedings at Which Settlement was Achieved Strongly Supports Final Approval

In assessing the stage of the proceedings at which a settlement is achieved, the "relevant inquiry is whether the parties have conducted sufficient discovery to assess the strengths and weaknesses of their claims and defenses." *Garst*, 1999 U.S. Dist. LEXIS 22666, at *69-*70; *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1383 (S.D. Fla. 2007) (approval supported where plaintiffs had "access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation"); *accord Behrens*, 118 F.R.D. at 544.

Here, the Settlement was reached after more than three years of hard-fought litigation, and after Plaintiffs conducted an extensive investigation and substantial fact and expert discovery. Such discovery included a review and analysis of over 2.1 million pages of relevant documents from Defendants and various third parties. Alvarado Decl., ¶¶4, 42-48, 77. Plaintiffs also opposed Defendants' motion to

dismiss, motion for reconsideration, and motion for leave to file an interlocutory appeal; moved for class certification, which included detailed expert reports from Plaintiffs' and Defendants' experts, expert deposition testimony, and a two-day evidentiary hearing; opposed Defendants' Rule 23(f) petition; consulted extensively with experts; and participated in thorough settlement negotiations. *See generally* Alvarado Decl. The Parties also conducted several depositions. In sum, by the time the Settlement was reached, each side had sufficient information to assess the strengths and weaknesses of its claims, and "was well aware of the other side's position and the merits thereof." *Sunbeam*, 176 F. Supp. 2d at 1332.

### 4. Recommendation of Experienced Counsel and Lead Plaintiffs Favors Final Approval

In determining whether the proposed Settlement is fair, reasonable, and adequate, the Court may rely on the judgment of counsel and, indeed, "should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). "The Court gives 'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.'" *Dasher*, 2020 U.S. Dist. LEXIS 142012, at *37. Here, Lead Counsel is highly experienced in litigation of this type, well informed about the strengths and weaknesses of this case, and strongly endorses the Settlement as an

- 21 -

excellent recovery for the Class.  Plaintiffs – two institutional investors – similarly endorse final approval of the Settlement.  *See* Garoufalis Decl., ¶¶2-3; Grodi Decl., ¶¶2-3; *see also See also City of Providence v. Aéropostale, Inc.*, 2014 U.S. Dist. LEXIS 64517, at *12 (S.D.N.Y. May 9, 2014) ("A settlement reached 'under the supervision and with the endorsement of a sophisticated institutional investor . . . is entitled to an even greater presumption of reasonableness.'"), *aff'd sub nom.*, *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

## IV.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION AS FAIR AND REASONABLE

A plan of allocation in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable, and adequate.  *In re Rayonier Inc. Sec. Litig.*, 2017 WL 4535984, at *1 (M.D. Fla. Oct. 5, 2017).  An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel.  *In re Heritage Bond Litig.*, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005).

The Plan of Allocation, which is detailed in the Notice and posted on the Settlement website at www.SouthernCompanySecuritiesSettlement.com, is fair, reasonable, and adequate.  It is based on an out-of-pocket theory of damages consistent with Plaintiffs' claims and was developed with the assistance of Plaintiffs'

- 22 -

expert.  It is based on the premise that the decreases in the price of the Company's stock following the alleged corrective disclosures may be used to measure the alleged artificial inflation in the price of the Company's stock prior to these disclosures.

An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including: (1) how many shares of the Company's stock the Claimant purchased, acquired, or sold during the Class Period; (2) when that Claimant bought, acquired, or sold the shares; and (3) the number of valid claims filed by other Claimants.  Plaintiffs and Lead Counsel believe that the proposed Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Class Members.  To date, no objections to the Plan of Allocation have been filed on this Court's docket.  For these reasons, Plaintiffs respectfully request that the Court approve the proposed Plan of Allocation.

## V.   NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23, THE PSLRA, AND DUE PROCESS

Due process and Rule 23 require that class members be given "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974).

4838-9678-3827.v1

In accordance with the Court's Notice Order, the Claims Administrator began mailing copies of the Notice to potential Class Members and their nominees on October 21, 2020, and more than 650,000 Notices have been mailed to date. Murray Decl., ¶¶5-11. In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over *BusinessWire* on October 28, 2020, and copies of the Notice, Claim Form, Stipulation, and Notice Order have been posted to the website established for the Action, www.SouthernCompanySecuritiesSettlement.com. *Id*., ¶¶12, 14. The Notice advised potential Class Members of, among other things: (1) their right to exclude themselves from the Class; (2) their right to object to any aspect of the Settlement, the Plan of Allocation, or the requested attorneys' fees and expenses; and (3) the method for submitting a Claim Form in order to be eligible to receive a payment from the Settlement. Additionally, pursuant to the requirements of the PSLRA, 15 U.S.C. §78u-4(a)(7), the Notice also set forth in plain, easily-understandable language: (1) a cover page summarizing the information in the Notice; (2) a statement of plaintiff recovery and the estimated recovery per damaged share; (3) a statement of potential outcomes of the case; (4) a statement of attorneys' fees or costs sought; (5) identification of lawyers' representatives; and (6) the reasons for settlement.

4838-9678-3827.v1

Because the Notice program provides all of the necessary information required under Rule 23(c)(2)(B) and the PSLRA and fairly apprises Class Members of their rights with respect to the Settlement, it is the best notice practicable under the circumstances. *Dasher*, 2020 U.S. Dist. LEXIS 142012, at *24.

## VI.  CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court: (1) grant final approval of the proposed Settlement; (2) approve the proposed Plan of Allocation; (3) find that notice to the Class satisfied Rule 23, the PSLRA, and due process; and (4) enter the proposed Final Judgment and Order of Dismissal with Prejudice of this Litigation.

DATED:  December 10, 2020          Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIEL S. DROSMAN
ELLEN GUSIKOFF STEWART
DEBRA J. WYMAN
DARRYL J. ALVARADO
ASHLEY M. PRICE
HILLARY B. STAKEM
RACHEL A. COCALIS


      s/Darryl J. Alvarado
      DARRYL J. ALVARADO

- 25 -

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
dand@rgrdlaw.com
elleng@rgrdlaw.com
debraw@rgrdlaw.com
dalvarado@rgrdlaw.com
aprice@rgrdlaw.com
hstakem@rgrdlaw.com
rcocalis@rgrdlaw.com

Lead Counsel for the Class

HERMAN JONES LLP
JOHN C. HERMAN
  (Georgia Bar No. 348370)
3424 Peachtree Road, N.E., Suite 1650
Atlanta, GA  30326
Telephone:  404/504-6555
404/504-6501 (fax)
jherman@hermanjones.com

Local Counsel

ASHERKELLY
MICHAEL J. ASHER
25800 Northwestern Highway, Suite 1100
Southfield, MI  48075
Telephone:  248/746-2710
248/747-2809 (fax)
masher@asherkellylaw.com

Additional Counsel

- 26 -

## CERTIFICATE OF SERVICE

I hereby certify on December 10, 2020, I electronically filed the above document with the Clerk of the Court using CM/ECF, which will send electronic notification of such filing to all registered counsel.

s/ DARRYL J. ALVARADO
DARRYL J. ALVARADO
ROBBINS GELLER RUDMAN
   & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
dalvarado@rgrdlaw.com